# Confidential submission with respect to potential receivership with Michael I. Goldberg acting as potential receiver

**Contact:**

**Michael I. Goldberg**
Tel:  954.468.2444
Cell: 954.770.8800
Fax: 954.463.2224
michael.goldberg@akerman.com

March 17, 2016



EXHIBIT

2

# TAB 1
## Cover Letter

|  | TAB |
| --- | --- |
| Cover Letter | 1 |
| Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission | 2 |
| Proposed Action Plan | 3 |
| Akerman LLP Qualifications | 4 |

- About Akerman
- SEC Receiverships
- Hospitality Sector Team
- EB-5 Practice
- Select Biographies

# TAB 1
Cover Letter

Michael I. Goldberg

Akerman LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2999
Tel:  954.463.2700
Fax:  954.463.2224

Dir:  954.468.2444
michael.goldberg@akerman.com

March 17, 2016

<u>VIA E-MAIL</u>

Bob Levenson, Esq.
Christopher Martin, Esq.
Securities and Exchange Commission
801 Brickell Avenue
Suite 800
Miami, Florida 33131

      Re:     Potential Receivership of Jay Peak, Inc and related entities

Dear Messrs. Levenson and Martin:

      Thank you for inviting me to submit an application to be considered as the potential receiver in the case the United States Securities and Exchange Commission ("SEC") intends to file against Ariel Quiros, Q Resorts, Inc., William Stenger, Jay Peak, Inc., William J. Kelly, Jay Peak Hotel Suites LP, Jay Peak Hotel Suites Phase II LP, Jay Peak Management, Inc., Jay Peak Penthouse Suites LP, Jay Peak GP Services, Inc., Jay Peak Golf and Mountain Suites LP, Jay Peak GP Services Golf, Inc., Jay Peak Lodge and Townhouses LP, Jay Peak GP Services Lodge, Inc., Jay Peak Hotel Suites Stateside LP, Jay Peak GP Services Stateside, Inc., Jay Peak Biomedical Research Park LP, ANC Bio Vermont GP Services LLC, Jay Construction Management, Inc., GSI of Dade County, Inc., North East Contract Services, Inc., Q Burke Mountain Resort LLC, Q Burke Mountain Resort Hotel, and Conference Center LP (collectively, the "Defendants").  This will confirm that I have completed a conflict of interest search through Akerman's conflict checking system and neither I nor Akerman, have in the past or currently, represent any of the Defendants.  Accordingly, there are no conflicts which prevent me from serving as receiver or Akerman from serving as my counsel.

Bob Levenson, Esq.
March 17, 2016
Page 2

Based on our preliminary discussions, it is my understanding that the Defendants raised hundreds of millions of dollars through the Federal EB-5 program from dozens of investors located throughout the world.  It is my further understanding that the Defendants utilized much of this money to purchase, develop and operate a full scale ski resort in northern Vermont consisting of hotels, restaurants, an entertainment complex and ski facilities and that these facilities are currently operational.  Accordingly, due to the fact that these facilities are currently operational, this potential receivership will be far more complex than an ordinary liquidating receivership because the assets must be seamlessly operated in order to preserve their value.  Accordingly, I have included an operational plan in this proposal to provide you greater detail of how I anticipate I would handle these assets if I am appointed receiver.

A. Particular Expertise to Handle this Receivership.

I believe I am particularly well suited for this receivership, based in part, on the following:

1.      Receivership Experience

I have been serving as receiver or representing receivers in federal equity receiverships for almost 25 years.  I have been appointed receiver in approximately twenty federal equity receiverships by many of the Judges in the United States District Court for the Southern and Middle Districts of Florida and several extremely large state court receiverships.  Over the years, my group has become extremely efficient in administering receiverships and there is no "learning curve" whatsoever with respect to the legal or administrative issues involved in properly administering a receivership.  To that end, my team and I are able to administer a receivership very efficiently.  For example, we routinely set up websites and toll free numbers to communicate with the victims, which in this case is extremely important as the victims are located throughout the world.  This promotes constant and efficient communication with the victims, which is key in dealing with people who have been the victim of an alleged fraud.

In addition to having an MBA in finance which allows me to understand business operations and financial statements, I have significant receivership experience overseeing the operations of on-going business entities located outside of Florida.  More specifically, in *SEC v. Latin American Services Co., et al.*, I oversaw the operations of a soybean, corn and hog farm in Ohio for over a year before I stabilized and sold the properties.  As the receiver in *SEC v. Worldwide Entertainment, Inc.*, *The Entertainment Group Fund, Inc., and American Enterprises, Inc.*, I administered a group of entertainment companies requiring me to operate entertainment venues for over three years, including arenas and amphitheaters located in New Zealand, Berlin, Detroit and Philadelphia.  This required me to hold weekly employee meetings, deal with numerous operational and construction issues and routinely visit the properties.  Operations were seamless, and ultimately, I sold most of these properties at a profit.  Now, as an "empty-nester," I have the ability to maintain a long-term presence at the properties, if required.

Moreover, throughout the years I have seized, operated and sold more than $500 million in real estate, including hotels in Orlando, Daytona Beach, Atlanta and Islamorada.  To that end, I have experience handling issues unique to hotel operations such as dealing with management companies, branding and reservations systems.  Moreover, my paralegals are efficient in dealing with the legal requirements involved in securing and selling real estate within the receivership which enables us to

Bob Levenson, Esq.
March 17, 2016
Page 3

perform most of the services at "paralegal rates" thereby lowering the administrative costs of the receivership. Attached hereto as Tab 4 is a copy of my biography which sets forth my receivership experience in further detail.

      2.      Hospitality

Akerman has a group of attorneys and consultants that specialize in the hospitality industry who regularly work with management, consultants and lenders in acquiring, operating and selling mixed use resorts, hotels and restaurants. Akerman's hospitality team has represented resort owner/operators in financings, sales, acquisitions, expansion and renovation projects. Especially relevant for this receivership is that our hospitality team has represented lenders who were forced to immediately seize their hotel collateral from defaulted borrowers and continue to operate the hotel to ensure a smooth management transition and ultimate sale. Akerman regularly works with particular consultants to achieve a seamless transition in such situations, and it is anticipated that if I am appointed receiver, I will utilize the same consultants to ensure a smooth transition in order to maximize the value of the properties. The qualifications of these consultants and management companies will be provided immediately upon receiving authorization to take the next steps to begin implementing the action plan set forth herein.

In addition, Akerman also has a practice group which focuses on representing food service entities, including restaurants. Our lawyers have served our clients' full range of legal needs relating to financings, franchising and licensing, labor and employment, alcohol beverage and other regulatory compliance matters. Our clients include publicly-traded and privately-held national and regional restaurant chains, franchisees of national and regional restaurant chains, and high-end independent restaurateurs and restaurants. Contained herein in Tab 4 is a description of Akerman's hospitality capabilities.

      3.      EB-5

Akerman also has a team of attorneys who specialize in all aspects of the EB-5 immigrant investor program. Akerman's EB-5 team is comprised of professionals and consultants who will be able to assist me, as needed. Moreover, I was recently appointed receiver in another case based on EB-5 investments where many of the victims of the alleged fraud largely reside in China. Akerman has several attorneys that speak both Mandarin and Cantonese. This should enable us to speak directly to the victims thereby promoting effective communication and trust—two important attributes in administering a receivership. A description of Akerman's EB-5 capabilities is contained herein at Tab 4.

Simply put, we have no learning curve and we believe we can handle this receivership for the lowest possible cost.

B. Proposed Action Plan if Appointed

Managing and operating the Defendants' resort facilities properly will require significant organization and foresight. This is not the ordinary receivership where the receiver can simply be "dropped in" and substituted for existing management. Ignoring this fact will cause disruption to services and significant negative press thereby decreasing occupancy rates, and in turn, the value of the underlying

Bob Levenson, Esq.
March 17, 2016
Page 4

assets.  Accordingly, with the help of my hospitality team, we have created a business plan based on the facts you disclosed to us and based on information we were able to gather over the internet.  Please note, that if you inform me that I will be recommended to the court for appointment, I strongly recommend that you authorize me to consult with and involve our regular consultants to fine tune this plan in the days prior to you initiating your lawsuit.  We regularly employ this strategy with our lender clients who are forced to repossess their collateral and it allows for a seamless transition.

### C. Proposed Staffing and Hourly Rates

If selected by the Court to serve as receiver, I propose to bill the estate at $395 per hour – a substantial discount from the $695.00 per hour rate I charge my private clients.  This is the same rate that I handled similar cases for over ten years ago and it should save the estate thousands of dollars.  All other Akerman professionals (attorneys and paralegals) will be billed at a 15% discount off their standard rates.  Moreover, to the extent it is necessary for me to hire any other professionals such as attorneys or accountants, I will require them to provide similar discounts.  Of course, I recognize that any fee arrangement is subject to the Court's approval and agree to look solely to the estate's assets for payment after receiving the Court's approval.  Attached hereto as Tab 2 is an executed copy of Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission.

Respectfully Submitted,

Michael I. Goldberg

MIG/clc
Enclosure

# TAB 2

Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission

## BILLING INSTRUCTIONS FOR RECEIVERS IN CIVIL ACTIONS
## COMMENCED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION

Except where inconsistent with guidelines established by the applicable district or circuit court, the undersigned hereby represents that, if appointed receiver in a civil action commenced by the U.S. Securities and Exchange Commission (the "SEC" or the "Commission"), each application for professional fees and expenses (the "Application") submitted by the receiver, including all contractors and/or professionals retained by the receiver, will comply with these billing instructions (the "Billing Instructions"). Undersigned further represents that any deviation from the Billing Instructions will be described in writing and submitted to the SEC at least 30 days prior to the filing of the Application with the Receivership Court. Following its receipt and review of proposed applications, as described in section A.2 below, the SEC may object to deviations and charges with which it does not agree.

Undersigned acknowledges that all applications for compensation are interim and are subject to a cost benefit review and final review at the close of the receivership. At the close of the receivership, the receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the receiver during the course of the receivership.

Undersigned acknowledges that, to the extent requested by the SEC, interim fee applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the court as part of the final fee application submitted at the close of the receivership.

V.10.01.08

SEC Receivership Billing Instructions, pg. 2 of 11

## A.   CERTIFICATION

1.   Each Application must contain a Certification by the Applicant that:

   (a)   the Certifying Professional has read the Application;

   (b)   to the best of the Applicant's knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses therein are true and accurate and comply with the Billing Instructions (with any exceptions specifically noted in the Certification and described in the Application);

   (c)   all fees contained in the Application are based on the rates listed in the Applicant's fee schedule attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

   (d)   the Applicant has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and,

   (e)   in seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Applicant requests reimbursement only for the amount billed to the Applicant by the third-party vendor and paid by the Applicant to such vendor.   If such services are performed by the receiver, the receiver will certify that it is not making a profit on such reimbursable service.

2.   At least 30 days prior to the filing of the Application with the Court, the Applicant will provide to SEC Counsel a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

## B.   ATTENDANCE AT HEARING ON APPLICATION

The Receiver or other Certifying Professional shall be present at any hearing to

SEC Receivership Billing Instructions, pg. 3 of 11

consider the Application.

## C.   CONTENT OF APPLICATION

The following information must be provided in the Application:

1.   Information about the Applicant and the Application.

   (a)   the time period covered by the Application;

   (b)   the date the receiver was appointed, the date of the order approving employment of the Applicant, and the date services commenced;

   (c)   the names and hourly rates of all Applicant's professionals and paraprofessionals (the "Fee Schedule"); and,

   (d)   whether the Application is interim or final, and the dates of previous orders on interim Applications along with amounts requested and the amounts allowed or disallowed, all amounts of previous payments, and amount of any allowed Applications which remain unpaid.

2.   Case Status (Narrative).

   (a)   The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

   (b)   Summary of the administration of the case, including all funds received and disbursed, and when the case is expected to close;

   (c)   Summary of creditor claims proceedings, including a description of established or anticipated procedures for: (i) providing notice to known and unknown claimants; (ii) receipt and review of claims; (iii) making recommendations to court for payment or denial of claims; and, (iv) final disposition of claims. This summary should also include the status of such claims proceedings after they have been commenced;

   (d)   Description of assets in the receivership estate, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended; and,

     (e)    Description of liquidated and unliquidated claims held by the receiver, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments).

3.    Current and Previous Billings.

     (a)    Total compensation and expenses requested and any amount(s) previously requested;

     (b)    Total compensation and expenses previously awarded by the court; and,

     (c)    Total hours billed and total amount of billing for each person who billed time during the period for which fees are requested.

4.    Standardized Fund Accounting Report.

The SEC's Standardized Fund Accounting Report ("SFAR") submitted by the Receiver for the most recent quarter shall be attached to any fee application as "Exhibit A".

**D.    TIME RECORDS REQUIRED TO SUPPORT FEE APPLICATIONS**

    1.    Each professional and paraprofessional must record time in increments of tenths of an hour, and must keep contemporaneous time records on a daily basis.

    2.    Time records must set forth in reasonable detail an appropriate narrative description of the services rendered. Without limiting the foregoing, the description should include indications of the participants in, as well as the scope, identification and purpose of the activity that is reasonable in the circumstances.

    3.    The Application should separately describe each business enterprise or litigation matter (i.e., "Project") for which outside professionals have been employed. For example, separate litigation matters should be set out individually in the Application as

SEC Receivership Billing Instructions, pg. 5 of 11

individual Projects and each such Project should contain Activity Categories as described in

Sections D.4 and D.5 below. Each Project Category should contain a narrative summary of the

following information:

     (a)    a description of the project, its necessity and benefit to the estate and the status of the project including pending litigation for which compensation and/or reimbursement of expenses is requested;

     (b)    identification of each person providing services on the project; and

     (c)    a statement of the number of hours spent and the amount of compensation requested by professionals and paraprofessionals on the project.

    4.    In recording time, each professional and paraprofessional may, subject

to Section D.5 immediately below, describe in one entry the nature of the services rendered

during that day and the aggregate time expended for that day in an "Activity Category" (as

described in section D.5.a and D.5.b, below) without delineating the actual time spent on

each discrete activity in an Activity Category, provided, however, single time entries of

more than one hour in an Activity Category that include two or more activities must include a

notation of the approximate time spent on each activity within the Activity Category.

    5.    Time records shall be in chronological order by Activity Category.

Only one category should be used for any given activity and professionals and

paraprofessionals should make their best effort to be consistent in their use of

categories. This applies both within and across firms. Thus, it may be appropriate for

all professionals to discuss the categories in advance and agree generally on how

activities will be categorized. Every effort should be made to use the listed categories in the

first instance and to coordinate the use of additional categories with other professionals in the

case. Notwithstanding the above, all categories must correspond with the SEC's SFAR. The

SEC Receivership Billing Instructions, pg. 6 of 11

time information reflected on the Application shall also be supplied to the SEC Counsel in an electronic format as directed by SEC staff.

(a)  Legal Activities.  The following categories are generally more applicable to attorneys but may be used by all professionals where appropriate.

**ASSET ANALYSIS AND RECOVERY.** Identification and review of potential assets including causes of action and non-litigation recoveries.

**ASSET DISPOSITION.** Sales, leases, abandonment and related transaction work. Where extended series of sales or other disposition of assets is contemplated, a separate category should be established for each major transaction.

**BUSINESS OPERATIONS.** Issues related to operation of an ongoing business.

**CASE ADMINISTRATION.** Coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.

**CLAIMS ADMINISTRATION AND OBJECTIONS.** Expenses in formulating, gaining approval of and administering any claims procedure.

**EMPLOYEE BENEFITS/PENSIONS.** Review issues such as severance, retention, 401K coverage and continuance of pension plan.

(b)  Financial Activities.  The following categories are generally more applicable to accountants and financial advisors, but may be used by all professionals where appropriate.

**ACCOUNTING/AUDITING.** Activities related to maintaining and auditing books of account, preparation of financial statements and account analysis.

**BUSINESS ANALYSIS.** Preparation and review of company business plan; development and review of strategies; preparation and review of cash flow forecasts and feasibility studies.

**CORPORATE FINANCE.** Review financial aspects of potential mergers, acquisitions and disposition of company or subsidiaries.

**DATA ANALYSIS.** Management information systems review, installation and

analysis, construction, maintenance and reporting of significant case financial data, lease rejection, claims, etc.

**STATUS REPORTS.** Preparation and review of periodic reports as may be required by the court.

**LITIGATION CONSULTING.** Providing consulting and expert witness services relating to forensic accounting; etc.

**FORENSIC ACCOUNTING.** Reconstructing books and records from past transactions and bringing accounting current; tracing and sourcing assets.

**TAX ISSUES.** Analysis of tax issues and preparation of state and federal tax returns.

**VALUATION.** Appraise or review appraisals of assets.

E.     **PAYMENT OF FEES AND EXPENSES**

    1.     Presentation of Fees and Expenses in Application.

        (a)     All fees and expenses must be necessary and reasonable; excessive charges will not be paid. To the extent that an Applicant seeks reimbursement of expenses, the Application shall include a categorization of such expenses along with an exhibit summarizing the total expenses for the period covered by the Application.

        (b)     Charges for litigation will be paid only if the litigation is reasonably likely to produce a net economic benefit to the estate. With respect to each litigation matter, the Applicant shall certify that the Applicant determined that the action was likely to produce a net economic benefit to the estate, based on reviews of: (i) the legal theories upon which the action was based, including issues of standing; (ii) the likelihood of collection on any judgment which might be obtained; and, (iii) alternative methods of seeking the relief, such as the retention of counsel on a contingency basis. Retention of counsel on a contingency fee basis should be pursued where the Receiver (after consulting with SEC Counsel) concludes that retention of counsel under the approved fee schedule would produce a lesser economic benefit to the receivership estate. The receiver should memorialize these cost-benefit analyses, through communications with the receiver's counsel, as support for the engagement of such counsel.

        (c)     Invoices and/or bills for each expense item for which reimbursement

is sought must be kept for seven (7) years after the close of the receivership. Such support shall be provided on request to the court and the SEC, and in appropriate circumstances to any party in interest provided that, where applicable, privilege or confidentiality can be preserved.

(d)    Time spent preparing fee applications, or any documentation in support thereof, may not be charged to the receivership estate.

2.    <u>Allowable and Non-Allowable Reimbursable Expenses.</u>

(a)    <u>Filing Fees Process Service Fees, Witness Fees and Expert Witness Fees.</u>

Filing fees (including for necessary adversaries), process service fees, witness fees, and expert witness fees (subject to court approval of the employment of any professionals and the reasonableness of such fees) shall be allowable to the extent of the actual cost incurred by the Applicant.

(b)    <u>Court Reporter Fees and Transcripts.</u>

Court reporter fees and copies of transcripts shall be allowable to the extent of the actual cost incurred by the Applicant.

(c)    <u>Lien and Title Searches.</u>

The cost for lien and title searches (whether done in-house or by an outside vendor) is allowable to the extent of the actual cost incurred by, or invoiced to, the Applicant.

(d)    <u>Photocopying.</u>

Photocopying shall be allowable at a cost not to exceed $.15 per page. The Applicant shall set forth in its fee application the total number of copies. Outside vendor photocopying charges are allowable at the actual cost invoiced to the Applicant. Necessary copies obtained from the Clerk of the Court (including certified copies) or from the approved court copy service will be permitted at the actual cost incurred by the Applicant.

SEC Receivership Billing Instructions, pg. 9 of 11

The Applicant shall not reflect on the Application any copies for which the Applicant has been, or expects to be, reimbursed (eg., payment from an opposing party for document production from which the Applicant has been reimbursed).

(e)   Postage, Overnight Delivered Courier/Messenger Services.

The cost of postage, overnight delivery, and outside courier/messenger services are reimbursable for the actual cost incurred, if reasonably incurred. Charges should be minimized whenever possible. For example, couriers/messengers and overnight delivery service should be used only when first-class mail is impracticable.

(f)   Telephone.

Long distance telephone charges are allowable to the Applicant for the actual cost invoiced from the telephone carrier. Charges for local telephone exchange service and cellular telephone service shall not be reimbursable.

(g)   Facsimile Transmission.

A charge for outgoing facsimile transmission to long distance telephone numbers are reimbursable at the lower of (a) toll charges or (b) if such amount is not readily determinable, $1.00 per page for domestic and $2.00 per page for international transmissions. Charges for in-coming facsimiles are not reimbursable. The Application shall state the total number of pages of the outgoing transmissions.

(h)   Computerized Research.

Computerized legal research services such as Lexis and Westlaw are reimbursable to the extent of the invoiced cost from the vendor, however if such service is provided on a monthly or other periodic rate, proportional usage shall not be reimbursable.

(i)   Parking.

SEC Receivership Billing Instructions, pg. 10 of 11

Reimbursement for parking is allowable, including parking by a professional to attend court proceedings, depositions or case conferences, parking at the airport, and client and third party parking (including validation).

     (j)    <u>Travel Expenses and Meals.</u>

Local travel time and related expenses for destinations within a twenty (20) mile radius of the Applicant's office including mileage, taxis, etc. and meals (including staff meals) will not be reimbursed.  Mileage charges for out-of-town travel (outside a twenty (20) mile radius of the Applicant's office) with one's own car are reimbursable at the lesser of the amount customarily charged clients or the amount allowed by the Internal Revenue Service for per mile deductions. For purposes of the foregoing, the Applicant's office shall be the office in which the person incurring the travel expense is located.

Long distance travel time outside a twenty (20) mile radius of the Applicant's office is reimbursable at 50% of the Applicant's regular billing rate. . The reimbursement of long distance travel expenses is subject to the following limitations:  (1) the Applicant shall seek and use the lowest airfare or train fare available to Applicant; (2) luxury accommodations and deluxe meals are not reimbursable; (3) personal, incidental charges such as telephone and laundry are not reimbursable unless necessary as a result of a reasonably unforeseen extended stay not due to the fault of the traveler; and (4) each out-of-pocket travel and allowable miscellaneous administrative expense exceeding $75 requires a receipt that is to be attached to the invoice.

     (k)    <u>Word Processing, Document Preparation, Data Processing, Proofreading, Secretarial and Other Staff Services.</u>

SEC Receivership Billing Instructions, pg. 11 of 11

Secretarial, library, word processing, document preparation (other than by professionals or paraprofessionals), data processing, and other staff services (exclusive of paraprofessional services), including overtime for the foregoing, are not reimbursable.  Charges for proofreading for typographical or similar errors are not reimbursable whether the services are performed by a paralegal, secretary, or temporary staff.

     (l)     <u>Communications with Investors.</u>

Where appropriate, the estate should promptly create a website, and update the website as appropriate, to provide information as to the activities and condition of the estate to investors.  In addition, any necessary basic communications with investors should be handled by clerical or paralegal staff (or comparatively paid staff) to the extent possible.  Expenses stemming from a failure to comply with this policy will not be submitted.

Candidate for Appointment as Receiver in
Civil Action Commenced by the
U.S. Securities and Exchange Commission

Date: _3/17/2016_

[Printed Name]  Michael I. Goldberg
[Address 1]  Akerman LLP
[Address 2]  350 E. Las Olas Blvd.
[Address 3]  Ste. 1600
[E-Mail Address]  Fort Lauderdale, FL
[Phone Number]      33301
[Fax Number]  Michael.Goldberg@Akerman.com
     954-468-2444

EXHIBIT A

RECEIVER NAME
ADDRESS
CONTACT NUMBER

# STANDARDIZED FUND ACCOUNTING REPORT

## CIVIL – RECEIVERSHIP FUND

FUND NAME
CIVIL COURT DOCKET No.

REPORTING PERIOD MM/DD/YYYY TO MM/DD/YYYY

OR

FINAL REPORT DATED MM/DD/YYYY

## REPORT INSTRUCTIONS

The Standardized Fund Accounting Report (SFAR) should be prepared for the reporting period on a cash basis which is a comprehensive basis of accounting other than generally accepted accounting principles. In cash basis accounting, revenues are recorded only when cash is received and expenses are recorded only when cash is paid. Cash basis accounting does not recognize promises to pay or expectations to receive money or services in the future. For all income and expenses, provide documentation evidencing the income received or expense incurred. Business income or assets that are not cash should be reported in the notes with documentation of their current fair market value. For cash and cash equivalents, provide the latest bank and/or investment records to the SEC. Do not file any of the above documentation with the court unless ordered.

**Line 1 – Beginning Balance:** Balance of the Fund at the beginning of the reporting period. The beginning balance may not necessarily include all amounts received in the Fund since inception unless this is the first SFAR filed.

**Line 2 – Business Income:** Amounts received by the Fund from operational income of the business assets, or other business sources.

**Line 3 – Cash and Cash Equivalents:** Include the value of bank and/or brokerage/security accounts as of the reporting period end date. Cash includes coins, currency, checks, money orders, and funds on deposit with a financial institution. Securities include U.S. government securities, municipal securities, corporate stocks, corporate bonds, and securitized debt instruments.

**Line 4 – Interest/Dividend Income:** Interest and/or dividends earned by the Fund from investments and other personal assets during the reporting period.

**Line 5 – Business Asset Liquidation:** Amounts received by the Fund as a result of selling or disposing of the assets of the business in receivership. This is separate from the income generated by the asset and reported in Line 2.

**Line 6 – Personal Asset Liquidation:** Amounts received by the Fund as a result of selling or disposing of the personal assets of individuals.

**Line 7 – Third-Party Litigation Income:** Amounts received by the Fund pursuant to third-party litigation. This should not be included in the income reported in Line 2.

**Line 8 – Miscellaneous - Other:** Amounts received from, an identified payor.

**Line 9 – Disbursements to Investors:** Amounts distributed from the Fund to harmed investors/claimants.

**Line 10 – Disbursements for Receivership Operations:**

   **Line 10a – Disbursements to Receiver or Other Professionals:** Amounts paid from the Fund (both fees and costs, including travel) for Receiver services and contractual services by accountants, bookkeepers, stock brokers, realty brokers, appraisers, agents, trustees, investigators, not related to expenses under Line 10b.
   **Line 10b – Business Asset and Operating Expenses:** Amounts paid from the Fund for the business property assets' maintenance and business operating expenses, taxes,

professional fees, liquidation expenses, administrative services, appraisals and valuation expenses, payment to participant, moving/storage, office furniture and equipment, delivery services, resident agent, copying costs, asset protection costs, etc. These expenses are separate and distinct from those in Line 10a.

**Line 10c – Personal Asset Expenses:** Amounts paid from the Fund for the personal property assets' maintenance and operating expenses, taxes, professional fees, liquidation expenses, administrative services, appraisals and valuation costs, payment to participant, moving/storage, office furniture and equipment, delivery services, resident agent, copying costs, asset protection costs, etc. These expenses are separate and distinct from those in Line 10a.

**Line 10d – Investment Expenses:** Amounts paid from the Fund for banking fees, Court Registry Investment System (CRIS) fees, mandated or economically necessary continuing investments, and other investment related costs.

**Line 10e – Third–Party Litigation Expenses:** Amounts paid from the Fund for attorney fees related to receivership operations and litigation expenses to recover assets to the receivership estate, including outside counsel fees and costs, travel costs, investigative services, filing fees, process servers, court reporters for depositions, etc.

**Line 10f – Tax Administrator Fees and Bonds:** Amounts paid to the Fund's tax administrator for services and/or fiduciary bonds.

**Line 10g – Federal and State Tax Expenses:** Amounts paid in federal and state taxes.

**Line 11 – Disbursements for Distribution Expenses Paid by the Fund:** This line reflects amounts paid from the Fund to administer the plan and should not include amounts reported per Line 14 below. For any disbursement claimed, you must provide the documentation evidencing the expense.

**11a – Distribution Plan Development Expenses:** All expenses related to the development of a plan of distribution which precede the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.

**11b – Distribution Plan Implementation Expenses:** All expenses related to the implementation of a plan of distribution which occur following the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.

**Line 12 – Disbursements to Court/Other:** Amounts paid from the Fund for

**12a – Court Registry Investment System (CRIS)** or other banking fees related to the Fund.

**12b – federal income taxes.**

**Line 13 – Ending Balance:** Compute as Total Funds Available less Total Funds Disbursed.

**Line 14 – Ending Balance of Fund – Net Assets:** Describe the structure of the Fund's ending balance (basis of the Fund's net assets):

**14a – Cash & Cash Equivalents:** Amount of the Fund consisting of cash and currency.

**14b – Investments:** Amount of the Fund that is invested.

**14c – Other Assets or Uncleared Funds:** Amount of other assets or funds that have not cleared a financial institution.

## OTHER SUPPLEMENTAL INFORMATION

**Line 15 – Disbursements for Plan Administration Expenses Not Paid by the Fund:** This line reflects amounts paid by the defendant or other party to administer the plan and should not include amounts paid from the Fund assets as reported in Line 11.

8/01/08 Final Version 1.0

**15a – Plan Development Expenses Not Paid by the Fund:** All expenses related to the development of a plan of distribution which precede the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.

**15b – Plan Implementation Expenses Not Paid by the Fund:** All expenses related to the implementation of a plan of distribution which occur following the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.

**15c – Tax Administrator Fees & Bonds Not Paid by the Fund:** Amounts paid to the Fund's tax administrator for services and/or fiduciary bonds.

**Line 16 – Disbursements to Court/Other Not Paid by the Fund:** Amounts not paid from the Fund for

16a – Court Registry Investment System (CRIS) or other banking fees related to the Fund.

16b – federal income taxes.

**Line 17 – DC & State Tax Payments:** Taxes paid by a third party which are paid to the DC government or state tax authority.

**Line 18 – No. of Claims:** This should reflect

18a – the number of claims received from investors during this reporting period.

18b – the number of claims received from investors as a result of all orders since the inception of the Fund.

**Line 19 – No. of Claimants/Investors:** This should reflect

19a – the number of claimants/investors receiving distributions during this reporting period.

19b – the number of claimant/investors receiving distributions pursuant to all orders of distribution since the inception of the Fund.

**STANDARDIZED FUND ACCOUNTING REPORT for (Name of Fund) - Cash Basis**
Receivership; Civil Court Docket No.
Reporting Period MM/DD/YYYY to MM/DD/YYYY or Final Report Dated MM/DD/YYYY

| FUND ACCOUNTING (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of MM/DD/YYYY): | | | |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | | | |
| Line 3 | Cash and Securities | | | |
| Line 4 | Interest/Dividend Income | | | |
| Line 5 | Business Asset Liquidation | | | |
| Line 6 | Personal Asset Liquidation | | | |
| Line 7 | Third-Party Litigation Income | | | |
| Line 8 | Miscellaneous - Other | | | |
| | Total Funds Available (Lines 1 – 8): | | | |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Investors | | | |
| Line 10 | Disbursements for Receivership Operations | | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | | | |
| Line 10b | *Business Asset Expenses* | | | |
| Line 10c | *Personal Asset Expenses* | | | |
| Line 10d | *Investment Expenses* | | | |
| Line 10e | *Third-Party Litigation Expenses* | | | |
| | 1. Attorney Fees | | | |
| | 2. Litigation Expenses | | | |
| | *Total Third-Party Litigation Expenses* | | | |
| Line 10f | *Tax Administrator Fees and Bonds* | | | |
| Line 10g | *Federal and State Tax Payments* | | | |
| | Total Disbursements for Receivership Operations | | | |
| Line 11 | Disbursements for Distribution Expenses Paid by the Fund: | | | |
| Line 11a | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator................................. | | | |
| | Independent Distribution Consultant (IDC)........... | | | |
| | Distribution Agent................................. | | | |
| | Consultants........................................ | | | |
| | Legal Advisers..................................... | | | |
| | Tax Advisers....................................... | | | |
| | 2. Administrative Expenses | | | |
| | 3. Miscellaneous | | | |
| | *Total Plan Development Expenses* | | | |
| Line 11b | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator................................. | | | |
| | IDC................................................ | | | |
| | Distribution Agent................................. | | | |
| | Consultants........................................ | | | |
| | Legal Advisers..................................... | | | |
| | Tax Advisers....................................... | | | |
| | 2. Administrative Expenses | | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan..................... | | | |
| | Claimant Identification............................. | | | |
| | Claims Processing................................... | | | |
| | Web Site Maintenance/Call Center.................... | | | |
| | 4. Fund Administrator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | | | |
| | *Total Plan Implementation Expenses* | | | |
| | Total Disbursements for Distribution Expenses Paid by the Fund | | | |
| Line 12 | Disbursements to Court/Other: | | | |
| Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | | | |
| Line 12b | *Federal Tax Payments* | | | |
| | Total Disbursements to Court/Other: | | | |
| | Total Funds Disbursed (Lines 9 – 12): | | | |
| Line 13 | Ending Balance (As of MM/DD/YYYY): | | | |

1

STANDARDIZED FUND ACCOUNTING REPORT for (Name of Fund) - Cash Basis
Receivership; Civil Court Docket No.
Reporting Period MM/DD/YYYY to MM/DD/YYYY or Final Report Dated MM/DD/YYYY

| Line 14 | Ending Balance of Fund – Net Assets: | | |
|---------|--------------------------------------|---|---|
| *Line 14a* | *Cash & Cash Equivalents* | | |
| *Line 14b* | *Investments* | | |
| *Line 14c* | *Other Assets or Uncleared Funds* | | |
| | **Total Ending Balance of Fund – Net Assets** | | |

**OTHER SUPPLEMENTAL INFORMATION:**

| | | Detail | Subtotal | Grand Total |
|---|---|--------|----------|-------------|
| | *Report of Items NOT To Be Paid by the Fund:* | | | |
| Line 15 | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| |    Fund Administrator............................. | | | |
| |    IDC................................................... | | | |
| |    Distribution Agent............................... | | | |
| |    Consultants........................................ | | | |
| |    Legal Advisers.................................... | | | |
| |    Tax Advisers...................................... | | | |
| | 2. Administrative Expenses | | | |
| | 3. Miscellaneous | | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | | |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| |    Fund Administrator............................. | | | |
| |    IDC................................................... | | | |
| |    Distribution Agent............................... | | | |
| |    Consultants........................................ | | | |
| |    Legal Advisers.................................... | | | |
| |    Tax Advisers...................................... | | | |
| | 2. Administrative Expenses | | | |
| | 3. Investor Identification: | | | |
| |    Notice/Publishing Approved Plan........................ | | | |
| |    Claimant Identification.......................... | | | |
| |    Claims Processing............................... | | | |
| |    Web Site Maintenance/Call Center.................. | | | |
| | 4. Fund Administrator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. FAIR Reporting Expenses | | | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | | |
| *Line 15c* | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | | |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| *Line 16a* | *Investment Expenses/CRIS Fees* | | | |
| *Line 16b* | *Federal Tax Payments* | | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund:** | | | |
| Line 17 | **DC & State Tax Payments** | | | |
| Line 18 | **No. of Claims:** | | | |
| *Line 18a* | *# of Claims Received This Reporting Period.............................................* | | | |
| *Line 18b* | *# of Claims Received Since Inception of Fund.............................................* | | | |
| Line 19 | **No. of Claimants/Investors:** | | | |
| *Line 19a* | *# of Claimants/Investors Paid This Reporting Period............................* | | | |
| *Line 19b* | *# of Claimants/Investors Paid Since Inception of Fund.............................* | | | |

Receiver:

By: _____
      (signature)

_____
(printed name)

_____
(title)

Date: _____

9/08/08

## CONFLICTS OF INTEREST AND BACKGROUND INFORMATION

I am providing the Securities and Exchange Commission ("Commission") with the following conflict of interest and background information concerning _Michael I. Goldberg_, the [Receiver/Distribution Fund Administrator/Distribution Consultant] for _____ [insert defendant/respondent name, court/AP case number, if available]. I agree to supplement this information if any of the information herein changes, within thirty days of such change. I agree to provide such other Conflict of Interest information as requested by the Commission or its staff, and to take such steps as reasonably requested by the Commission or its staff in order to mitigate any conflicts that the Commission or its staff determine may exist, in their sole discretion. [Attach additional sheets as necessary.]

[If provided for a retained professional or other agent:] This information is provided for _____, who serves as _____ to the [Receiver/Distribution Fund Administrator/Distribution Consultant] in the above referenced case.

Except where otherwise noted, for purposes of the information request below, "you" means you as an individual, as well as any spouse or dependents, and separately, any firm, partnership, joint venture, or other business in which you are an officer or director, or in which you have a substantial financial interest.

Except where otherwise noted, this information is requested for any responsive matters existing during the last five years. Also, if during the course of your duties you become aware of responsive information concerning a potential claimant in the matter listed above, you must promptly supplement your response to disclose that information:

1.      List all contracts, consulting engagements, employment, service as an officer or director, or other work of any kind you have performed for any defendant/respondent in this matter, or any of its parents, subsidiaries, or other affiliates, or any claimant in this matter.  Include any responsive matters existing during the last ten years.

2.      List any financial interests in or with the defendant/respondent, its parents, subsidiaries, or other affiliates, or any claimant in this matter (e.g., stocks, bonds, options, other debt or equity interests, partnerships, retirement plans).

3.      List all other personal or professional relationships or interests in or with the defendant/respondent, its parents, subsidiaries, or other affiliates, or with any of their officers or directors, or any claimant in this matter, not listed above.

4.      List all matters in which you have been retained as a Receiver, Distribution Fund Administrator, Distribution Consultant, or as a subcontractor, agent or other service provider, in connection with any civil action or administrative proceeding by the Commission.

5.      List all other prior or existing cases, matters, or proceedings in which the Commission has an interest, in which you have been retained or served as a witness, consultant, or other expert.

6.      Identify any disciplinary proceedings, felony criminal indictment or information (or equivalent formal charge) or a misdemeanor criminal information (or equivalent formal charge), civil proceedings or actions against you personally by any Federal, state, local, or foreign entities and the results of those proceedings.  Include any responsive matters regardless of when they arose.

7.      Identify any actual or potential conflicts of which you are aware, regardless of when they arose, that are not identified or addressed in paragraphs 1 through 5 above, but that may affect the performance of your duties under this appointment.

If you believe any of the information provided in response to these requests is non-public or confidential, you may request confidential treatment by the Commission pursuant to the procedures set forth at 17 C.F.R. § 200.83.

**Under penalty of perjury, I declare that I have examined the information given in this statement, and attached hereto, and, to the best of my knowledge and belief, it is true, correct, and complete.  I understand that any material misstatements or omissions made by me herein or in any attachments hereto may constitute criminal violations, punishable under 18 U.S.C. § 1001.**

By: _____
              Signature

Name:   Michael Goldberg

Title:   Proposed Receiver

On behalf of: _____
              Receiver/Distribution Fund Administrator/Distribution Consultant

_____
Defendant/Respondent Name, Case No.

2

# TAB 3
Proposed Action Plan

# Proposed Action Plan

THE FOLLOWING IS AN ACTION PLAN THAT HAS BEEN FORMULATED BASED UPON CURRENT INFORMATION PROVIDED. THIS PLAN WILL MOST LIKELY BE AMENDED AS MORE INFORMATION IS PROVIDED.

1. **Pre-Day One:**

   a.   Set up bank account

   b.   Set up credit card swiper directed at bank account

   c.   Interview and have hotel consulting and management company on a ready basis to jump into assignment immediately upon appointment.  Akerman regularly utilizes hotelAVE, a consulting company that specializes in transitioning hotels and resort properties to new owners and lenders on a quick, seamless basis to insure minimal disruption in reservations and operations.  hotelAVE also has a sister interim hotel management company that would be available to immediately step in and takeover operations.   Once I am given permission, I will discuss the assignment with the consultant.

   d.   Interview ski management companies with the assistance of consultant when permission is given.  Akerman has already identified the 5 largest national ski management companies and will promptly interview them when permission is given.

   e.   Retain IT company specializing in resort operations. Scope to be defined prior to receivership with consultation with consultant when additional information is received.  I will utilize existing IT professionals employed by Defendants to the extent possible in order to minimize expenses.

   f.   Retain public relations firm specializing in "crisis management" in order to insure that customers with and without reservations, the employees and the public understand that the resort is open and operating as usual.  This is extremely important as you do not want the receivership itself to cause a disruption in services and a decrease in occupancy or future bookings.  The PR firm will be responsible for the following:

      i.   Define scope and the different groups requiring direct communication;

      ii.   Prepare key communications by group.

   g.   Customize interim manager takeover checklist in consultation with consultant to ensure it addresses all aspects of operations.

   h.   Determine who holds liquor license(s) and any other key operating licenses that could be held by third parties (information publicly available).  Commence paperwork to transition to receiver.

1

# Proposed Action Plan

2.  **Day One:**

  a.  On-Site Presence:

  i.  Receiver, Michael Goldberg, supported by:

  1.  Legal team and accounting professionals necessary to secure and transition assets to new management.  This is anticipated to include local counsel who can assist the receiver.  I have already identified several firms I wish to interview, but due to confidentiality requirements, I am unable to determine if they have conflicts at this time.
  2.  Hotel consultant with support staff in general operations, financial control functions, revenue management, HR and other areas as appropriate.
  3.  Interim management company – StepStone Hospitality (sister company of hotelAVE) will supply interim CEO and CFO.
  4.  Separate management company ski operations, as appropriate.  We have already identified the 5 largest ski management companies and they will be contacted and interviewed once permission is given.
  5.  IT personnel to secure servers, computers, data, etc.
  6.  Crisis PR company to address internal/external communications.

  b.  Provide receivership order and SEC complaint to appropriate persons (including depository institutions).  Make sure order and complaint are promptly recorded in all jurisdictions in which the Defendants may have assets.  This to be handled by Akerman's paralegals experienced in handling this function.

  c.  Provide lists of required documentation and information to appropriate personnel on sight to inform them of receivership and change in management.

  d.  Stage interim management company personnel in key "control centers" including accounting office, general management office, sales & marketing/ reservations, front desk operations, ski operations to "protect" the assets of the operation.

  e.  Intellectual Property:

  i.  Secure ownership of resort name, website domains, 800# necessary to insure existing reservation system functions seamlessly.

  f.  Information Technology:

  i.  Take possession of servers, computers, mobile devices, electronic data and change all passwords

  ii.  Change access to website.  Confirm vender is not related party.

# Proposed Action Plan

g.   Internal/External Communications – communication with the public and customers is key because bookings may be cancelled on short notice.  The public must be informed that the receivership will not adversely impact operations.  Proper messaging needs to be provided to the following persons:

   i.   Overall

      1.   Establish talking points for staff and third-party communications (operations not affected).
      2.   Instructions concerning communication with terminated personnel. (internal only).
      3.   Issue appropriate press releases and/or statements to staff.

   ii.   Employees (all employee meeting with interim manager).

   iii.   Homeowners (whole and shared ownership, if applicable, condominium and other POAs).

   iv.   Future transient customers.

   v.   Future groups and convention bookings.

   vi.   Season pass holders.

   vii.   Venders.

   viii.   Lender(s).

   ix.   Accounts Receivable – to ensure payments are not misdirected.

   x.   Press.

h.   Accounting/Finance:

   i.   Install credit-card swiper in each business point of sale (lodging, F&B outlets, lift pass sales, etc.).

   ii.   Establish and confirm receiver control over all bank accounts and understand onsite cash practices (depository, payroll, general operating, FF&E reserve, house banks, petty cash).

   iii.   Determine appropriate signature authority.   Receiver to be listed as primary signatory on all accounts.

   iv.   Cease all A/P until venders are "validated" (except food and beverage).   Critical payables will be reviewed on an immediate basis to insure no disruption in service.

3

# Proposed Action Plan

v.   Establish current cash position and daily cash burn rate. Commence forward forecast based on recent run rate, historic 30/60/90 performance and demand on the books.  This will not be completed in the first day, but will most likely take a couple of weeks.  **Note:  Resort likely going into its "low" season of spring and cash may be challenged.  It is possible that negative cash flow in the past was supplemented by investors' EB-5 money which will no longer be flowing. Therefore, it will be essential to perform this task to insure that the operations have sufficient funds to continue in business or that alternative actions can be taken to insure sufficient cash on hand to avoid a shut down.**

vi.   Secure employee time sheet and review first pay day.  Conduct manual paycheck handout to ensure no "ghosts" on the payroll.

vii.   Qualify all ongoing capital expenditure projects and only undertake those that are necessary to continue operations and maximize value of assets.

viii.   Change all important locks (including safe and masterlocks).

i.   Books and Records:

   i.   Obtain and secure all relevant documents and materials (see exhibit A).

   ii.   Insurance – confirm no lapse in coverage and who are named additional insured.

j.   Execution of Due Diligence Plan:

   i.   Books and Records:

      1.   Obtain relevant documents and materials (see exhibit A).

   ii.   Execution of due diligence plan:

      1.   Establish new bank accounts, as appropriate;
      2.   Reservations;
      3.   Reservation system;
      4.   Third-Party contracts;
      5.   Evaluate insurance coverages.

**3.   Week 1:**

a.   Review balance sheet and reconciliation.

b.   review general ledger.

c.   Review accruals and intercompany charges.

d.   Reconcile bank accounts.

4

# Proposed Action Plan

e.   Establish scope of and implement accounting team review.

f.   Review business on the books and projected revenues.

g.   Schedule, status and files concerning, lawsuits pending against or impacting the property or the Resort or components thereof.

h.   Schedule of judgments, consent decrees, injunctions or other such orders outstanding against the property.   File notice of receivership in each pending case to stay case. Akerman paralegal to handle.

i.   Schedule of any unfair labor practice charge is pending and no labor dispute is pending or threatened.   File notice of receivership in each pending case to stay case.   Akerman paralegal to handle.

j.   Validate A/P list and services provided.  Confirm no related parties.  Bid the key services.

4.   **Phase 2:**

a.   General ongoing hotel operations:

i.   Analysis of business sources and penetration, OTA and GDS practices.

ii.   Review staffing plan, compensation and benefits.

iii.   Restaurant operations.

iv.   Spa operations, if applicable.

v.   Ski operations.

vi.   Ski school and ski rental operations.

vii.   Cash management procedures.

viii.   Cash flow analysis.

ix.   Evaluation of FF&E and other reserves.

x.   Physical condition evaluation.

xi.   Implementation of refurbishment programs.

b.   Secondary Legal Issues:

i.   Review of governance regimes within the resort and any known claims.

ii.   Review membership club documents, if applicable and any known claims.

5

# Proposed Action Plan

iii.  Review third-party service or supply agreements and procurement practices.

iv.  Review software licensing agreements.

v.  Review intellectual property rights and extent of protection of relevant marks.

vi.  Review sales and operating documentation concerning on-site rental programs, if any.

vii.  Review any shared ownership regimes and any known claims.

viii.  ADA compliance.

ix.  Benefits.

x.  Wage and hour compliance.

xi.  Review of any environmental issues.

xii.  Review of licenses and permits including operating licenses, liquor licenses, health department, etc.

xiii.  Evaluate employee handbooks and HR policies and procedures.

xiv.  Retention of appropriately sized senior management team.

xv.  Evaluate discrimination, harassment and retaliation procedures.

xvi.  Employment investigations and audits.

xvii.  Immigration audit.

xviii.  Labor and employment training.

xix.  Workplace privacy.

xx.  Workplace safety and OSHA.

xxi.  Develop and implement global records retention policies and schedules with an emphasis on legal and regulatory compliance, accessibility to end-users, and effective use of technology to drive adoption and adherence to requirements.

xxii.  Evaluate legal and compliance issues associated with large-scale migrations of enterprise data.

xxiii.  Regulatory compliance audit (Customs, FDA, EPA, USDA).

# Proposed Action Plan

5.   **Phase 4 – Management Transition (First 30 days):**

   a.   Complete and operational review to quantify the optimal operating performance of the resort and to identify opportunities to maximize profitability.

   b.   Develop "must have" criteria for replacement manager.

   c.   Develop short list of appropriate long-term hotel management companies.

   d.   Consider the benefits of an integrated hotel, mountain and golf operator.

   e.   Develop process for selection of third-party management company(ies).

   f.   Preparation of RFP or form of letter of intent.

   g.   Negotiation of letter of intent and management documents, licensing arrangements, etc.

6.   **Phase 5 – Positioning for Sale:**

   a.   Evaluate existing entitlements and development opportunities.

   b.   Advise on enhancing property value through additional entitlements.

   c.   Incorporate opportunities identified in the operational review.

   d.   Evaluate amenities in terms of potential upgrades in concessionaires/tenants, branding, etc.

   e.   Evaluate litigation risk.

   f.   Select appraiser and supervise appraisal process.

   g.   Select broker.

   h.   Advice on sales process.

   i.   Preparation of sales documentation.

   j.   Preparation and negotiation of letters of intent and purchase and sale agreements.

   k.   Negotiation of sale transaction.

   l.   Execution of sale transaction.

   m.   Attend to closing and post-closing matters.

   n.   Review of condominium and POA governance regimes and associations, defect and other claims at the resort, local, state and federal government regulatory levels.

# Appendix A
# Due Diligence Documentation

## Property Level Documents:

1.  Copy of paid real estate tax bill and personal property tax bill for the current and prior [ ] years.

2.  Copies of environmental audits.

3.  Existing appraisals and feasibility studies.

4.  Existing management or operating agreement.

5.  Existing franchise or license agreement.

6.  Existing affiliation agreement (soft branding, e.g., Leading Hotels).

7.  Reservation system agreements - GDS, OTA/TPI Agreements.

8.  Schedule of and copies of space leases and concession agreements.

9.  Schedule of and copies of equipment leases.

10. Schedule of and copies of marketing agreements (including medial and other advertising and public relations contracts.

11. Applicable licenses and permits.

12. Prior title insurance policy, survey and copies of title exceptions.

13. Copies of all Uniform Code Financing statements, as amended.

14. Copies of all documents evidencing, securing or entered into in connection with indebtedness in connection with the resort.

15. As-built plans and specifications for all facilities.

16. Evidence of manufacturer and contractor warranties.

17. Licenses, Certificates, Permits and Approvals:

    a.  Certificate of Occupancy.

    b.  Building Permit.

    c.  Site plan approval.

# Appendix A
# Due Diligence Documentation

      d.        Hotel/Motel permit.

      e.        Food service operation license.

      f.        Department of Health and Sanitation approvals.

      g.        Liquor License.

      h.        Vendor's License.

      i.        Swimming pool permit.

      j.        Cigarette dealer's license.

      k.        Spa permit.

      l.        Elevator permits.

      m.        IRS special tax stamp permit for liquor sales.

      n.        Jukebox and video game licenses.

      o.        Liquor entertainment license.

      p.        Cabaret license.

      q.        Application for Employer Identification Number.

**18.**    All room keys and safe and other lock combinations.

**19.**    Documentation of utility deposits.

**20.**    Inventory of Personalty, Contract Rights and Intangibles:

      a.        FF&E.

      b.        Trademarks and Trade names.

      c.        Contracts.

      d.        Vehicles.

      e.        Inventories.

      f.        Perishable Inventories.

# Appendix A
# Due Diligence Documentation

## Books and records for Hotel Rooms and Suites:

21.  Balance sheet and other financial reporting.

22.  Tax returns for past 6 years.

23.  Ledgers and trial balances and reconciliations.

24.  Schedule of payables and receivables.

25.  Schedule of bank accounts and statements.

26.  Schedule of and copies of service contracts.

27.  Schedule of and copies of employment contracts.

28.  Any agreements related to collective bargaining.

29.  Unemployment compensation or worker's compensation account balances.

30.  Schedule of accrued employee benefits.

31.  Benefits documentation:

   a.  Copies of qualified and non-qualified retirement plans (plan documents and financial records).

   b.  Confirmation of no unfunded pension plan liability.

   c.  Documents and correspondence related to audits of benefit plans by the Internal Revenue Service (IRS) and/or the Department of Labor.

   d.  Documentation concerning compliance with the Affordable Care Act, ERISA, COBRA, and HIPAA.

32.  Schedule of Corporate discount arrangements.

33.  Copy of Registration of Fictitious Name or Trademark Registration.

34.  Schedule of unpaid taxes and assessments.

# Appendix A
# Due Diligence Documentation

## Corporate Documentation

**35.** Organizational Chart for property owner(s) and affiliates (including all beneficial owners).

**36.** Formation documents and government filings.

**37.** Good standing certificates.

**38.** Organization minute books.

**39.** Shareholder and LLC operating agreements.

# TAB 4
Akerman LLP Qualifications

# About Akerman

Akerman LLP is a leading transactions and trial law firm known for its core strengths in middle market M&A, within the financial services and real estate industries, and for a diverse Latin America practice. With more than 600 lawyers and government affairs professionals and a network of 20 offices, Akerman is ranked among the top 100 law firms in the United States by *The American Lawyer* (2015). Akerman also is ranked among the top 50 law firms for diversity in *The American Lawyer's* Diversity Scorecard (2015).

## Practices

- Appellate
- Automotive
- Banking, Lending & Structured Finance
- Bankruptcy & Reorganization
- Capital Markets
- Class Action Defense
- Construction
- Consumer Finance Litigation & Compliance
- Corporate
- Data Law
- Economic Development & Incentives
- Employee Benefits & Executive Compensation
- Entertainment
- Environment & Natural Resources
- Financial Institutions Commercial Litigation
- Franchising & Licensing
- Fraud & Recovery
- Government Affairs & Public Policy
- Government Contracts
- Green & Sustainable Development
- Healthcare
- Immigration Planning & Compliance
- Insurance Litigation & Regulation
- Intellectual Property
- International Litigation & Arbitration
- Labor & Employment
- Land Use & Urban Development
- Latin America & the Caribbean
- Litigation
- Lodging & Lifestyle
- Mergers & Acquisitions and Private Equity
- Products Liability & Mass Torts
- Public Finance
- Public-Private Partnerships
- Real Estate
- Restaurant
- SEC Receiverships
- Securities Litigation
- Sports
- State & Local Tax Litigation and Controversy
- Tax
- Transportation & Public Infrastructure
- Trusts & Estates
- White Collar Crime & Government Investigations
- Workouts & Restructuring

1

# About Akerman

## Recognition

***U.S. News - Best Lawyers*** 2015
- Antitrust Law (National)
- Appellate Practice (National)
- Banking and Finance Law (National)
- Bankruptcy and Creditor Debtor Rights/Insolvency and Reorganization Law (National)
- Commercial Litigation (National)
- Construction Law (National – Tier One)
- Corporate Law (National – Tier One)
- Employee Benefits (ERISA) Law (National)
- Employment Law - Management (National)
- Franchise Law (National)
- Health Care Law (National – Tier One)
- Insurance Law (National)
- International Arbitration - Commercial (National)
- International Trade and Finance Law (National – Tier One)
- Labor Law - Management (National)
- Land Use & Zoning Law (National)
- Leveraged Buyouts and Private Equity Law (National)
- Litigation - Antitrust (National)
- Litigation - Banking & Finance (National – Tier One)
- Litigation - Bankruptcy (National – Tier One)
- Litigation - Construction (National – Tier One)
- Litigation - Intellectual Property (National)
- Litigation - Labor & Employment (National)
- Litigation - Real Estate (National – Tier One)
- Mergers & Acquisitions Law (National)
- Private Funds/Hedge Funds Law (National)
- Real Estate Law (National – Tier One)
- Securities/Capital Markets Law (National)
- Securities Regulation (National)
- Tax Law (National)
- Trusts & Estates Law (National)
- Venture Capital Law (National)

# SEC Receiverships

Our lawyers have served as receivers and attorneys for receivers in suits filed by the SEC to liquidate companies who have violated federal securities laws. We have extensive experience in determining ownership of assets, tracing funds, recovering money, and making recoveries to equalize distributions to Ponzi scheme victims.

## Practice Highlights

- Work closely with the SEC in seizing operating businesses, closing the businesses, and preserving records and property
- Experience in tracing revenues received in Ponzi schemes and pyramid schemes, determining where the money went, and recovering the money or assets acquired
- Serve as receiver and attorneys for receiver in companies who have operated Ponzi schemes, pyramid schemes, and other fraudulent investment schemes
- Represent receivers in enforcing contracts that the company and receivership has if that produces money for the receivership estate
- Experience in working with forensic accountants to unravel complex transactions often designed to hide money and assets
- Represent clients in filing suit to recover money and assets acquired with the money

3

# SEC Receiverships
## Representative Experience

### Representative Experience

#### Receiver of Worldwide Entertainment

Representation as Receiver of Worldwide Entertainment. In that capacity, Akerman prosecuted to judgment and collected a $5 million fraudulent transfer action against a former employee, represented as co-counsel in prosecuting a $10.8 million conversion claim against a pension administrator arising out of the Worldwide receivership, was appointed by the United States District Court for the Southern District of Florida to liquidate diverse entertainment assets to repay investors more than $200 million. Currently, as Receiver, Akerman is suing Paris Hilton for breach of contract arising out of her obligations in connection with the movie entitled "National Lampoon's Pledge This," is engaged in litigation in the court in Sydney, Australia with Worldwide's partners over the rights to the musical play "Dirty Dancing," and is engaged in litigation in Auckland, New Zealand over the rights to the Vector Arena—a 10,000 seat amphitheater.

#### Home Equity Mortgage Corporation

Representation as Receiver of Home Equity Mortgage Corporation, a company engaged in the business of originating and servicing over $200 million in mortgages on behalf of approximately 800 investors. (Circuit Court, Miami, Florida)

#### Receiver of Wealth Pools International, Inc., et al.

Representation of the Receiver in a suit filed by the United States Securities and Exchange Commission (SEC) against Wealth Pools International, Inc., and related entities. It is alleged that the defendants operated a pyramid scheme which received over $100 million from investors. Our work included freezing bank accounts, locating assets and liquidating them, tracing money received by the defendants and recovering that money.

#### Premium Sales

Representation as Receiver in Premium Sales, a $250 million Ponzi scheme.

#### Kenneth Welt, Receiver

Representation of SEC-appointed Receiver and Chapter 7 Trustee in making distribution of up to approximately 70% of allowed claims in cases involving a $52 million Ponzi scheme. (In re: Hurst Capital Corp., et al., U.S. District Court, Southern District Florida and U.S. Bankruptcy Court, Southern District Florida)

4

# SEC Receiverships
## Representative Experience

**Receiver of Discovery Capital Group, Ltd.**
Representation as appointed Receiver for Discovery Capital Group, Ltd., a securities brokerage firm accused of defrauding millions of dollars from hundreds of investors throughout the United States and Europe.

**Receiver of Par Three Investments, Inc.**
Representation as appointed Receiver for Par Three Investments, Inc. in a $10 million Ponzi scheme. (U.S. District Court, Southern District Florida)

**Receiver of Ware Enterprises**
Representation as appointed Receiver for Ware Enterprises and Investments, Inc., a $30 million Ponzi scheme, in numerous fraudulent transfer lawsuits against "profiteers" of scheme and assisted in marshaling estates assets, including real property, automobiles and bank accounts, resulting in a distribution to victims of the fraud. (U.S. District Court, Middle District of Florida)

**Receiver of The Cyprus Fund**
Representation as appointed Receiver for The Cyprus Fund in a $100 million Ponzi scheme. (U.S. District Court, Southern District Florida)

**Receiver of AB Financing & Investments, Inc.**
Representation as appointed Receiver for AB Financing & Investments, Inc. in a $80 million Ponzi scheme. (United States District Court, Southern District of Florida)

**University Lab Technologies**
Representation as Receiver of University Lab Technologies, a company engaged in the manufacturing and distribution of natural herbal remedy products which raised money from dozens of investors in violation of federal securities laws. (United States District Court, Southern District of Florida)

**Berman Mortgage Corporation**
Representation as Receiver of Berman Mortgage Corporation, a large mortgage origination business with approximately 650 investors and total mortgage and/or real estate developments valued at more than $200 million. (Circuit Court, Miami, Florida)

**MAMC Incorporated**
Representation as Receiver of MAMC Incorporated, a business engaged in the servicing of more than $200 million in mortgages on behalf of approximately 650 lenders. (Circuit Court, Miami, Florida)

# SEC Receiverships
## Representative Experience

**Service Five Investments, Inc.**
Representation as Receiver of Service Five Investments, Inc., a company engaged in making loans to active military personnel. At the time of the appointed, the company had debts of $36 million. A plan of distribution was approved, resulting in creditors receiving an approximate 85% distribution. (Circuit Court, Miami, Florida; Eleventh Judicial Circuit Court)

**Omni Capital, Ltd.**
Representation as Receiver in Omni Capital, Ltd., a $50 million Ponzi scheme.

# Hospitality Sector Team

Akerman's Hospitality Sector Team brings multi-practice capability and deep market experience to the broad array of opportunities and challenges facing clients in the hospitality sector. Our team of lawyers, policy advisers, and planners partner with clients to provide new ideas and business solutions with the industry knowledge necessary to help meet short and long-term objectives in an efficient and cost-effective manner.

## Service Offerings

**Acquisition & Development**
- Purchase & Sale Transactions
- Hotel & Resort Development
- Condominiums, Property Owners' Associations & Mixed-Use Development
- Project Finance
- Hotel Management, Franchise & Affiliation Agreements
- Branded Residences & Whole Ownership Rental Programs
- Golf, Marinas, Spas & Other Amenities Clubs and Programs
- Shared Ownership
- Restaurants & Signature Chef Arrangements
- Themed Attractions & Public Assembly Facilities
- Economic Incentives
- EB-5 Transactions
- Construction Contracting
- Intellectual Property Agreements
- Land Use & Entitlements

**Operational Matters**
- Labor & Employment
- Management Contracts, Franchise and License Agreements, & Affiliation Agreements
- Benefits (including the Affordable Care Act)
- Immigration
- Technology Contracts
- Data Breach, Privacy, & Security
- Information Governance
- State & Local Taxation
- Banking and Structured Finance
- Restructuring Mixed-Use Projects
- Public Policy & Lobbying

7

# Hospitality Sector Team

**Regulatory Compliance**
- International Trade, Customs & Distribution
- Foreign Corrupt Practices Act (FCPA) & Office of Foreign Assets Control (OFAC)
- Beverage Licensing
- Occupational Safety & Health (OSHA)
- Environmental & Natural Resources
- ERISA
- Americans with Disabilities Act ("ADA")

**Dispute Resolution**
- Property acquisition disputes
- Entitlement and land use litigation
- Condominiums and property owners disputes
- Rental program and cost allocation disputes
- Interstate Land Sales claims
- Development and construction claims
- Hotel and restaurant management and franchise agreements
- Procurement disputes
- Environmental compliance
- Regulatory and administrative disputes
- Eminent domain and regulatory takings
- Insurance claims
- Restructurings and foreclosures
- Labor and employment disputes
- ADA
- Vendor and operational contracts
- OTA and distribution issues
- WARN Act
- Premises liability
- Intellectual property infringement
- International arbitration
- Electronic discovery, Debt Restructuring, Bankruptcy, & Creditors' Rights
- Loan and REO Acquisitions
- Restructuring Troubled Assets

# Hospitality Sector
## Representative Experience

## Resorts

**Bahia Beach Resort & Golf Club**
Representation of the developer of a 600 acre community development in Rio Grande, Puerto Rico including a St. Regis Hotel and branded residential products.

**Montage Resort at Palmetto Bluff, Bluffton, South Carolina**
Represent developer of mixed-use master-planned community, including branded rental program

**Stowe Mountain Lodge**
Representation of the developer of Stowe Mountain Lodge and the Front Four Private Residence Club at Stowe Mountain Lodge.

**East West Resorts**
Representation of the operator of mixed use resort at Beaver Creek, Colorado.

**Baha Mar Cable Beach**
Representation of the developer of $3 billion resort development comprised of four branded hotels, casino, and residential communities in the Bahamas .

**Carillon Beach Resort, Miami Beach**
Representation of purchaser of Canyon Ranch, Miami in connection with the acquisition of the resort, settlement of disputes with condominium associations, issues associated with the existing rental program, intellectual property issues, Global distribution system issues and a variety of other operational issues.

**Mondrian South Beach**
Advise private equity fund in connection with a debt restructuring, including the consideration of modifications to an existing rental program, food and beverage leases and a variety of other operational issues.

**Tropicalia, Dominican Republic**
Represent developer of a Caribbean mixed-use resort to include a proposed Four Seasons Hotel, a second 5 star boutique hotel and branded and unbranded residences.

9

# Hospitality Sector
## Representative Experience

**Faena, South Beach**
Represent the developer of a mixed-use resort on South Beach, including multiple hotels, condominiums and performance venues.

**Rio Mar**
Representation of the lender in a mortgage revenue bond financing of a resort development including a condominium hotel and traditional hotel.

**Inn at Lost Creek and Capela Hotel & Residences**
Representation of the developer on shared ownership and condominium hotel projects in Telluride, CO.

**Langham Hotel, New York**
Representation of an investor in an urban mixed use project on the governance structure and other aspects of the project.

**W Hotel and Residences, New York**
Representation of the developer of a hotel and branded residential project located in the financial district of Manhattan.

**City of Miami – Island Gardens**
Representation of the City of Miami in the structuring of a ground lease for a mixed use resort development including two hotels, fractional ownership residences, a mega-yacht marina, and associated retail space.

**Porto Sauipe, Salvador, Brasil**
Representation of developer in the structuring of governance documents and management agreements for a 4,000 acre community development with five branded hotels, golf, equestrian, and related facilities.

**Republic of Panama**
Representation of the Republic of Panama in the privatization of portions of the Panama Canal Zone. Also drafted land use regulations and ground lease documentation.

**Four Seasons, Cayo Largo, Puerto Rico**
Representation of DLJ, the developer of Cayo Largo, a mixed-use residential, resort, and marina community in Rio Grande, Puerto Rico.

**One Bal Harbour, Bal Harbour, Florida**
Representation of the developer of mixed use branded residential and condominium hotel project in Bal Harbour, Florida

10

# Hospitality Sector
## Representative Experience

**Resort at Singer Island, Singer Island, Florida**
Representation of the developer of a mixed-use branded residential and condominium hotel project in Singer Island, Florida.

**Commonwealth of Puerto Rico**
Representation of the Government Development Bank for Puerto Rico in connection with financing of over $1 billion of new resort development in Puerto Rico. Additionally represented the Puerto Rico Tourism Company in connection with joint ventures on new resort developments in Puerto Rico.

**Puerto Rico Convention Center Authority**
Representation in the structuring and creation of a convention center authority and taxing district including the drafting of enabling legislation. Also negotiated a master development lease for the build-out of a convention center district in San Juan, Puerto Rico.

**Coral Hotels & Resorts**
Representation in negotiation of co-branding agreements for the creation of branded all-inclusive resorts.

**Wyndham International - Viva Resorts**
Representation in negotiation of co-branding agreements on behalf of Wyndham International for Latin American and Caribbean resorts.

**Lacabana Resort**
Representation of a timeshare operator in acquiring unsold timeshare licenses from the original developer.

**Rosewood Hotels & Resorts**
Representation of client in connection with hotel operating agreements and residential branding on mixed-use projects around the world.

**Hilton Worldwide**
Advise Hilton Hotels in connection with the development and branding of mixed-use hotels and resorts throughout Latin America and the Caribbean.

# Hospitality Sector
## Representative Experience

### Real Estate Acquisitions and Sales

**Bayfront 2011 Property, LLC**
Representation of an affiliate of Genting Malaysia Berhad part of the Genting Group, a publicly traded Malaysian company with a market capitalization of $42 billion with interests in cruise lines, agribusiness, power generation, destination resorts, and casinos, in one of the largest real estate acquisitions in Florida in recent years. Akerman represented the client in the acquisition of the 14 acre Miami Herald Property in Miami, FL. Genting paid $230 million for the property, plus a moving allowance of $6 million for the Miami Herald Publishing Company. Genting intends to develop a mixed-use project including a major hotel, conference facilities, retail, and other resort amenities.

**Boca Resorts, Inc.**
Representation of resort owner/operator in multiple financings, sales, and acquisitions, as well as expansion and renovation projects for several properties throughout Florida, including the Boca Raton Resort & Club, Bahia Mar Resort & Yachting Center (Ft. Lauderdale), and The Registry Resort & Club (Naples).

**Bayrock-Trump-Sapir**
Representation of joint venture in the sale of Trump SoHo Hotel Condominium units. Representation includes closing of each unit, as well as representation of joint venture in acquisition of economic incentives in connection with project and zoning and land use issues.

**Real Estate Investors**
Representation of Spanish private investors in the $240 million purchase and financing of four hotels, including negotiation of franchise and management agreements with two major hotel franchises.

**Arizona Biltmore Hotel and Resort**
Representation of client in its acquisition and subsequent sale.

**Bluegreen Corporation**
Representation of purchaser in the acquisition and construction financing of a beachfront resort, to be renamed The Hammocks at Marathon, in the Florida Keys.

# Hospitality Sector
## Representative Experience

### Real Estate Development

**Swire Properties**

Representation of client in the development of Brickell CitiCentre (BCC), a mixed-use project in downtown Miami, FL totaling approximately 9.1 acres. The project, as proposed, will consist of two-levels of underground parking to support approximately 530,000 square feet of retail across five levels, including a high-end food market. In addition to the retail component, BCC's program includes the development of 755 residential units in two towers approximately 40 stories. A hotel and service apartment building, consisting of approximately 290 hotel rooms and 75 service apartment units, is also proposed. BCC also proposes the development of approximately 925,000 square feet of office space across the entirety of the 9.1 acre site.

**Liberty Investment Properties**

Representation of developer, serving as General Counsel, to develop 100± Value Place hotel properties in various states, including $360 million Goldman Sachs credit facility and program for site acquisition, entitlement, permitting, and construction financing.

**Dolphin Capital Partners**

Representation of European real estate fund in connection with a joint venture for the development of a master-planned luxury residential resort in Panama.

**Miami Dolphins Ltd. and South Florida Stadium Corp.**

Representation of clients in connection with the sale of the privately owned and operated Miami Dolphins Stadium, together with adjacent parcels of unimproved land for future development as a hotel and mixed-use development to entities affiliated with the purchaser of the Miami Dolphins NFL team franchise, in a complex transaction involving the transfer of assets in excess of $1 billion.

**Parc Management**

Representation of the fourth largest regional theme park group in the U.S. Client is currently negotiating for a lease to develop and operate land next to the Miami Metro Zoo in South Florida. The development will include a water park, family entertainment center (Nascar Speedpark), City Walk, and possibly a vacation hotel. Parc Management's portfolio includes 27 entertainment venues, including two of the top regional theme parks in the U.S.

# Hospitality Sector
## Representative Experience

**Mixed-Use Developer**
Representation of client in connection with entitlements for a 65-acre mixed-use DRI Joint Venture project in the City of Hallandale Beach, contiguous to a thoroughbred racetrack. Project consisted of 750,000 square foot retail space, 140,000 square foot office, a 500 room hotel, 1,500 residential units, and a 2,500 seat theater. Required the creation of a new land use category and zoning district.

**Real Estate Investor**
Representation of purchaser of distressed mortgage debt secured by historic hotel in Miami Beach, FL. Performed full land-use due diligence on the property, including status of entitlements and eligibility for legislative extensions.

**The Patrinely Group, CMC Development (Ugo Columbo), and Giuseppe Cipriani**
Representation of client in obtaining site plan approval from the Miami Beach Historic Preservation Board for renovation of the Historic Saxony Hotel and construction of a condominium tower as the Cipriani Hotel and Condominium. Zoning variances were also approved for the project.

**National Hotel Chain**
Representation of client in connection with acquisition and development of new hotel sites throughout the U.S.

## Environment & Natural Resources

**Luxury Hotel Chain**
Representation of large luxury resort in connection with dry cleaning solvent assessment and remediation.

## Real Estate Financing

**City National Bank of Florida**
Representation of City National Bank, a national banking association, in connection with a new $17.5 million mortgage loan on a hotel and surrounding properties (including a golf course and spa), including a mortgage and leasehold mortgage.

14

# Hospitality Sector
## Representative Experience

**Wells Fargo Bank, N.A.**
Representation of Wells Fargo Bank, N.A. in connection with an $8.1 million loan in default, including settlement proposals and foreclosure litigation (in federal court), including claims against the loan guarantors. The loan is secured by a hotel property. We also represented Wells Fargo in a modification of a related $12.8 million hotel loan.

**Colonial Life Insurance Company (Trinidad), Ltd.**
Representation of owner and guarantors in the restructuring of a $245 million loan that is secured by the W Hotel and Residences located in Ft. Lauderdale, FL. The loan modification was negotiated for over 13 months and included the payoff of numerous construction liens and restructuring of eight separate guarantees. Akerman also handled numerous litigation matters related to the project, and a related environmental issue. The project consists of a luxury hotel with 346 hotel units and an additional 171 condominium hotel units managed by Starwood.

**Major Ft. Lauderdale Beach Hotel**
Representation of client in the restructuring of a $245 million construction loan and in the completion of the project and operational issues.

**Real Estate Investors**
Representation of Spanish private investors in the $240 million purchase and financing of four hotels, including negotiation of franchise and management agreements with two major hotel franchises.

**Liberty Investment Properties**
Representation of developer, serving as General Counsel, to develop 100± Value Place hotel properties in various states, including $360 million Goldman Sachs credit facility and program for site acquisition, entitlement, permitting, and construction financing.

**National Developer**
Representation of developer in the restructuring of their capital structure for 21 hotels located throughout the U.S. The original mortgage lender was owed a principal balance of approximately $150 million on the portfolio.

**Boca Resorts, Inc.**
Representation of resort owner/operator in multiple financings, sales, and acquisitions, as well as expansion and renovation projects for several properties throughout Florida, including the Boca Raton Resort & Club, Bahia Mar Resort & Yachting Center (Ft. Lauderdale), and The Registry Resort & Club (Naples).

15

# Hospitality Sector
## Representative Experience

**Doral Arrowwood Conference Center**
Representation of Conference Center in connection with the expansion of the Doral/Arrowwood Resort complex in Rye Brook, New York, to provide a new Corporate Management Training Center for Pfizer, including the development of 100 new rooms and a new convention facility. Akerman conceptualized and negotiated an incentives package to induce Pfizer to select this site over competing sites in New York City and New Jersey. The package includes benefits from the State, Westchester County, and the Village of Rye Brook with a value of approximately $26 million.

**Bluegreen Corporation**
Representation of purchaser in the acquisition and construction financing of a beachfront resort, to be renamed The Hammocks at Marathon, in the Florida Keys.

**National Lender**
Representation of client in the closing of a $78 million construction loan for the Ritz Carlton Hotel, Miami Beach, and a $55 million construction loan for the Ritz Carlton Club, Jupiter Beach, FL.

**Institutional Lender**
Representation of client in closing a construction loan for the expansion of the Flagler Dog Track - Magic City Casino in Miami, FL.

## Construction

**The Faena Group, and its subsidiaries**
Representation of the owners/developers of the historic landmark Saxony Hotel and related Tower Condominium Residences and Cultural Center located on Miami Beach, in connection with various development, design, LEED (green building), and construction matters, including drafting and negotiating site improvement, construction and design contracts, and other construction related matters. The approximate value of the Project is $250 million.

16

# Hospitality Sector Team
## Representative Experience

**Resorts World Miami**

Representation of developer on matters involving hotel and convention space, restaurants, retail space, a mega yacht harbor, residential and commercial space and possibly a casino, in connection with Master Plan, development, design, LEED and green building for the resort located on the former Miami Herald Site bounded by the MacArthur Causeway, Venetian Causeway, Biscayne Bay and Biscayne Boulevard, including drafting and negotiating the Master Plan, design and LEED contracts and other design and construction related matters. The approximate value of the project is $3 billion.

**The Palace Management Group**

Representation of developer in construction contract drafting, negotiation and oversight of The Palace at Coral Gables, a nine story, 243 unit luxury senior living facility and an eight story, 565 space parking garage. This project is partially financed by a City of Coral Gables Bond Offering and an institutional lender. The approximate value of the project is $80 million.

**Dacra Development**

Representation of neighborhood developer in the Miami Design District, in connection with a planned $250 million expansion in the District, expected to bring a boutique hotel to the neighborhood and dramatically increase the District's retail, commercial and art exhibition space. Representation includes drafting and negotiating the design, construction and LEED contracts and other design and construction related matters.

**Consultatio Key Biscayne, LLC**

Representation of the owner/developer of the Sonesta Beach Resort located on Key Biscayne in connection with demolition, design and construction matters, including drafting and negotiating demolition, site improvement, construction and design contracts, and other construction related matters. The approximate value of the project is $150 million.

**The Finvarb Group**

Representation of owner/developer of Marriott, Courtyard, Doubletree and Spring Hill Suites Hotels across the county. Representation includes drafting, negotiating and oversight of construction and design professional contracts. The approximate value of each new improvement is $80 million.

17

# Hospitality Sector Team
## Representative Experience

**Ave, LLC**
Representation of developer in connection with construction matters and the building of the Ave Aviation and Commerce Center at Opa Locka Executive Airport, including drafting and negotiating site improvement, construction and design contracts, and other construction related matters.

**Institutional Investor**
Representation of institutional investor as project construction counsel for the drafting and negotiating of development, architect, and general contractor and tenant improvement contracts for the construction of office buildings, parking garages, and shopping centers across the state of Florida.

**Kendall Town & Country Mall**
Representation in regards to construction contract drafting and oversight of Kendall Town & Country Mall.  The contracts include bid contract, general construction contract and tenant improvement contracts for national retailers. The approximate value of the improvement is $75 million.

**WytheHotel, LLC**
Representation of hotel project in the construction, renovation, equipping, and furnishing of an approximately 51,044 square foot hotel with approximately 73 rooms and related hotel amenity spaces, to be located in Brooklyn, NY.

**Peabody Hotel in Orlando, FL**
Representation of client in the negotiation of the design professionals contract on a hotel expansion in Orlando, FL. The project has an estimated value of $190 million.

**Marriott Projects throughout the U.S.**
Representation of Finvarb Group in the construction contract drafting and oversight of the new Miami, FL Jackson Spring Hill Suites Hotel, the new Mayo Clinic/Marriot Residence Inn Phoenix, AZ, and the Washington, D.C. Marriott. The contracts include general construction and design professional agreements. The approximate value of each improvement is $80 million.

**Large Resort & Convention Center in Washington, D.C.**
Representation of design team in connection with the design and construction of a 2,000 room hotel and conference complex in metropolitan Washington, D.C. Noted as the largest facility of its kind in the region, the project ranks as the most significant construction undertaking in the area over the past decade.

18

# Hospitality Sector Team
## Representative Experience

**Westin Hotel**
Representation of Jerome J. Parks Companies in drafting and negotiation of Guaranteed Maximum Price (GMP) contracts employing Tax Incentive Funding (TIF) for construction of a mixed-use project in Annapolis, MD consisting of a Westin Hotel, condominiums, office building, and parking garage.

**Luxury Resort Community**
Representation of Albany Developer, LTD. in the development of a luxury resort community (Albany Project) on 565 oceanfront acres on Providence Island in the Bahamas. The ownership group includes Tiger Woods, Ernie Els, and the Tavistock Group. The project components include design and construction of an 18-hole championship golf course, mega-yacht marina (capable of handling vessels up to 240 feet long), clubhouses, beach club, spa/fitness and racquet center, and an equestrian center. The project will ultimately include 325 luxury residences and a luxury boutique hotel when completed. Assisted the owner of this project in the analysis and mitigation of claims by contractors and with negotiation and drafting of project agreements.

**Gulfstream Park**
Representation of client in the construction contracting and oversight of construction and management of Florida's Gulfstream Park multi-use race track, retail, and entertainment facility that spans three jurisdictions and had a contract value of $90 million.

**Army/Navy Country Club**
Representation as outside counsel to the Club in connection with its project to design and build a new clubhouse facility in Arlington, VA. The project is LEED Silver certified and is being designed by MTFA Architecture. This representation has included the preparation and negotiation of project agreements and contract administration issues as they arise during performance. The expected cost of the project is approximately $40 million.

**Dulles Airport Hilton**
Representation of a large mid-Atlantic contractor against the hotel's owner in the arbitration of a dispute over the construction of a $40 million hotel addition in Dulles, VA. Representation included responding to multiple subcontractor liens and lawsuits while aggressively pursuing payment from the owner for the contract balance, over 100 unpaid change orders, and acceleration costs. The hotel owners responded with counterclaims alleging millions of dollars' worth of defective or incomplete work. The case was settled after a 13-day arbitration hearing, featuring multiple technical, scheduling, and cost experts for both sides.

19

# Hospitality Sector Team
## Representative Experience

### Real Estate Litigation

**Florida Panthers Holdings, Inc.**
Representation of client in successfully obtaining dismissal, with prejudice, of federal class-action securities claims against a hotel company related to an alleged failure to disclose acquisition plans.

**Transacta Prive Developers Ltd**
Representation of developer in challenge by petition for certiorari of site plan approval for an 18-story, 340-unit luxury hotel on Ft. Lauderdale Beach. On November 16, 2007, the court denied the petition and entered an order and final judgment in favor of the developer and the City of Fort Lauderdale. A "key issue" in the action was the applicability of "compatibility" as challenged by the Bonnet House, a historic residence, notwithstanding the underlying zoning and land use.

**Developer**
Representation of client in response to a declaratory action, "consistency" challenge per F.S. 163.3215, by Bonnet House et al., resulting from site plan approvals by the City of Fort Lauderdale for Orion Resort Hotel, Broward County, 17th Judicial Circuit, Case No. 07-13417. The action was dismissed by agreed final judgment on April 28, 2008. The issue(s) involved, in part, impacts the proposed project on a "historic" designated property and the consistency with the comprehensive plan.

**Sawgrass Hotels**
Representation of developer in action against Mills Services re breach of contract dispute(s) and property dispute in Sunrise, FL.

**Hasam Realty Ltd.**
Representation of client in an action involving prescriptive easements, title issues, etc.

**World Expo Center**
Representation of client in successfully defeating challenges brought by the Florida Department of Transportation and Florida Department of Community Affairs to development of this project proposing a 2.4 million square foot exhibition hall, 1.0 million square feet of retail space, a half million square feet of office space, and over 5,000 hotel rooms.

**Lender**
Representation of a lender with a $48 million mortgage on a condo hotel in the Chapter 11 bankruptcy reorganization case filed by the hotel.

# Hospitality Sector Team
Representative Experience

**Lender**
Representation of a lender in a hotel Chapter 11 bankruptcy.

## Government Affairs & Public Policy

**InterContinental Hotels Group**
Representation of the world's largest hotel chain with seven well-known brands for all federal issues affecting both hotel operations, such as the Americans with Disabilities Act, and the hospitality industry, including immigration, franchising, and travel promotion.

**InterContinental Hotels Group**
Assisted the leadership of InterContinental Hotels Group in taking leadership of a major project, the Discover America Partnership (DAP), bridging many elements of the travel and tourism industry. The DAP plan produced legislation (the Travel Promotion Act) and new direction and funding for Customs and Border Patrol (CBP) to make entry into the U.S. more friendly. Developed broad strategy for key elements of the lodging industry to interact with labor and to pursue legitimate immigration policies to meet needs of resort properties.

**InterContinental Hotels Group**
Assisted those in InterContinental Hotels Group responsible for privacy and protecting trademarks and brand names to interact with the U.S. Congress, the National Telecommunications and Information Administration (NTIA), and the Internet Corporation for Assigned Names and Numbers (ICANN) regarding policies and agreements affecting protection of trademarks on the Internet.

# Hospitality Sector Team
## Representative Experience

### Labor and Employment

**Pinellas County Beach Hotel Resort**
Representation of a Pinellas County Beach Hotel Resort and its management company in race discrimination charges and claims alleging violation of state and federal law; received determination of "no cause" by the investigating agency, adopted by the EEOC; successfully negotiated very favorable settlement of the federal court lawsuit.

**Hotel Management Company/Tampa Property**
Representation of multi-property hotel management company in claims by former General Manager alleging age discrimination, civil rights violations and fraud when he was terminated shortly after change in ownership and management of properties. Negotiated complete resolution of all claims with no payment of any sums beyond severance automatically offered to GMs terminated at time of ownership transition.

# EB-5 Practice

Using a multi-disciplinary approach, Akerman lawyers are able to assist entities seeking regional center designation as established regional centers, developers and other project sponsors, and individual EB-5 investors in understanding the obligations, implications, and responsibilities of all parties involved in this type of foreign investment.

Akerman's experienced EB-5 team members have a depth of experience across multiple legal practices including Corporate, Real Estate, Tax, International, and Immigration, that provides clients a seamless "one stop shop" experience.

## Practice Highlights

- Integrated multidisciplinary team handling the corporate, securities, real estate, economic development, immigration and public policy issues in over $1 billion in EB-5 project financing
- Multi-jurisdiction team assisting in EB-5 projects across the U.S. and the Caribbean including Florida, California, New York, Washington, D.C., Latin America and Puerto Rico
- Experience advising on numerous EB-5 deals on securities law issues including the Investment Company Act and the Investment Advisor Act
- State-of-the-art EB-5 offering documents currently in use by sizable, well-respected developers and Regional Centers, proven effective on deals approved by the USCIS
- Significant experience in the representation of immigration clients involved in multinational, foreign, and domestic companies, as well as individual business persons and employees of such businesses, in all aspects of immigration and nationality law including treaty trader and treaty investors visas, specialty worker visas, extraordinary ability, intra-company transferee visas, labor certified green cards, and U.S. Permanent Residency
- Recognized firm in handling capital market transactions, private equity and venture capital, and all facets of real estate development, including acquisitions and sales, financings, and workouts and restructurings.
- Regularly representing clients before the Department of Homeland Security, United States Citizenship and Immigration Services, United States Customs and Border Protection, Immigration and Customs Enforcement, the U.S. Department of Labor, and The Department of State and its U.S. consulates and embassies worldwide

23

# EB-5 Practice

- Assistance to companies in developing and streamlining internal processes for the transfer of employees, and training in-house legal personnel in preparing applications and petitions for the temporary admission of foreign nationals

## Rankings

- *The Legal 500*: Ranked as one of the leading Immigration law firms in the U.S.
- *U.S. News - Best Lawyers*: Recognized as a national tier one law firm for Real Estate Law, Construction Law, Litigation -Construction, and Litigation - Real Estate
- *PLC Which Lawyer?*: Recognized U.S. Corporate Real Estate law firm
- *The Legal 500*: Ranked as one of the leading Real Estate and Land Use/Zoning law firms in the U.S.
- *U.S. News - Best Lawyers*: Recognized in the national Corporate, Mergers & Acquisitions, Private Equity, Securities/Capital Markets, and Securities Regulation Law categories
- *The Legal 500*: Ranked as one of the leading Mergers, Acquisitions and Buyouts law firms for Middle-Market in the U.S.

# EB-5
## Representative Experience

### Current Engagements

**Hotel Development Project – Washington, D.C.**
Representation of large Washington, D.C. developer in obtaining $100+ million EB-5 investment for large hotel in Washington, D.C. Assisting with loan documentation in working with issuer and regional center during the EB-5 capital raising phase. The EB-5 loan is secured by a first lien mortgage subject to subordination if a minimum offering amount is not raised.

**Regional Center Formation – Commonwealth of Puerto Rico**
Representation of the Commonwealth of Puerto Rico establishing a new regional center in Puerto Rico. Regional Center to include a hypothetical project. Managing and responsible for all phases of the application process with USCIS.

**Large Multifamily Development- Los Angeles, CA**
Representation of large developer in obtaining $50+ million EB-5 investment in connection with developing a 500+ unit multi-family residential development in California with total development costs of over $250 million. Currently assisting in structuring the investment and loan structure which is anticipated to include a preferred equity investment.

**Regional Center Formation with Luxury Resort Hotel - Puerto Rico**
Representation of a company establishing a new regional center in Puerto Rico. Regional Center application to include a sponsor project. Managing and responsible for all phases of the application process through approval including; preparation of the business plan, coordination of all real estate and market feasibility studies, work with the architect, coordinate and advise on economic impact and job creation studies, preparation of offering documents, advice on securities and immigration related matters, preparation of I-924 Regional Center Application, response to USCIS information requests and working with escrow agent for establishment of escrow and distributions from escrow upon I-526 approvals.

**Regional Center w/ Large Mixed-Use Development – San Francisco, CA**
Representation of large developer in expanding a regional center in California to encompass a mixed-use commercial and residential development with total development costs of over one billion dollars. Assisting in compiling, reviewing and submitting amendment to regional center designation to USCIS and on-going capital raising and governance issues.

# EB-5
## Representative Experience

**Hotel Development Project - Puerto Rico**
Representation of large New York developer in obtaining $100+ million EB-5 investment for luxury resort hotel in Puerto Rico. Assisted in all phases of EB-5 process including negotiations with issuer, separate regional center, and U.S. registered broker/dealer, preparation of business plan and all loan documentation, and assistance with all offering documents and economic job analyses. The EB-5 loan is secured by a first lien mortgage subject to subordination if a minimum offering amount is not raised.

**Regional Center with Large Mixed-Use Development - Southwest, FL**
Representation of resort and mixed-use developer in establishing an EB-5 center in Florida for a mixed-use commercial and residential development on several thousand acres. Assisting in preparing regional center application and offering documentation along with financing documentation for project. Also assisting with affiliation with other regional centers for phases of project.

**Regional Center with Extended Stay Type Hotel – Flushing, NY**
Representation of company establishing a new regional center in New York. Regional Center application to include sponsor project or exemplar type project. Providing assistance in all phases of project including preparation of business plan, coordination of real estate and market feasibility studies, work with architect on zoning and designs, coordination of economic and job impact studies, preparation of all offering materials, advice on securities and immigration related matters, preparation of I-924 Regional Center Application, response for information requests, and working with escrow agent for establishment of escrow and distributions from escrow upon I-526 approvals.

**Real Estate Investment in Hotel Development– Long Island City, NY**
Representation of entity entering into joint venture with an existing New York based Regional Center which joint venture is developing a hotel. Assisting with business plan and all phases of EB-5 developed hotel.

**Brick City Development Corporation – New Jersey**
Representation of this Newark, NJ development authority in connection with evaluating EB-5 investments and EB-5 regional centers.

**Manufacturing Plant - Missouri**
Representation of a New York based financing, project sourcing, and EB-5 investment management firm for approximately $45 million of EB-5 financing related to the construction of a new $157 million biomass pellet manufacturing plant as part of an expansion of existing operations.

26

# EB-5
## Representative Experience

**Residential Development Project – Manhattan, NY**
Representation of a New York-based financing, project sourcing and EB-5 investment management firm for approximately $90 million of EB-5 financing related to the development of a $240 million, 32-story, 300-unit residential tower in Harlem. The mixed use project will also contain 70,000 sq ft of retail and a 127-car parking garage. The EB-5 loan is secured by a first lien mortgage subject to subordination if a minimum offering amount was not raised.

## Prior Engagements

**University of Miami Life Sciences & Technology Park – Miami, FL**
Representation of BirchLEAF Miami 31 Regional Center in connection with the formation and operation of the regional center, applicable filings with the USCIS, and the preparation of the securities offering materials for the successful raise of $20 million in EB-5 investor funds for the development of phase one of the University of Miami Life Sciences & Technology Park consisting of a six-story research/clinical building comprising of a 252,000 rentable square feet.

**Citypoint – Brooklyn, NY**
Representation of Albee Development LLC, as developer, in connection with the financing through the EB-5 program of approximately $200 million for the construction of approximately 665,000 square foot, four-story urban retail complex which will serve as the base for two residential towers totaling approximately 550,000 square feet to be located in downtown Brooklyn, NY.

**10 South Street Associates – Manhattan, NY**
Representation of developer with the financing through the EB-5 Program of approximately $77 million for the redevelopment of the Battery Maritime Building in downtown Manhattan into a luxury hotel, meeting area, and unique destination rooftop restaurant overlooking New York Harbor.

**PeachTree City – Atlanta, GA**
Representation of real estate investment company in providing $6 million in EB-5 financing for an $18.5 million acquisition and renovation of an assisted living facility in Atlanta, GA.

**Geneva Ridge – Geneva, WI**
Representation of real estate investment company in providing $20 million in EB-5 financing for the purchase of units and renovation of a hotel in

27

# EB-5
## Representative Experience

Walworth County, WI. The initial EB-5 phase included $7 million of financing towards the renovation of the 150 room condo hotel.

**George Washington Bridge Bus Terminal – New York, NY**
Representation of client in connection with the completion of a $72 million EB-5 financing for this redevelopment of the George Washington Bridge Bus Terminal covering two city blocks on the New York side of the George Washington Bridge. The redevelopment expands the retail square footage of the project to almost 120,000 sf, nearly four times the amount of retail space currently available and consolidates the mechanical and electrical equipment servicing the bridge into the remainder of the buildings.

**Battery Park – Manhattan, NY**
Representation of client in connection with the negotiation of a long term lease with the Battery Park City Authority for the Pier A building includes restaurant space, a beer garden, outdoor dining facilities, banquet facilities a visitor center and related facilities on the harbor at the southern end of Battery Park City on the western side of the lower tip of Manhattan. The project included successful EB-5 financing for the construction and renovation of the tenant improvements to the facilities.

**European Investor**
Representation of European entrepreneur-investor in successfully obtaining an EB-5 immigrant petition approval for development of a shopping center. The investor created and managed a real estate investment management/leasing enterprise. This resulted from the purchase of a series of existing retail shopping malls, the purchase/lease of a real estate golf course development project, and the simultaneous reorganization of the same under a holding structure, the management of which was controlled by the investor. The subsidiary retail mall businesses were operated through limited partnerships, the management and control of which were coordinated by the general partner, a company administered by the investor.

28