## DECLARATION OF CLAIRE CHAMPION

Pursuant to 28 U.S.C. Section 1746, the undersigned states as follows:

1.      My name is Claire Champion.  I am over twenty-one years of age and have personal knowledge of the matters set forth herein.

2.      I first heard of Jay Peak in 2011, after I began conducting web-based searches for an EB-5 program in which to invest.

3.      Subsequently, I obtained offering materials for a limited partnership interest in Jay Peak Hotel Lodge and Townhouses L.P. ("Lodge and Townhouses"). I received these documents directly from Jay Peak. A copy of the materials I received is attached as Exhibit A.

4.      The offering materials stated that my investment money would be used for Lodge & Townhouses and specified how investor money would be used for this project. (For example, see Exhibit A, "Use of Proceeds" section in Part 1 and p. 8 of Business Plan section in Part 2). The representations in the offering materials regarding the use of investor funds were important to me in deciding to invest in Lodge & Townhouses. There is no provision in the materials that my money could be used for any other project or any other purpose.

5.      Also, Section 5.02 of the limited partnership agreement (contained in Exhibit A) states, in part, that the prior consent of the limited partner is required before the general partner may borrow from the partnership or commingle partnership funds with the funds of any person. I have not consented to any borrowing from the limited partnership by the general partner or any commingling of partnership funds.

6.      After reading the offering materials I had questions, so I called Jay Peak and spoke with the contact person for the EB5 program at Jay Peak. We discussed, in part, how my investment money was going to be used for the Lodge & Townhouses project, what type of

1.


PLAINTIFF'S EXHIBIT 46

business the project would be, the potential revenues for the project, other Jay Peak construction projects, and the area and climate conditions. I also asked whether the projected revenues were realistic and whether there could be construction delays. I was satisfied with the answers I received.

7.      In deciding to invest in Lodge & Townhouses, it was important to me that my investment money was going to be used for this specific project. It was also important to me that my investment was sound, that I would receive decent returns on my investment, and that I would not be taking too much risk. To me, there were two parts to my investment with Lodge & Townhouse: making a sound investment and obtaining a green card. I liked that Lodge and Townhouses provided me with both opportunities. Also, it was very important to me that I not lose my investment capital, and I wanted to minimize that risk.

8.      In or about the summer of 2011, I wired $500,000 for my investment, plus an administrative fee, to an escrow account at People's United Bank.

9.      In or about March 2012, I received a conditional green card. The conditions were removed in or about June 2014.

I declare under penalty of perjury that the foregoing is true, correct, and made in good faith.

Claire Champion

Executed on this 9th day of November, 2015.

2

A



# JAY ❄ PEAK
## V E R M O N T

## Jay Peak Lodge and Townhouses L.P.

A Limited Partnership Chartered in the State of Vermont

An investment opportunity within a Ski & Golf Resort located in the State of Vermont, a US Government Designated Regional Center, structured to assist investors obtain EB-5 Visa giving Lawful Permanent Residency in the United States.

2011 GOLFWEEK'S BEST — COURSES YOU CAN PLAY

SKi #1 SNOW · EAST READER AWARDS 2010

SKi #1 TERRAIN/VARIETY · EAST READER AWARDS 2010

**EXHIBIT**
**A**

rapid Visas

## Private Offering Memorandum

Claire Champion
3512 35th Street NW
Washington DC 20016

June 3rd, 2014

Re: Jay Peak Lodge & Townhouse, LP

Dear Tisha,

Please find enclosed Jay Peak documentation
as required.

Best regards

Claire

THIS AREA INTENTIONALLY LEFT BLANK

Legal Counsel
Carroll & Scribner, P.C.
Attorneys at Law

84 Pine Street, Suite 300
Burlington, Vermont
Tel: 802.862.2855
www.cslaw.us

Business Consultant
Rapid USA Visas, Inc.
Naples, Florida

Kenneth D Hulme FCCA
Chartered Certified Accountant
Tel: 239.594.5400
office@visausa.com

# TOWNHOUSES AND COTTAGES

The 9 Townhouse buildings, offering up to 30 individual dwellings are situated in a fantastic location near to Jay Peak's Championship Golf Course and the challenging slopes of the Stateside Ski terrain. The Townhouse buildings will offer highly desireable ski-in/ski-out access.

In addition to the Townhouse buildings, the delightful enclave of Cottages are to be situated at the base of the Stateside ski terrain providing quick access to ski terrain, golf and resort facilities. Amenities in both facilities will include high speed wireless internet and extensive in-room services. All units are individually furnished and include a fully equipped kitchen, living and dining area with one, two or more bedrooms and each with separate bath facilities.

The Jay Peak Resort architectural style of these properties will be featured throughout and will include natural stone, pine and cedar shingle outer surfaces, tastefully designed interiors with hardwood floors, yellow pine paneling and exposed beams, all blends into the natural surroundings of the Resort.



Conceptual Townhouses

# SKIER AND SUMMER SERVICES CENTER & STATESIDE CAFE



The Stateside Ski Terrain



Stateside Cafe

The Skier and Summer Services Center will be open year round and is situated on the slopes of the Stateside ski area of the Jay Peak mountain. This facility will serve as the hub for day skier ticket holders and summer recreation services. This facility will also house the Stateside Cafe that will provide a full service restaurant and bar with extensive patios for slopeside dining and relaxation.

# PARKING AND RECREATION DECK



A multi-level parking structure will provide premium covered parking facilities for day visitors to the resort.

During the summer months the top level of the parking structure will feature a recreational deck consisting of tennis courts and other recreational activities.

# STATESIDE AUDITORIUM



months at Jay Peak Resort.

The Stateside Auditorium will feature an open air design to accommodate performances, concerts and exhibitions during the summer

INTENTIONALLY LEFT BLANK



## JAY PEAK LODGE AND TOWNHOUSES L.P.

### A Limited Partnership Chartered In the State Of Vermont

| | |
|---|---|
| **SECTION 1** | **THE OFFERING** |
| **SECTION 2** | **THE BUSINESS PLAN** |
| **SECTION 3** | **THE LIMITED PARTNERSHIP AGREEMENT** |
| **SECTION 4** | **THE SUBSCRIPTION DOCUMENTS** |
| **SECTION 5** | **THE EXHIBITS** |

*This Offering Memorandum contains important information about the Limited Partnership to which investors should become familiar prior to making investment therein. Please read all information and retain this Offering Memorandum for future reference.*

THESE SECURITIES ARE SUBJECT TO A HIGH DEGREE OF RISK – SEE "RISK FACTORS"

THE DATE OF THIS MEMORANDUM IS MAY 18TH 2011

### CONFIDENTIALITY AGREEMENT AND COPYRIGHT ACKNOWLEDGEMENT

A prospective investor into Jay Peak Lodge and Townhouses L.P. (the "Partnership"), by accepting receipt in what ever manner or form, of this Private Offering Memorandum (the "Memorandum"), agrees not to duplicate, disseminate or to furnish copies of the Memorandum or any part thereof in any form whatsoever, including but not limited to electronic means, or to divulge information garnered from this Memorandum to persons other than such investor's investment and tax advisors, accountants and legal counsel instructed solely to assist the investor in the evaluation, and such advisors, accountants and legal counsel together with the prospective investors and any other persons to which this Memorandum comes into their possession (i) are prohibited from duplicating, disseminating or using the Memorandum and any information contained herein in any manner other than to determine whether the investor wants to invest into the Partnership, (ii) acknowledge the copyright of the authors in the Memorandum, and that copyright violators may be prosecuted and (iii) acknowledge that written translation of this Memorandum, or any part thereof, into any other language is not authorized. The agreements made herein shall survive if the investor withdraws from the Jay Peak Lodge and Townhouses project for whatever reason, whenever said withdrawal should occur, and shall continue in full force and effect regardless of the eventual result of any application for lawful permanent residence in the United States of America made in conjunction with investment in this project. If the investor withdraws from the project for whatever reason, then prior to release of any escrow deposit as may be due the investor shall immediately return to the General Partner of the Partnership his or her copy of this Private Offering Memorandum, together with any copies furnished by the investor to such investor's advisors or counsel.

### IMPORTANT NOTICE – NO LEGAL ADVICE

*The contents of this Memorandum are not intended as an interpretation of immigration law or legal advice for any purpose, and any prospective investor should not consider anything in this Memorandum as such advice or as a legal opinion or investment advice on any matters, and should seek independent professional advice.*

INTENTIONALLY LEFT BLANK



# Section 1
# The Offering

INTENTIONALLY LEFT BLANK

# CONTENTS

SECTION 1 ............................................................................................................................................. 1

THE OFFERING ..................................................................................................................................... 1

IMPORTANT INFORMATION ................................................................................................................. 4

INVESTOR SUITABILITY STANDARDS ............................................................................................... 8

IMMIGRATION ..................................................................................................................................... 10

  OVERVIEW .................................................................................................................................... 10

  FOR EB-5 INVESTORS ................................................................................................................. 10

SUMMARY OF THE OFFERING ........................................................................................................ 12

  INTRODUCTION ........................................................................................................................... 12

  SECURITIES BEING OFFERED ................................................................................................... 12

  PURCHASE TERMS ..................................................................................................................... 12

  EXEMPTION FROM REGISTRATION ........................................................................................... 12

  THE LIMITED PARTNERSHIP ...................................................................................................... 13

  THE GENERAL PARTNER ............................................................................................................ 13

  PROJECT SUMMARY ................................................................................................................... 13

  JAY PEAK MARKET REVIEW ...................................................................................................... 14

  COMPLETION OF PROJECT ........................................................................................................ 15

  OFFERING MEMORANDUM ONLY AVAILABLE IN US ENGLISH LANGUAGE ........................... 16

  FEDERAL TAX CONSIDERATIONS ............................................................................................. 16

  TRANSFER RESTRICTIONS ........................................................................................................ 16

  EXIT STRATEGIES ....................................................................................................................... 17

RISK FACTORS (ALSO SEE IMMIGRATION RISK FACTORS) ......................................................... 17

U.S. IMMIGRATION FOR EB-5, ALIEN ENTREPRENEUR INVESTORS ........................................... 20

  OVERVIEW .................................................................................................................................... 20

  FOR EB-5 INVESTORS ................................................................................................................. 21

IMMIGRATION MATTERS .................................................................................................................. 22

  OVERVIEW .................................................................................................................................... 22

  AMOUNT OF INVESTMENT: AND TARGETED EMPLOYMENT AREA ......................................... 22

  COUNTING EMPLOYMENT POSITIONS CREATED ..................................................................... 23

  THE STATE OF VERMONT - A REGIONAL CENTER ................................................................... 23

  THE I-526 PETITION PROCESS ................................................................................................... 24

  THE I-526 PETITION APPROVAL ................................................................................................. 25

  CONSULAR PROCESSING OR ADJUSTMENT OF STATUS ........................................................ 25

  CONSULAR PROCESSING ........................................................................................................... 25

  VISA ISSUANCE ........................................................................................................................... 26

  ADMISSION TO U.S. AFTER VISA ISSUED .................................................................................. 26

  ADMISSION AFTER INVESTING, FILING THE I-526 OR DURING CONSULAR PROCESSING .......... 27

  ADJUSTMENT OF STATUS .......................................................................................................... 27

  TRAVEL DURING ADJUSTMENT OF STATUS PROCESSING ..................................................... 27

EMPLOYMENT DURING THE ADJUSTMENT OF STATUS PROCESSING ...................................................28
ADJUSTMENT OF STATUS ...................................................................................................................28
REMOVAL OF CONDITIONS ................................................................................................................28
**IMMIGRATION RISK FACTORS** ..............................................................................................................29
GENERAL .........................................................................................................................................29
APPROVAL OF INVESTMENTS IN THE PROJECT ...................................................................................29
PROCESSING TIMES ..........................................................................................................................29
GOVERNMENT FILING FEES ..............................................................................................................30
LIMITATIONS ON RETURN OF FUNDS IF I-526 PETITION IS DENIED ....................................................30
TARGETED EMPLOYMENT AREAS AND THE MINIMUM INVESTMENT AMOUNT ..................................31
ATTAINING LAWFUL PERMANENT RESIDENCE ....................................................................................31
GROUNDS FOR EXCLUSION ...............................................................................................................31
NO RETURN OF FUNDS IF VISA OR ADJUSTMENT OF STATUS IS DENIED ..............................................33
CONDITIONAL LAWFUL PERMANENT RESIDENCE ...............................................................................33
NO REGULATIONS REGARDING REMOVAL OF CONDITIONS ..................................................................33
BUSINESS CHANGES AND BUSINESS FAILURES ...................................................................................33
MATERIAL CHANGE IN THE EB-5 PROJECT .........................................................................................33
REVIEW OF I-526 COMPLIANCE DURING THE I-829 PROCESS ..............................................................34
NUMERICAL QUOTAS .......................................................................................................................35
EXPIRATION OF THE REGIONAL CENTER PILOT PROGRAM ...................................................................35
ACTIVE PARTICIPATION IN LIMITED PARTNERSHIP BUSINESS ..............................................................36
RISKS ATTENDANT TO EB-5 STATUS ..................................................................................................36
CONSULAR PROCESSING – VISA NOT GUARANTEED ...........................................................................36
ADMISSION AFTER INVESTING, FILING THE I-526 OR DURING CONSULAR PROCESSING ........................37
ADJUSTMENT OF STATUS ..................................................................................................................37
REMOVAL OF CONDITIONS ................................................................................................................37
FAMILY RELATIONSHIPS ....................................................................................................................38

## SECTION 1

JAY PEAK LODGE AND TOWNHOUSES L.P.
(A VERMONT LIMITED PARTNERSHIP)
4850 VT ROUTE 242 JAY, VERMONT 05859

A PRIVATE OFFERING OF LIMITED PARTNERSHIP INTERESTS

ALL OF THE LIMITED PARTNERSHIP INTERESTS ARE BEING OFFERED BY JAY PEAK LODGE AND TOWNHOUSES L.P., THE ISSUER. THERE IS NO PUBLIC MARKET FOR THESE INTERESTS. SEE RISK FACTORS, P. 17

## THE OFFERING

US$45,000,000; MINIMUM INVESTMENT FOR EACH LIMITED PARTNERSHIP INTEREST IS $500,000

JAY PEAK LODGE AND TOWNHOUSES L.P. (THE "PARTNERSHIP" OR "LIMITED PARTNERSHIP") WILL, WITHIN THE STRATEGIC CENTER OF JAY PEAK RESORT, A SKI AND GOLF RESORT COMPLEX ESTABLISHED FOR OVER 50 YEARS, LOCATED IN JAY, VERMONT (THE "RESORT") AND OWNED BY JAY PEAK, INC. (THE "RESORT OWNER"), UNDERTAKE CERTAIN REAL ESTATE DEVELOPMENT AND BUSINESS ACTIVITIES WHICH WILL INCLUDE:

(1) ACQUISITION OF TITLE TO THREE (3) OR MORE PARCELS OF REAL ESTATE AT THE RESORT FROM THE RESORT OWNER, AND CONSTRUCTING AND ERECTING THREE (3) TOWNHOUSE BUILDINGS WITH TEN LIVING UNITS IN EACH THAT WILL BE OWNED BY THE PARTNERSHIP AND LEASED TO AND OPERATED AS VACATION RENTAL UNITS BY A TENANT TO BE APPROVED BY THE PARTNERSHIP (THE "TOWNHOUSES"); AND

(2) ON LAND RETAINED BY THE RESORT OWNER THAT SITS ADJACENT TO THE CHAMPIONSHIP GOLF COURSE AT THE RESORT, AND LEASED TO THE PARTNERSHIP UNDER ONE OR MORE GROUND LEASES, CONSTRUCTING AND ERECTING EIGHTY (80) GOLF AND MOUNTAIN COTTAGES WITH ONE, TWO OR MORE BEDROOMS IN EACH THAT WILL BE OWNED BY THE PARTNERSHIP AND LEASED TO AND OPERATED AS VACATION RENTAL UNITS BY A TENANT TO BE APPROVED BY THE PARTNERSHIP (THE "COTTAGES"); AND

(3) ON LAND RETAINED BY THE RESORT OWNER AT THE RESORT,  DEVELOPING A SKIER AND SUMMER SERVICES CENTER (THE "SERVICES CENTER"), TO BE LEASED BY THE LIMITED PARTNERSHIP FOR NOMINAL CONSIDERATION FROM THE RESORT OWNER AND SUBLEASING THE SERVICES CENTER AND ITS OPERATIONS FOR MARKET RENT TO A TENANT TO BE APPROVED BY THE PARTNERSHIP; AND

(4) ON LAND RETAINED BY THE RESORT OWNER AT THE RESORT, DEVELOPING A MULTI-STORY PARKING GARAGE WITH RECREATION ON THE TOP LEVEL, TO BE USED FOR LIMITED PARTNERSHIP AND PROJECT PARKING FACILITIES (THE "PARKING FACILITY"), TO BE LEASED BY THE LIMITED PARTNERSHIP FOR NOMINAL CONSIDERATION FROM THE RESORT OWNER AND SUBLEASED TO AN APPROVED TENANT; AND

(5) ON LAND RETAINED BY THE RESORT OWNER AT THE RESORT, DEVELOPING AN AUDITORIUM FOR CONCERTS AND EXHIBITIONS (THE "AUDITORIUM", AND TOGETHER WITH THE COTTAGES, TOWNHOUSES, PARKING FACILITY AND SERVICES CENTER, IS THE "PROJECT").

IT IS PROJECTED THAT THE RESORT OWNER WILL INVEST $15 MILLION IN CASH, LAND OR OTHER VALUE INTO THE PROJECT TO CREATE AND UPGRADE CERTAIN RESORT FACILITIES, INCLUDING ADDING AN ACCESS ROAD AND CONSTRUCTING ADDITIONAL TOWNHOUSES AND RESORT/PROJECT INFRASTRUCTURE.

THE JAY PEAK LODGE AND TOWNHOUSES L.P PROJECT, AMOUNTING TO $ 45 MILLION OF DEVELOPMENT COSTS TO BE FINANCED PURSUANT TO THIS OFFERING MEMORANDUM, AND THE ADDITIONAL INVESTMENT IN CASH, LAND OR VALUE OF $15 MILLION PROJECTED TO BE PROVIDED BY THE RESORT OWNER, EQUATES TO THE ESTIMATED OVERALL DEVELOPMENT COSTS OF $ 60,000,000 (SEE PROJECT SUMMARY).

CREATING THE COTTAGES, TOWNHOUSES, SERVICES CENTER, AUDITORIUM AND PARKING FACILITY WILL AID THE FURTHER EXPANSION OF JAY PEAK AS AN "ALL SEASONS RESORT." JAY PEAK LODGE AND TOWNHOUSES L.P. WILL STIMULATE ECONOMIC DEVELOPMENT AND IS PROJECTED TO CREATE MANY NEW JOBS AT THE RESORT, IN THE GREATER JAY PEAK REGION, WITHIN THE STATE OF VERMONT REGIONAL CENTER, AND IN THE REST OF THE UNITED STATES.

ALL LIMITED PARTNERSHIP INTERESTS ARE PAYABLE IN FULL UPON SUBSCRIPTION (THE "OFFERING"). THE MINIMUM CAPITAL CONTRIBUTION TO INVEST INTO THE PARTNERSHIP SHALL BE $500,000 (SUBJECT TO THE GENERAL PARTNER'S DISCRETION FOR INVESTORS WHO ARE NOT SEEKING QUALIFICATION AS AN "ALIEN ENTREPRENEUR", AS DEFINED BELOW). EACH INVESTOR MUST ALSO PAY AN ADMINISTRATION FEE TO THE RESORT OWNER OF $50,000 FOR COSTS AND EXPENSES INCURRED BY THE RESORT OWNER IN CONNECTION WITH THIS OFFERING, FOR A TOTAL AMOUNT PAYABLE ON APPLICATION OF $550,000. THERE IS NO MINIMUM SALE REQUIREMENT, EXCEPTING FOR FOREIGN INVESTORS SEEKING QUALIFICATION AS AN "ALIEN ENTREPRENEUR" UNDER THE EB-5 PROGRAM UNDER THE ACT (AS THOSE TERMS ARE DEFINED BELOW), WHERE THE MINIMUM AMOUNT, CURRENTLY $500,000, IS SET BY LAW (BECAUSE THE INVESTMENT IS SITUATED IN A TARGETED EMPLOYMENT AREA (TEA).SEE PAGE 22). THE GENERAL PARTNER MAY IN ITS SOLE DISCRETION WAIVE THE MINIMUM SUBSCRIPTION AMOUNT AND RAISE THE MINIMUM AMOUNT IN THE FUTURE. THE OFFERING WILL CONTINUE UNTIL IT HAS RAISED $45,000,000 UNLESS TERMINATED SOONER BY THE GENERAL PARTNER IN ITS SOLE DISCRETION. THIS OFFERING SUPERSEDES IN ITS ENTIRETY ALL PRIOR OFFERINGS MADE BY THE ISSUER, IF ANY.

WHILE THIS INVESTMENT OFFERING HAS BEEN STRUCTURED SO THAT INVESTORS MAY MEET THE REQUIREMENTS UNDER 8 U.S.C.§ 1153 (B)(5)(A) - (D); INA § 203 (B)(5)(A) - (D) OF THE IMMIGRATION & NATIONALITY ACT (THE "ACT") AND QUALIFY UNDER THIS PROGRAM (THE "PROGRAM" OR "EB-5 PROGRAM) TO BECOME ELIGIBLE FOR ADMISSION TO THE UNITED STATES OF AMERICA AS LAWFUL PERMANENT RESIDENTS AND CONFER THIS BENEFIT UPON THEIR SPOUSES AND UNMARRIED, MINOR CHILDREN, THE INVESTMENT OFFERING IS ALSO OPEN TO INVESTORS NOT SEEKING IMMIGRATION BENEFITS.

IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ISSUER AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. YOU SHOULD DEPEND SOLELY ON THE WRITTEN INFORMATION CONTAINED IN THIS PRIVATE PLACEMENT MEMORANDUM. THESE SECURITIES HAVE NOT BEEN RECOMMENDED OR APPROVED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THESE AUTHORITIES HAVE NOT PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE U.S. SECURITIES AND EXCHANGE COMMISSION DOES NOT PASS UPON THE MERITS OF ANY SECURITIES OFFERED OR THE TERMS OF THE OFFERING, NOR DOES IT PASS UPON THE ACCURACY OR COMPLETENESS OF ANY OFFERING CIRCULAR OR SELLING LITERATURE. THESE SECURITIES ARE OFFERED UNDER ONE OR MORE EXEMPTIONS FROM REGISTRATION, HOWEVER THE COMMISSION HAS NOT MADE AN INDEPENDENT DETERMINATION THAT THESE SECURITIES ARE EXEMPT FROM REGISTRATION.

UK INVESTORS: THIS OFFERING DEFINED AS A PROMOTION IN THE UNITED KINGDOM HAS NOT BEEN APPROVED BY AN AUTHORIZED PERSON WITHIN THE MEANING OF THE FINANCIAL SERVICES AND MARKETS ACT OF 2000. RELIANCE ON THIS OFFERING (PROMOTION) FOR THE PURPOSE OF ENGAGING IN ANY INVESTMENT ACTIVITY MAY EXPOSE AN INDIVIDUAL TO SIGNIFICANT RISK OF LOSING ALL OF THE PROPERTY OR OTHER ASSETS INVESTED.

INVESTMENT IN SMALL BUSINESSES INVOLVES A HIGH DEGREE OF RISK. AN INVESTMENT IN INTERESTS OF THE LIMITED PARTNERSHIP INVOLVES SUBSTANTIAL RISKS INCLUDING BUT NOT LIMITED TO RELIANCE AND CONTINUITY OF MANAGEMENT, THIRD PARTY SERVICES, GENERAL MARKET FORCES AND RISKS, AND COMPLEX TAX ISSUES. INVESTORS SHOULD NOT INVEST ANY FUNDS IN THIS OFFERING UNLESS THEY CAN AFFORD TO LOSE THEIR ENTIRE INVESTMENT. SEE THE "RISK FACTORS" SECTION OF THE "SUMMARY OF THE OFFERING" AND THE "RISK FACTORS" SECTION OF THE FINANCIAL DATA FOR THE RISK FACTORS THAT MANAGEMENT BELIEVES PRESENT THE MOST SUBSTANTIAL RISKS TO AN INVESTOR IN THIS OFFERING. THERE IS CURRENTLY NO PUBLIC MARKET FOR THE INTERESTS AND TRANSFERABILITY OF THE INTERESTS WILL BE LIMITED.

THIS OFFERING IS MADE ONLY TO "ACCREDITED INVESTORS", AS DEFINED IN RULE 501(A) OF REGULATION D, AND THOSE WHO ARE SOPHISTICATED IN FINANCIAL AND BUSINESS MATTERS, UNLESS THE INVESTOR IS NOT RESIDENT IN THE UNITED STATES AT THE TIME OF THE OFFERING NOR AT THE TIME OF SALE OF A LIMITED PARTNERSHIP

INTEREST TO THE INVESTOR, WHEREUPON REGULATION S OF THE 1933 SECURITIES ACT MAY APPLY. EACH INTENDING INVESTOR SHOULD OBTAIN THE ADVICE OF THEIR OWN PROFESSIONAL ADVISORS INCLUDING LEGAL, FINANCIAL, TAX, INVESTMENT AND OTHER ADVISORS INCLUDING IMMIGRATION IF APPLICABLE BEFORE DECIDING TO INVEST.

|  | PRICE TO INVESTORS | PROCEEDS TO LIMITED PARTNERSHIP |
|---|---|---|
| MINIMUM INVESTMENT | $ 500,000.00 | $ $45,000,000 |
|  |  | PROCEEDS TO JAY PEAK, INC. |
| ADMINISTRATION FEE | $ 50,000.00 | $ $4,500,000 |

ALL INVESTED FUNDS ARE STATED AND PAYABLE IN US DOLLARS.

NOTES:

1. SEE "RISK FACTORS." POSSIBLE ACQUISITION OF INTERESTS BY OTHERS.

2. JAY PEAK, INC. WILL RECEIVE THE ADMINISTRATION FEE, AND BE RESPONSIBLE FOR THE COSTS OF THE CONCEPTUAL DESIGN, LEGAL, ACCOUNTING, ADMINISTRATION AND ALL OTHER COSTS RELATING TO THE STRUCTURING, CREATION AND SALE OF THE LIMITED PARTNERSHIP INTERESTS.

3. INVESTORS FROM THE UNITED KINGDOM: JAY PEAK LODGE AND TOWNHOUSES L.P IS A LIMITED PARTNERSHIP REGISTERED IN VERMONT USA, AND DOES NOT FALL WITHIN THE DEFINITION OF A "COLLECTIVE INVESTMENT SCHEME" FOR THE PURPOSES OF THE UK FINANCIAL SERVICES AND MARKETS ACT OF 2000 AS RECITED, AND AS AMENDED. THIS OFFERING HAS ADDITIONALLY BEEN PREPARED IN COMPLIANCE WITH SECTION 21 OF THE SAID ACT, AND CONTAINS ADDITIONAL RISK WARNINGS ARISING THEREFROM. SEE RISK FACTORS PAGE: 17

THE DATE OF THIS MEMORANDUM IS MAY 18, 2011.

THIS MEMORANDUM # LT 41   HAS BEEN PROVIDED TO: Claire Champion

## IMPORTANT INFORMATION

REVIEW ALL INFORMATION — A POTENTIAL INVESTOR SHOULD CAREFULLY REVIEW ALL THE INFORMATION AND EXHIBITS CONTAINED IN THIS MEMORANDUM INCLUDING THE LIMITED PARTNERSHIP AGREEMENT, THE FINANCIAL AND OPERATING DATA OF THE PARTNERSHIP ATTACHED HERETO, WHICH IS INCORPORATED HEREIN BY REFERENCE, AND THE SUBSCRIPTION AGREEMENT IN MAKING AN INVESTMENT DECISION. INVESTORS MUST RELY ON SUCH INVESTORS' OWN EXAMINATION OF THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. EACH PROSPECTIVE INVESTOR IS INVITED TO ASK QUESTIONS OF, AND UPON REQUEST MAY OBTAIN ADDITIONAL INFORMATION FROM JAY PEAK GP SERVICES LODGE INC. ("THE GENERAL PARTNER") CONCERNING THE LIMITED PARTNERSHIP, ITS CONTEMPLATED BUSINESS, THE TERMS AND CONDITIONS OF SUCH OFFERING AND ANY OTHER RELEVANT MATTERS TO THE EXTENT THE GENERAL PARTNER POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE.

SOURCES OF INFORMATION — THE INFORMATION CONTAINED HEREIN HAS BEEN OBTAINED FROM THE LIMITED PARTNERSHIP. NO REPRESENTATION OR WARRANTY, EXPRESSED OR IMPLIED, IS MADE AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION AND NOTHING CONTAINED IN THIS MEMORANDUM IS OR SHALL BE RELIED ON AS A PROMISE OR REPRESENTATION AS TO THE PAST OR FUTURE. THIS MEMORANDUM IS PROVIDED SUBJECT TO AMENDMENT AND SUPPLEMENTATION BY THE GENERAL PARTNER IN ITS SOLE DISCRETION, AND THE TRANSACTION CONTEMPLATED HEREIN MAY BE MODIFIED OR WITHDRAWN AT ANY TIME, WITH NOTICE TO PROSPECTIVE INVESTORS WHO HAVE RECEIVED THIS MEMORANDUM AND INVESTORS WHO HAVE ALREADY SUBSCRIBED. THE OBLIGATIONS OF THE PARTIES TO THIS TRANSACTION WILL BE SET FORTH AND GOVERNED BY THE DOCUMENTS REFERRED TO IN THIS MEMORANDUM.

AUTHORIZED STATEMENTS — THIS OFFERING MEMORANDUM CONTAINS ALL OF THE REPRESENTATIONS BY THE PARTNERSHIP CONCERNING THIS OFFERING, AND NO PERSON SHALL MAKE DIFFERENT OR BROADER STATEMENTS THAN THOSE CONTAINED HEREIN. INVESTORS ARE CAUTIONED NOT TO RELY UPON ANY INFORMATION NOT EXPRESSLY SET FORTH IN THIS MEMORANDUM.

MEMORANDUM NOT LEGAL ADVICE — PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE PARTNERSHIP AS LEGAL OR TAX ADVICE. EACH INVESTOR MUST RELY SOLELY UPON HIS OR HER OWN REPRESENTATIVES (INCLUDING HIS OR HER LEGAL COUNSEL, ACCOUNTANT AND OTHER PERSONAL ADVISORS) AS TO LEGAL, TAX, IMMIGRATION, BUSINESS AND RELATED MATTERS CONCERNING A PROSPECTIVE INVESTMENT IN THE PARTNERSHIP.

PRIVATE MEMORANDUM — THIS MEMORANDUM HAS BEEN PREPARED SOLELY FOR THE INFORMATION OF PERSONS AND ENTITIES INTERESTED IN THE PRIVATE PLACEMENT OF THE INTERESTS OFFERED HEREBY AND MAY NOT BE REPRODUCED OR USED FOR ANY OTHER PURPOSE. ANY REPRODUCTION OR DISTRIBUTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, WITHOUT THE PRIOR WRITTEN CONSENT OF THE PARTNERSHIP IS PROHIBITED. BY ACCEPTING THIS MEMORANDUM, PROSPECTIVE INVESTORS AGREE THAT THEY WILL NOT DISCLOSE ITS CONTENTS TO ANYONE OTHER THAN THEIR PROFESSIONAL ADVISERS, OR REPRODUCE IT, IN WHOLE OR IN PART, WITHOUT THE PRIOR WRITTEN CONSENT OF THE PARTNERSHIP.

DETERMINATION OF OFFERING PRICE — THE PRICE OF THE MINIMUM INTEREST WAS DETERMINED BY THE PARTNERSHIP TO ASSIST INVESTORS WHO WISH TO MEET THE REQUIREMENTS UNDER THE ACT.

BEST EFFORTS OFFERING — ALL INTERESTS ARE OFFERED BY THE PARTNERSHIP ON A "BEST EFFORTS" NON-MINIMUM BASIS. THERE IS NO ASSURANCE THAT ALL OR ANY OF THE DESIRED CAPITAL WILL BE RAISED THROUGH THE OFFERING, THE OFFERING HAS NO MINIMUM AMOUNT AND THE PARTNERSHIP WILL UTILIZE PROCEEDS AS THEY ARE RECEIVED. SEE PAGE 15 COMPLETION OF PROJECT.

LIQUIDITY AND CAPITAL RESOURCES — MANAGEMENT BELIEVES THAT THE MAXIMUM PROCEEDS OF THIS OFFERING WILL GENERATE SUFFICIENT CAPITAL TO CONDUCT THE BUSINESS OF THE PARTNERSHIP UNTIL THE PLANNED OPENING OF THE COTTAGES, TOWNHOUSES, SERVICES CENTER, AUDITORIUM AND PARKING FACILITY.

MISCELLANEOUS — THE DESCRIPTION IN THIS MEMORANDUM OF ANY AGREEMENT, DOCUMENT, STATUTE, RULE, REGULATION, OR PROPOSED LEGISLATION IS NOT DESIGNED TO BE COMPLETE AND IS, THEREFORE, QUALIFIED IN ITS

## IMPORTANT INFORMATION

REVIEW ALL INFORMATION — A POTENTIAL INVESTOR SHOULD CAREFULLY REVIEW ALL THE INFORMATION AND EXHIBITS CONTAINED IN THIS MEMORANDUM, INCLUDING THE LIMITED PARTNERSHIP AGREEMENT, THE FINANCIAL AND OPERATING DATA OF THE PARTNERSHIP ATTACHED HERETO, WHICH IS INCORPORATED HEREIN BY REFERENCE, AND THE SUBSCRIPTION AGREEMENT IN MAKING AN INVESTMENT DECISION. INVESTORS MUST RELY ON SUCH INVESTORS' OWN EXAMINATION OF THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. EACH PROSPECTIVE INVESTOR IS INVITED TO ASK QUESTIONS OF, AND UPON REQUEST MAY OBTAIN ADDITIONAL INFORMATION FROM JAY PEAK GP SERVICES LODGE INC. ("THE GENERAL PARTNER") CONCERNING THE LIMITED PARTNERSHIP, ITS CONTEMPLATED BUSINESS, THE TERMS AND CONDITIONS OF SUCH OFFERING AND ANY OTHER RELEVANT MATTERS TO THE EXTENT THE GENERAL PARTNER POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE.

SOURCES OF INFORMATION — THE INFORMATION CONTAINED HEREIN HAS BEEN OBTAINED FROM THE LIMITED PARTNERSHIP. NO REPRESENTATION OR WARRANTY, EXPRESSED OR IMPLIED, IS MADE AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION AND NOTHING CONTAINED IN THIS MEMORANDUM IS OR SHALL BE RELIED ON AS A PROMISE OR REPRESENTATION AS TO THE PAST OR FUTURE. THIS MEMORANDUM IS PROVIDED SUBJECT TO AMENDMENT AND SUPPLEMENTATION BY THE GENERAL PARTNER IN ITS SOLE DISCRETION, AND THE TRANSACTION CONTEMPLATED HEREIN MAY BE MODIFIED OR WITHDRAWN AT ANY TIME, WITH NOTICE TO PROSPECTIVE INVESTORS WHO HAVE RECEIVED THIS MEMORANDUM AND INVESTORS WHO HAVE ALREADY SUBSCRIBED. THE OBLIGATIONS OF THE PARTIES TO THIS TRANSACTION WILL BE SET FORTH AND GOVERNED BY THE DOCUMENTS REFERRED TO IN THIS MEMORANDUM.

AUTHORIZED STATEMENTS — THIS OFFERING MEMORANDUM CONTAINS ALL OF THE REPRESENTATIONS BY THE PARTNERSHIP CONCERNING THIS OFFERING, AND NO PERSON SHALL MAKE DIFFERENT OR BROADER STATEMENTS THAN THOSE CONTAINED HEREIN. INVESTORS ARE CAUTIONED NOT TO RELY UPON ANY INFORMATION NOT EXPRESSLY SET FORTH IN THIS MEMORANDUM.

MEMORANDUM NOT LEGAL ADVICE — PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE PARTNERSHIP AS LEGAL OR TAX ADVICE. EACH INVESTOR MUST RELY SOLELY UPON HIS OR HER OWN REPRESENTATIVES (INCLUDING HIS OR HER LEGAL COUNSEL, ACCOUNTANT AND OTHER PERSONAL ADVISORS) AS TO LEGAL, TAX, IMMIGRATION, BUSINESS AND RELATED MATTERS CONCERNING A PROSPECTIVE INVESTMENT IN THE PARTNERSHIP.

PRIVATE MEMORANDUM — THIS MEMORANDUM HAS BEEN PREPARED SOLELY FOR THE INFORMATION OF PERSONS AND ENTITIES INTERESTED IN THE PRIVATE PLACEMENT OF THE INTERESTS OFFERED HEREBY AND MAY NOT BE REPRODUCED OR USED FOR ANY OTHER PURPOSE. ANY REPRODUCTION OR DISTRIBUTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, WITHOUT THE PRIOR WRITTEN CONSENT OF THE PARTNERSHIP IS PROHIBITED. BY ACCEPTING THIS MEMORANDUM, PROSPECTIVE INVESTORS AGREE THAT THEY WILL NOT DISCLOSE ITS CONTENTS TO ANYONE OTHER THAN THEIR PROFESSIONAL ADVISERS, OR REPRODUCE IT, IN WHOLE OR IN PART, WITHOUT THE PRIOR WRITTEN CONSENT OF THE PARTNERSHIP.

DETERMINATION OF OFFERING PRICE — THE PRICE OF THE MINIMUM INTEREST WAS DETERMINED BY THE PARTNERSHIP TO ASSIST INVESTORS WHO WISH TO MEET THE REQUIREMENTS UNDER THE ACT.

BEST EFFORTS OFFERING — ALL INTERESTS ARE OFFERED BY THE PARTNERSHIP ON A "BEST EFFORTS" NON-MINIMUM BASIS. THERE IS NO ASSURANCE THAT ALL OR ANY OF THE DESIRED CAPITAL WILL BE RAISED THROUGH THE OFFERING. THE OFFERING HAS NO MINIMUM AMOUNT AND THE PARTNERSHIP WILL UTILIZE PROCEEDS AS THEY ARE RECEIVED. SEE PAGE 15 COMPLETION OF PROJECT.

LIQUIDITY AND CAPITAL RESOURCES — MANAGEMENT BELIEVES THAT THE MAXIMUM PROCEEDS OF THIS OFFERING WILL GENERATE SUFFICIENT CAPITAL TO CONDUCT THE BUSINESS OF THE PARTNERSHIP UNTIL THE PLANNED OPENING OF THE COTTAGES, TOWNHOUSES, SERVICES CENTER, AUDITORIUM AND PARKING FACILITY.

MISCELLANEOUS — THE DESCRIPTION IN THIS MEMORANDUM OF ANY AGREEMENT, DOCUMENT, STATUTE, RULE, REGULATION, OR PROPOSED LEGISLATION IS NOT DESIGNED TO BE COMPLETE AND IS, THEREFORE, QUALIFIED IN ITS

ENTIRETY BY REFERENCE TO THE RESPECTIVE AGREEMENT, DOCUMENT, STATUTE, RULE, REGULATION OR PROPOSED LEGISLATION.

FORWARD-LOOKING STATEMENTS AND PROJECTIONS — THIS OFFERING MEMORANDUM CONTAINS FORWARD-LOOKING STATEMENTS AND PROJECTIONS THAT MAY ADDRESS, AMONG OTHER THINGS, SKI RESORT DEVELOPMENT STRATEGY, PROJECTED CONSTRUCTION TIMES, EXPANSION STRATEGY, DEVELOPMENT OF SERVICES, USE OF PROCEEDS, PROJECTED REVENUE AND CAPITAL EXPENDITURES, OPERATING COSTS, LIQUIDITY, DEVELOPMENT OF ADDITIONAL REVENUE SOURCES, DEVELOPMENT AND MAINTENANCE OF PROFITABLE MARKETING AND MANAGEMENT AND MAINTENANCE ALLIANCES, ABILITY TO DEVELOP "RESORT" IDENTIFICATION, AND NATIONAL AND INTERNATIONAL EXPANSION. THESE STATEMENTS MAY BE FOUND IN THE SECTIONS OF THIS PRIVATE PLACEMENT MEMORANDUM ENTITLED "SUMMARY OF OFFERING," "RISK FACTORS," "USE OF PROCEEDS," "THE PARTNERSHIP'S BUSINESS PLAN" AND IN THIS PRIVATE PLACEMENT MEMORANDUM GENERALLY. ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THESE FORWARD-LOOKING STATEMENTS AND PROJECTIONS AS A RESULT OF VARIOUS FACTORS, INCLUDING ALL THE RISKS DISCUSSED IN "RISK FACTORS" AND ELSEWHERE IN THIS PRIVATE PLACEMENT MEMORANDUM.

SPECULATIVE OFFERING AND RISK — THE INTERESTS OFFERED HEREBY SHOULD BE CONSIDERED ONLY BY PERSONS WHO CAN AFFORD TO SUSTAIN A LOSS OF THEIR ENTIRE INVESTMENT. INVESTORS WILL BE REQUIRED TO REPRESENT THAT THEY ARE FAMILIAR WITH AND UNDERSTAND THE TERMS OF THIS OFFERING, AND THAT THEY OR THEIR PURCHASER REPRESENTATIVES HAVE SUCH KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS THAT THEY ARE CAPABLE OF EVALUATING THE MERITS AND RISKS OF THIS INVESTMENT. INVESTORS SHOULD BE AWARE THAT THEIR INVESTMENT IN THE LIMITED PARTNERSHIP MAY BE ILLIQUID INDEFINITELY, UNLESS PORTIONS OR ALL OF THE PARTNERSHIP PROPERTY IS SOLD OR ANOTHER OPTIONAL EXIT STRATEGY IS EMPLOYED SUCCESSFULLY, AS SET FORTH FURTHER IN THE FINANCIAL DATA AND LIMITED PARTNERSHIP AGREEMENT.

RESTRICTIONS ON TRANSFERS — NO INTERESTS MAY BE RESOLD OR OTHERWISE DISPOSED OF BY AN INVESTOR UNLESS, IN THE OPINION OF COUNSEL TO THE PARTNERSHIP, REGISTRATION UNDER THE APPLICABLE FEDERAL OR STATE SECURITIES LAWS IS NOT REQUIRED OR COMPLIANCE IS MADE WITH SUCH REGISTRATION REQUIREMENTS. RESTRICTIONS ON TRANSFER OF INTERESTS AND REDEMPTION OF INTERESTS MAY ALSO ARISE FROM THE REQUIREMENTS OF AND COMPLIANCE WITH IMMIGRATION LAWS AND REGULATIONS AND THE LIMITED PARTNERSHIP AGREEMENT (SEE LIMITED PARTNERSHIP AGREEMENT).

LIMITS ON DISCLOSURE — THE OFFERING MATERIALS ARE SUBMITTED IN CONNECTION WITH THE PRIVATE OFFERING OF THE INTERESTS AND DO NOT CONSTITUTE AN OFFER OR SOLICITATION BY ANYONE IN ANY JURISDICTION IN WHICH SUCH AN OFFER OR SOLICITATION IS NOT AUTHORIZED. ANY REPRODUCTION OR DISTRIBUTION OF THE OFFERING MATERIALS IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF THEIR CONTENTS, WITHOUT THE PRIOR WRITTEN CONSENT OF THE PARTNERSHIP IS PROHIBITED. ANY PERSON ACTING CONTRARY TO THE FOREGOING RESTRICTIONS MAY PLACE HIMSELF AND THE PARTNERSHIP IN VIOLATION OF FEDERAL OR STATE SECURITIES LAWS.

VOIDABILITY OF SALES – THE INTERESTS OFFERED HEREIN WILL BE SOLD TO AND ACQUIRED BY A PURCHASER IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER FEDERAL AND CERTAIN STATES SECURITIES LAWS AND REGULATIONS, AND MAY NOT BE OFFERED FOR SALE OR RESOLD EXCEPT IN A TRANSACTION EXEMPT FROM SAID SECURITIES LAWS AND REGULATIONS, OR PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT HEREUNDER. SALES MADE PURSUANT TO EXEMPTIONS FROM FEDERAL AND STATE SECURITIES LAWS ARE VOIDABLE BY EACH SUBSCRIBER UPON NOTICE TO THE GENERAL PARTNER GIVEN WITHIN THREE DAYS FOLLOWING THE LATER OF RECEIPT BY THE SUBSCRIBER OF THIS MEMORANDUM OR THE RECEIPT AND ACCEPTANCE BY THE GENERAL PARTNER OF THE SUBSCRIBER'S EXECUTED SUBSCRIPTION AGREEMENT. THE LIMITED PARTNERSHIP WILL OFFER SUCH RESCISSION RIGHT TO EACH SUBSCRIBER, IRRESPECTIVE OF THE SUBSCRIBER'S STATE OR COUNTRY OF RESIDENCY, NOTWITHSTANDING THE LACK OF SUCH REQUIREMENTS UNDER FEDERAL OR STATE SECURITIES LAWS.

OFFERING BEING MADE PURSUANT TO CERTAIN STATES SECURITIES LAW REGISTRATION EXCEPTIONS —ANY AND ALL NOTICES UNDER THIS SECTION SHOULD BE SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE LIMITED PARTNERSHIP IN CARE OF WILLIAM STENGER, 4850 VT ROUTE 242, JAY, VERMONT 05859.

RESTRICTIVE INFORMATION:
INTERESTS WILL BE OFFERED WITHOUT REGISTRATION UNDER THE SECURITIES ACT OR STATE SECURITIES ACTS, AS SUMMARIZED BELOW, AND MORE SPECIFICALLY DETAILED HEREUNDER:

WITHIN THE UNITED STATES, IN RELIANCE UPON RULE 506 OF REGULATION "D" PROMULGATED BY THE SEC, ONLY TO PERSONS WHO ARE "ACCREDITED INVESTORS" WITHIN THE MEANING OF RULE 501 PROMULGATED BY THE SEC; AND,

OUTSIDE THE UNITED STATES, IN RELIANCE UPON REGULATION "S" PROMULGATED BY THE SEC ONLY TO PERSONS WHO ARE NOT "U.S. PERSONS" WITHIN THE MEANING OF SUCH REGULATIONS.

FOR THE PURPOSES OF THIS MEMORANDUM, "U.S. PERSON" MEANS ANY NATURAL PERSON RESIDENT IN THE UNITED STATES.

THE INCLUSION OF INFORMATION FOR EACH STATE IN THIS MEMORANDUM IS NOT INTENDED TO IMPLY THAT THE INTERESTS COVERED BY THIS MEMORANDUM ARE TO BE OFFERED FOR SALE IN EVERY STATE, BUT IS MERELY A PRECAUTION IN THE EVENT THIS MEMORANDUM MAY BE TRANSMITTED INTO ANY STATE OTHER THAN BY THE ISSUER.

FOR RESIDENTS IN ALL STATES:
THE SECURITIES OFFERED HEREBY HAVE NEITHER BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 SECURITIES ACT"), NOR PURSUANT TO THE SECURITIES LAWS OF ANY STATE, AND ARE THEREFORE BEING OFFERED AND WILL BE SOLD TO AND ACQUIRED BY PURCHASERS IN TRANSACTIONS WHICH THE PARTNERSHIP BELIEVES TO BE EXEMPT FROM THE REGISTRATION REQUIREMENTS OF THE 1933 SECURITIES ACT PURSUANT, TO §§3(B) AND 4(2) OR OTHER APPLICABLE SECTION(S) THEREOF, AND OF THE SECURITIES LAWS OF THE STATES IN WHICH THE INTERESTS MAY BE OFFERED FOR SALE (PURSUANT TO THE EXEMPTIONS IDENTIFIED BELOW). ONCE PURCHASED BY A SUBSCRIBER, THESE SECURITIES MAY NOT BE RE-OFFERED FOR SALE OR RE-SOLD OTHER THAN BY AN EFFECTIVE REGISTRATION STATEMENT OR IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER THE APPLICABLE LAW. THE SECURITIES HAVE NEITHER BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES REGULATORY AUTHORITY, NOR HAS THAT COMMISSION OR ANY SUCH AUTHORITY PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

FOR VERMONT RESIDENTS ONLY:
THE SALE OF LIMITED PARTNERSHIP INTERESTS OFFERED AND DESCRIBED IN THIS MEMORANDUM WILL ONLY BE SOLD TO AND ACQUIRED BY INVESTORS IN A TRANSACTION EXEMPT FROM REGISTRATION OF SECURITIES WITH THE VERMONT DEPARTMENT OF BANKING, INSURANCE, SECURITIES AND HEALTH CARE ADMINISTRATION UNDER SECTION 5202(13)(C) OR OTHER APPLICABLE SECTION(S) OF THE VERMONT UNIFORM SECURITIES ACT (2002) (THE "VERMONT ACT"). AS SUCH, THE LIMITED PARTNERSHIP INTERESTS HAVE NOT BEEN REGISTERED AS SECURITIES UNDER THE VERMONT ACT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

FOR CALIFORNIA RESIDENTS ONLY:
THE SALE OF THE INTERESTS DESCRIBED IN THIS MEMORANDUM HAVE NOT BEEN QUALIFIED WITH THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA AND THE ISSUANCE OF SUCH INTERESTS OR THE PAYMENT OR THE RECEIPT OF CONSIDERATION THEREFORE PRIOR TO SUCH QUALIFICATION IS UNLAWFUL, UNLESS THE SALE THEREOF IS EXEMPT UNDER APPLICABLE LAW. THE PARTNERSHIP IS RELYING ON THE EXEMPTION FROM SUCH QUALIFICATION PROVIDED BY SECTION 25102(F) OR OTHER APPLICABLE SECTION(S) OF THE CALIFORNIA CORPORATIONS CODE.

FOR FLORIDA RESIDENTS ONLY:
THE INTERESTS OFFERED HEREIN WILL BE SOLD TO AND ACQUIRED BY INVESTORS IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER SECTION 517.061 OR OTHER APPLICABLE SECTION(S) OF THE FLORIDA SECURITIES ACT (THE "FLORIDA ACT"). THE INTERESTS HAVE NOT BEEN REGISTERED UNDER THE FLORIDA ACT. IN ADDITION, IF SALES ARE MADE TO FIVE OR MORE PERSONS IN FLORIDA, ALL PURCHASERS WHO ARE RESIDENTS OF FLORIDA HAVE THE PRIVILEGE OF VOIDING A PURCHASE OF INTERESTS WITHIN THREE DAYS AFTER THE FIRST TENDER OF CONSIDERATION IS MADE BY THE PURCHASER TO THE ISSUER, AN AGENT OF THE ISSUER, OR AN ESCROW AGENT, OR WITHIN THREE DAYS AFTER THE AVAILABILITY OF THIS PRIVILEGE IS COMMUNICATED TO THE PURCHASER, WHICHEVER OCCURS LATER. THIS SALE IS BEING MADE IN FLORIDA.

FOR PERSONS RESIDENT OUTSIDE THE UNITED STATES OF AMERICA ONLY:
THE INTERESTS ARE BEING OFFERED IN ACCORDANCE WITH REGULATION "S" PROMULGATED BY THE SECURITIES AND EXCHANGE COMMISSION PURSUANT TO THE SECURITIES ACT OF 1933. THIS OFFERING MEMORANDUM DOES

NOT CONSTITUTE AN OFFER OR SOLICITATION IN THE UNITED STATES OF AMERICA OR ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT PERMITTED UNDER APPLICABLE LAW OR TO ANY U.S. PERSON OR INDIVIDUAL WHO DOES NOT POSSESS THE QUALIFICATIONS DESCRIBED IN THIS MEMORANDUM.

FOR UK CITIZENS RESIDENT IN THE UNITED KINGDOM:

JAY PEAK LODGE AND TOWNHOUSES L.P. IS A LIMITED PARTNERSHIP ORGANIZED IN VERMONT, USA, AND DOES NOT FALL WITHIN THE DEFINITION OF A "COLLECTIVE INVESTMENT SCHEME" FOR THE PURPOSES OF THE UK FINANCIAL SERVICES AND MARKETS ACT OF 2000 AS RECITED, AND AS AMENDED. THIS OFFERING HAS ADDITIONALLY BEEN PREPARED IN COMPLIANCE WITH SECTION 21 OF THE SAID ACT, AND CONTAINS ADDITIONAL RISK WARNINGS ARISING THEREFROM, AND DIFFERS TO RISK WARNINGS RELEVANT TO INVESTORS FOR THE SAME INVESTMENT FROM OUTSIDE THE UNITED KINGDOM.

INTERESTS WILL NOT BE OFFERED TO ANY PERSON EXCEPT AS SET FORTH ABOVE. ANY PERSON WISHING TO BUY AN INTEREST WILL BE REQUIRED TO DEMONSTRATE THAT HE OR SHE IS AN ELIGIBLE INVESTOR IN ACCORDANCE WITH THE FOREGOING. THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER TO SELL TO, OR A SOLICITATION OF AN OFFER TO BUY FROM, ANY PERSON IN ANY JURISDICTION TO WHOM SUCH AN OFFER OR SOLICITATION WOULD BE UNLAWFUL.

**INTENTIONALLY LEFT BLANK**

## INVESTOR SUITABILITY STANDARDS

A PURCHASE OF INTERESTS IN THIS OFFERING INVOLVES A HIGH DEGREE OF RISK AND IS NOT A SUITABLE INVESTMENT FOR ALL POTENTIAL INVESTORS. SEE "RISK FACTORS." ACCORDINGLY, THE PARTNERSHIP WILL OFFER AND SELL INTERESTS ONLY TO INVESTORS WHO ARE "ACCREDITED INVESTORS" AS THAT TERM IS DEFINED IN REGULATION D AS PROMULGATED UNDER THE 1933 SECURITIES ACT, UNLESS THE INVESTOR IS NOT RESIDENT IN THE UNITED STATES AT THE TIME OF THE OFFERING NOR AT THE TIME OF SALE OF A LIMITED PARTNERSHIP INTEREST TO THE INVESTOR, WHEREUPON REGULATION S OF THE 1933 SECURITIES ACT SHALL APPLY. ANY PERSON WISHING TO BUY AN INTEREST WILL BE REQUIRED TO DEMONSTRATE THAT HE OR SHE IS AN ELIGIBLE INVESTOR IN ACCORDANCE WITH THE FOREGOING. THE PARTNERSHIP HAS THE UNCONDITIONAL RIGHT TO REJECT ANY SUBSCRIPTION.

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER TO SELL TO, OR A SOLICITATION OF AN OFFER TO BUY FROM, ANY PERSON IN ANY JURISDICTION TO WHOM SUCH AN OFFER OR SOLICITATION WOULD BE UNLAWFUL. IN ADDITION TO RESTRICTIONS ON TRANSFER IMPOSED BY THE PARTNERSHIP, AN INVESTOR SEEKING TO TRANSFER HIS INTERESTS SUBSEQUENT TO HIS INITIAL INVESTMENT WILL BE SUBJECT TO THE PROVISIONS OF THE FEDERAL AND STATE SECURITIES LAWS AND THE TRANSFER RESTRICTIONS WHICH MAY BE IMPOSED PURSUANT TO SAID LAWS.

THE OFFER AND SALE OF INTERESTS ARE EXEMPT FROM THE REGISTRATION AND PROSPECTUS DELIVERY REQUIREMENTS OF THE 1933 SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO EXEMPTIONS THEREIN. INVESTMENT IN THE INTERESTS IS SUITABLE ONLY FOR THOSE WHO HAVE ADEQUATE MEANS OF PROVIDING FOR THEIR CURRENT NEEDS AND PERSONAL CONTINGENCIES AND HAVE NO NEED FOR LIQUIDITY IN AN INVESTMENT OF THIS TYPE. PRIOR TO THE PURCHASE OF THE INTERESTS, EACH PROSPECTIVE PURCHASER WILL BE REQUIRED TO REPRESENT THAT HE MEETS EACH OF THE FOLLOWING REQUIREMENTS: (A) HE HAS THE REQUISITE KNOWLEDGE OR HAS RELIED UPON THE ADVICE OF HIS OWN PROFESSIONAL ADVISOR(S) WITH REGARD TO THE TAX AND OTHER CONSIDERATIONS INVOLVED IN MAKING SUCH AN INVESTMENT AND (B) HE IS ACQUIRING THE INTERESTS FOR INVESTMENT AND NOT WITH A VIEW TO RESALE OR DISTRIBUTION THEREOF.

PRIOR TO A PURCHASE OF INTERESTS, EACH PROSPECTIVE PURCHASER WILL BE REQUIRED TO REPRESENT THAT HE IS AN "ACCREDITED INVESTOR" AS DEFINED IN REGULATION D, UNLESS THE INVESTOR IS NOT RESIDENT IN THE UNITED STATES AT THE TIME OF THE OFFERING NOR AT THE TIME OF SALE OF A LIMITED PARTNERSHIP INTEREST TO THE INVESTOR, WHEREUPON REGULATION S OF THE 1933 SECURITIES ACT SHALL APPLY AND NO SUCH REPRESENTATION IS NECESSARY. AMONG OTHER CATEGORIES, AN "ACCREDITED INVESTOR" IS AN INVESTOR WHO, AT THE TIME OF PURCHASE OF THE INTERESTS, MEETS ONE OF THE FOLLOWING REQUIREMENTS:

(I)   ANY NATURAL PERSON WHOSE INDIVIDUAL NET WORTH, OR JOINT NET WORTH WITH THAT PERSON'S SPOUSE, AT THE TIME OF THE PURCHASE EXCEEDS $ 1,000,000, NOT INCLUDING RESIDENCE, HOME FURNISHINGS AND AUTOMOBILES;

(II)   ANY NATURAL PERSON WHO HAD AN INDIVIDUAL INCOME IN EXCESS OF $200,000 EACH OF THE TWO MOST RECENT YEARS OR JOINT INCOME WITH THAT PERSON'S SPOUSE IN EXCESS OF $300,000 IN EACH OF THE TWO MOST RECENT YEARS AND WHO REASONABLY EXPECTS TO REACH THE SAME INCOME LEVEL IN THE CURRENT YEAR; OR

(III)   ANY ENTITY IN WHICH ALL OF THE EQUITY OWNERS ARE ACCREDITED INVESTORS.

IF, IN THE OPINION OF THE LIMITED PARTNERSHIP, A PROSPECTIVE PURCHASER LACKS THE KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS SO THAT HE IS NOT CAPABLE OF EVALUATING THE MERITS AND RISKS INVOLVED IN THE PURCHASE AND OWNERSHIP OF THE LIMITED PARTNERSHIP INTEREST, THE LIMITED PARTNERSHIP MAY REQUIRE THE PROSPECTIVE PURCHASER TO USE THE SERVICES OF A PURCHASER REPRESENTATIVE TO SERVE THE INVESTOR IN EVALUATING THE MERITS AND RISKS OF THE PROSPECTIVE INVESTMENT. IF SUCH A PURCHASER REPRESENTATIVE IS REQUIRED AND USED, THE LIMITED PARTNERSHIP WILL PROVIDE THE PROSPECTIVE INVESTOR THE APPROPRIATE FORMS FOR BOTH THE PROSPECTIVE INVESTOR AND PURCHASER REPRESENTATIVE TO SIGN AND RETURN TO THE LIMITED PARTNERSHIP.

PRIOR TO PURCHASE, AN INVESTOR QUESTIONNAIRE (EXHIBIT B) AND A SUBSCRIPTION AGREEMENT (EXHIBIT C), INCLUDING A CONSENT TO THE LIMITED PARTNERSHIP AGREEMENT, MUST BE SIGNED AND DELIVERED BY A PROSPECTIVE PURCHASER TO THE PARTNERSHIP.

IF THE PARTNERSHIP IS INCORRECT IN ITS ASSUMPTION AS TO THE CIRCUMSTANCES OF A PARTICULAR PROSPECTIVE INVESTOR, THEN THE DELIVERY OF THIS MEMORANDUM TO SUCH PROSPECTIVE INVESTOR SHALL NOT BE DEEMED TO BE AN OFFER AND THIS MEMORANDUM SHALL BE RETURNED TO THE PARTNERSHIP IMMEDIATELY.

THE SUITABILITY STANDARDS DEFINED ABOVE REPRESENT SUITABILITY STANDARDS FOR PROSPECTIVE INVESTORS. EACH PROSPECTIVE INVESTOR SHOULD DETERMINE WHETHER AN INVESTMENT IN THE PARTNERSHIP IS APPROPRIATE IN VIEW OF HIS OR HER PARTICULAR CIRCUMSTANCES.

**INTENTIONALLY LEFT BLANK**

## IMMIGRATION

THE IMMIGRATION INFORMATION CITED IN THIS OFFERING MEMORANDUM IS NOT IMMIGRATION ADVICE TO THE FOREIGN INVESTOR. EACH FOREIGN INVESTOR SHOULD CONSULT HIS OR HER OWN INDEPENDENT IMMIGRATION COUNSEL REGARDING IMPLICATIONS AND BENEFITS OR OTHERWISE OF INVESTING IN THE PARTNERSHIP.

### OVERVIEW

THE EB-5, FIFTH EMPLOYMENT-BASED VISA PREFERENCE, IS INTENDED TO ENCOURAGE THE FLOW OF CAPITAL INTO THE U.S. ECONOMY AND TO PROMOTE EMPLOYMENT OF U.S. WORKERS. TO ACCOMPLISH THESE GOALS AND SO THAT FOREIGN INVESTORS MAY OBTAIN IMMIGRATION BENEFITS FOR HAVING MADE AN INVESTMENT, THE PROGRAM MANDATES THE MINIMUM CAPITAL THAT FOREIGN INVESTORS MUST CONTRIBUTE AND IT MANDATES THAT 10 FULL-TIME JOBS MUST BE CREATED ON ACCOUNT OF EACH INVESTMENT. IN ADDITION TO THE RETURN THAT INVESTORS HOPE TO ACHIEVE ON THEIR INVESTMENT, FOREIGN INVESTORS AND THEIR QUALIFYING FAMILY MEMBERS ARE OFFERED THE PROSPECT, BUT NOT THE GUARANTEE, OF LAWFUL PERMANENT RESIDENCE IN THE UNITED STATES.

THE JAY PEAK PROJECT HAS BEEN STRUCTURED SO THAT INVESTORS MAY MEET THE REQUIREMENTS OF THE EB-5 PROGRAM OF THE ACT AND QUALIFY UNDER THIS PROJECT (THE "PROJECT") TO BECOME ELIGIBLE FOR ADMISSION TO THE UNITED STATES OF AMERICA AS LAWFUL PERMANENT RESIDENTS WITH THEIR SPOUSES AND UNMARRIED, MINOR CHILDREN.

THE PROJECT HAS BEEN DESIGNED TO QUALIFY UNDER PROVISIONS IN THE LAW THAT PERMIT A REDUCED INVESTMENT AND PERMIT A BROADER ANALYSIS OF JOBS CREATED THAN WOULD OTHERWISE BE PERMITTED. WITH RESPECT TO THE MINIMUM INVESTMENT REQUIRED, THE PROJECT UTILIZES THE PROVISIONS OF THE ACT CONCERNING A TARGETED EMPLOYMENT AREA. TO MEET EMPLOYMENT CREATION REQUIREMENTS, THE PROJECT RELIES UPON THE FACT THAT JAYPEAK IS WITHIN A REGIONAL CENTER AUTHORIZED BY THE ACT CREATED UNDER A PILOT PROGRAM *(SEE IMMIGRATION RISK FACTORS, PAGE 28)*

### FOR EB-5 INVESTORS

FOREIGN INVESTORS ARE ALSO SPECIFICALLY DIRECTED TO CERTAIN IMPORTANT MATTERS LISTED BOTH IN THE IMMIGRATION RISK FACTORS PAGE 30, AND HEREUNDER:

LEGAL COUNSEL: THE INVESTOR SHALL HIRE INDEPENDENT COUNSEL FOR IMMIGRATION PROCESSING AND OTHER LEGAL MATTERS. THE INVESTOR SHALL BE RESPONSIBLE FOR PAYMENT OF ALL LEGAL FEES AND COSTS INCLUDING UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS" OR "CIS") APPLICATION FEES.

FILING THE IMMIGRANT PETITIONS: JAY PEAK LODGE AND TOWNHOUSES L.P., THE GENERAL PARTNER AND THE RESORT OWNER SHALL USE THEIR REASONABLE BEST EFFORTS TO ASSIST THE FOREIGN INVESTORS' LEGAL COUNSEL WITH THE FILING OF INVESTORS' I-526 AND I-829 PETITIONS, AND VERIFYING REQUIRED DIRECT AND INDIRECT EMPLOYMENT, UNTIL REMOVAL OF SUCH INVESTORS' CONDITIONAL PERMANENT RESIDENCY.

IN THE EVENT AN INVESTOR'S I-526 PETITION IS DENIED AT ANY TIME, THE INVESTOR'S RIGHTS ARE LIMITED SOLELY TO THE RETURN OF THE INVESTOR'S $500,000 CAPITAL CONTRIBUTION FROM THE PARTNERSHIP, PLUS $25,000 OF THE $50,000 ADMINISTRATION FEE FROM THE RESORT OWNER, WITHIN NINETY (90) DAYS OF WRITTEN REQUEST THEREFOR TO THE GENERAL PARTNER. IN SUCH CASE $25,000 OF THE ADMINISTRATION FEE WILL BE KEPT BY THE RESORT OWNER TO PARTIALLY COMPENSATE IT FOR ITS COSTS INCURRED TO DATE.

UPON SUBSCRIBING TO THIS OFFERING AND BECOMING A LIMITED PARTNER, IT IS AT THE SOLE RESPONSIBILITY AND RISK OF THE FOREIGN INVESTOR TO PROMPTLY FILE THEIR I-526 PETITION. THERE IS NO REFUND OF THE CAPITAL CONTRIBUTION OF $500,000 OR THE ADMINISTRATION FEE OF $50,000 FOR FAILURE OF THE FOREIGN INVESTOR TO FILE THE I-526 PETITION. IT IS FURTHER AT THE SOLE RESPONSIBILITY AND OBLIGATION OF THE LIMITED PARTNER TO TIMELY NOTIFY THE GENERAL PARTNER AT LEAST 90 (NINETY) DAYS PRIOR TO THE DUE DATE OF FILING THEIR I-829

PETITION SO TO ENABLE THE GENERAL PARTNER ADEQUATE TIME TO PROPERLY PROVIDE SUPPORTING DOCUMENTATION. THE GENERAL PARTNER SHALL NOT BE LIABLE IN ANY MANNER, COST, OR FOR ANY OTHER LIABILITY FOR THE FAILURE OF LIMITED PARTNER TO TIMELY PROVIDE THE DUE FILING DATE OF THE I-829 PETITION FILING.

IF THE REGIONAL CENTER PILOT PROGRAM LAPSES, FOR EACH INVESTOR WHOSE CASE IS FILED WITH USCIS PRIOR TO THAT DATE THEIR $500,000 CAPITAL CONTRIBUTION SHALL REMAIN INVESTED IN THE PARTNERSHIP PROVIDED:

1. THE REGIONAL CENTER PILOT PROGRAM IS REAUTHORIZED RETROACTIVELY OR IS PENDING REAUTHORIZATION WITHIN A TWELVE MONTH PERIOD FOLLOWING ITS LAPSE, AND THE INVESTOR'S I-526 PETITION IS IN DUE COURSE ADJUDICATED;

OR

2. LEGISLATION IS ENACTED OR PENDING PROVIDING SUBSTANTIALLY SIMILAR IMMIGRATION BENEFITS TO INVESTORS AS UNDER THE LAPSED REGIONAL CENTER PILOT PROGRAM AND EB-5 PROGRAM WITHIN A TWELVE MONTH PERIOD FOLLOWING THE REGIONAL CENTER PILOT PROGRAM'S LAPSE, AND THE INVESTOR'S I-526 PETITION IS IN DUE COURSE ADJUDICATED.

IF NEITHER OF THE EVENTS DESCRIBED UNDER 1 AND 2 OCCUR, THE INVESTOR AT HIS OPTION MAY EITHER REMAIN INVESTED IN THE PROJECT, OR REQUEST IN WRITING A REFUND OF THE CAPITAL CONTRIBUTION OF $500,000. UPON RECEIPT OF A REQUEST OF REFUND TO THE GENERAL PARTNER, THE CAPITAL CONTRIBUTION WILL BE REFUNDED BY THE LIMITED PARTNERSHIP WITHIN A PERIOD OF 90 DAYS FROM RECEIPT OF SUCH REQUEST AND THE INVESTOR'S INTEREST IN THE LIMITED PARTNERSHIP SHALL AUTOMATICALLY BE TERMINATED AND THE INVESTOR SHALL NO LONGER HAVE ANY OF THE RIGHTS AND BENEFITS OF OWNERSHIP OF AN INTEREST OR ANY RIGHT TO PARTICIPATE IN ANY MANNER WHATSOEVER IN THE AFFAIRS OF THE PARTNERSHIP. THE INVESTOR'S RIGHTS ARE LIMITED SOLELY TO THE RETURN OF THEIR CAPITAL CONTRIBUTION OF $500,000.

**INTENTIONALLY LEFT BLANK**

## SUMMARY OF THE OFFERING

### INTRODUCTION

THIS SUMMARY HIGHLIGHTS AND OUTLINES CERTAIN INFORMATION REGARDING THE OFFERING AND MAY NOT CONTAIN ALL THE INFORMATION THAT IS IMPORTANT TO YOU. THE SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE INFORMATION APPEARING IN THE LIMITED PARTNERSHIP AGREEMENT, AND ELSEWHERE IN THIS MEMORANDUM, INCLUDING THE EXHIBITS AND THE FINANCIAL DATA OF THE LIMITED PARTNERSHIP ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE (THE "FINANCIAL DATA") WHICH CONTAINS MORE DETAILED INFORMATION WITH RESPECT TO EACH OF THE MATTERS SUMMARIZED HEREIN AS WELL AS OTHER MATTERS NOT COVERED BY THIS SUMMARY. PROSPECTIVE INVESTORS SHOULD READ THE MEMORANDUM AND THE FINANCIAL DATA IN THEIR ENTIRETY, ALONG WITH THE LIMITED PARTNERSHIP AGREEMENT, THE SUBSCRIPTION AGREEMENT AND ACCOMPANYING DOCUMENTS AND EXHIBITS.

### SECURITIES BEING OFFERED

INVESTORS ARE BEING OFFERED THE OPPORTUNITY TO PURCHASE A LIMITED PARTNERSHIP INTEREST. ALL LIMITED PARTNERSHIP INTERESTS ARE PAYABLE IN FULL UPON SUBSCRIPTION (THE "OFFERING"). THERE IS NO MINIMUM SALE REQUIREMENT. IN ACCORD WITH THE PROVISIONS OF THE LIMITED PARTNERSHIP AGREEMENT, EXCEPTING FOR FOREIGN INVESTORS SEEKING QUALIFICATION AS AN "ALIEN ENTREPRENEUR", WHERE THE MINIMUM AMOUNT, CURRENTLY $500,000, IS SET BY LAW, THE GENERAL PARTNER MAY IN ITS SOLE DISCRETION BOTH WAVE THE MINIMUM SUBSCRIPTION AMOUNT, AND MAY RAISE THE MINIMUM AMOUNT IN THE FUTURE. THE OFFERING WILL CONTINUE UNTIL IT HAS RAISED $45,000,000 UNLESS TERMINATED SOONER BY THE GENERAL PARTNER IN ITS SOLE DISCRETION. THE MINIMUM AMOUNT REQUIRED OF FOREIGN INVESTORS MAY INCREASE IF THE LAW OR REGULATIONS OF THE EB-5 PROGRAM CONTROLLING THE MINIMUM AMOUNT ARE AMENDED.

### PURCHASE TERMS

THE MINIMUM CAPITAL CONTRIBUTION TO THE PARTNERSHIP TO PURCHASE A PARTNERSHIP INTEREST SHALL BE FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000) USD$ (HEREIN REFERRED TO AS A "CAPITAL CONTRIBUTION"). EACH PROSPECTIVE INVESTOR MUST ALSO PAY THE RESORT OWNER AN ADMINISTRATION FEE OF $50,000 IN CONSIDERATION FOR THE RESORT OWNER COVERING ALL THE COSTS AND EXPENSES INCURRED TO DEVELOP THE PROJECT AND PREPARE THIS OFFERING MEMORANDUM, FOR A TOTAL COST OF $550,000. THIS AMOUNT IS PAYABLE IN CASH AND IN FULL UPON APPLICATION TO BECOME A LIMITED PARTNER AND FULL PAYMENT MUST ACCOMPANY DELIVERY OF THE SUBSCRIPTION AGREEMENT. THE LIMITED PARTNERSHIP RESERVES THE RIGHT TO REJECT ANY SUBSCRIPTION IN WHOLE OR IN PART, IN ITS SOLE DISCRETION.

### EXEMPTION FROM REGISTRATION

THE LIMITED PARTNERSHIP IS CLAIMING EXEMPTION FROM REGISTRATION REQUIREMENTS UNDER SECTION 4(2) OF THE SECURITIES ACT OF 1933, AS AMENDED, AND RULE 506 OF REGULATION D PROMULGATED THEREUNDER, AND FOR PERSONS OUTSIDE THE UNITED STATES UNDER REGULATION S PROMULGATED BY THE SEC ONLY TO PERSONS WHO ARE NOT "US PERSONS" WITHIN THE MEANING OF THE REGULATIONS. ACCORDINGLY, NO REGISTRATION STATEMENT WILL BE FILED WITH THE SEC IN CONNECTION WITH THIS OFFERING AND SALE OF THE INTERESTS PURSUANT TO THIS MEMORANDUM. IN ADDITION, THIS OFFERING IS BEING MADE WITHOUT REGISTRATION UNDER THE SECURITIES LAWS OF ANY STATE OR ANY OTHER JURISDICTION.

PROSPECTIVE INVESTORS ARE INVITED TO MAKE AN INDEPENDENT EXAMINATION OF THE BOOKS, RECORDS AND OTHER DOCUMENTS OF THE LIMITED PARTNERSHIP, AND MAY QUESTION THE APPROPRIATE OFFICERS AND DIRECTORS OF THE GENERAL PARTNER TO THE EXTENT THAT SUCH INVESTORS DEEM IT NECESSARY IN THEIR SOLE DISCRETION TO ANALYZE THE RISKS INVOLVED WITH THIS INVESTMENT. PROSPECTIVE INVESTORS SHOULD NOT RELY ON THE LIMITED PARTNERSHIP OR THE GENERAL PARTNER, OR ANY OF THEIR EMPLOYEES, AGENTS OR AUTHORIZED REPRESENTATIVES, WITH RESPECT TO THE JUDGMENTS RELATING TO THEIR INVESTMENT IN THE LIMITED PARTNERSHIP. PROSPECTIVE INVESTORS SHOULD RETAIN THEIR OWN PROFESSIONAL ADVISORS TO REVIEW

AND EVALUATE THE ECONOMIC, TAX AND OTHER CONSEQUENCES OF AN INVESTMENT IN THE LIMITED PARTNERSHIP. THE LIMITED PARTNERSHIP WILL MAKE AVAILABLE, UPON REASONABLE NOTICE, BUT SHALL NOT INCUR ANY UNREASONABLE EXPENSES, TO PROVIDE ANY OTHER DOCUMENTS OR INFORMATION AVAILABLE TO THE LIMITED PARTNERSHIP CONCERNING THE AFFAIRS OF THE LIMITED PARTNERSHIP WHICH A PROSPECTIVE INVESTOR REQUESTS, SUBJECT TO RECEIPT OF REASONABLE ASSURANCES THAT SUCH MATTERS WILL BE MAINTAINED IN CONFIDENCE BETWEEN THE INVESTOR AND ITS PROFESSIONAL ADVISORS.

## THE LIMITED PARTNERSHIP

JAY PEAK LODGE AND TOWNHOUSES L.P. IS A NEWLY FORMED VERMONT LIMITED PARTNERSHIP WITH ITS PRINCIPAL PLACE OF BUSINESS IN JAY, VERMONT. THE GENERAL PARTNER IS JAY PEAK GP SERVICES LODGE INC., A VERMONT CORPORATION.

## THE GENERAL PARTNER

JAY PEAK GP SERVICES LODGE, INC. IS A VERMONT CORPORATION WITH ITS PRINCIPAL PLACE OF BUSINESS IN JAY, VERMONT (THE "GENERAL PARTNER"). THE GENERAL PARTNER WILL BE RESPONSIBLE FOR APPROVING LIMITED PARTNERS AS LIMITED PARTNERS IN THE PARTNERSHIP, FOR THE DAY TO DAY DECISIONS ON BEHALF OF THE LIMITED PARTNERSHIP AND FOR MANAGING THE CONSTRUCTION OF THE NEW BUILDINGS, INCLUDING THE TOWNHOUSES, COTTAGES, SKIER AND SUMMER SERVICES CENTER, MULTI-STORY PARKING FACILITY WITH RECREATION, AUDITORIUM AND ANY OTHER NECESSARY IMPROVEMENTS, INCLUDING APPLYING FOR AND OBTAINING ANY REQUIRED DEVELOPMENT AND CONSTRUCTION PERMITS. IN ADDITION, THE GENERAL PARTNER WILL BE RESPONSIBLE FOR MANAGING THE ASSETS OF THE PARTNERSHIP AND SUPERVISING THE TENANT COMPANIES LEASING PARTNERSHIP ASSETS AND OPERATING THE PROJECT IMPROVEMENTS, EITHER DIRECTLY OR THROUGH A CONTRACTED DESIGNEE. WILLIAM STENGER IS PRESIDENT OF THE GENERAL PARTNER.

## PROJECT SUMMARY

THE PROJECTED OVERALL COST OF THE PROJECT IS $60,000,000, OF WHICH $45 MILLION OF DEVELOPMENT COSTS WILL BE FINANCED PURSUANT TO THIS OFFERING MEMORANDUM, WITH THE BALANCE OF FUNDS OR VALUE OF $15.0 MILLION PROVIDED BY THE RESORT OWNER (SEE BUSINESS PLAN SECTION 2). JAY PEAK LODGE AND TOWNHOUSES L.P. WILL UNDERTAKE CERTAIN REAL ESTATE DEVELOPMENT AND BUSINESS ACTIVITIES WHICH WILL INCLUDE:

(1) ACQUISITION OF TITLE TO THREE (3) OR MORE PARCELS OF REAL ESTATE AT THE RESORT FROM THE RESORT OWNER, AND CONSTRUCTING AND ERECTING THREE (3) TOWNHOUSE BUILDINGS WITH TEN LIVING UNITS IN EACH THAT WILL BE OWNED BY THE PARTNERSHIP AND LEASED TO AND OPERATED AS VACATION RENTAL UNITS BY A TENANT TO BE APPROVED BY THE PARTNERSHIP (THE "TOWNHOUSES"); AND

(2) ON LAND RETAINED BY THE RESORT OWNER THAT SITS ADJACENT TO THE CHAMPIONSHIP GOLF COURSE AT THE RESORT, AND LEASED TO THE PARTNERSHIP UNDER ONE OR MORE GROUND LEASES, CONSTRUCTING AND ERECTING EIGHTY (80) GOLF AND MOUNTAIN COTTAGES WITH ONE, TWO OR MORE BEDROOMS IN EACH THAT WILL BE OWNED BY THE PARTNERSHIP AND LEASED TO AND OPERATED AS VACATION RENTAL UNITS BY A TENANT TO BE APPROVED BY THE PARTNERSHIP (THE "COTTAGES"); AND

(3) ON LAND RETAINED BY THE RESORT OWNER AT THE RESORT, DEVELOPING A SKIER AND SUMMER SERVICES CENTER (THE "SERVICES CENTER"), TO BE LEASED BY THE LIMITED PARTNERSHIP FROM THE RESORT OWNER FOR NOMINAL CONSIDERATION FROM THE RESORT OWNER AND SUBLEASING THE SERVICES CENTER AND ITS OPERATIONS FOR MARKET RENT TO A TENANT TO BE APPROVED BY THE PARTNERSHIP; AND

(4) ON LAND RETAINED BY THE RESORT OWNER AT THE RESORT, DEVELOPING A MULTI-STORY PARKING GARAGE WITH RECREATION ON THE TOP LEVEL, TO BE USED FOR LIMITED PARTNERSHIP AND PROJECT PARKING FACILITIES (THE "PARKING FACILITY"), TO BE LEASED BY THE LIMITED PARTNERSHIP FOR NOMINAL CONSIDERATION FROM THE RESORT OWNER AND SUBLEASED TO AN APPROVED TENANT; AND

(5) ON LAND RETAINED BY THE RESORT OWNER AT THE RESORT, DEVELOPING AN AUDITORIUM FOR CONCERTS AND EXHIBITIONS (THE "AUDITORIUM", AND TOGETHER WITH THE COTTAGES, TOWNHOUSES, PARKING FACILITY AND SERVICES CENTER, IS THE "PROJECT").

ALL QUALITY RESORT FACILITIES HAVE A CENTRAL COMMERCIAL ZONE AT THEIR CORE. FROM THIS NUCLEUS, VARYING AMENITIES AND RECREATIONAL FACILITIES EMANATE. AT JAY PEAK RESORT, THE CONSTRUCTION OF THE AUDITORIUM, SERVICES CENTER, PARKING FACILITY, TOWNHOUSES AND COTTAGES WILL SERVE TO STRENGTHEN THE CORE OF JAY PEAK RESORT AND CHAMPIONSHIP GOLF COURSE, WILL BRING NEW QUALITY ACCOMMODATIONS IN NATURAL SURROUNDINGS FOR THE GOLFING AND SKI COMMUNITY, AND WILL FURTHER ENHANCE THE USE OF THE JAY PEAK CHAMPIONSHIP GOLF COURSE, THE SKI AREA AND OTHER IMPROVEMENTS AT THE RESORT. EACH COTTAGE AND TOWNHOUSE WILL BE ADJACENT TO THE GOLF COURSE OR SKI AREA AND WILL HAVE A VIEW OF THE MOUNTAIN OR THE VALLEY. SINCE CONNECTION WITH THE ENVIRONMENT IS SO IMPORTANT TO THE JAY PEAK THEME, OCCUPANCY IN THE COTTAGES AND TOWNHOUSES IS PROJECTED TO BE HIGH, AS THESE UNITS WILL HAVE A YEAR ROUND USE (WITH THE COTTAGES BECOMING WINTER SKI CHALETS DURING THE WINTER SEASON), AND AIDING THE FURTHER EXPANSION AND TRANSITION OF THE JAY PEAK RESORT INTO AN "ALL SEASONS RESORT". IT IS PROJECTED THAT JAY PEAK LODGE AND TOWNHOUSES L.P. WILL STIMULATE ECONOMIC DEVELOPMENT AND CREATE MANY NEW PERMANENT JOBS AT THE RESORT, IN THE GREATER JAY PEAK REGION, WITHIN THE STATE OF VERMONT REGIONAL CENTER AND WITHIN THE UNITED STATES, AND WILL WITH THE COTTAGES, SERVICES CENTER AND AUDITORIUM IN PARTICULAR ATTRACT ADDITIONAL GUESTS DURING THE NON-SKI SEASON, AS WELL AS BROADEN THE ACTIVITIES FOR THE SKI AND GOLF CLIENTELE OF THE RESORT.

### JAY PEAK MARKET REVIEW

WITH JAY PEAK'S DEVELOPMENTAL PHILOSOPHY CORNERSTONED ON AN ENVIRONMENTAL FRAMEWORK, FUTURE MARKET DEVELOPMENT WILL BE ENHANCED AS JAY'S POSITIONING AND PHYSICAL CHARACTERISTICS PROVIDE SUBSTANTIAL ADVANTAGES OVER OLDER, LESS ENVIRONMENTALLY SENSITIVE FACILITIES. WINTER BUSINESS WILL CONTINUE TO FOCUS ON SKIING AND THE SKI VACATION PRODUCT. FAMILY SKI VACATIONS, SKI CLUB OUTINGS AND INDIVIDUAL AND COUPLES' BUSINESS WILL PROVIDE THE FRAMEWORK FOR WINTER BUSINESS DEVELOPMENT. ACCENTUATING THE TWO AND THREE DAY WEEKEND STAY, AND THE THREE, FIVE, AND SEVEN-DAY SKI WEEK EXPERIENCE WILL BE THE PRIMARY FOCUS OF THE RESORT'S WINTER MARKETING EFFORTS. THE RESORT'S MARKETS FOR WINTER ACTIVITY AND HOTEL UTILIZATION WILL BE EASTERN CANADA, ALL OF NEW ENGLAND AND THE MID-ATLANTIC STATES OF THE UNITED STATES. FURTHER DESTINATION MARKETS SUCH AS THE MID-SOUTH AND FLORIDA ARE VIABLE THROUGH AIRLINE CONNECTIONS INTO THE BURLINGTON, VERMONT AIRPORT AND THE PIERRE ELLIOT TRUDEAU (DORVAL) AIRPORT SERVING MONTRÉAL, QUEBÉC, CANADA. SUMMER BUSINESS DEVELOPMENT WILL LARGELY FOCUS ON FAMILY VACATIONS INVOLVING ACTIVE, OUTDOOR AND ENVIRONMENTALLY BALANCED EXPERIENCES. WITH SUCH A UNIQUE AND UNSPOILED SETTING, JAY PEAK CAN PROVIDE ITS VACATIONING PUBLIC AN OPPORTUNITY TO HIKE, BIKE, FISH, SAIL AND SIGHTSEE IN OR NEAR THE RESORT IN A SETTING THAT IS TRULY UNDEVELOPED. NATURE TRAILS ALONG PRISTINE MOUNTAIN STREAMS WILL PROVIDE THE MOST NATURAL OF SETTINGS FOR FAMILY OUTINGS. GOLF AND OTHER TYPICAL RECREATION ENJOYED IN SUMMER WILL ALSO BE ON THE RESORT PREMISES, BUT EVERYTHING FROM SIGNAGE TO LIGHTING TO PROGRAM DESIGN WILL EMIT AN ENVIRONMENTAL SENSITIVITY THAT WILL, ONCE AGAIN, DIFFERENTIATE JAY PEAK FROM OTHER RESORTS THAT HAVE LARGELY BEEN BUILT ON A LEGACY OF RAPID EXPANSION IN THE 1970'S AND 1980'S.

ALTHOUGH JAY PEAK ALREADY IS A VERY SUCCESSFUL SKI RESORT, MANY TIMES, EVEN IN PEAK SEASON, POOR WEATHER WILL RESULT IN TRIPS, VACATIONS AND MEETINGS BEING CANCELLED. THE RESORT SOUGHT OPPORTUNITIES THAT WOULD HELP EXPAND INTO A YEAR-ROUND DESTINATION, INSULATE THE RESORT FROM THE IMPACT OF WEATHER, CREATE WEATHER-PROOF VACATIONS, CAPTURE YEAR-ROUND REVENUES, AND YET ALLOW THE FREEDOM TO THE RESORT TO CONTINUE TO DO WHAT IT HAS DONE SO WELL FOR THE LAST 50 YEARS, WITH THE COMPLETION OF THE ONGOING PHASE II DEVELOPMENT AT THE RESORT, JAY PEAK RESORT WILL TRULY BE A "DESTINATION RESORT" WITH A 12 MONTH VENUE.

JAY PEAK IS ONE OF THE FOUR LARGEST SKI MOUNTAINS AND SKI RESORT FACILITIES IN ALL OF NEW ENGLAND YET CURRENTLY HAS THE SMALLEST BED BASE OF ANY MAJOR RESORT WITH LESS THAN 1,500 BEDS AT PRESENT. RESORTS THAT JAY PEAK COMPETES WITH HAVE NO LESS THAN 10,000 BEDS PER RESORT AND SOME AS HIGH AS 20,000 BEDS. THE CONTINUED EXPANSION OF RESORT AMENITIES, THAT INCLUDES FACILITIES THAT NO OTHER SKI RESORT IN EASTERN NORTH AMERICA HAVE AVAILABLE, IS EXPECTED TO CAUSE A RAPID ACCELERATION IN DEMAND FOR ACCOMMODATION AT THE RESORT.

TRAM HAUS LODGE OPENED IN DECEMBER 2009, THE INDOOR ICE ARENA (ICE HAUS) OPENED IN MAY 2010 AND THE GOLF CLUBHOUSE WHICH DOUBLES AS A NORDIC CENTER DURING THE WINTER MONTHS, OPENED IN JUNE 2010. IT IS PROJECTED THAT THE ONGOING DEVELOPMENT OF PHASE II, ANCILLARY FACILITIES SUCH AS THE INDOOR WATER PARK, SPA AND CONVENTION CENTER WILL HELP FILL ROOMS MOST WEEKENDS ALL YEAR LONG AND SCHOOL BREAK PERIODS DURING THE YEAR. RESORTS WITH AN INDOOR WATER PARK ARE REPORTEDLY ABLE TO EXTEND THEIR PEAK SEASONS FROM ABOUT 100 DAYS TO ABOUT 300 DAYS OR MORE. IT IS PROJECTED THAT THE INDOOR WATER PARK, SPA, CONVENTION CENTER AND HOTEL BUILDING WITH PENTHOUSE LEVEL WILL BE COMPLETED BY EARLY 2012. A MOUNTAIN LEARNING CENTER SEEKS TO CAPTURE SUMMER BUSINESS AND WILL LARGELY FOCUS ON CAMP, ECO-TOURS AND FAMILY VACATIONS INVOLVING ACTIVE, OUTDOOR, EDUCATIONAL AND ENVIRONMENTALLY BALANCED EXPERIENCES. WITH SUCH A UNIQUE AND UNSPOILED SETTING, JAY PEAK CAN PROVIDE ITS VACATIONING PUBLIC AN OPPORTUNITY TO HIKE, BIKE, FISH AND SIGHTSEE IN OR NEAR THE RESORT IN A SETTING THAT IS TRULY UNDEVELOPED. NATURE AND BIKING TRAILS ALONG PRISTINE MOUNTAIN STREAMS AND PATHS WILL PROVIDE THE MOST NATURAL OF SETTINGS FOR FAMILY OUTINGS AND CAMP ACTIVITIES. JAY PEAK RESORT WILL BE POISED TO CAPTURE A MARKET SHARE AS A CONFERENCE AND CONVENTION DESTINATION THAT PROVIDES LUXURY AND BUSINESS SPECIFIC ACCOMMODATION FOR THOSE ATTENDEES.

THE ADDITION OF THE TOWNHOUSES AND COTTAGES WILL ENHANCE THE RESORT. THE COTTAGES ARE TO BE LOCATED ADJACENT TO THE CHAMPIONSHIP GOLF COURSE AND SKI TRAILS, SURROUNDED WITH PRISTINE VIEWS OF THE MOUNTAINS AND VALLEY, PROVIDING THE PERFECT SETTING FOR THOSE GOLFERS SEEKING A VACATION PACKAGE EXPERIENCE BEYOND THE ORDINARY. IN WINTER, THE COTTAGES WILL BE FEATURED AS SKI CHALETS. THE COTTAGES WILL BE CENTRALLY LOCATED WITH EASY ACCESS TO ALL RESORT AMENITIES, AND PROVIDE WONDERFUL INDOOR AND OUTDOOR LIVING FOR THE ULTIMATE "APRÈS-GOLF" OR "APRÈS-SKI" EXPERIENCE AT ALL TIMES OF THE YEAR. THE TOWNHOUSES WILL BE LOCATED ON THE SKI SLOPES FOR DIRECT SKI-IN / SKI-OUT ACCESS.

THE LODGE AND TOWNHOUSES PROJECT ALSO FEATURES A SKIER AND SUMMER SERVICES CENTER WITH SKIER STATESIDE CAFÉ THAT WILL BE A SUPPORT BUILDING FOR DAY AND STATESIDE SKIERS WITH A RETAIL AND DINING AREA FOR THEIR NEEDS. THE CONSTRUCTION OF A MULTI-STORY PARKING GARAGE WITH RECREATION DECK WILL PROVIDE PREMIUM PARKING FOR DAY AND OVERNIGHT VISITORS AND FEATURES TENNIS COURTS AND OTHER RECREATIONAL ACTIVITY DURING THE SUMMER MONTHS.

## USE OF PROCEEDS

THE NET PROCEEDS FROM THE SALE OF THE LIMITED PARTNERSHIP INTERESTS WILL BE APPLIED TO THE COST OF (1) ACQUISITION OF TITLE TO THREE OR MORE PARCELS OF REAL ESTATE AT THE RESORT FROM THE RESORT OWNER, AND CONSTRUCTING AND ERECTING THREE TOWNHOUSE BUILDINGS WITH TEN LIVING UNITS IN EACH THAT WILL BE OWNED BY THE PARTNERSHIP AND LEASED TO AND OPERATED AS VACATION RENTAL UNITS BY A TENANT TO BE APPROVED BY THE PARTNERSHIP; (2) ON LAND RETAINED BY THE RESORT OWNER THAT SITS ADJACENT TO THE CHAMPIONSHIP GOLF COURSE AT THE RESORT, AND LEASED TO THE PARTNERSHIP UNDER ONE OR MORE GROUND LEASES, CONSTRUCTING AND ERECTING EIGHTY (80) GOLF AND MOUNTAIN COTTAGES WITH ONE, TWO OR MORE BEDROOMS IN EACH THAT WILL BE OWNED BY THE PARTNERSHIP AND LEASED TO AND OPERATED AS VACATION RENTAL UNITS BY A TENANT TO BE APPROVED BY THE PARTNERSHIP; (3) ON LAND RETAINED BY THE RESORT OWNER AT THE RESORT, DEVELOPING A SKIER AND SUMMER SERVICES CENTER TO BE LEASED BY THE LIMITED PARTNERSHIP FOR NOMINAL CONSIDERATION FROM THE RESORT OWNER AND SUBLEASING THE SERVICES CENTER AND ITS OPERATIONS FOR MARKET RENT TO A TENANT TO BE APPROVED BY THE PARTNERSHIP; (4) ON LAND RETAINED BY THE RESORT OWNER AT THE RESORT, DEVELOPING A MULTI-STORY PARKING GARAGE WITH RECREATION ON THE TOP LEVEL, TO BE USED FOR LIMITED PARTNERSHIP AND PROJECT PARKING FACILITIES (THE "PARKING FACILITY"), TO BE LEASED BY THE LIMITED PARTNERSHIP FOR NOMINAL CONSIDERATION FROM THE RESORT OWNER AND SUBLEASED TO AN APPROVED TENANT; AND (5) ON LAND RETAINED BY THE RESORT OWNER AT THE RESORT, DEVELOPING AN AUDITORIUM FOR CONCERTS AND EXHIBITIONS. ANY FUNDS RAISED IN THIS OFFERING AND NOT REQUIRED FOR THESE PURPOSES WILL BECOME WORKING CAPITAL FOR THE LIMITED PARTNERSHIP'S BUSINESS ACTIVITIES. THE DEVELOPMENT OF THE RESORT TO BE FUNDED BY THE SALE OF THE LIMITED PARTNERSHIP INTERESTS MAY REQUIRE THE ISSUANCE OF LOCAL AND STATE SUBDIVISION AND OTHER PERMITS, TO BE APPLIED FOR AND OBTAINED BY THE RESORT OWNER.

## COMPLETION OF PROJECT

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, IN THE EVENT THAT THE GENERAL PARTNER, RESORT OWNER OR AN AFFILIATE OF EITHER ENTITY INVESTS FUNDS OR MAKES FINANCIAL COMMITMENTS OTHER THAN SECURED DEBT (AS DEFINED IN THE LIMITED PARTNERSHIP AGREEMENT) TO COMPLETE THE PROJECT, THE INVESTING ENTITY WILL BE ISSUED CLASS B NON-VOTING INTERESTS PRO RATA IN THE PARTNERSHIP FOR NO ADDITIONAL CONSIDERATION AND THEREAFTER HOLD ITS INTERESTS SUBJECT TO THE TERMS OF THE LIMITED PARTNERSHIP AGREEMENT.

## OFFERING MEMORANDUM ONLY AVAILABLE IN US ENGLISH LANGUAGE

IN THE EVENT THE PROSPECTIVE PURCHASER CANNOT UNDERSTAND OR READ THE ENGLISH LANGUAGE, AND/OR IS UNABLE TO FULLY COMPREHEND ALL DOCUMENTS AND EXHIBITS RELATED TO THIS OFFERING, IT IS THE PROSPECTIVE PURCHASER'S SOLE RESPONSIBILITY AT THE PURCHASER'S SOLE COST TO OBTAIN ALL ASSISTANCE REQUIRED WITH INTERPRETATION AND TRANSLATION OF THIS OFFERING MEMORANDUM AND EXHIBITS THERETO. NO SUCH TRANSLATION MAY ALTER, MODIFY OR OTHERWISE CHANGE THE TERMS OF THIS OFFERING MEMORANDUM AS SET FORTH IN ENGLISH IN ANY MANNER OR WAY WHATSOEVER.

## FEDERAL TAX CONSIDERATIONS

INVESTMENT IN THE PARTNERSHIP INVOLVES SUBSTANTIAL TAX RISKS. STATE AND FEDERAL LEGISLATURES MAY CHANGE INCOME TAX LAWS, ALTER AND CHANGE ALLOWABLE DEDUCTIONS THAT MAY BE TAKEN BY THE PARTNERSHIP AND REDUCE ITS INCOME, AND MAY CHANGE TAX RATES THAT MAY BE LESS BENEFICIAL TO PARTNERS. OTHER TAX RISKS TO THE LIMITED PARTNERSHIP INCLUDE BUT ARE NOT LIMITED TO THE ALLOCATION OF PURCHASE PRICE OF ASSETS, TAX ITEMS, PROFITS AND BENEFITS OR OTHERWISE OF PASSIVE LOSSES, RISK OF AUDIT, LOSS OF LIMITED PARTNERSHIP STATUS AND TERMINATION OF PARTNERSHIP. THE PARTNERSHIP MUST MEET CERTAIN CRITERIA TO MAINTAIN LIMITED LIABILITY AND AVOID BEING TAXED AS A CORPORATION. THE LIMITED PARTNERSHIP MAY INCUR LEGAL, ACCOUNTING OR OTHER COSTS RESULTING FROM TAX AUTHORITY REVIEW OF THESE MATTERS, WHICH MAY RESULT IN LESS FAVORABLE TAX RATES AND OTHER COSTS.

THE RULES GOVERNING THE UNITED STATES INCOME TAXATION OF LAWFUL PERMANENT RESIDENTS ARE COMPLEX. PRIOR TO INVESTMENT, AN INVESTOR SHOULD CONSULT WITH HIS U.S. TAX ADVISORS AND, IF THE INVESTOR IS FOREIGN, BOTH HIS OVERSEAS AND US TAX ADVISORS, WITH REGARD TO THE TAX CONSEQUENCES OF BECOMING A LAWFUL PERMANENT RESIDENT OF THE UNITED STATES, AND FURTHER TO INVESTING IN, OWNING AND DISPOSING OF THE LIMITED PARTNERSHIP INTERESTS DESCRIBED IN THIS OFFERING MEMORANDUM, AND ALL OTHER TAX CONSEQUENCES IN CONNECTION WITH THE PARTNERSHIP AND THIS PROJECT. THE PARTNERSHIP HAS NOT OBTAINED A LEGAL OPINION OR RULING FROM ANY TAX AUTHORITY REGARDING ANY ASPECTS OF THE PARTNERSHIP OR ITS BUSINESS.

TAX INFORMATION AND TAX RISKS DESCRIBED IN THIS OFFERING MEMORANDUM ARE NOT TAX ADVICE TO THE SUBSCRIBER. EACH SUBSCRIBER MUST RELY SOLELY AND ONLY UPON THEIR OWN TAX ADVISOR(S).

## TRANSFER RESTRICTIONS

THE OFFERING OF THE LIMITED PARTNERSHIP INTERESTS HAS NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION PURSUANT TO THE SECURITIES ACT OF 1933 OR ANY APPLICABLE STATE SECURITIES LAWS. THE OFFERING IS RESTRICTED TO A LIMITED NUMBER OF PERSONS WHO ARE EITHER US CITIZENS OR US-BASED LEGAL ENTITIES, CURRENT U.S. LAWFUL PERMANENT RESIDENTS, OR FOREIGN INVESTORS RESIDENT AND LIVING IN THE UNITED STATES IN VALID IMMIGRATION STATUS, THEREBY CAUSING REGULATION D OF THE ACT TO APPLY IN CONNECTION WITH A PURCHASE, OR FOREIGN INVESTORS WITHOUT VALID IMMIGRATION STATUS WHO MUST REPRESENT TO THE LIMITED PARTNERSHIP THAT THEY ARE NOT RESIDENT IN THE UNITED STATES AT THE TIME OF THE OFFER, WILL NOT BE RESIDENT IN THE UNITED STATES AT THE TIME OF THE SALE, AND ARE NOT ACQUIRING THE LIMITED PARTNERSHIP INTEREST FOR THE BENEFIT OF A UNITED STATES PERSON, AS THAT TERM IS DEFINED IN REGULATION S. THE INVESTOR UNDERSTANDS THAT HE OR SHE MAY NOT OFFER TO SELL, OR SELL, A LIMITED PARTNERSHIP INTEREST UNLESS IT IS REGISTERED UNDER THE SECURITIES ACT OF 1933 AND ANY APPLICABLE STATE SECURITIES REGULATIONS OR AN EXEMPTION IS AVAILABLE FROM THE REGISTRATION REQUIREMENTS, AND THAT THE INVESTOR'S WEALTH OR INCOME QUALIFY HIM OR HER AS A SUITABLE PURCHASER.

TO PRESERVE THE EXEMPTIONS FROM REGISTRATION UNDER FEDERAL AND STATE SECURITIES LAWS, PURSUANT TO WHICH EXEMPTIONS PURCHASE OF THE LIMITED PARTNERSHIP INTERESTS ARE BEING OFFERED, SUBSEQUENT SALE OF THE LIMITED PARTNERSHIP INTERESTS ARE RESTRICTED TO BUYERS WHO QUALIFY AS "ACCREDITED INVESTORS," AS DESCRIBED IN RULE 501 OF THE SECURITIES AND EXCHANGE COMMISSION OR WHOSE PURCHASE OTHERWISE WILL NOT REQUIRE REGISTRATION OF THE LIMITED PARTNERSHIP INTERESTS. THERE ARE ADDITIONAL MATTERS CONCERNING TRANSFER RESTRICTIONS UNDER THE TERMS OF THE LIMITED PARTNERSHIP AGREEMENT, INCLUDING RESTRICTIONS CONSISTENT WITH EB-5 REQUIREMENTS, AND ALL PURCHASERS SHOULD REVIEW ARTICLE 10 OF THE SAID AGREEMENT FOR SPECIFIC RESTRICTIONS. CERTIFICATES EVIDENCING THE LIMITED PARTNERSHIP INTERESTS WILL BEAR A LEGEND DESCRIBING THE TRANSFER RESTRICTIONS.

## EXIT STRATEGIES

ONCE ALL I-829 PETITIONS FILED UNDER THE EB-5 PROGRAM FOR ALL QUALIFIED INVESTORS WHO HAVE INVESTED INTO THE PARTNERSHIP HAVE BEEN ADJUDICATED, WITH ANY APPEALS HAVING BEEN DECIDED, THE GENERAL PARTNER WITHIN A REASONABLE TIME THEREAFTER SHALL REVIEW MARKET CONDITIONS AND, IF APPROPRIATE IN ITS SOLE DISCRETION, PURSUE ONE OR MORE EXIT STRATEGIES FOR INVESTORS. THESE STRATEGIES MAY INCLUDE SUBDIVIDING THE TOWNHOUSES AND COTTAGES INTO FRACTIONAL UNITS AND GRANTING EACH LIMITED PARTNER A REASONABLE ALLOCATION OF FRACTIONAL UNITS IN EXCHANGE FOR AND REDEMPTION OF EACH LIMITED PARTNER'S INTEREST IN THE PARTNERSHIP. ALL SUCH FRACTIONAL UNITS MUST BE MADE SUBJECT TO A RENTAL POOL OPERATED BY THE RESORT OWNER OR ITS DESIGNEE, WHICH RENTAL RATES WILL BE SET BY THE RESORT OWNER OR ITS DESIGNEE AT THEIR SOLE DISCRETION AND THE RESORT OWNER OR ITS DESIGNEE WILL BE ENTITLED TO THEIR STANDARD RENTAL MANAGEMENT FEE. IF SUBDIVIDING THE TOWNHOUSES AND COTTAGES INTO FRACTIONAL UNITS IS UNDERTAKEN, EACH LIMITED PARTNER MAY THEREAFTER SELL HIS FRACTIONAL UNITS WHENEVER HE WISHES AND FOR A PRICE AT HIS DISCRETION, BUT SUCH FRACTIONAL UNITS MUST BE SOLD THROUGH JAY PEAK REALTY WITH COMMISSION DUE BASED UPON JAY PEAK REALTY'S STANDARD COMMISSION FOR FRACTIONAL UNIT SALES.

IN ADDITION, INVESTORS MAY SELL THEIR INTERESTS TO THIRD PARTY PURCHASERS AS CONDITIONED BY THE LIMITED PARTNERSHIP AGREEMENT, WITH THE CAVEAT THAT QUALIFIED INVESTORS WHO HAVE FILED UNDER THE EB-5 PROGRAM MUST MEET THE CONDITIONS SET FORTH HEREIN AND UNDER THE ACT, INCLUDING THE REQUIREMENT TO SUSTAIN THEIR INVESTMENT IN THE PROJECT, TO OBTAIN CONDITIONAL PERMANENT RESIDENCY AND UNCONDITIONAL PERMANENT RESIDENCY FOR THEMSELVES AND THEIR SPOUSES AND MINOR CHILDREN.

## RISK FACTORS (ALSO SEE IMMIGRATION RISK FACTORS)

THE LIMITED PARTNERSHIP INTERESTS DESCRIBED IN THIS OFFERING MEMORANDUM INVOLVE A DEGREE OF RISK. AMONG THE RISK FACTORS THAT A PROSPECTIVE PURCHASER SHOULD CAREFULLY CONSIDER ARE THE FOLLOWING (THIS LIST IS NOT EXHAUSTIVE):

PURCHASE OF THE LIMITED PARTNERSHIP INTERESTS IS LIMITED TO THOSE WHO HAVE ATTAINED THE AGE OF AT LEAST 18 YEARS AND ALL OF WHOM MUST PURCHASE FOR INVESTMENT AND NOT WITH A VIEW TO RESALE. A DECLARATION, REPRESENTATION AND COVENANT TO THIS EFFECT ARE REQUIRED TO BE MADE IN THE SUBSCRIPTION AGREEMENT.

THE LIMITED PARTNERSHIP INTERESTS WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933 OR UNDER ANY STATE LAWS AND, IN OFFERING THEM, THE LIMITED PARTNERSHIP WILL RELY ON ONE OR MORE EXEMPTIONS FROM REGISTRATION.

THERE WILL BE RESTRICTIONS ON THE ABILITY OF A PURCHASER TO SELL HIS LIMITED PARTNERSHIP INTEREST. NO RESALE CAN OCCUR WITHIN ONE YEAR FROM THE DATE OF THE FIRST OFFER. ANY RESALE MUST BE MADE PURSUANT TO REGULATION S OR REGULATION D AS IS APPLICABLE AFTER REGISTRATION OF THE LIMITED PARTNERSHIP INTERESTS PURSUANT TO THE SECURITIES ACT OF 1933 AND ANY APPLICABLE STATE LAWS OR PURSUANT TO AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS. MEMBERSHIP CERTIFICATES WILL CARRY A LEGEND TO THE EFFECT THAT TRANSFERS OF THE LIMITED PARTNERSHIP INTERESTS ARE PROHIBITED UNLESS IN