## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 16-cv-21301-GAYLES

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ARIEL QUIROS, WILLIAM STENGER,
JAY PEAK, INC., Q RESORTS, INC.,
JAY PEAK HOTEL SUITES L.P.,
JAY PEAK HOTEL SUITES PHASE II. L.P.,
JAY PEAK MANAGEMENT, INC.,
JAY PEAK PENTHOUSE SUITES, L.P.,
JAY PEAK GP SERVICES, INC.,
JAY PEAK GOLF AND MOUNTAIN SUITES L.P.,
JAY PEAK GP SERVICES GOLF, INC.,
JAY PEAK LODGE AND TOWNHOUSES L.P.,
JAY PEAK GP SERVICES LODGE, INC.,
JAY PEAK HOTEL SUITES STATESIDE L.P.,
JAY PEAK GP SERVICES STATESIDE, INC.,
JAY PEAK BIOMEDICAL RESEARCH PARK L.P.,
AnC BIO VERMONT GP SERVICES, LLC,

Defendants,

JAY CONSTRUCTION MANAGEMENT, INC.,
GSI OF DADE COUNTY, INC., NORTH EAST
CONTRACT SERVICES, INC., Q BURKE
MOUNTAIN RESORT, LLC,

Relief Defendants, and

Q BURKE MOUNTAIN RESORT, HOTEL AND
    CONFERENCE CENTER, L.P.,
Q BURKE MOUNTAIN RESORT GP SERVICES, LLC

Additional Defendants
_____/

### MOTION FOR (I) APPROVAL OF SETTLEMENT BETWEEN RECEIVER, INTERIM CLASS COUNSEL, AND RAYMOND JAMES & ASSOCIATES, INC.; (II) APPROVAL OF FORM, CONTENT AND MANNER OF NOTICE OF SETTLEMENT AND BAR ORDER; (III) TEMPORARY STAY OF RELATED LITIGATION AGAINST RAYMOND JAMES & ASSOCIATES, INC.; AND (IV) ENTRY OF <u>BAR ORDER; INCORPORATED MEMORANDUM OF LAW</u>

Michael I. Goldberg, as the court-appointed receiver (the "<u>Receiver</u>") for Jay Peak, Inc., Q Resorts, Inc., Jay Peak Hotel Suites L.P., Jay Peak Hotel Suites Phase II L.P., Jay Peak Management, Inc., Jay Peak Penthouse Suites L.P., Jay Peak GP Services, Inc., Jay Peak Golf and Mountain Suites L.P., Jay Peak GP Services Golf, Inc., Jay Peak Lodge and Townhouses L.P., Jay Peak GP Services Lodge, Inc., Jay Peak Hotel Suites Stateside L.P., Jay Peak GP Services Stateside, Inc., Jay Peak Biomedical Research Park L.P., AnC Bio Vermont GP Services, LLC, Q Burke Mountain Resort, Hotel and Conference Center, L.P., Q Burke Mountain Resort GP Services, LLC, Jay Construction Management, Inc., GSI of Dade County, Inc., North East Contract Services, Inc., and Q Burke Mountain Resort, LLC (collectively, the "<u>Receivership Entities</u>"), in the above-captioned civil enforcement action (the "<u>SEC Action</u>"), files this *Motion for (i) Approval of Settlement between Receiver, Interim Class Counsel, and Raymond James & Associates, Inc.; (ii) Approval of Form, Content and Manner of Notice of Settlement and Bar Order; (iii)Temporary Stay of Related Litigation Against Raymond James & Associates, Inc.; and (iv) Entry of a Bar Order; Incorporated Memorandum of Law* (the "<u>Motion</u>").

## I.
## <u>Introduction</u>

The Receiver is pleased to report that, after only one year since being appointed, he and Raymond James & Associates, Inc. ("<u>Raymond James</u>"), along with Interim Class Counsel (as defined below), have reached a settlement pursuant to which Raymond James will be paying One Hundred Fifty Million Dollars ($150,000,000.00).   This is an incredibly broad-sweeping settlement that provides the Receiver with sufficient funds to pay all past-due contractors (and there are well over 40 of them), all past-due vendors and trade creditors (and there are well over 500 of them, comprising local businesses in Vermont, non-profits, and municipalities), and all

investors who are unable to receive their green cards (and there are over 130 of them).  The latter component of the settlement, in particular, is critical, because the current EB-5 visa investment program is set to expire on April 28, 2017, and some of the proposals that legislators are currently debating increase the investment threshold from $500,000.00 to $1.35 million (in areas of high unemployment) and $1.8 million (in all other areas).  As a result, the settlement allows the Receiver to continue construction and operations of the resorts and to ensure that all investors either obtain their permanent residency or, if that is not possible, obtain a refund of their principal investment so they can seek other EB-5 opportunities as quickly as possible.

In other words, and at the risk of being immodest, this is an incredible settlement of which the Receiver is very proud.  Indeed, Governor Phil Scott, the Governor of the State of Vermont, said:

> This is significant for the hundreds of businesses, contractors and investors that have been harmed by this alleged fraud … I want to thank our Department of Financial Regulation and Mr. Goldberg for their work in securing these settlement funds, which will make whole many of the impacted individuals and businesses.

Michael Pieciak, Commissioner of the Vermont Department of Financial Regulation, said:

> DFR is tremendously pleased with Mr. Goldberg's efforts to achieve this settlement for Vermont businesses and municipalities, and all those impacted in this matter … To achieve this type of a settlement – one that fully reimburses all unpaid creditors in a year's time – is truly unique, and it also represents the largest recovery settlement ever for an EB-5 fraud case.

The settlement resolves all non-governmental civil claims brought against Raymond James relating to the Jay Peak fraud, including (a) claims brought by the Receiver in his action captioned *Goldberg v. Raymond James & Associates, Inc. et al.*, Case No. 16-CV-21831-JAL (S.D. Fla.) (the "Receiver's Action"); (b) claims brought by the investors in the Receivership Entities (the "Investors") in the putative class action captioned *Daccache et al. v. Raymond*

*James & Associates, Inc. et al.*, Case No. 16-CV-21575-FAM (S.D. Fla.) (the "Investor Class Action"); and (c) claims brought by investors in various non-class cases currently pending in state and federal court.[1]  It represents a remarkable recovery for the Receivership Entities and the Investors, all of whom are unfortunate victims of Defendant Ariel Quiros' fraud.

The terms of the settlement are more fully set forth in the Settlement Agreement, dated April 13, 2017 (the "Settlement Agreement"), attached as Exhibit "A" to this Motion.  By this Motion, the Receiver seeks a two-step process towards approval of the Settlement Agreement to ensure that all parties affected by the Settlement Agreement receive sufficient notice of the settlement and its terms and are adequately protected.[2]

*First*, the Receiver requests that the Court enter an order substantially in the form and substance as the proposed order attached as Exhibit A to the Settlement Agreement (the "Preliminary Approval Order").  The Preliminary Approval Order preliminarily approves the Settlement Agreement and establishes final approval procedures—including procedures for providing notice to parties affected by the settlement, along with an opportunity to object and participate in the final approval hearing.  The Receiver believes that the Preliminary Approval Order can be entered without a hearing on the basis of the substantial matters of law and fact set forth in this Motion.[3]

*Second*, the Receiver requests that, after the requirements and procedures of the Preliminary Approval Order are met, the Court enter an order substantially in the form and

---

[1]   The settlement does not resolve claims of any federal or state governmental bodies or agencies, including but not limited to the claims of the Securities and Exchange Commission (the "SEC").

[2]   The two-step procedure is the same procedure the Court utilized in approving the Receiver's previous settlement with Citibank, N.A.  [D.E. 207].

[3]   Significantly, section 3(d) of the Settlement Agreement allows the Receiver, upon issuance of the Preliminary Approval Order, to have immediate access to $4.5 million to begin to pay contractor claims and expenses related to Stateside Phase VI.

substance as the proposed order attached as Exhibit B to the Settlement Agreement (the "Bar Order"), which shall serve as the Court's final order approving the Settlement Agreement and barring all non-governmental claims against Raymond James, as further described below.[4]

## II.
## Background

**A.     Commencement of the SEC Action and Appointment of the Receiver**

The Court appointed the Receiver in the SEC Action to exercise dominion and control over, and act as sole legal representative for, the Receivership Entities.   Specifically, the Receiver derives his authority over the Receivership Entities from the Court's Order Granting Motion for Appointment for Appointment of Receiver [ECF No. 13] (the "Receivership Order"), entered at the request of the SEC.  [ECF No. 7].  The Receiver's authority includes the authority to institute actions and legal proceedings for recovery on behalf of the Receivership Entities and to compromise or settle claims of the Receivership Entities against third parties.  *See* Receivership Order ¶¶ 1–2, 6.

The Complaint in the SEC Action alleges, *inter alia*, that defendants Ariel Quiros ("Quiros") and William Stenger, in violation of federal securities laws, controlled and utilized the various Receivership Entities in furtherance of a fraud on the Investors under the federally-created EB-5 visa program, and seeks various forms of relief, including appointment of the Receiver.  The first six limited partnerships that Quiros used in furtherance of the fraud (defined below as Suites Phase I, Hotel Phase II, Penthouse Phase III, Golf and Mountain Phase IV, Lodge and Townhouses Phase V, and Stateside Phase VI) were used to develop and expand the Jay Peak resort located in the Village of Jay, Vermont (the "Jay Peak Resort").  The seventh

---

[4]     As is set forth in the Settlement Agreement, the settlement is conditioned on Raymond James receiving the Bar Order in substantially the same form as the proposed bar order attached to the Settlement Agreement.

limited partnership (defined below as Biomedical Phase VII) raised funds to purchase land and develop a biomedical research facility in Newport, Vermont. The eighth limited partnership (defined below as Q Burke Phase VIII) was used to develop and expand the Burke Mountain hotel and ski area located in East Burke, Vermont (the "Burke Mountain Hotel").[5]

## B.   The Receiver's Contentions and Settlement between Raymond James and the Receiver

Raymond James helped Quiros execute financial transactions, obtain collateralized loans, and move funds among the various accounts until Quiros moved his banking operations to another financial institution in late 2014. In the Receiver's Action, the Receiver contends that Raymond James is liable to the Receivership Entities for its role in the fraud that harmed the Receivership Entities. Specifically, the Receiver asserts claims against Raymond James for aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, and fraudulent transfers. Raymond James denies any participation in the fraud and denies that it is liable to the Receiver for any damages. The Receiver and Raymond James have engaged in months of discovery.

To provide relief to the Receivership Estate and Investors and to avoid the expense and delay of litigation, the Receiver and Raymond James began settlement discussions in July 2016. At that point, the Receiver was in control of two massive ski resorts, but they were burdened by millions of dollars in unpaid bills, liens that had been filed against the resorts, literally hundreds of employees, insufficient cash reserves, and the end of the ski season, which meant months of continuous losses. Even worse, Biomedical Phase VII had raised over $80 million and there was next to nothing to show for it, so those investors had no way of qualifying for their green cards.

---

[5]   Q Burke Phase VIII was not included in the SEC's complaint, but was subsequently added as a receivership entity after the Receiver filed a motion to expand the receivership and the Court entered an order granting the motion. [D.E. 60].

The Receiver was therefore concerned about finding a way to obtain the funds to keep the resorts operating for the benefit of all Investors and to give the Investors in Biomedical Phase VII an opportunity to invest in another project.

As a result, shortly after the Receiver filed his complaint against Raymond James, the Receiver and his counsel reached out to Raymond James to discuss the potential resolution of the Receiver's claims.  The Receiver and Raymond James had numerous telephonic conferences and in-person meetings and the parties worked in good faith in an attempt to reach a resolution of the Receiver's claims.   Over this time period, the Receiver and Raymond James made significant progress towards reaching the final resolution of their dispute.   In February 2017, in order to obtain a global settlement, the Receiver invited Interim Class Counsel to attend a two-day mediation before Bruce Greer, a skilled mediator.   At that mediation, the Receiver, Interim Class Counsel and Raymond James agreed to a global settlement of all claims against Raymond James to avoid further expense, delay and the risk and uncertainty of litigation, without admission of any liability or concession of potential defenses.

## C.    The Investor Actions

As stated above, there is a putative class action brought by Investors that is defined above as the Investor Class Action.  In that action, the Kozyak Tropin & Throckmorton firm was appointed interim class counsel with exclusive authority to negotiate on behalf of the putative investor class ("Interim Class Counsel").   Other Investors have brought additional, separate actions against Raymond James in federal and state courts in Florida and Vermont.  Some of the other actions have been consolidated into the Investor Class Action; others have not and remain as independent actions.  The other actions include: *Gonzalez-Calero, et al., v. Raymond James et al.,* Case No 16-017840-CA-01 (Fla. 11th Cir.); *Zhang et al. v. Raymond James et al.*, Case No. 1:16-cv-24655-KMW (S.D. Fla.); *Waters v. Raymond James*, Case No. 11-2016-CA-001936-

00001 (Fla. 20th Cir.); *James B. Shaw, et al., v. Raymond James Financial, Inc., et al.*, Case No. 16-cv-129 (D. Vt.) (consolidated); *Carlos Enrique Hiller Sanchez v. Raymond James & Associates, Inc., et al.,* Case No. 16-cv-21643-KMW (S.D. Fla.) (consolidated); *Milos Čitaković, et al. v. Raymond James & Associates, Inc., et al.*, Case No. 16-014261-CA 01 (Fla. 11th Ct.) (voluntarily dismissed); *Jose R. Casseres-Pinto v. Ariel Quiros, et al.*, Case No. 16-cv-22209-DPG (S.D. Fla.) (consolidated); and *Minggan Wei and Zhao Wei v. Ariel Quiros, et al.*, Case No. 602-7-16 CNCV (Vt. Sup. Ct.) (voluntarily dismissed).   (All actions by Investors against Raymond James, including the Investor Class Action, shall be collectively referred to as the "Investor Actions").   Raymond James similarly disputes its liability with respect to the Investor Actions.  The Investors in the Investor Class Action are also parties to the Settlement Agreement though Interim Class Counsel, as appointed by the Honorable Federico A. Moreno in the Investor Class Action.

### D.    Settlement Terms and Conditions

The principal terms of the Settlement Agreement are as follows:[6]

(i)    Raymond James pays the Receiver $150,000,000 (the "Settlement Amount") in three tranches: *first*, $4,500,000, which was paid before execution of the Settlement Agreement in connection with Raymond James' previous settlement with the State of Vermont; *second*, $91,700,000, paid within 20 days after entry of the Bar Order; and third, $53,800,000, paid within 20 days after the Bar Order becomes Final (as that term is defined in the Settlement Agreement).

(ii)    The Receiver moves for entry of the Preliminary Approval Order and complies with the applicable notice requirements and procedures contained therein.

(iii)    The Court issues the Bar Order, which as stated herein and in the Settlement Agreement, enjoins all persons (except federal or state governmental bodies or agencies) from suing or continuing suit against Raymond James in connection

---

[6]    This description of the Settlement Agreement is only a summary; the Settlement Agreement memorializes all of the terms and conditions of the parties' agreement and all parties in interest are encouraged to review the Settlement Agreement in full in order to have a complete understanding of its terms and conditions.

with this action, the Receivership Action, the Investor Actions, the Receivership Entities, the Jay Peak Resort, or the Burke Mountain Hotel.

(iv)    The Receiver distributes, disburses, and uses the Settlement Amount in accordance with the terms of the Settlement Agreement.

(v)     The Receiver executes or seeks execution of various releases and assignments, as applicable, in favor of Raymond James.

(vi)    The Receiver, Investors, and Raymond James mutually release each other as and to the extent set forth in section 5 of the Settlement Agreement.

(vii)   The Receiver and Class Counsel dismiss with prejudice their claims against Raymond James and its former employee, Joel N. Burstein.

As stated above, it is a condition precedent to the effectiveness of the Settlement Agreement and to the Receiver's receipt of the entire Settlement Amount that the Court issue the Bar Order.

**E.     Facts Supporting Approval of the Settlement Agreement and Issuance of the Bar Order**

The Receiver has diligently investigated all claims he believes could be brought against Raymond James and has reviewed substantial documentation obtained through discovery and from third parties.  The Receiver has also extensively analyzed his claims and the nature of the evidence available to support those claims.  Similarly, the Receiver has analyzed the claims asserted in the Investor Actions, as has Interim Class Counsel.

The Receiver's claims against Raymond James and those asserted in the Investor Actions involve hotly disputed facts that would require substantial time and expense to litigate, with attendant uncertainty as to the outcome of such litigation and any ensuing appeal.  Most importantly, continued litigation among the Receiver, the Investors, and Raymond James will substantial delay *any* potential recovery to the Investors.  As stated above, the timing of the settlement is critical because the current EB-5 visa investment program is set to expire on April 28, 2017 (although an extension is pending and expected) and some of the proposals that

legislators are currently debating increase the investment threshold from $500,000.00, which is what the Investors invested in the Jay Peak Resort and Burke Mountain limited partnerships, to $1.35 million (in areas of high unemployment) and $1.8 million (in all other areas). As a result, the Settlement Agreement affords the Receiver the ability to maintain the Receivership Estate operations and ensure Investors either obtain their permanent residency or, if that is not possible, obtain a refund of their principal investment so they can seek other EB-5 opportunities as quickly as possible should they so desire.

The Settlement Agreement, therefore, addresses these immediate needs and it is the Receiver's belief that the Settlement Agreement affords all investors the best possibility of achieving their desired immigration status (and the highest possible return of their investment) or the possibility to move to another EB-5 opportunity that will achieve their desired immigration status and a return on their investment. Accordingly, the Receiver has no doubt that the Settlement Agreement is in the best interest of the Investors and the Receivership Entities.

Specifically, the Settlement Amount permits the Receiver to preserve the value of the Receivership Estate and directly and indirectly benefit the Investors and creditors as follows:

| Amount | Beneficiary | Use of Funds |
|---|---|---|
| $15,391,386.47 | Investors in Jay Peak Hotel Suites L.P. ("Phase I") | Satisfy **all** principal obligations for **all** promissory notes in favor of the Investors in Phase I (*i.e.*, return of principal). |
| $5,100,000.00 | Investors in Jay Peak Hotel Suites Phase II L.P. ("Phase II"), Jay Peak Penthouse Suites L.P. ("Phase III"), Jay Peak Golf and Mountain Suites L.P. ("Phase IV"), Jay Peak Lodge and Townhouses L.P. ("Phase V"), Jay Peak Hotel Suites Stateside L.P. | Satisfy **all** past-due trade debt on the Jay Peak Resort and the Burke Mountain Hotel; Investors in these Phases (Phase II, Phase III, Phase IV, Phase V and Phase VI) will also receive the benefit of the proceeds of sale of the Tram Haus Lodge (which had been owned by the Phase I partnership), related assets owned by Jay Peak, Inc., and a release of all claims by other |

| | ("Phase VI"), and Q Burke Mountain Resort, Hotel and Conference Center, L.P. ("Phase VIII") | Receivership Entities for funds from their partnerships that may have been used to construct these projects. |
|---|---|---|
| $19,687,000.00 | Investors in Phase VI | Complete construction of Phase VI needed for Phase VI Investors to become eligible for permanent residency under EB-5 program requirements; and pay off **all** construction liens encumbering this project. Completing construction of Phase VI will also benefit Phases II, III, IV, and V by increasing the overall value of the Jay Peak Resort. |
| $67,000,000.00 | Investors in Jay Peak Biomedical Research Park L.P. ("Phase VII") | Provide refunds of **all** principal investments to **all** remaining Phase VII Investors and allowing them to retain a claim for the potential return of their administrative fee payments. |
| $6,600,000.00 | Investors in Phase VIII | Satisfy **all** contractor claims and additional obligations at the Burke Mountain Hotel |
| $10,000,000.00 (in escrow) | Investors in Phase VIII | Provide refunds of **all** principal for up to twenty Phase VIII Investors who, based on current projections, may not be granted permanent residency under the EB-5 program if the requisite number of jobs is not created.[7] |
| $1,000,000.00 | Investors in Phase VIII | Provide refunds of **all** principal investments to the Phase VIII Investors whose I-526 petitions were denied prior to the SEC Action |
| $25,000,000.00 | All Investors and their counsel | Create fund for attorneys' fees and costs in the Investor Actions, to be disbursed as approved by this Court, thereby obviating the need |

---

[7]   This escrow is essentially acting as a back stop in the unlikely event that the Burke Mountain Hotel does not create sufficient jobs. Although there is no guarantee, the Receiver is optimistic that sufficient jobs for all or most of the Investors will be created. If the $10,000,000.00 earmarked for possible Phase VIII refunds is not used, Raymond James will receive the return of these unused funds.

| | | for any Investors to compensate their attorneys from their own funds. |
|---|---|---|
| Remaining balance | Receivership Estate | Use for general benefit of Receivership Estate, subject to approval by this Court |

In the aggregate, the Settlement Agreement contemplates that approximately 142 contractors and 513 trade creditors will be paid in full and at least 169 investors will be paid all of their principal.

As is clear, the Settlement Amount will substantially benefit **all** of the Investors and will be used to maximize the Receivership Estate's value. Large groups of investors are receiving the immediate return of their full principal investment because EB-5 laws and regulations might be changing to increase the minimum investment needed to qualify for permanent residency. Through this settlement, these investors will be permitted to take their refunds and move to another EB-5 project as quickly as possible.[8] Other investors are receiving the full principal payoff of their promissory notes. And other investors, virtually all of whom have received or are eligible to receive their green card status, are also receiving a payoff of liens and trade debt on the resorts, along with completed construction and additional assets (such as the Tram Haus Lodge and other mountain related assets), all of which will radically enhance the value of the resorts and allow for their sale as a single asset. In return, Raymond James seeks dismissals from the lawsuits currently filed against it, protections from future lawsuits, and various assignments of interests and proceeds. The Receiver considers the contemplated exchange more than reasonable and an overall great result for the Receivership Estate.

---

[8] The Receiver is also working to have changes made to existing EB-5 laws which will provide relief to victims of EB-5 fraud and is hopeful that Congress may soon pass new legislation that will provide relief to such victims enabling them to reinvest their funds in other projects while still maintaining their current immigration status.

A critical aspect of the transaction, entry of the Bar Order, has been a condition of any settlement with Raymond James since the commencement of the parties' settlement discussions. In colloquial terms, Raymond James' willingness to settle so generously is contingent upon "global peace" with respect to all claims that could be asserted against Raymond James relating in any way whatsoever to the Jay Peak fraud, the Receiver's Action, and the Investor Actions. Raymond James needs to ensure that it will pay—albeit a substantial payment—only once.

As a result, the Bar Order is a condition precedent to the effectiveness of the Settlement Agreement and to full receipt of the Settlement Amount.  Parties affected by the Bar Order will receive notice in the manner set forth below and provided in the Preliminary Approval Order.

**F.     Settlement Approval Procedures**

To afford parties affected by the Settlement Agreement and the Bar Order notice and an opportunity to object and participate in a hearing, should they wish to do so, the Receiver proposes the following procedures for notice, objections and a hearing (the "Settlement Approval Procedures"):[9]

(i)     Notice.  The Receiver will prepare a notice substantially in form and content as Ex. C to the Settlement Agreement (the "Notice"), which will contain a description of the Settlement Agreement and the Bar Order and afford affected parties the opportunity to obtain copies of all the settlement-related papers; the notice will be distributed in accordance with items (ii), (iii) and (iv) below.

(ii)    Service.  The Receiver will serve the Notice no later than ten days after entry of the Preliminary Approval Order via email (or if no electronic mailing address is available, then by first class U.S. mail, postage prepaid) to

a.     all counsel who have appeared of record in the SEC Action;

b.     all counsel for all investors who are known by the Receiver to have appeared of record in any legal proceeding or arbitration commenced by or on behalf of any individual investor or putative class of investors

---

[9]     Again, these are essentially the same procedures adopted by the Court in connection with the Receiver's previous settlement with Citibank, N.A.  [D.E. 207].

Case No. 16-cv-21301-GAYLES

seeking relief against any person or entity relating in any manner to the Receivership Entities or the subject matter of the SEC Action;

c.   all known investors in each and every one of the Receivership Entities identified in the investor lists in the possession of the Receiver at the addresses set forth therein;

d.   all known non-investor creditors of each and every one of the Receivership Entities identified after a reasonable search by the Receiver;

e.   all parties to the SEC Action and the Investor Actions;

f.   all known professionals, financial institutions, and consultants of the Receivership Entities identified by Raymond James from discovery in the Receiver's Action or Investor Actions;

g.   all known owners, officers, directors, and senior management employees of the Receivership Entities identified by Raymond James from discovery in the Receiver's Action or Investor Actions; and

h.   other persons identified by Raymond James from discovery in the Receiver's Action or Investor Actions.

(iii)   Publication.  The Receiver will publish the Notice no later than ten days after entry of the Preliminary Approval Order

a.   twice a week for a period of three consecutive weeks in each of the Burlington Free Press and Vermont Digger; and

b.   on the website maintained by the Receiver in connection with the SEC Action (www.JayPeakReceivership.com), on which there is a "drop down" feature that permits viewers to convert website text to seven languages.

(iv)   Copies upon Request.  The Receiver will provide promptly copies of the Motion, the Settlement Agreement, and all exhibits and attachments thereto, to any person who requests such documents via email to Kimberly Matregrano at kimberly.matregrano@akerman.com, or via telephone by calling Ms. Matregrano at 954-759-8929.

(v)   Evidence of Compliance.  No later than five days before the Final Approval Hearing (defined below), the Receiver will file with the Court written evidence of compliance with items (i) through (iv) above either in the form of an affidavit or declaration.

(vi)   Hearing.  The Receiver requests that the Court schedule a hearing (the "Final Approval Hearing") to consider final approval of the Settlement Agreement and

entry of the Bar Order on a date that is at least sixty calendar days after the entry of the Preliminary Approval Order.

(vii)   <u>Objection Deadline and Objections</u>.

    a.    The Receiver requests that the Court require any person who objects to the Settlement Agreement or the Bar Order to file an objection with the Court no later than thirty calendar days after entry of the Preliminary Approval Order (the "<u>Objection Deadline</u>").

    b.    The Receiver requests that the Court require all such objections to

      i.    be in writing;

      ii.    be signed by the person filing the objection, or his or her attorney;

      iii.    state, in detail, the factual and legal grounds for the objection;

      iv.    attach any document the Court should review in considering the objection and ruling on the Motion;

      v.    require the person filing the objection to make a request to appear at the Final Approval Hearing, if that person intends to appear at the Final Approval Hearing; and

      vi.    be served by email or regular mail on:

            Michael I. Goldberg, Esq.
            Akerman LLP
            350 Las Olas Boulevard, Ste. 1600
            Fort Lauderdale, FL 33301

            Jeffrey C. Schneider, Esq.
            Levine Kellogg Lehman Schneider + Grossman, LLP
            201S. Biscayne Blvd.
            22nd Floor
            Miami, FL 33131

            Stanley H. Wakshlag, Esq.
            Deborah S. Corbishley, Esq.
            Kenny Nachwalter, P.A.
            Four Seasons Tower
            Suite 1100
            1441 Brickell Avenue
            Miami, FL 33131

            Thomas A. Tucker Ronzetti, Esq.
            Harley S. Tropin, Esq.

Kozyak Tropin & Throckmorton
2525 Ponce de Leon Blvd.
9th Floor
Miami, FL 33134

c.      The Receiver requests that, subject to the discretion of this Court, no person be permitted to argue at the Final Approval Hearing unless such person has complied with the requirements of these procedures.

d.      The Receiver also requests that any party to the Settlement Agreement be authorized to file a response to the objection before the Final Settlement Hearing.

(viii)  <u>Attorneys' Fees</u>.  The Receiver proposes that all attorneys wishing to seek compensation from the Attorneys' Fund established in the Settlement Agreement do so as provided thereunder, subject to approval by this Court.

## G.      A Temporary Stay of Proceedings Against Raymond James is Necessary

While the Receiver, Interim Class Counsel, and Raymond James have reached an agreement with respect to the claims in their respective cases, other Investor Actions are proceeding, with the plaintiffs in those actions continuing to pursue claims against Raymond James.  Such continuing actions threaten this settlement as the claims asserted against Raymond James in the various actions are interrelated.  In addition, continued prosecution of claims against Raymond James necessarily distracts from the settling parties' efforts to resolve all matters, while also increasing litigation fees and costs on all sides—including the Receivership Estate—thereby harming investors and creditors.  Finally, if there happened to be any recoveries from Raymond James in those actions, it would interfere with the receivership administration process and the disbursement scheme of the Settlement Amount delineated in the Settlement Agreement.  Thus, continued litigation against Raymond James serves no purpose other than to interfere with the Receiver's administration of his claims and distribution of funds pursuant to the Settlement Agreement.

### III.
### Relief Requested

The Receiver respectfully requests (i) entry of the Preliminary Approval Order upon the filing of this Motion, and (ii) entry of the Bar Order, after expiration of the Objection Deadline if no objections are timely filed or after the Final Approval Hearing if objections are timely filed.

### IV.
### Basis for Requested Relief

"A district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). In such an action, a district court has the power to approve a settlement that is fair, adequate and reasonable, and is the product of good faith after an adequate investigation by the receiver. *See Sterling v. Steward*, 158 F.3d 1199 (11th Cir. 1998). "Determining the fairness of the settlement is left to the sound discretion of the trial court and *we will not overturn the court's decision absent a clear showing of abuse of that discretion*." *Id.* at 1202 (quoting *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984) (emphasis supplied)).

A district court also has the power to enter an order permanently enjoining third parties from bringing any claims against a settling party that could have been asserted by or through the receivership or in connection with any the facts giving rise to the receivership – often referred to as a "bar order." *SEC v. Kaleta*, 530 Fed. Appx. 360 (5th Cir. 2013) (approving bar order in SEC receivership). Bar orders are appropriate "to assist the parties in reaching a settlement." *Matter of Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996) (approving a bar order in a bankruptcy case). Such bar orders have been approved by the Eleventh Circuit and in cases in this District. *See, e.g., In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1076 (11th Cir. 2015) (approving a bar order in a chapter 11 bankruptcy case); *In re U.S. Oil and Gas Lit.*, 967

F.2d 480 (11th Cir. 1992) (approving bar order in a class action); *SEC v. Mutual Benefits Corp.*, No. 04-60573 [ECF No. 2345] (S.D. Fla. Oct. 13, 2009) (Moreno, J.) (approving bar order in SEC receivership); *SEC v. Latin American Services Co., Ltd.*, No. 99-2360 [ECF No. 353] (S.D. Fla. May 14, 2002) (Ungaro-Benages, J.) (approving bar order in SEC receivership). Entry of a bar order is reviewed for an abuse of discretion. *See Seaside Eng'g*, 780 F.3d at 1081 (affirming entry of a bar order where "the bankruptcy court did not abuse its discretion").

The powers of the Court also include the fixing of procedures for the grant of such relief, as long as due process is afforded to affected persons. *See Elliott*, 953 F.2d at 1566.

Another component of the Court's broad, equitable powers is the Court's ability to stay litigation of non-parties to a receivership action from interfering with the administration of the receivership estate. *See SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980) (recognizing the District Court's authority to enter anti-litigation injunctions where necessary to prevent interference to administration of receivership estate); *see also SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1195 (10th Cir. 2010) (discussing need for stay of related actions where litigation would affect receivership's distribution).

A.    **The Settlement Agreement is fair, adequate, and reasonable.**

To approve a settlement in an equity receivership, a district court must find the settlement is fair, adequate and reasonable, and is not the product of collusion between the parties. *See Sterling*, 158 F.3d at 1203. To determine whether the settlement is fair, the court should examine the following factors: "(1) the likelihood of success; (2) the range of possible [recovery]; (3) the point on or below the range of [recovery] at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Id.* at 1203 n.6 (citing *Bennett*, 737 F.2d at 986).

18

Upon due consideration of these governing factors, the Settlement Agreement should be approved.  Before entering into the Settlement Agreement, the Receiver and his counsel carefully considered and dutifully investigated, analyzed, and evaluated the claims against Raymond James; the defenses asserted to those claims; the delay and expense of continued prosecution of such claims; the uncertainty of outcome in any such litigation; and the possibility of appeal by Raymond James of any adverse outcome.  The Receiver entered into the Settlement Agreement after extensive, arm's length negotiations conducted between the parties and their experienced counsel in good faith.  It was, of course, not the product of collusion.  *See Hemphill v. San Diego Ass'n of Realtors, Inc.,* 225 F.R.D. 616, 621 (S.D. Cal. 2004)("[T]he courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement[.]").

Indeed, it bears mention that the process of negotiating the terms of the proposed settlement occurred over a period of nearly one year, during the course of which Raymond James and its counsel were cooperative with and supportive of the Receiver's efforts on behalf of the Receivership Entities and the Investors, forthcoming with documents, information, and testimony, and demonstrated repeatedly a good faith intention to reach an amicable resolution of the claims brought against it to benefit the Receivership Estate and the Investors.  During that time, the parties produced hundreds of thousands of pages of documents to one another and deposed 14 witnesses, including three high-level employees of Raymond James.  In addition to months of informal negotiations, the parties attended a two-day formal mediation presided over by Bruce Greer as mediator.  Involvement of a skilled mediator is viewed as a positive factor in addressing the reasonableness of a settlement.  *See, e.g., Poertner v. Gillette Co.,* 14-13882, 2015 WL 4310896, *6 (11th Cir. 2015) (affirming approval of class action settlement, noting the parties' arms-length negotiations moderated by an experienced mediator); *Lee v. Ocwen Loan*

*Servicing, LLC,* No. 14-CV-60649, slip op. at 25-26 (S.D. Fla. Sept. 14, 2015) (approving settlement and noting that parties' use of a highly respected mediator supported the conclusion that the settlement was not the product of collusion); *Hamilton v. SunTrust Mortg. Inc.,* No. 13-60749-CIV, 2014 WL 5419507, at *2 (S.D. Fla. Oct. 24, 2014) (noting that the fact that the settlement occurred following significant litigation, considerable document discovery, and months of negotiations with the help of a well-respected mediator supported approval of class action settlement). The proposed settlement marks the culmination of those efforts, and is reflected in the Settlement Agreement and this Motion.

The Settlement Agreement thus provides for a total payment of $150,000,000.00 to the Receivership Estate, which enables the Receiver to refund one-hundred percent of the principal investment for many Investors and maximize the value and returns of the Receivership Entities for the remaining Investors. Such a recovery is well within the range of reasonableness, and will provide the liquidity needed to maximize the value of the assets owned by the Receivership Entities for the benefit of the Investors and other creditors. The Settlement Agreement, therefore, provides a substantial benefit to the Receivership Entities and their Investors and other creditors. Accordingly, the Settlement Agreement is fair, adequate and reasonable, and not the product of collusion.

**B.      The Bar Order Provision is necessary and appropriate ancillary relief to the SEC Action.**

*i.      The Court has the authority to approve the Bar Order Provision.*

District courts have the power to enter bar orders in equity receiverships where necessary or appropriate as ancillary relief in the context of the underlying action. *See Kaleta*, 530 Fed. Appx. at 362. As the Fifth Circuit has explained, a district court has "inherent equitable authority to issue a variety of ancillary relief measures in actions brought by the SEC to enforce the federal securities laws." *Id.* (internal quotations omitted). *See also* All-Writs Act,

28 U.S.C. 1651; *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 338 (2d Cir. 1985). Such ancillary relief includes injunctions against non-parties as part of settlements in the receivership. *See Kaleta*, 530 Fed. Appx. at 362.

This power to enter bar orders is consistent with the Eleventh Circuit's recognition of the district court's "broad powers and wide discretion to determine relief in an equity receivership [that] derives from the inherent powers of an equity court [to] fashion relief[.]" *Elliott*, 953 F.2d at 1566. Moreover, the Eleventh Circuit has *expressly* held that district courts have the power to enter bar orders. *See Seaside Eng'g*, 780 F.3d at 1081 (affirming entry of a bar order through a chapter 11 plan where "fair and equitable"); *Munford*, 97 F.3d at 455 (affirming entry of a bar order over objection of non-settling defendants where "integral to settlement in an adversary proceeding"); *In re U.S. Oil and Gas Lit.*, 967 F.2d 489 (11th Cir. 1992) (affirming entry of a bar order over objection of non-settling co-defendants).[10]

Citing the Eleventh Circuit's precedents in *Munford* and *U.S. Oil and Gas Litigation*, Judge Moreno concluded that bar orders are "within this Court's jurisdiction and equitable authority to enter and enforce." *Mutual Benefits Corp.*, No. 04-60573, slip op. [ECF No. 2345] at 8. Accordingly, courts in this District have regularly entered bar orders in SEC receiverships and in bankruptcy cases. *See*, *e.g.*, *id.* (entering a bar order where it was "necessary" to administration of the receivership); *Brophy v. Salkin,* 550 B.R. 595 (S.D. Fla. 2015) (affirming bankruptcy court's entry of bar order); *Latin Am. Services Co., Ltd.*, No. 99-2360, slip op. [ECF No. 353] at 4 (entering a bar order against all investors over investor objection); *In re Rothstein*

---

[10]   The Eleventh Circuit's approval of bar orders in bankruptcy cases is particularly persuasive here in that the Eleventh Circuit has also recognized the parallels of between bankruptcy proceedings and equity receiverships. *See Bendall v. Lancer Management Group, LLC*, 523 Fed. Appx. 554, 557 (11th Cir. 2013) ("Given that a primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors, we will apply cases from the analogous context of bankruptcy law, where instructive, due to limited case law in the receivership context.").

*Rosenfeldt Adler, PA*, 2010 WL 3743885, at *7 (Bankr. S.D. Fla. Sept. 22, 2010) (entering bar

order that was "necessary to achieve the complete resolution" of the parties' disputes and was

"fair and equitable").

ii.      *The Court should enter the Bar Order.*

Whether a bar order should be approved turns on the specific facts and circumstance of

each individual case. *See Kaleta*, 530 Fed. Appx. at 362 ("receivership cases are highly fact-

specific").   In this case, there are ample facts establishing that the Bar Order Provision is

necessary and appropriate ancillary relief to the SEC Action:

- Entry of the Bar Order is necessary to secure both the Initial Settlement Payment of $91,700,000.00 and the balance of $53,800,000.00 once the Bar Order becomes Final as that term is defined in the Settlement Agreement.  *See Seaside Eng'g*, 780 F.2d at 1080 (approving bar order where settling party made a substantial contribution); *U.S. Oil and Gas Lit.*, 967 F.2d at 494 (bar order appropriate to secure $8.5 million in exchange for global peace for settling party); *Kaleta*, 530 Fed. Appx. at 362 (additional consideration in the form of guarantee of payment to the receivership).

- Considering the entire Settlement Amount, the Receiver is recovering enough to return the principal investments of many investors and fill a large portion of the "gap" of funds left behind by Quiros' fraudulent actions.  *See Munford*, 97 F.3d at 456 (approving bar order where settling party contributed nearly all proceeds of its insurance policy).

- The liquidity from the Settlement Amount is essential to continuing the operations of the Jay Peak Resort and Burke Mountain Hotel as going concerns, including payoff of liens, contractual obligations, trade debt, and encumbrances against the Receivership Estate, and to maximizing the value of the Jay Peak Resort, Burke Mountain Hotel, and other receivership assets for the benefit of the Receivership Entities' Investors and creditors.  *See Seaside Eng'g*, 780 F.2d at 1080 (approving bar order that was essential to maintaining operations of reorganized debtor and would provide "life blood"); *Mutual Benefits Corp.*, No. 04-60573, slip op. [ECF No. 2345] at 8 (bar order necessary to the administration and disposition of receivership property).

- The Bar Order is necessary and integral to the settlement and a full and final resolution of the disputes between the Receiver, Interim Class Counsel, and Raymond James.  It is a condition precedent to the Settlement Agreement—in particular, to both the Receiver's receipt of the full Settlement Amount and the

parties' mutual releases. *See U.S. Oil and Gas Lit.*, 967 F.2d at 494-95 (approving bar order that was "integral" to approved settlement).

- Without the Bar Order, the assets of the Receivership Entities would continue to be depleted by time-consuming and expensive litigation without certainty of outcome. *See Seaside Eng'g*, 780 F.3d at 1079 (bar order appropriate to stop the depletion of estate assets expended in funding litigation).

- The Bar Order is tailored to the facts underlying this SEC Action, the Receiver's Action, and the Investor Actions, and the barred claims are interrelated to claims that could be brought, and were in fact brought, by the Receivership Entities. *See U.S. Oil and Gas Lit.*, 967 F.2d at 496 (barring interrelated claims); *Kaleta*, 530 Fed. Appx. at 362 (bar order appropriately tailored to claims that arise from the underlying fraud).

- Investors and creditors will greatly benefit from the Settlement Amount, as described above, by either receiving payments now or through a claim against the receivership after a claims process is established. *See Kaleta*, 530 Fed. Appx. at 362 (investors may "pursue their claims by participat[ing] in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate") (alteration in original; internal quotations omitted).

- The interests of persons affected by the Bar Order have been represented by the Receiver, acting in the best interests of the Receivership Entities in his fiduciary capacity and upon the advice and guidance of his experienced counsel.

In light of these facts, and the authorities entering similar bar orders in comparable circumstances, entry of the Bar Order is necessary and appropriate ancillary relief to the SEC Action.[11]

**C.      The Settlement Approval Procedures comply with due process, because they afford persons affected by the Settlement Agreement and Bar Order notice and an opportunity to be heard in a manner that is good and sufficient under the circumstances.**

"Due process requires notice and an opportunity to be heard." *Elliott*, 953 F.2d at 1566.

The procedures required to satisfy due process vary "according to the nature of the right and to the type of proceedings." *Id.* "[A] hearing is not required if there is no factual dispute." *Elliott*,

---

[11]   This Court entered a bar order in favor of Citibank, N.A. on October 18, 2016, in connection with the Receiver's settlement of claims with Citibank. [D.E. 231]. The language and effect of the Bar Order requested herein is virtually identical to that provided to Citibank.

953 F.2d at 1566.   Ultimately, due process requires procedures that are "fair."   *Id.*   The Settlement Approval Procedures meet these requirements.

The form and content of the Notice provide a reasonable opportunity to evaluate and object to the Motion, the Settlement Agreement and entry of the Bar Order.  The Notice contains a description of the settlement and required Bar Order, the parties to the Settlement Agreement, and the material terms thereof.  The Notice provides a reasonable description and warning that the rights of the person receiving or reviewing it may be affected by the Settlement Agreement and Bar Order and of their right to object to the settlement and the manner in which to make such an objection.

The manner and method of service and publication set forth in the Settlement Approval Procedures is reasonably calculated under the circumstances to disseminate the Notice to all affected parties.  The Notice will be served on counsel of record in the SEC Action and on counsel for investors appearing of record in *any* legal proceeding or arbitration relating to investors.  The Notice will be served on all investors identified in the investor lists maintained by the Receivership Entities.  The Notice will also be served on all identified officers, directors, owners, senior management employees, non-investor creditors, professionals, financial institutions, and consultants of the Receivership Entities.  Therefore, all investors, creditors, and other interested persons of which the Receiver has actual knowledge, will receive actual service of the Notice.

In addition, the Notice will be published in the *Burlington Free Press*, which is the regional paper of widest circulation in Vermont, and the *Vermont Digger*, which has run countless stories on Quiros and the Jay Peak projects and is believed to be followed by many stakeholders in the Receivership Entities.  The Notice will also be published on the Receiver's

website, which has been online since the Receiver's appointment and is available in seven languages.  Such publication is reasonably calculated to apprise persons not receiving actual service of the Notice that their rights may be affected and of their opportunity to object.[12]

Accordingly, the Settlement Approval Procedures furnish all parties in interest a full and fair opportunity to evaluate the Motion, the Settlement Agreement and the Bar Order, and to object thereto.

**D.     A Temporary Stay of the Receiver's Action and the Investor's Action as Against Raymond James is Warranted Under the Facts**

In an equity receivership, a District Court is empowered to stay litigation that would affect or interfere with the orderly administration of the receivership estate.  *See Wencke*, 622 F.2d at 1369.  Thus, the proper focus in deciding whether to stay litigation commenced by non-parties to the receivership action is the litigation's effect on the receivership estate and interference with the administration of the receivership estate.  Here, continued litigation through the Investor Actions against Raymond James affects (i) the Receiver Entities' claims against Raymond James, which—as property of the Receivership Estate—are being settled by the Receiver through the Settlement Agreement, and (ii) the Receiver's administration and disbursement of forthcoming funds pursuant to the Settlement Agreement.  Thus, to ensure continued, fair and orderly administration of the Receiver's claims and property of the Receivership Estate, a temporary stay pending approval of and performance under the Settlement Agreement is required.

---

[12]  Indeed, since the settlement was announced on April 13, 2017, it has already been widely reported, including in the New York Times, Boston Globe, Washington Post, Fort Lauderdale Sun-Sentinel, and Miami Herald.

# V.
## Conclusion

**WHEREFORE**, the Receiver respectfully requests that the Court grant the Motion, and enter the Preliminary Approval Order and the Bar Order, in the manner set forth above.

## Local Rule 7.1 Certification of Counsel

Pursuant to Local Rule 7.1, undersigned counsel has conferred with counsel for all parties to this action. Undersigned counsel hereby certifies that the SEC does not object to the settlement, but takes no position for or against the proposed bar order; defendant William Stenger was consulted, but had not responded as of the filing of this Motion; and defendant Ariel Quiros was consulted, but had not formulated a position as of the filing of this Motion.

Dated:  April 18, 2017

Respectfully submitted,

**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
*Co-Counsel for the Receiver*
201 South Biscayne Boulevard
Miami Center, 22nd Floor
Miami, FL 33131
Telephone:  (305) 403-8788
Facsimile:  (305) 403-8789

By: */s/ Jeffrey C. Schneider*
JEFFREY C. SCHNEIDER, P.A.
Florida Bar No. 933244
Primary: jcs@lklsg.com
Secondary: lv@lklsg.com
STEPHANIE REED TRABAND, P.A.
Florida Bar No. 158471
Primary: srt@lklsg.com
Secondary: lv@lklsg.com
MARCELO DIAZ-CORTES, ESQ.
Florida Bar No. 118166
Primary: md@lklsg.com
Secondary: cod@lklsg.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this April 18, 2017 via the Court's notice of electronic filing on all CM/ECF registered users entitled to notice in this case as indicated on the attached Service List.

By: */s/ Jeffrey C. Schneider*

JEFFREY C. SCHNEIDER, P.A.

Case No. 16-cv-21301-GAYLES

## SERVICE LIST

**1:16-cv-21301-DPG Notice will be electronically mailed via CM/ECF to the following:**

**Robert K. Levenson, Esq.**
Senior Trial Counsel
Florida Bar No. 0089771
Direct Dial: (305) 982-6341
Email: levensonr@sec.gov
almontei@sec.gov, gonzalezlm@sec.gov,
jacqmeinv@sec.gov
**Christopher E. Martin, Esq.**
Senior Trial Counsel
SD Florida Bar No.: A5500747
Direct Dial: (305) 982-6386
Email: martinc@sec.gov
almontei@sec.gov, benitez-perelladaj@sec.gov
**SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:   (305) 536-4154
*Attorneys for Plaintiff*

**Roberto Martinez, Esq.**
Email: bob@colson.com
**Stephanie A. Casey, Esq.**
Email: scasey@colson.com
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile:  (305) 476-7444
*Attorneys for William Stenger*

**Jeffrey C.  Schneider, Esq.**
Email: jcs@lklsg.com
**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN**
Miami Center, 22nd Floor
201 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 403-8788
*Co-Counsel for Receiver*

**Jonathan S. Robbins, Esq.**
jonathan.robbins@akerman.com
**AKERMAN LLP**
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, Florida 33301
Telephone:  (954) 463-2700
Facsimile:   (954) 463-2224

**Naim Surgeon, Esq.**
naim.surgeon@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida  33131
Telephone: (305) 374-5600
Facsimile:  (305) 349-4654
*Attorney for Court-Appointed Receiver*

**Melissa Damian Visconti, Esq.**
Email: mvisconti@dvllp.com
**Melanie E. Damian**
Email: mdamian@dvllp.com
Damian & Valori LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
(305) 371-3960
*Attorney for Ariel Quiros*


**David B. Gordon, Esq.**
Email: dbg@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
12 East 49th Street – 30th Floor
New York, New York 10017
Telephone: (212) 509-3900
*Co-Counsel for Ariel Quiros*


**Jean Pierre Nogues, Esq.**
Email: jpn@msk.com
**Mark T. Hiraide, Esq.**
Email: mth@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
Telephone (310) 312-2000
*Co-Counsel for Ariel Quiros*

**Mark P. Schnapp, Esq.**
Email: schnapp@gtlaw.com
**Mark D. Bloom, Esq.**
Email: bloomm@gtlaw.com
**Danielle N. Garno, Esq.**
E-Mail: garnod@gtlaw.com
**GREENBERG TRAURIG, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
*Attorney for Intervenor, Citibank N.A.*


**J. Ben Vitale, Esq.**
Email: bvitale@gurleyvitale.com
**David E. Gurley, Esq.**
Email: dgurley@gurleyvitale.com
**GURLEY VITALE**
601 S. Osprey Avenue
Sarasota, Florida 32436
Telephone: (941) 365-4501
*Attorney for Blanc & Bailey Construction, Inc.*


**Stanley Howard Wakshlag, Esq.**
Email: swkshlag@knpa.com
**KENNY NACHWALTER, P.A.**
Four Seasons Tower
1441 Brickell Avenue
Suite 1100
Miami, FL 33131-4327
Telephone: (305) 373-1000
*Attorneys for Raymond James & Associates Inc.*