# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:  16-cv-21301-GAYLES

**SECURITIES AND EXCHANGE COMMISSION,**

 **Plaintiff,**

**v.**

**ARIEL QUIROS,**
**WILLIAM STENGER,**
**JAY PEAK, INC.,**
**Q RESORTS, INC.,**
**JAY PEAK HOTEL SUITES L.P.,**
**JAY PEAK HOTEL SUITES PHASE II. L.P.,**
**JAY PEAK MANAGEMENT, INC.,**
**JAY PEAK PENTHOUSE SUITES, L.P.,**
**JAY PEAK GP SERVICES, INC.,**
**JAY PEAK GOLF AND MOUNTAIN SUITES L.P.,**
**JAY PEAK GP SERVICES GOLF, INC.,**
**JAY PEAK LODGE AND TOWNHOUSES L.P.,**
**JAY PEAK GP SERVICES LODGE, INC.,**
**JAY PEAK HOTEL SUITES STATESIDE L.P.,**
**JAY PEAK GP SERVICES STATESIDE, INC.,**
**JAY PEAK BIOMEDICAL RESEARCH PARK L.P.,**
**AnC BIO VERMONT GP SERVICES, LLC,**

 **Defendants, and**

**JAY CONSTRUCTION MANAGEMENT, INC.,**
**GSI OF DADE COUNTY, INC.,**
**NORTH EAST CONTRACT SERVICES, INC.,**
**Q BURKE MOUNTAIN RESORT, LLC,**

 **Relief Defendants.**

**Q BURKE MOUNTAIN RESORT, HOTEL**
**AND CONFERENCE CENTER, L.P.**
**Q BURKE MOUNTAIN RESORT GP SERVICES, LLC,**

 **Additional Receivership Defendants[1]**
_____/

## RECEIVER'S SECOND INTERIM OMNIBUS APPLICATION FOR ALLOWANCE AND PAYMENT OF PROFESSIONALS' FEES AND REIMBURSEMENT OF EXPENSES FOR <u>NOVEMBER 1, 2016 - APRIL 30, 2017</u>

---

[1] *See* Order Granting Receiver's Motion to Expand Receivership dated April 22, 2016 [ECF No. 60].

Michael I. Goldberg (the "Receiver"), in his capacity as the court-appointed Receiver for Defendants, Jay Peak, Inc., Q Resorts, Inc., Jay Peak Hotel Suites L.P., Jay Peak Hotel Suites Phase II, L.P., Jay Peak Management, Inc., Jay Peak Penthouse Suites L.P., Jay Peak GP Services, Inc., Jay Peak Golf and Mountain Suites L.P., Jay Peak GP Services Golf, Inc., Jay Peak Lodge and Townhouses L.P., Jay Peak GP Services Lodge, Inc., Jay Peak Hotel Suites, L.P., Jay Peak GP Services, Inc., Jay Peak Biomedical Research Park L.P., and AnC Bio Vermont GP Services, LLC (collectively, "Receivership Defendants") and Relief Defendants Jay Construction Management, Inc., GSI of Dade County, Inc., North East Contract Services, Inc., and Q Burke Mountain Resort, LLC (collectively, "Relief Defendants") and Additional Receivership Defendants Q Burke Mountain Resort, Hotel and Conference Center, L.P. and Q Burke Mountain Resort GP Services, LLC, (collectively "Q Burke Entities" and with the Receivership Defendants and the Relief Defendants, the "Receivership Entities") files this Second Interim Omnibus Application (the "Application") for Allowance and Payment of Professionals' Fees and Reimbursement of Expenses for November 1, 2016 – April 30, 2017[2] (the "Application Period"), and in support, states as follows:

### **Preliminary Statement**

During the six month period covered by this Application, the Receiver and his professional have been very successful in resolving disputes and recovering funds which will be applied to pay the claims of the creditors of the Receivership Entities, to reimburse investors who will be unable to obtain their citizenship, and provide benefit to other investors through improvements to the value of the receivership properties. These claims and improvements will be paid from the proceeds of the $150 million settlement (the "RJ Settlement") the Receiver has

---

[2] The Application includes expenses incurred by Kapila Mukamal in September and October 2016, which were inadvertently left out of the First Interim Fee Application and 6.0 hours billed in May 2017 by the Receiver's Vermont-based construction counsel, Strouse & Bond PLLC.

reached with Raymond James and Associates ("Raymond James").  The Receiver and his professionals have also set in place improvements to the Receivership Entities which will enhance the value of the receivership assets and create jobs necessary for other investors to qualify to obtain their citizenship.  The Receiver seeks Court approval to pay the sum of $1,269,677.80 to the professionals engaged by the Receiver for fees incurred and reimbursement of $82,973.40 in expenses for a total payment of $1,352,651.20. As more fully described herein the professionals have provided valuable services, have billed at significantly reduced rates, and are entitled to reasonable payment of the fees and reimbursement of their expenses.

**I.     Background**

On April 12, 2016, the Securities and Exchange Commission ("SEC") filed a complaint [ECF No. 1] ("Complaint") in the United States District Court for the Southern District of Florida (the "Court") against the Receivership Defendants, the Relief Defendants, William Stenger ("Stenger") and Ariel Quiros ("Quiros" and with the Receivership Defendants, Relief Defendants and Stenger, the "Defendants"), the principal of the Receivership Defendants, alleging that the Defendants violated the Securities Act of 1933 and the Securities Exchange Act of 1934 by making false or materially misleading representations to foreign investors who provided funds to construct properties pursuant to the federal EB-5 immigration program.

On April 13, 2016, upon the SEC's Motion for Appointment of Receiver [ECF No. 7], the Court entered an Order ("Receivership Order") [ECF No. 13] selecting Michael Goldberg as the Receiver over the Receivership Defendants and the Relief Defendants (the "Receivership Order").  Relevant to this Application, the Receivership Order authorizes the Receiver to appoint professionals to assist him in "exercising the power granted by this Order …" *See* Receivership Order at ¶ 4. Moreover, the Receiver and his professionals are entitled to reasonable

compensation from the assets of the Receivership Defendants, subject to approval of the Court. *See* Receivership Order at ¶14.

The Receivership Order directs the Receiver to file "no less than quarterly" applications for reasonable compensation. *Id.* However, the Court previously extended the deadline for the Receiver and his professionals to file their first quarterly application for reasonable compensation until such time as the Receiver believes there are sufficient funds available to compensate the Receiver and his professionals or otherwise petitions the Court for an award of reasonable fees. *See* ECF No. 194. Due to the settlements and recoveries described herein, the Receiver believes there are funds available to pay professionals for their services covering the six month period from November 1, 2016 through April 30, 2017, which will not take away resources from operating, maintaining and preserving the assets of the Receivership Entities. Accordingly, through this Application, the Receiver seeks payment for two quarterly periods.

**II.   Information about Applicant and the Application**

This Application has been prepared in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "Billing Instructions"). Pursuant to the Billing Instructions, the Receiver states as follows:

| | | |
|---|---|---|
| **(a)** | **Time period covered by the Application:** | November 1, 2016 – April 30, 2017 |
| **(b)** | **Date of Receiver's appointment:** | April 13, 2016 |
| **(c)** | **Date services commenced:** | April 4, 2016[3] |
| **(d)** | **Names and rates of all professionals:** | See Exhibit 4(a) – (f) |
| **(e)** | **Interim or Final Application:** | Interim |
| **(f)** | **Records supporting fee application:** | See below |

The following exhibits are provided in accordance with the Billing Instructions:

---

[3] Levine Kellogg Lehman Schneider and Grossman LLP and Kapila Mukamal billed time prior to the official appointment of the Receiver, which are not subject to this fee request.

Exhibit 1:   Receiver's Certification

Exhibit 2:   Total compensation and expenses

        Exhibit 2(a):   Total compensation and expenses requested for this Application

        Exhibit 2(b):   Amounts previously requested and total compensation and expenses previously awarded

Exhibit 3:   Fee Schedule: Names and Hourly Rates of Professionals and Paraprofessionals & Total Amount Billed for each Professional and Paraprofessional:

        Exhibit 3(a):   Akerman LLP

        Exhibit 3(b):   Levine Kellogg Lehman Schneider and Grossman LLP

        Exhibit 3(c):   Kapila Mukamal

        Exhibit 3(d):   Gowling WLK

        Exhibit 3(e):   Klasko Immigration Law Partners, LLP

        Exhibit 3(f):   Strouse & Bond PLLC

Exhibit 4:   Time records by professional for the time period covered by this Application, sorted in chronological order, including a summary and breakdown of the requested reimbursement of expenses:

        Exhibit 4(a):   Akerman LLP

        Exhibit 4(b):   Levine Kellogg Lehman Schneider and Grossman LLP

        Exhibit 4(c):   Kapila Mukamal

        Exhibit 4(d):   Gowling WLK

        Exhibit 4(e):   Klasko Immigration Law Partners, LLP

        Exhibit 4(f):   Strouse & Bond PLLC

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

### III.   Case Status

#### (a)   Cash on hand

The amount of cash in the Receivership bank accounts as of the date of filing this Application is $12,803,565.85. The amount of accrued administrative expenses totals $1,352,651.20 and is comprised of what is owed to the professionals described herein. The amount of unencumbered funds in the receivership are $5,367,117.63. These amounts do not include the funds used to maintain and operate the Jay Peak Resort, the Burke Mountain Hotel and related properties.

#### (b)   Summary of creditor claims proceedings

The unique nature of the receivership case has presented the need for multiple classifications of claims. As funds are located, the Receiver has begun the process of paying undisputed claims of creditors and reimbursing investors who do not qualify for citizenship. For instance, after the Receiver discovered a bank account holding approximately $17 million attributable to the investment of 36 of the Biomedical Phase VII investors, the Court entered an Order granting Receiver's motion to authorize the refund to those investors [ECF No. 282]. To date, the Receiver has refunded 32 of the 36 investors Biomedical Phase VII investors whose investments were identified in the frozen bank account.

Moreover, the Court has authorized the Receiver to use a portion of the funds from the settlement with Citibank N.A. to pay the undisputed claims of lien of the contractors who performed construction work on the Burke Mountain Hotel (the "Burke Contractors") and on the Phase VI Stateside cottages (the "Stateside Contractors"). The Receiver has made a partial payment to the Stateside Contractors. The proceeds from the RJ Settlement will provide the Receiver with sufficient funds to pay the remainder of the undisputed claims of the Stateside Contractors and the full amount of the undisputed claims of the Burke Contractors.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

The proceeds of the RJ Settlement will also provide the Receiver with funds to satisfy all principal obligations for all Phase I investors; pay all past-due trade debt on the Jay Peak Resort and the Burke Mountain Hotel; continue construction of Phase VI needed for Phase VI investors to become eligible for permanent residency; provide refunds of all principal investments to all remaining Phase VII investors; provide refunds of all principal for up to twenty Phase VII investors who, based on current projections, may not be granted permanent residency if the requisite number of jobs are not created; provide refunds of all principal investments to the Phase VIII investors whose I-526 petitions were denied prior to the Receivership Case.

(c)     **Description of assets**

In additional to the descriptions provided herein, for detailed information about the assets of the receivership estate, including the anticipated or proposed disposition of the assets, the Receiver respectfully refers the Court and interested parties to the First Interim Report filed, on August 12, 2016 [ECF No. 201]; the Second Interim Report, filed on November 22, 2016 [ECF No. 240] and the Third Interim Report, which will be filed soon after this Application is filed.

(d)     **Description of liquidated and unliquidated claims held by the Receiver**

The Receiver reached significant settlements during this Application Period. The Receiver originally negotiated a partial settlement with Raymond James, arising out of the settlement the State of Vermont reached with Raymond James. When Raymond James settled with the State of Vermont, the State of Vermont directed Raymond James pay the Receiver $4.5 million (the "RJ Funds") to be held for the purpose of reimbursing claims to EB-5 investors. Raymond James and the Receiver reached an interim agreement to help the Jay Peak Resort remain operational and to maximize its value to investors and creditors. Pursuant to the agreement, the Receiver was permitted to use up to $1.5 million of the RJ Funds to pay expenses associated with the Receivership Estate's operations.

Later, the Receiver, along with counsel for groups of investors, reached a significant settlement with Raymond James, pursuant to which Raymond James will be paying $150 million. This broad-sweeping settlement will provide the Receiver with sufficient funds to pay all past-due contractors, all past-due vendors and trade creditors and all investors who are unable to receive their green cards. Moreover, the RJ Settlement will allow the Receiver to continue construction and operations at the resorts, provide all investors with the opportunity to obtain their permanent residency or obtain a refund of their principal investment.

On April 18, 2017, the Receiver filed a Motion for (I) Approval of Settlement Between Receiver, Interim Class Counsel, and Raymond James & Associates, Inc.; (II) Approval of Form, Content and Manner of Notice of Settlement and Bar Order; (III) Temporary Stay of Related Litigation Against Raymond James & Associates, Inc.; and (IV) Entry of Bar Order [ECF No. 315]. The RJ Settlement includes an Order barring all non-governmental claims against Raymond James. Accordingly, the Receiver has provided notice to all interested parties, by mail, posting on the Receiver's website and through advertisements in Vermont publications and an opportunity to object to the terms of the RJ Settlement. A hearing to approve the RJ Settlement took place on June 30, 2017, at which time the Court approved the RJ Settlement.[4]

The Receiver continues to review potential causes of action against the principals of the Receivership Defendants and various third parties. These claims may include common law claims and claims under fraudulent transfer statutes. While the Receiver cannot yet predict the likelihood, amount or cost-effectiveness of particular claims or the claims as a whole, the Receiver continues to diligently evaluate claims against third parties.

---

[4] The Court has yet to approve the distribution of legal fees, although it approved the establishment of the fund in which to pay fees to the extent they are approved.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

## IV.    The Professionals

### (a)    Akerman LLP

The Receiver is a partner at the law firm of Akerman LLP ("Akerman") and co-chair of Akerman's Fraud & Recovery Practice Group. The Receiver has practiced law for twenty-six years and specializes in receivership and bankruptcy cases. The Receiver has been appointed receiver in more than twenty state and federal receivership cases and has represented receivers and trustees in many other cases. The Receiver is working with a team of attorneys and paralegals at Akerman to administer this case. Since Akerman employs more than 650 lawyers and government affairs professionals through a network of 24 offices, the Receiver has ready access to professionals who specialize in litigation, real estate, corporate affairs, public policy and other pertinent matters and has used their expertise to administer the receivership estate.

The Receiver has agreed to reduce his billing rate and the rates of his professionals for this case. Instead of their standard billing rates, which range from $440.00 to $7250.00, all partners are billed at $395.00; associate rates are capped at $260.00; and paraprofessionals are billed at $175.00, resulting in a blended rate of $320.30.  In addition to the rate reduction, all time billed to long distance travel is reduced by an additional 50%. These discounts equate to a $310,000 reduction from Akerman's standard billing.  During the period covered by this Application, the Receiver and Akerman billed 1,714.20 hours and seek payment of fees in the sum of $539,212.50 and reimbursement of expenses in the sum of $46,194.55, for a total of $585,407.05.

### (b)    Levine Kellogg Lehman Schneider + Grossman LLP

Jeffrey Schneider, a partner at the law firm Levine Kellogg Lehman Schneider + Grossman LLP ("LKLSG") provides special litigation and conflicts litigation services for the Receiver. Mr. Schneider is a trial lawyer whose practice focuses on complex commercial

litigation and receiverships.  Mr. Schneider has served as a receiver himself in several cases. Mr. Schneider has agreed to reduce the rates of his professionals for this case.  Instead of the standard billing rates of $450.00 to $600.00 per hour, all partners are billed at $250.00 to $260.00 per hour; all associates rates are reduced from the standard rates of $325.00 to $375.00 per hour, to $200.00 per hour; and all paraprofessionals are billed at $125.00 per hour, resulting in a blended rate of $209.18. This represents a significant reduction from LKLSG's standard billing rates and another $370,000.00 of savings for the receivership estate.  During the period covered by this Application, LKLSG billed 1,730.10 hours and seeks payment of fees in the sum of $361,908.50 and reimbursement of expenses in the sum of $24,068.18, for a total of $385,976.68.

### (c) Kapila Mukamal

Soneet Kapila, CPA, and the accounting firm Kapila Mukamal provide accounting and forensic work for the Receiver. Mr. Kapila's practice is focused on restructuring, creditors' rights, bankruptcy, fiduciary matters and financial transactions litigation. He has conducted numerous forensic and fraud investigations, and has worked in conjunction with the SEC, the Federal Bureau of Investigation and the United States Attorney's Office. Mr. Kapila is also a panel trustee for the United States Bankruptcy Court for the Southern District of Florida.

Mr. Kapila has agreed to reduce the rates of his professionals for this case not to exceed $395.00 per hour, resulting in a blended rate of $264.69. This represents a savings for the Receivership Estate in the approximate sum of $5,000.00. During the period covered by this Application, Kapila Mukamal billed 1,093.90 hours and seeks payment of fees in the sum of $284,361.10 and reimbursement of expenses in the sum of $8,476.23, for a total of $292,837.33.

### (d) Gowling WLK

Malcolm Ruby, a partner in the Toronto office of the law firm Gowling WLK, has assisted the Receiver in securing bank accounts located in in Canada. Mr. Ruby billed 5.2 hours

- 10 -

and seeks payment of fees in the sum of $2,741.20 and reimbursement of expenses in the sum of $1.20, for a total of $2,742.40.

(e)     **Klasko Immigration Law Partners, LLP**

The attorneys of Klasko Immigration Law Partners, LLP ("Klasko") have national reputations for cutting-edge immigration law practice, including working with immigrant investors applying for permanent residence status through the EB-5 program. Their experience working on EB-5 immigrant investor cases includes both representation of pooled investment companies and representation of individual investors investing in pooled investment companies, approved regional centers and their own companies. They used this experience to assist the Receiver and the Investors in providing information to the United States Citizenship and Immigration Services ("USCIS") in support of the investors' I-829 petitions.

The Klasko attorneys bill at rates from $340.00 to $850.00, but have reduced partners' rates to $495.00, resulting in a blended rate of $344.14 per hour for this case. These discounts equate to an $11,000 reduction from Klasko's standard billing.  During the period covered by this Application, Klasko seeks payment in the sum of $80,254.50 for 233.20 hours and reimbursement of expenses in the sum of $3,210.18, for a total of $83,464.68.

(f)     **Strouse & Bond PLLC**

The Receiver engaged David Bond of Strouse & Bond PLLC in Burlington, Vermont as local counsel to review the construction documents for the resumption of construction of the Stateside Project.   Mr. Bond billed 6.0 hours and seeks payment of fees in the sum of $1,200.000.

## V.     Summary of Services Rendered During the Application Period

Summaries of the services rendered during the Application Period are provided below. More detailed information is included in the time records attached hereto as Exhibits 4(a) – (e).

      (a)      **The Receiver and Akerman LLP**

The Receiver and the Akerman professionals have separated their time into the activity categories provided in the Billing Instructions. Narrative summaries of these activity categories are provided below.

<u>Asset Analysis and Recovery</u>

Asset Analysis and Recovery consists of the identification and review of potential assets including causes of action and non-litigation recoveries.

- The Receiver and the Akerman professionals analyzed documents produced as a result of subpoenas *duces tecum* directed to financial institutions and third parties whom may be holding receivership assets in order to identify concealed or fraudulently transferred receivership assets and causes of action.

- The Receiver's professionals recovered a laptop computer in Quiros' Miami offices. Akerman's attorneys coordinated third party document review to set aside potentially privileged documents prior to their analysis of the other information stored in the laptop.

- Akerman created an electronic database to maintain the documents and continues to update the database.

- As a result of the information gathered by the Receiver, the Akerman professionals responded to document requests from the State of Vermont and shared information with the State of Vermont and the SEC.

- The Receiver and the Akerman professionals conferred with the forensic accountants regarding their analysis of the document production.

- The Akerman professionals also continued to locate and liquidate financial accounts.

<u>Asset Disposition</u>

Asset Disposition relates to sales, leases, abandonment and related transaction work.

- The Receiver continued to analyze the value of various projects to determine which assets could be immediately sold in order to generate revenue and conferred with potential purchasers of the receivership assets.

- The Receiver also considered ways to enhance the receivership properties in order to create jobs for the benefit of the investors and to enhance the value of assets for their potential sale.

- 12 -

- The Receiver reached an agreement with Burke Mountain Academy ("BMA"), the leading ski racing academy which operates on Burke Mountain to reduce by $1 million, the $3 million loan owed to BMA, in exchange for expanding the Easement granted to BMA for its students and staff to continue to train on Burke Mountain.  By expanding the Easement, BMA will enlarge its ski program on its allotted trails through increased student enrollment and other means including permitting it to host additional races and guest training, resulting in additional needs for the services provided by the Burke Mountain Hotel.

- In connection with their plans to expand racing and ski race training on Burke Mountain, the Receiver and BMA have also entered into an operating agreement with respect to sharing certain revenue and expenses related to ski racing, the use of training lanes and other hotel amenities by third parties brought to the hotel by BMA.

- The Receiver and BMA have agreed to replace the 62 year old "Poma" ski lift. BMA's supporting organization, Burke Racing Inc. ("BRI") has agreed to purchase and install the ski lift and lease the lift back to the Burke Entities for $1 million in total (which the Receiver intends to prepay from proceeds of the RJ Settlement.  This new lift will vastly improve Burke Mountain's skiing capacity, improve the skiing product and at the same time should increase the demand for hotel rooms thereby making the Burke Hotel more valuable.

- The Receiver also negotiated an agreement with BMA and the U.S. Ski and Snowboard Association, the national governing body of Olympic skiing and snowboarding to designate Burke Mountain an "Official U.S. Ski Team Development Site" —the first such designation in the United States— thereby obtaining the prestige and promotional opportunities attendant therewith. Entering into this agreement is expected to raise the prestige of Burke Mountain, and in turn, drive hotel room sales.

- The Court previously permitted Quiros to sell or mortgage his condominium located in New York City (the "Condominium") in order to use the proceeds of such transaction to pay his living expenses of $15,000 per month.  Thereafter, on or about August 13, 2016, Quiros borrowed $1.5 million, payment of which is secured by a first mortgage on the Condominium.  Concerned about the upcoming maturity date of August 12, 2017, the Receiver and the SEC negotiated with Quiros to re-list the Condominium for sale, with the understanding that the Receiver has the ability to confer with the real estate broker and receive updates on the broker's actions, and that Quiros will give the Receiver notice at least 14 calendar days before the closing date of the proposed sales price and identify the proposed purchaser. Although the negotiations occurred prior to the Application Period, this agreement was endorsed by Order of the Court, dated January 23, 2017.  *See* ECF No. 271.

- At the time the Receiver was appointed, Phase VI (the "Stateside Project") was partially complete, work had stopped and the investors who invested in the Stateside Project had little hope of obtaining their green cards.  The Receiver has

negotiated with the original contractor to resume construction in order to provide the investors in the Stateside Project with the ability to qualify for citizenship. Moreover, the Receiver has analyzed the scope of the project and intends to seek authority from the Court to revise the project to include more revenue producing assets thereby increasing the Resort's profitability while at the same time creating the requisite number of jobs.

- The Receiver previously discovered that the Jay Peak Resort has provided and maintained a water system for a neighboring village, Jay Peak Subdivision II, also known as Wilderness Village. The Receiver has continued to work on a plan to transfer responsibility for the water system and has drafted documents for the establishment of a water utility for Wilderness Village and requested permits for the necessary work.

Business Operations

Business Operations cover the issues related to operation of an ongoing business.

- The Receiver continues to work with Leisure Hotels & Resorts ("Leisure") to manage the operations of the Vermont-based hotels, etc.  The Receiver confers with the Leisure management team on a daily basis and reviews weekly and monthly reports prepared by the management team.

Case Administration

Case Administration includes coordination and compliance activities, preparation of

reports and responding to investor inquiries.

- The Receiver has returned to Vermont on four occasions, where he has met with the governor and other state officials, creditors, contractors and interested parties. The Receiver continues to respond to inquiries, usually through e-mail and telephone calls.

- The Receiver continues to maintain a toll-free investor hotline, an email address for general inquiries, and a website to provide up to date information for investors and interested parties. The Receiver has posted copies of court filings, correspondence with investors and other pertinent information on the website. The Receiver has also prepared and posted numerous updates on his website, including letters to investors.

- The Receiver and his staff continue to respond to inquiries from investors, creditors and other interested parties.

- The Receiver and his staff maintain the receivership bank accounts and pay administrative expenses.

- 14 -

- The Receiver and Akerman also work with immigration counsel to respond to inquiries from USCIS, confer with economists and gather information to support investors' citizenship petitions.

- The Receiver analyzed pending EB-5 legislation. The Receiver traveled to Washington, D.C. to meet with congressional leaders to educate with them on EB-5 fraud issues. The information provided by the Receiver will be valuable to the investors should Congress include retroactive relief for defrauded EB-5 investors as part of upcoming immigration legislation.

<u>Claims Administration and Objections</u>

Claims Administration and Objections relates to formulating, gaining approval of and administering claims procedure.

- The Receiver obtained approval from the Court to refund the sum of $17 million to 36 of the Phase VII investors whose investments were identified in one of the bank accounts frozen by the Court.

- The Receiver worked with counsel for the lead contractors to develop a claims procedure to review and pay the undisputed claims of the contractors who performed construction work on the Burke Hotel and the Stateside Cottages, but were not paid in full prior to the commencement of the receivership case. The Receiver obtained approval from the Court to make partial payment to the undisputed contractor claims.

- The Receiver has made a partial payment to the Stateside Contractors. After the Court approves the Raymond James settlement, the Receiver will have sufficient funds to pay the remainder of the undisputed claims of the Stateside Contractors and the full amount of the undisputed claims of the Burke Contractors.

- The Receiver formulated a plan, subject to Court approval to use a portion of the proceeds of the RJ Settlement to pay other creditors, including satisfying all principal obligations for all Phase I investors; all past-due trade debt on the Jay Peak Resort and the Burke Mountain Hotel; provide refunds of all principal investments to all remaining Phase VII investors; provide refunds of all principal for up to twenty Phase VII investors who, based on current projections, may not be granted permanent residency if the requisite number of jobs are not created; provide refunds of al principal investments to the Phase VIII investors whose I-526 petitions were denied prior to the Receivership Case.

Employee Benefits/Pensions

Employee Benefits/Pensions covers issues such as severance, retention, 401K coverage and continuance of pension plan.

- Akerman professionals who specialize in employee benefits are working with Leisure to ensure compliance with the Department of Labor's requirements for employee benefit plans.

Litigation/Contested Matters

The Receiver worked closely with the LKLSG professionals on the claims against Raymond James, Citibank and others.

- The Receiver attended mediation in the Raymond James case and worked with special counsel, class action counsel and Raymond James' counsel to reach a comprehensive settlement of the investor claims against Raymond James, resulting in a $150 million recovery.

- The Receiver crafted the terms of the settlement and earmarked specific settlement funds to cover investor claims, creditor claims and the cost of improvements to the properties.

- The Receiver's staff worked on the extensive notice and publication requirements necessary for approval of the RJ Settlement and entry of a bar order in favor of Raymond James.

- The Receiver also worked with Akerman attorneys to review potential claims against other parties and draft tolling agreements to preserve the claims while continuing with the investigations.

**(b)    Levine Kellogg Lehman Schneider and Grossman LLP**

- The LKLSG professionals analyzed documents produced by various financial institutions, including Raymond James, Merrill Lynch, Citibank, HSBC Bank USA, N.A., Wells Fargo and People's United Bank. The LKLSG professionals researched potential causes of action against financial institutions and worked with the forensic accountants to analyze financial transactions and the flow of funds.

- The LKLSG professionals represented the Receiver in the case *Goldberg v. Raymond James Financial, Inc. et al.*, Case No. 16-21831-JAL. The LKLSG professionals prepared discovery to the defendants and reviewed responses thereto.  The LKLSG professionals researched and drafted discovery directed to third parties including FINRA.  The LKLSG professionals researched, prepared for and conducted depositions and strategy conferences and participated in

- 16 -

mediation. The LKLSG professionals worked with the Receiver in preparation of the RJ Settlement documents, including the settlement agreement, releases, various notices and the proposed Order approving the settlement.

- The LKLSG attorneys monitored the receivership case and the various class action lawsuits for interplay with causes of action against third parties. The LKLSG attorneys worked with the Receiver's attorneys on tolling agreements and document production.

**(c)    Kapila Mukamal**

Kapila Mukamal ("Kapila") separated their time into the activity categories provided in the Billing Instructions. Narrative summaries of these activity categories are provided below.

Tax Services

Tax Services include analysis of tax issues and preparation of tax returns.

- Kapila and his professionals conferred with management company to gather information needed to prepare tax returns; analyzed prior year tax returns and prepare amendments where necessary; researched and prepared 2016 state and federal tax returns for Burke Mountain operating companies and subsidiaries, Jay Peak operating companies and subsidiaries and the partnership entities and filed extensions for certain of the Receivership Entities.

- Kapila and his professionals responded to IRS tax notices regarding Receivership Entities; reviewed and updated partnership information; prepared Forms 1096 and 1099 for the Receivership Entities; processed K-1s for mailing.

- Kapila reviewed, researched and discussed tax issues and analyzed the potential tax impact of RJ Settlement.

Forensic Accounting/Litigation Support

Forensic Accounting comprises reconstructing books and records from past transactions, bringing accounting current, tracing and sourcing assets.

- Kapila and his professionals analyzed Subscription Agreements; reviewed bank productions and extracted relevant information; and reconstructed records of transfers of funds.

- Kapila and his professionals compiled reports of additional information needed from financial institutions; developed summaries of cash infused into each partnership and assets purchased with investor funds; analyzed the flow of funds and commingling of funds between partnerships and among Receivership Defendants and Relief Defendants; and reconciled investor deposits.

- The accountants worked with immigration counsel to provide documentation in support of citizenship petitions; provided the Receiver with an analysis of the costs incurred for use in settlement discussions with Raymond James; worked with special counsel to provide information in response to document requests directed at Receiver; prepared an analysis of assets and an index of documents; prepared schedules of disbursements to third parties for potential causes of action and attended meetings with government officials.

**(d)** **Gowling WLK**

During this Application Period, Gowling WLK provided legal advice regarding Canadian law relating to potential causes of action against third parties located in Canada.

**(e)** **Klasko Immigration Law Partners, LLP**

- The Klasko professionals separated their time by partnership.  For each of the partnerships, the Klasko professionals worked with the Receiver, the accountants and economists to gather and analyze information needed by the investors for preparation of their I-829 Petitions and in response to inquiries from the United States Citizenship and Immigration Service ("USCIS") requirements.  The information includes proof that the capital investment was made, proof that the commercial enterprise was sustained during the conditional residency period, evidence that the required number of jobs were created and proof that the business plan was followed.  The Klasko professionals converted the information into exhibits for use as attachments to the I-829 Petitions

- The Klasko professionals worked with the Receiver to enhance the business plan for ongoing projects.

- The Klasko professionals worked with the Receiver to most effectively target the RJ Settlement proceeds to the projects.

**(f)** **Strouse & Bond PLLC**

David Bond reviewed and revised the construction contracts for the planned construction of the Jay Peak Recreation Center, as part of the resumption of construction of the Stateside Project.  The Receiver decided to renew the construction of the Stateside Project for the purpose of providing the investors in the Stateside Project with the opportunity to qualify for citizenship.

- 18 -

## VI.     Memorandum of Law

The Receiver and his professionals are entitled to reasonable compensation and expenses, pursuant to the Receivership Order. Receivership courts have traditionally determined reasonableness by utilizing the familiar lodestar approach, calculating a reasonable hourly rate in the relevant market and the reasonable number of hours expended. *See, e.g., S.E.C. v. Aquacell Batteries, Inc.*, No. 6:07-cv-608-Orl-22DAB, 2008 WL 276026, *3 (M.D. Fla. Jan 31, 2008); *see also Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).[5] The hourly rates billed by the Receiver and his professionals are reasonable for professionals practicing in the Southern District of Florida. The Receiver has reduced his standard rate by $300.00 per hour and the rates of the Akerman professionals by $215.00 to $50.00 (depending on the individual's standard rate). All LKLSG professionals have also reduced their rates by $350.00 to $100.00. These reductions have resulted in a substantial savings to the receivership estate.

"In general, a reasonable fee is based on all circumstances surrounding the receivership." *SEC v. W. L.Moody & Co., Bankers*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975); ("[T]he court may consider all of the factors involved in a particular receivership in determining an appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994). "In determining the amount of their compensation, due consideration should be given to the amount realized, as well as the labor and skill needed or expended, and other circumstances having a bearing on the question of the value of the services." *Sec. & Exch. Comm'n v. Striker Petroleum, LLC* (N.D. Tex., 2012) citing *City of New Orleans v. Malone*, 12 F.2d 17, 19 (5th Cir. 1926). Part of "determining the nature and extent of the services rendered," however,

---

[5] The law in this circuit for assessing the reasonableness of fees is set out in *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292. (11th Cir. 1988). According to *Norman*, the starting point in determining an objective estimate of the value of professional services is to calculate the "lodestar" amount, by multiplying a reasonable hourly rate by the number of hours reasonably expended. Id. at 1299 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

includes an analysis as to the reasonableness of the services rendered, bearing in mind the nature of a receivership. As the Supreme Court has noted:

> The receiver is an officer of the court, and subject to its directions and orders . . . . [H]e is . . . permitted to obtain counsel for himself, and counsel fees are considered as within the just allowances that may be made by the court. . . . So far as the allowances to counsel are concerned, it is a mere question as to their reasonableness. The compensation is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted to him, and the perplexity and difficulty involved in that management.

*Stuart v. Boulware*, 133 U.S. 78, 81-82 (1890).

One year into the receivership, the Receiver continues to oversee the operations of the two ski resorts and related amenities.  He has used his business judgment to develop plans to enhance the operations of the Receivership Entities prior to their sale in order to enhance the value of the receivership assets and provide proof of job creation for the benefit of the investors. The Receiver has worked cooperatively with Vermont government officials, various creditors, counsel and the SEC, with the cooperative goal to create jobs, provide opportunities for investors to obtain citizenship and to pay the claims of creditors.  Moreover, the Receiver has negotiated a $150 million settlement which will fund these objectives.

In addition to fees, the receiver is "also entitled to be reimbursed for the actual and necessary expenses" that the receiver "incurred in the performance of [its] duties." *Fed. Trade Comm'n v. Direct Benefits Grp., LLC*, No. 6:11-cv-1186-Orl-28TBS, 2013 WL 6408379, at *3 (M.D. Fla. Dec. 6, 2013). The Receiver and his professionals support their claims for reimbursement of expenses with "sufficient information for the Court to determine that the expenses are actual and necessary costs of preserving the estate." *Sec. & Exch. Comm'n v. Kirkland*, No. 6:06-cv-183-Orl-28KRS, 2007 WL 470417, at *2 (M.D. Fla. Feb. 13, 2007) (citing *In re Se. Banking Corp.*, 314 B.R. 250, 271 (Bankr. S.D. Fla. 2004)).

- 20 -

A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred. *See SEC v. Byers*, 590 F.Supp.2d 637, 644 (S.D.N.Y. 2008); *see also SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation."). As more fully described herein and supported by the time records, the Receiver and his professionals have reasonably and diligently discharged their duties, and provided a benefit to the receivership estate, the investors and creditors.

**WHEREFORE**, the Receiver seeks entry of an Order granting this motion and awarding the Receiver and his professionals their interim fees, reimbursement of costs, and for such other relief that is just and proper.

<u>**LOCAL RULE CERTIFICATION**</u>

Pursuant to Local Rule 7.3, the Receiver hereby certifies that he has conferred with counsel for Plaintiff, Securities and Exchange Commission ("SEC").  The SEC has no objection to the Application.  A hearing is requested only in the event that someone files an objection thereto.

Respectfully submitted,

**AKERMAN LLP**
350 E. Las Olas Boulevard
Suite 1600
Ft. Lauderdale, Florida 33301
Telephone: (954) 46-2700
Facsimile:  (954) 463-2224

By: */s/* Michael I. Goldberg
    Michael I. Goldberg, Esq.
    Florida Bar No.: 886602
    Email:  michael.goldberg@akerman.com
    *Court-Appointed Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this July 7, 2017 via the Court's notice of electronic filing on all CM/ECF registered users entitled to notice in this case as indicated on the attached Service List.

By: */s/* Michael I. Goldberg
Michael I. Goldberg, Esq.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

## SERVICE LIST

**1:16-cv-21301-DPG Notice will be electronically mailed via CM/ECF to the following**:

**Robert K. Levenson, Esq.**
Senior Trial Counsel
Florida Bar No. 0089771
Direct Dial: (305) 982-6341
Email: levensonr@sec.gov
almontei@sec.gov, gonzalezlm@sec.gov,
jacqmeinv@sec.gov
**Christopher E. Martin, Esq.**
Senior Trial Counsel
SD Florida Bar No.: A5500747
Direct Dial: (305) 982-6386
Email: martinc@sec.gov
almontei@sec.gov, benitez-perelladaj@sec.gov
**SECURITIES AND EXCHANGE**
**COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:   (305) 536-4154
*Attorneys for Plaintiff*

**Roberto Martinez, Esq.**
Email: bob@colson.com
**Stephanie A. Casey, Esq.**
Email: scasey@colson.com
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile:   (305) 476-7444
*Attorneys for William Stenger*

**Jeffrey C.  Schneider, Esq.**
Email: jcs@lklsg.com
**LEVINE KELLOGG LEHMAN**
**SCHNEIDER + GROSSMAN**
Miami Center, 22nd Floor
201 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 403-8788
*Co-Counsel for Receiver*

**Jonathan S. Robbins, Esq.**
jonathan.robbins@akerman.com
**AKERMAN LLP**
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, Florida 33301
Telephone:  (954) 463-2700
Facsimile:   (954) 463-2224

**Naim Surgeon, Esq.**
naim.surgeon@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida  33131
Telephone: (305) 374-5600
Facsimile: (305) 349-4654
*Attorney for Court-Appointed Receiver*

**David B. Gordon, Esq.**
Email: dbg@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
12 East 49th Street – 30th Floor
New York, New York 10017
Telephone: (212) 509-3900
*Co-Counsel for Ariel Quiros*

**Jean Pierre Nogues, Esq.**
Email:  jpn@msk.com
**Mark T. Hiraide, Esq.**
Email: mth@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
Telephone (310) 312-2000
*Co-Counsel for Ariel Quiros*

- 23 -

**Mark P. Schnapp, Esq.**
Email: schnapp@gtlaw.com
**Mark D. Bloom, Esq.**
Email: bloomm@gtlaw.com
**Danielle N. Garno, Esq**.
E-Mail: garnod@gtlaw.com
**GREENBERG TRAURIG, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
*Attorney for Intervenor, Citibank N.A.*


**J. Ben Vitale, Esq.**
Email: bvitale@gurleyvitale.com
**David E. Gurley, Esq.**
Email: dgurley@gurleyvitale.com
**GURLEY VITALE**
601 S. Osprey Avenue
Sarasota, Florida 32436
Telephone: (941) 365-4501
*Attorney for Blanc & Bailey Construction, Inc.*

**Stanley Howard Wakshlag, Esq.**
Email: swkshlag@knpa.com
**KENNY NACHWALTER, P.A.**
Four Seasons Tower
1441 Brickell Avenue
Suite 1100
Miami, FL 33131-4327
Telephone: (305) 373-1000
*Attorneys for Raymond James & Associates Inc.*

**Melissa Damian Visconti, Esquire**
Email: mdamian@dvllp.com
**DAMIAN & VALORI LLP**
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: 305-371-3960
Facsimile: 305-371-3965
*Co-Counsel for Ariel Quiros*

# **Exhibit 1**

## **CERTIFICATION**

STATE OF FLORIDA      )
                              ) SS:
COUNTY OF BROWARD )

       **BEFORE ME**, the undersigned authority, personally appeared **MICHAEL I. GOLDBERG** (the "Applicant"), who, after first having been duly sworn, deposes and says:

       1.     The Applicant is a partner in the law firm of Akerman LLP ("Akerman") and the Receiver in this action.  This Certification is based on the Applicant's first-hand knowledge of and review of the books, records and documents prepared and maintained by Akerman in the ordinary course of its business.  The Applicant knows that the facts contained in this motion regarding work performed by the Receiver and his staff and the facts contained in this Certification are true, and the Applicant is authorized by Akerman to make this Certification. Having reviewed the time records and data which support the motion, the Applicant further certifies that said motion is well grounded in fact and justified.

       2.     The billing records of Akerman which are attached to this Application are true and correct copies of the records maintained by Akerman.  These records were made at or near the time the acts, events, conditions or opinions described in such records occurred or were made.  The Applicant knows that the records were made by persons with knowledge of the transactions or occurrences described in such records or that the information contained in the records was transmitted by a person with knowledge of the transactions or occurrences described in the records.  The records were kept in the ordinary course of the regularly conducted business activity of Akerman and it is the regular business practice of Akerman to prepare these records.

3.     To the best of the Applicant's knowledge, information and belief formed after reasonable inquiry, this motion and all fees and expenses herein are true and accurate and comply with the Billing Instructions for Receivers in Civil Actions Commenced by the SEC.

4.     All fees contained in this Application are based on the rates listed in the fee schedule attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed.

5.     The Applicant has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission).

6.     In seeking reimbursement for a service which Akerman justifiably purchased or contracted for from a third party, the Applicant requests reimbursement only for a service which the Applicant justifiably purchased or contracted for from a third party, the Applicant requests reimbursement only for the amount billed to the Applicant by the third-party vendor and paid by the Applicant to such vendor.  If such services are performed by the Applicant, the Applicant will certify that he is not making a profit on such reimbursable service.


_____
**MICHAEL I. GOLDBERG**


The foregoing instrument was acknowledged before me this July 7, 2017, by Michael I. Goldberg, who is personally known to me or who has produced _____ (type of identification) as identification.


_____
**NOTARY PUBLIC, STATE OF FLORIDA**
**(Print, Type or Stamp Commissioned Name of Notary Public)**

- 2 -

# Exhibit 2(a)

### Total Compensation and Expenses Requested

| Name | Specialty | Hours | Fees | Expenses | Total |
|------|-----------|-------|------|----------|-------|
| Receiver and Akerman LLP | Attorneys | 1,714.20 | $539,212.50 | $46,194.55 | $585,407.05 |
| Levine Kellogg Lehman Schneider + Grossman LLP | Attorneys | 1,730.10 | $361,908.50 | $24,068.18 | $385,976.68 |
| Kapila Mukamal* | Accountants | 1,093.90 | $284,361.10 | $9,499.29 | $293,860.39 |
| Gowling WLK | Attorneys | 5.20 | $2,741.20 | $1.20 | $2,742.40 |
| Klasko Immigration Law Partners, LLP | Attorneys | 233.20 | $80,254.50 | $3,210.18 | $83,464.68 |
| Strouse & Bond PLLC | Attorneys | 6.00 | $1,200.00 | $0.00 | $1,200.00 |
| **Total** | | **4,782.60** | **$1,269,677.80** | **$82,973.40** | **$1,352,651.20** |

\* The total amount of expenses in Kapila Mukamal's attached invoice is $8,476.23.  The amount listed here includes the sum of $1,023.06 which was incurred in September and October 2016 but was inadvertently left out of the First Interim Fee Application.

# Exhibit 2(b)

**Any Amounts Previously Requested, and
Total Compensation and Expenses Previously Awarded**

| Name | Specialty | Hours | Fees | Expenses | Total |
|---|---|---|---|---|---|
| Receiver and Akerman LLP | Attorneys | 2,470.20 | $822,453.25 | $16,070.13 | $838,523.38 |
| Levine Kellogg Lehman Schneider + Grossman LLP | Attorneys | 1,907.00 | $380,680.00 | $25,447.53 | $406,127.53 |
| Kapila Mukamal | Accountants | 2,495.20 | $584,759.20 | $19,487.55 | $604,246.75 |
| Gowling WLK | Attorneys | 61.30 | $22,629.50 | $1,957.11 | $24,586.61 |
| Klasko Immigration Law Partners, LLP | Attorneys | 139.50 | $47,379.00 | $2,304.92 | $49,683.92 |
| The McManus Group | Security | 130.00 | $26,000.00 | $4,299.40 | $30,299.40 |
| **Total** | | **7,203.20** | **$1,883,900.95** | **$69,566.64** | **$1,953,467.59** |

# Exhibit 3

**Fee Schedule: Names and Hourly Rates of Professionals And
Paraprofessionals & Total Amount Billed For Each
Professional and Paraprofessional**

# Exhibit 3(a)

### Receiver and Akerman LLP

| Name | Practice Area | Title | Year Licensed | Standard Rate | Reduced Rate | Total Hours | Billable Amount |
|---|---|---|---|---|---|---|---|
| Adam Zwecker | Real Estate | Associate | 2010 | $355.00 | $260.00 | 0.30 | $78.00 |
| David A. Meek | Associate | Litigation | 2008 | $325.00 | $260.00 | 25.90 | $6,734.00 |
| Elizabeth Alcalde | Employee Benefits | Partner | 1999 | $600.00 | $395.00 | 1.40 | $553.00 |
| Elan S. Hersh | Litigation | Associate | 2011 | $325.00 | $260.00 | 48.80 | $12,688.00 |
| Erin M. O'Neal | Tax - Employee Benefits | Associate | 2011 | $300.00 | $260.00 | 3.10 | $806.00 |
| James E. Trainor | Government Affairs & Public Policy | Partner | 2002 | $370.00 | $370.00 | 19.00 | $7,030.00 |
| Jane L. Hinton | Real Estate | Partner | 1998 | $520.00 | $395.00 | 1.30 | $513.50 |
| Joan M. Levit | Fraud & Recovery | Of Counsel | 1993 | $505.00 | $395.00 | 205.30 | $81,093.50 |
| Jonathan Robbins | Litigation | Partner | 1993 | $565.00 | $395.00 | 38.50 | $15,207.50 |
| Joseph L. Rebak | Litigation | Partner | 1980 | $605.00 | $395.00 | 143.20 | $56,564.00 |
| Katherine E. Giddings | Litigation - Appeals | Partner | 1992 | $655.00 | $395.00 | 10.70 | $4,226.50 |
| Kimberly A. Matregrano | Fraud & Recovery | Paralegal | | $245.00 | $175.00 | 409.30 | $71,627.50 |
| Kristen M. Fiore | Litigation - Appeals | Partner | 2006 | $385.00 | $345.00 | 5.10 | $1,759.50 |
| Leanne M. Reagan | Tax - Employee Benefits | Partner | 2008 | $405.00 | $395.00 | 3.10 | $1,224.50 |
| Leslie Tomczak | Construction | Partner | 1997 | $550.00 | $395.00 | 2.00 | $790.00 |
| Mary A. McLees | Real Estate | Paralegal | | $310.00 | $175.00 | 0.70 | $122.50 |
| Michael I. Goldberg | Fraud & Recovery | Partner | 1990 | $725.00 | $395.00 | 610.10 | $240,989.50 |
| Michael J. Larson | Litigation - Appeals | Partner | 2008 | $305.00 | $305.00 | 27.00 | $8,235.00 |
| Naim S. Surgeon | Litigation | Associate | 2009 | $365.00 | $260.00 | 48.60 | $12,636.00 |
| Nancy Perez | Litigation | Paralegal | | $270.00 | $175.00 | 1.60 | $280.00 |
| Samual A. Miller | Fraud & Recovery | Partner | 2000 | $460.00 | $395.00 | 37.50 | $14,812.50 |
| Scott P. Rattigan | Litigation | Associate | 2015 | $240.00 | $240.00 | 3.90 | $936.00 |
| Scott W. Rostock | Litigation | Partner | 1999 | $535.00 | $395.00 | 15.80 | $6,241.00 |
| Stephanye Fusco | Fraud & Recovery | Document Support | | $75.00 | $75.00 | 52.00 | $3,900.00 |
| Report Total | | | | | $320.30 | 1714.20 | $549,048.00 |
| Discount 50% for non-working travel per SEC Billing Instructions | | | | | | | -$9,835.50 |
| **Total** | | | | | | | **$539,212.50** |

# Exhibit 3(b)

## Levine Kellogg Lehman Schneider + Grossman LLP

| Name | Practice Area | Title | Year Licensed | Standard Rate | Reduced Rate | Total Hours | Amount Billed |
|------|---------------|-------|---------------|---------------|--------------|-------------|---------------|
| Ana Maria Salazar | Receivership Support | Paralegal | | $225.00 | $125.00 | 424.8 | $53,100.00 |
| Elsa S. Fresco | Bankruptcy/Litigation Support | Paralegal | | $225.00 | $125.00 | 9.3 | $1,162.50 |
| Jeffrey C. Schneider | Receiver/Commercial Litigation | Partner | 1992 | $605.00 | $260.00 | 590.1 | $153,426.00 |
| Jason Kellogg | Commercial Litigation | Partner | 2002 | $475.00 | $250.00 | 18.5 | $4,625.00 |
| Jezabel Lima | Commercial Litigation | Partner | 2001 | $475.00 | $250.00 | 15.9 | $3,975.00 |
| Marcelo Diaz-Cortes | Commercial Litigation | Associate | 2015 | $345.00 | $200.00 | 343.5 | $68,700.00 |
| Stephanie Reed Traband | Commercial Litigation | Partner | 1998 | $540.00 | $250.00 | 226.4 | $56,600.00 |
| Victoria J. Wilson | Commercial Litigation | Associate | 2011 | $390.00 | $200.00 | 101.6 | $20,320.00 |
| | | | | | | | |
| **Total** | | | | | **$209.18** | **1,730.10** | **$361,908.50** |

# Exhibit 3(c)

## Kapila Mukamal

| Name | Title | Year Licensed/ Experience | Hours | Billing Rate | Discount Rate | Total Billed |
|---|---|---|---|---|---|---|
| Soneet Kapila, CPA*, CFF, CIRA, CFE | Partner | 1983 | 8.70 | $540 | $395.00 | $4,701.00 |
| Lesley Johnson, CPA*, CIRA, | Partner/Tax | 1984 | 78.80 | $420/$430^ | $395.00 | $33,784.00 |
| Melissa Davis, CPA*, CIRA, CFE | Partner | 2002 | 91.20 | $400/$420^ | $395.00 | $37,282.00 |
| Frank Kessler | Consultant | 15 years | 0.80 | $342 | | $273.60 |
| Kevin McCoy, CPA*, CFE, CIRA | Senior Consultant | 2012 | 51.20 | $330/$340^ | | $17,054.00 |
| Melanie Kring, CPA*, CFE | Consultant | 8 years | 3.60 | $310 | | $1,116.00 |
| Kathy Foster | Tax Consultant | 31 years | 253.90 | $294/$310^ | | $77,165.00 |
| Mark Parisi, CPA*, CFE | Consultant | 2012 | 4.60 | $270/$300^ | | $1,368.00 |
| William Funderburke, CPA***, CFE | Consultant | 8 years | 164.30 | $290 | | $47,647.00 |
| Brett Stillman | IT Consultant | | 3.00 | $240 | | $720.00 |
| Oscar Delatorre | IT Consultant | 5 years | 18.00 | $240 | | $4,320.00 |
| Catherine Murchison | Forensic Analyst | 39 years | 28.00 | $220 | | $6,160.00 |
| Christina Shinaberry | Paraprofessional | 30 years | 0.20 | $150 | | $30.00 |
| Carlos Mora | Forensic Analyst | 1 year | 48.30 | $150 | | $7,245.00 |
| Ky Johnson | Forensic Analyst | 4 years | 80.20 | $150 | | $12,030.00 |
| Frank Diaz-Drago | Forensic Analyst | 3 years | 259.10 | $100/$150^ | | $38,640.00 |
| Report Totals | | | **1093.90** | $264.69 | | $289,541.60 |
| Discount for fees capped at $395 | | | | | | -$5,180.50 |
| **Total** | | | | | | **$284,361.10** |

CPA - Certified Public Accountant

CIRA - Certified Insolvency & Restructuring Advisor

CFE - Certified Fraud Examiner

CFF - Certified in Financial Forensics

CVA - Certified Valuation Analyst

* Regulated by the State of Florida

** Regulated by the State of Georgia

^Rate Adjustment effective January 1, 2017

# Exhibit 3(d)

**Gowling WLG**

| Name Of Professional | Practice Area | Title | Year Licensed | Standard Rate U.S.D. | Reduced Rate U.S.D. | Total Hours Billed | Total Amount Billed U.S.D. |
|---|---|---|---|---|---|---|---|
| Malcolm Ruby | Advocacy | Partner | 1986 | $875.00 | $500.00 | 0.8 | $400.00 |
| Guy Poitras | Advocacy | Partner | 1992 | $565.00 | $450.00 | 5.2 | $2,340.00 |
| **Total** | | | | | | **5.2** | **$2,740.00** |

# Exhibit 3(e)

**Klasko Immigration Law Partners, LLP**

| Name | Practice Area | Year Licensed | Title | Standard Rate | Blended Rate | Time Logged | Billed Amount |
|---|---|---|---|---|---|---|---|
| H. Ronald Klasko | Immigration | 1974 | Partner | $850.00 | $495.00 | 30.60 | $15,147.00 |
| Daniel B. Lundy | Immigration | 2006 | Partner | $525.00 | $495.00 | 13.10 | $6,484.50 |
| Karuna Chandani | Immigration | 1999 | Associate | $340.00 | $340.00 | 25.20 | $8,568.00 |
| Jessica A. DeNisi | Immigration | 2008 | Associate | $350.00 | $350.00 | 122.80 | $42,980.00 |
| Iona Pal | Immigration | | Paralegal | $165.00 | $165.00 | 40.20 | $6,633.00 |
| Julianne Opet | Immigration | 2013 | Associate | $340.00 | $340.00 | 1.30 | $442.00 |
| **Total** | | | | | | **233.20** | **$80,254.50** |

# Exhibit 3(f)

**Strouse & Bond PLLC**

| Name | Practice Area | Title | Year Licensed | Standard Rate | Total Hours | Billable Amount |
|------|--------------|-------|--------------|---------------|-------------|-----------------|
| David Bond | Construction Law | Partner | 1998 | $200.00 | 6.00 | $1,200.00 |
| **Total** | | | | | | $1,200.00 |

# **Exhibit 4**

**Applicants' Complete Time By Activity Code Category
For The Time Period Covered By This Application,
Sorted In Chronological Order**