UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  16-cv-21301-GAYLES

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

ARIEL QUIROS,
WILLIAM STENGER,
JAY PEAK, INC.,
Q RESORTS, INC.,
JAY PEAK HOTEL SUITES L.P.,
JAY PEAK HOTEL SUITES PHASE II. L.P.,
JAY PEAK MANAGEMENT, INC.,
JAY PEAK PENTHOUSE SUITES, L.P.,
JAY PEAK GP SERVICES, INC.,
JAY PEAK GOLF AND MOUNTAIN SUITES L.P.,
JAY PEAK GP SERVICES GOLF, INC.,
JAY PEAK LODGE AND TOWNHOUSES L.P.,
JAY PEAK GP SERVICES LODGE, INC.,
JAY PEAK HOTEL SUITES STATESIDE L.P.,
JAY PEAK GP SERVICES STATESIDE, INC.,
JAY PEAK BIOMEDICAL RESEARCH PARK L.P.,
AnC BIO VERMONT GP SERVICES, LLC,

        Defendants, and

JAY CONSTRUCTION MANAGEMENT, INC.,
GSI OF DADE COUNTY, INC.,
NORTH EAST CONTRACT SERVICES, INC.,
Q BURKE MOUNTAIN RESORT, LLC,

        Relief Defendants.

Q BURKE MOUNTAIN RESORT, HOTEL
AND CONFERENCE CENTER, L.P.
Q BURKE MOUNTAIN RESORT GP SERVICES, LLC,

        Additional Receivership Defendants[1]

_____/

## NOTICE OF FILING RECEIVER'S THIRD INTERIM REPORT

---

[1] *See* Order Granting Receiver's Motion to Expand Receivership dated April 22, 2016 [ECF No.: 60].

Michael I. Goldberg ("Receiver"), through undersigned counsel, hereby gives notice of the filing of *Receiver's Third Interim Report* dated July 11, 2017.

Respectfully submitted,

/s/ Michael I. Goldberg
Michael I. Goldberg, Esq.
Florida Bar Number: 886602
Email: michael.goldberg@akerman.com
AKERMAN LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2999
Telephone (954) 463-2700
Facsimile: (954) 463-2224
*Court Appointed Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this July 11, 2017 via the Court's notice of electronic filing on all CM/ECF registered users entitled to notice in this case as indicated on the attached Service List.

By: /s/ Michael I. Goldberg
Michael I. Goldberg, Esq.

## SERVICE LIST

**1:16-cv-21301-DPG Notice will be electronically mailed via CM/ECF to the following:**

Robert K. Levenson, Esq.
Senior Trial Counsel
Florida Bar No. 0089771
Direct Dial: (305) 982-6341
Email: levensonr@sec.gov
almontei@sec.gov, gonzalezlm@sec.gov,
jacqmeinv@sec.gov

Christopher E. Martin, Esq.
Senior Trial Counsel
SD Florida Bar No.: A5500747
Direct Dial: (305) 982-6386
Email: martinc@sec.gov
almontei@sec.gov, benitez-
perelladaj@sec.gov

**SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154
*Attorneys for Plaintiff*

Roberto Martinez, Esq.
Email: bob@colson.com
Stephanie A. Casey, Esq.
Email: scasey@colson.com
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile:  (305) 476-7444
*Attorneys for William Stenger*

Jeffrey C.  Schneider, Esq.
Email: jcs@lklsg.com
**LEVINE KELLOGG LEHMAN
SCHNEIDER & GROSSMAN**
Miami Center, 22nd Floor
201 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 403-8788
*Co-Counsel for Receiver*

Jonathan S. Robbins, Esq.
jonathan.robbins@akerman.com
**AKERMAN LLP**
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, Florida 33301
Telephone:  (954) 463-2700
Facsimile:  (954) 463-2224

Naim Surgeon, Esq.
naim.surgeon@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida  33131
Telephone: (305) 374-5600
Facsimile:  (305) 349-4654
*Attorney for Court-Appointed Receiver*

David B. Gordon, Esq.
Email:  dbg@msk.com
**MITCHELL SILBERBERG &
KNOPP, LLP**
12 East 49th Street – 30th Floor
New York, New York 10017
Telephone: (212) 509-3900
*Co-Counsel for Ariel Quiros*

Jean Pierre Nogues, Esq.
Email:  jpn@msk.com
Mark T. Hiraide, Esq.
Email: mth@msk.com
**MITCHELL SILBERBERG &
KNOPP, LLP**
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
Telephone (310) 312-2000
*Co-Counsel for Ariel Quiros*

Mark P. Schnapp, Esq.
Email: schnapp@gtlaw.com
Mark D. Bloom, Esq.
Email: bloomm@gtlaw.com
Danielle N. Garno
E-Mail: garnod@gtlaw.com
**GREENBERG TRAURIG, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
*Attorney for Intervenor, Citibank N.A.*

J. Ben Vitale, Esq.
Email: bvitale@gurleyvitale.com
David E. Gurley
Email: dgurley@gurleyvitale.com
**GURLEY VITALE**
601 S. Osprey Avenue
Sarasota, Florida 32436
Telephone: (941) 365-4501
*Attorney for Blanc & Bailey Construction, Inc.*

Stanley Howard Wakshlag, Esq.
email: swakshlag@knpa.com
**KENNY NACHWALTER, P.A.**
Four Seasons Tower
1441 Brickell Avenue
Suite 1100
Miami, FL 33131-4327
Telephone: (305) 373-1000
*Attorneys for Raymond James & Associates Inc.*

Melissa Damian Visconti, Esquire
Email: mdamian@dvllp.com
**DAMIAN & VALORI LLP**
1000 Brickell Avenue – Suite 1020
Miami, Florida 33131
Telephone (305) 371-3960
Facsimile: (305) 371-3965
*Counsel for Ariel Quiros*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  16-cv-21301-GAYLES

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

ARIEL QUIROS,
WILLIAM STENGER,
JAY PEAK, INC.,
Q RESORTS, INC.,
JAY PEAK HOTEL SUITES L.P.,
JAY PEAK HOTEL SUITES PHASE II. L.P.,
JAY PEAK MANAGEMENT, INC.,
JAY PEAK PENTHOUSE SUITES, L.P.,
JAY PEAK GP SERVICES, INC.,
JAY PEAK GOLF AND MOUNTAIN SUITES L.P.,
JAY PEAK GP SERVICES GOLF, INC.,
JAY PEAK LODGE AND TOWNHOUSES L.P.,
JAY PEAK GP SERVICES LODGE, INC.,
JAY PEAK HOTEL SUITES STATESIDE L.P.,
JAY PEAK GP SERVICES STATESIDE, INC.,
JAY PEAK BIOMEDICAL RESEARCH PARK L.P.,
AnC BIO VERMONT GP SERVICES, LLC,

      Defendants, and

JAY CONSTRUCTION MANAGEMENT, INC.,
GSI OF DADE COUNTY, INC.,
NORTH EAST CONTRACT SERVICES, INC.,
Q BURKE MOUNTAIN RESORT, LLC,

      Relief Defendants.

Q BURKE MOUNTAIN RESORT, HOTEL
AND CONFERENCE CENTER, L.P.
Q BURKE MOUNTAIN RESORT GP SERVICES, LLC,

      Additional Receivership Defendants[1]

                              /

## RECEIVER'S THIRD INTERIM REPORT

---

[1] *See* Order Granting Receiver's Motion to Expand Receivership dated April 22, 2016 [ECF No.: 60].

Michael I. Goldberg, in his capacity as receiver (the "Receiver") of Jay Peak, Inc., Q Resorts, Inc., Jay Peak Hotel Suites L.P., Jay Peak Hotel Suites Phase II L.P., Jay Peak Management, Inc., Jay Peak Penthouse Suites L.P., Jay Peak GP Services, Inc., Jay Peak Golf and Mountain Suites L.P., Jay Peak GP Services Golf, Inc., Jay Peak Lodge and Townhouse L.P., Jay Peak GP Services Lodge, Inc., Jay Peak Hotel Suites Stateside L.P., Jay Peak Services Stateside, Inc., Jay Peak Biomedical Research Park L.P., AnC Bio Vermont GP Services, LLC (collectively, the "Receivership Defendants") and Jay Construction Management, Inc., GSI of Dade County, Inc., North East Contract Services, Inc., and Q Burke Mountain Resort, LLC (collectively, the "Relief Defendants") and Q Burke Mountain Resort, Hotel and Conference Center, L.P. and Q Burke Mountain Resort GP Services, LLC (together, "Additional Receivership Defendants") (the Receivership Defendants, Relief Defendants, and Additional Receivership Defendants shall collectively be referred to as the "Receivership Entities"), by and through undersigned counsel, and pursuant to the Order Granting Plaintiff Securities and Exchange Commission's Motion for Appointing Receiver, dated April 13, 2016 (the "Order") [ECF No. 13], respectfully files his Third Interim Report.

## PRELIMINARY STATEMENT

This is the Receiver's Third Interim Report since his appointment on April 13, 2016.[2] This Third Interim Report provides an update of the status of the operating Receivership Entities and actions the Receiver has undertaken since he filed his Second Interim Report in November of 2016. One year into the receivership, the Receiver has achieved major settlements, resulting

---

[2] The Receiver filed his First Interim Report [ECF No. 201] on August 12, 2016 and his Second Interim Report on November 22, 2016 [ECF No. 240]. For the purpose of brevity, the Receiver has not restated the information contained in the prior Status Reports, but refers all interested parties to those Status Reports for additional information, including a detailed explanation of the Receivership Defendants and the events that led up to the appointment of the Receiver.

42213978;2

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

in the anticipated recovery of $150 million for the benefit of the investors, creditors, and other interested parties. The Receiver has begun making payments to construction lien holders and has developed a plan for paying claims of trade creditors and returning the principal investment to investors who are unlikely to be able to obtain their citizenship. The Receiver, with the assistance of the management company, Leisure Hotels LLC; Jay Peak's General Manager, Steven Wright and the entire staff at the Jay Peak Resort; and the Burke Mount Hotel's General Manager, Kevin Mack and the entire staff at the Burke Hotel, continues to work to improve the ski resorts and related facilities to enhance their operations and value, and achieve the job creation needed by investors to qualify for citizenship.

## I.     BACKGROUND

On April 12, 2016, the Securities and Exchange Commission ("SEC") filed a complaint [ECF No. 1] (the "Complaint") in the United States District Court for the Southern District of Florida (the "Court") against the Receivership Defendants, the Relief Defendants, William Stenger ("Stenger") and Ariel Quiros ("Quiros" and with the Receivership Defendants, Relief Defendants and Stenger, the "Defendants"), the principal of the Receivership Defendants.

The Complaint alleged that Quiros and Stenger, in violation of federal securities laws, controlled and utilized the various Receivership Entities in furtherance of a fraud on the investors who participated in limited partnerships offered under the federally created EB-5 visa program, and seeks various forms of relief, including appointment of the Receiver. The first six limited partnerships (referred to herein as Suites Phase I,[3] Hotel Phase II, Penthouse Phase III, Golf and Mountain Phase IV, Lodge and Townhouses Phase V, and Stateside Phase VI) were used to develop and expand the Jay Peak Resort located in Jay, Vermont (the "Jay Peak Resort"). The seventh limited partnership (Biomedical Phase VII) raised funds to purchase land and develop a

---

[3] All capitalized terms herein have the same meaning as defined in the previous Status Reports.

42213978;2

biomedical research facility in Newport, Vermont. The eighth limited partnership (Q Burke Phase VIII) was used to develop and expand the Burke Mountain Hotel and ski area located in East Burke, Vermont (the "Burke Mountain Hotel").

Along with the Complaint, the SEC requested the Court enter a temporary restraining order and a preliminary injunction preventing the Receivership Defendants from, among other things, transferring or otherwise utilizing their assets. On April 13, 2016, the Court entered an Order [ECF No. 11] granting the SEC's Emergency *Ex Parte* Motion for Temporary Restraining Order, Asset Freeze and Other Relief [ECF No. 4] and an Order granting the SEC's Motion for Appointment of Receiver [ECF No. 13] (the "Receivership Order"). Among other things, the Receivership Order appointed Michael Goldberg as the receiver over the Receivership Defendants and the Relief Defendants.

## II.  ACTIONS TAKEN BY THE RECEIVER DURING THE REPORTING PERIOD

### A.  Settlement with Raymond James & Associates, Inc.

The Receiver, along with counsel for groups of investors, reached a significant settlement with Raymond James & Associates, Inc ("Raymond James"), pursuant to which Raymond James will be paying $150 million. This broad-sweeping settlement (the "RJ Settlement") will provide the Receiver with sufficient funds to pay all past-due contractors, all past-due vendors and trade creditors and all investors who are unable to receive their green cards. Moreover, the RJ Settlement will allow the Receiver to continue construction and operations at the resorts and provide investors with a better opportunity to obtain their permanent residency. For investors who are unable to qualify for citizenship due to the lack of sufficient job creation, the RJ Settlement will provide a means for the Receiver to return their principal investment.

42213978;2

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

On April 18, 2017, the Receiver filed a Motion for (I) Approval of Settlement between Receiver, Interim Class Counsel, and Raymond James & Associates, Inc.; (II) Approval of Form, Content and Manner of Notice of Settlement and Bar Order; (III) Temporary Stay of Related Litigation Against Raymond James & Associates, Inc.; and (IV) Entry of Bar Order [ECF No. 315]. The RJ Settlement includes an Order barring all non-governmental claims against Raymond James. Accordingly, the Receiver has provided notice to all interested parties, by mail, posted notice on the Receiver's website and published advertisements in Vermont publications informing all interested parties of the RJ Settlement and an opportunity to object to the RJ Settlement. A hearing to approve the RJ Settlement took place on June 30, 2017 before the District Court, at which time the Court approved the RJ Settlement.[4]

The RJ Settlement is expected to have an impact on almost all aspects of the receivership case, many of which are described in this Report. For more specific details, the Receiver directs all interested parties to review the RJ Settlement, a copy of which has been posted on the Receiver's website.

**B.     Management of Vermont Properties**

The Receiver, with the assistance of the court-approved management company, Leisure Hotels, LLC ("Leisure") continue to operate the Jay Peak Resort and the Burke Mountain Hotel. Jay Peak Resort's General Manager, Steven Wright and Burke Mountain Hotel's General Manager, Kevin Mack also play an important role in the management of the resorts. The Receiver confers with the Leisure management team on a daily basis and reviews weekly and monthly reports prepared by the management team. Please see the Financial Affairs section of

---

[4] The Court has yet to approve the distribution of legal fees although it approved the establishment of the fund on which to pay fees to the extent they are approved.

this report for more detailed information on the financial condition of the Jay Peak Resort and the Burke Mountain Hotel.

### C.      Claims

The Receiver began addressing specific classes of claims prior to the RJ Settlement and was able to locate funds to pay certain claims, as described below:

#### 1.      Return of Escrow Deposits to Certain Biomedical Phase VII Investors

One of the bank accounts frozen by the Court has been identified as holding monies remitted by certain of the Biomedical Phase VII investors in furtherance of their subscriptions to the Jay Peak Biomedical project.[5]  These funds have remained in escrow through the pendency of the receivership and represent approximately $17,858,484.30 (the "Escrow Funds") which has been held on behalf of 36 Biomedical Phase VII Investors.[6]  In light of the fact that the biomedical research project will not be completed in a manner consistent with the underlying subscription agreement, the Receiver filed a motion with the Court seeking authority to refund the Escrow Funds in exchange for those investors fully assigning any claims they have against the Receivership Entities and third parties to the Receiver.  *See* ECF No. 268.  After notice and hearing, on February 9, 2017, the Court entered an Order Granting Receiver's Motion to Authorize the Refund of Phase VII Investor Funds Held in Escrow [ECF No. 282].  The Receiver has distributed funds to 32 of the 36 Phase VII Investors to date.[7]

#### 2.      Partial Payment of Undisputed Contractor Claims for Burke and Stateside Projects

---

[5] Phase VII a/k/a Biomedical Phase VII raised funds to purchase land and develop a biomedical research facility in Newport, Vermont.
[6] The Receiver's Motion to Authorize the Refund of Phase VII Investor Funds Held in Escrow [ECF No. 268] incorrectly referenced 35 investors.  The exhibits to the motion accurately listed the 36 investors who were entitled to receive a refund.
[7] On March 1, 2017, the Receiver sent formal notice to each of the 36 investors entitled to a refund, however, as of this date four investors have not yet submitted the requisite documentation back to the Receiver before their refunds can be released.

42213978;2
AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL  33301-2999

Prior to the commencement of the receivership, certain contractors performed construction work on the Burke Mountain Hotel and the Stateside Cottages,[8] but were not paid in full for their work due to the fact that the Receivership Entities ran out of cash. After the commencement of the receivership, the Receiver and the contractors entered into stipulations, with the Court's approval, modifying the preliminary injunction to permit the filing of stipulated writs of attachment in order to protect whatever lien rights the contractors might possess under Vermont law. Importantly, these contractors were prevented from taking any action to enforce their liens and the Receiver reserved all rights to, among other things, object to the validity and extent of both the underlying debt and the contractors' liens.

The settlement the Receiver reached with Citibank in November of 2016 provided the Receiver with some desperately needed liquidity. Upon the Receiver's Motion for Authorization to Partially Pay Undisputed Contractor Claims on QBurke and Stateside Projects [ECF No. 259], the Court entered an Order [ECF No. 261] authorizing the Receiver to utilize some of the Citibank settlement funds to partially pay certain undisputed contractors' claims relating to construction of the Stateside Phase VI (the "Stateside Contractors") and Burke Mountain Hotel (the "Burke Contractors" and with the Stateside Contractors, the "Contractors"). To that end, the Receiver offered the Contractors with undisputed claims the option to: *(i)* payment of 33% of the net sum owed the contractor with the balance of the net sum due upon sale of the underlying property when and if the property is sold, to the extent the available net sales proceeds are sufficient to satisfy the contractor claims; or *(ii)* a one-time immediate cash payment of 60% of the net sum owed the contractor as payment in full of any and all claims they may have against the Receivership Entities. The Receiver mailed claims forms to the Contractors.

---

[8] Phase VI a/k/a Stateside Phase VI raised funds to build a hotel, cottages, a recreational center and a medical center. The hotel was completed and operating prior to this case being filed. The contractors had commenced construction on the cottages (the "Stateside Cottages"), but not the remainder of the project.

42213978;2

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

Subsequent to commencing this claim process, the Receiver entered into the RJ Settlement, which provides the Receiver with enough funds to pay these contractors' allowed claims in full. The Receiver is expected to receive the funds to make these payment over the next 45 days. To date, however, the Receiver has made a 33% payment to the Stateside Contractors because the Receiver has engaged the Stateside Contractors to continue the construction of Stateside Phase VI (as modified). The Receiver plans to pay the Stateside Contractors the remaining 67% and the Burke Contractors the full amount of their undisputed claims after receipt of funds from the RJ Settlement.

### 3.    Other Anticipated Claims

The proceeds of the RJ Settlement will provide the Receiver with funds to, among other things, satisfy all principal obligations for all Phase I investors; all past-due trade debt on the Jay Peak Resort and the Burke Mountain Hotel; provide refunds of all principal investments to all remaining Phase VII investors; provide refunds of all principal for up to twenty Phase VII investors who, based on current projections, may not be granted permanent residency if the requisite number of jobs are not created; provide refunds of all principal investments to the Phase VIII investors whose I-526 petitions were denied prior to the Receivership Case. Importantly, the $10 million escrow set up under the RJ Settlement is only an "insurance policy" in the event the Receiver is unable to create the requisite jobs. However, the Receiver is optimistic he will continue to create jobs.

### D.    Jay Peak Properties

### 1.    Phase VI - Stateside Construction

At the time the Receiver was appointed, a hotel had been build, but the remainder of the construction was incomplete. Since work had stopped, not all of the investors in this project

42213978;2

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

were eligible to obtain their green cards. A portion of the RJ Settlement will finance the resumption of construction of the Stateside Cottages in order to provide more of the investors in the project with the ability to qualify for citizenship and will also increase revenues for Jay Peak.

Moreover, the Receiver has analyzed the scope of Stateside Phase VI and intends to seek authority from the Court to modify the Phase VI Subscription Agreement to eliminate the medical center and replace it with soccer and lacrosse fields which will help fill rooms for the entire resort in the slow summer months.[9] It is projected that this will increase resort revenue between $600,000 and $900,000 per year—thereby increasing the resort's sale price and benefitting all phases of Jay Peak investors. The Recreational Center, which contains a movie theater, climbing walls and ropes courses, will also be completed, further attracting customers. The Receiver believes amendments to the Subscription Agreement will eliminate non-revenue producing assets and replace them with revenue producing assets thereby increasing Jay Peak's profitability while at the same time creating the requisite number of jobs.

### 2.     Repairs to Water Park

The water park at the Jay Peak Resort – known as the Pump House – is ventilated through a hanging duct system suspended from the ceiling. The duct system at the Pump House needed to be replaced. Jay Peak has engaged Hardy Structural Engineering to design a new hanging system and VHV Company, Inc. to remove the hanging system and install the new system. By making these necessary repairs, this will allow the Pump House to continue to generate revenues for the benefits of investors. The cost of the repairs is approximately $300,000, which the Receiver is seeking to recover from the parties responsible for the initial design and construction.

---

[9] These are non-material changes to the Subscription Agreement which do not require approval of the investors.

### 3.    Sewer Bond Agreement

In connection with the construction of the Jay Peak Resort, the towns of Jay and Troy (the "Towns") and Jay Peak, Inc. entered into several agreements pursuant to which the Towns allocated and granted the Jay Peak Resort with access to their jointly-owned and operated sewer treatment facility which was necessary for the operations of the Jay Peak Resort.   As a condition for access to the sewer treatment facility and to secure payment of sums owed by Jay Peak, Inc. to the Towns under the agreements, Jay Peak, Inc. was required to post a $400,000 letter of credit with a local bank in favor of the Towns.  After the commencement of the receivership, the bank notified the Receiver and the Towns that it did not wish to renew the letter of credit after it was set to expire on December 31, 2016.   On December 12, 2016, the Receivership Court entered an order authorizing the Receiver to execute an amendment to the agreement, whereby the certificate deposit securing the line of credit will be liquidated and the proceeds would be placed in a custodial account with another bank.  The funds were transferred to another bank prior to the deadline, thus providing the Towns with uninterrupted security for the obligations owed by Jay Peak and providing Jay Peak with continued access to the sewer treatment facility.

### 4.    Water Services

For several decades, the Jay Peak Resort provided and maintained a water system for a neighboring village, Jay Peak Subdivision II, also known as Wilderness Village. The Receiver discovered that those services were provided without any apparent obligation on the part of the Jay Peak Resort and without any compensation from any residents or local landowners. In April 2016, the State of Vermont issued a warning relating to the level of manganese in the water system.  The Receiver determined it will cost approximately $150,000 to correct the manganese levels. However, the Jay Peak Resort was not in a position to bear those costs or future costs of

42213978;2

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

maintenance. The Receiver and his professionals have actively worked with local officials in order to develop a plan to rectify the situation through the establishment of a local utility that will maintain the water supply going forward. The Receiver has researched and drafted documents for the establishment of a water utility for Wilderness Village. At the end of this process, the Receiver anticipates significant cost savings which will benefit the investors by reducing the expense to the Jay Peak Resort by no longer providing free water to Wilderness Village.

### E.    Enhancements to Burke Mountain

Burke Mountain is the home of the Burke Mountain Academy ("BMA"), the leading ski racing academy in the United States that has produced numerous Olympians and National U.S. Ski Team members. BMA previously owned and operated the ski facilities on Burke Mountain. In connection with the purchase of the facilities, certain of the Receivership Entities (the "Burke Entities") assumed certain financial and contractual obligations to BMA, including the obligation to pay a $3 million loan (the "Deferred Payment Agreement") and the grant of an easement in favor of BMA for its students and staff to continue to train on Burke Mountain. The Receiver has negotiated with BMA to amend the easement to permit BMA to expand its ski program on its allotted trails through increased student enrollment and other means including permitting it to host additional races and guest training. The results of which should generate additional ski lift revenue and the demand for hotel rooms. In connection with their plans to expand racing and ski race training on Burke Mountain, the Receiver and BMA have also entered into an operating agreement, which outlines the terms of the Receiver's and BMA's agreement with respect to sharing certain revenue and expenses related to ski racing, the use of training lanes and other hotel amenities by third parties brought to the Burke Mountain Hotel by BMA.

42213978;2

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

### 1.    Burke Training Area Ski Lift Replacement

The Receiver and BMA have also agreed that in order to improve the skiing experience on Burke Mountain and increase the demand for hotel rooms, they will replace the 62 year old "Poma" ski lift. BMA's supporting organization, Burke Racing Inc. ("BRI") has agreed to purchase the new lift, funding the purchase through a contribution of $260,000, a grant of $240,000 or 16% of the cost and up to $1 million in funds borrowed from third party lenders. BRI will lease the new lift to the Burke Entities pursuant to a lease agreement (the "T-Bar Lift Lease").

BRI will purchase and install the ski lift and lease the lift back to the Burke Entities for $1 million in total, and BMA will concurrently reduce the sum due under the Deferred Payment Agreement by $1 million. Thereafter, the Burke Entities shall utilize the $1 million savings on the Deferred Payment Agreement, which it is receiving under the Raymond James Settlement, to prepay its $1 million rent obligation under the T-Bar Lift Lease. In short, the Burke Entities will obtain a brand new, state of the art lift at little or no cost while at the same time creating additional jobs that will benefit its investors. This new lift will vastly improve Burke Mountain's skiing capacity, improve the skiing product and at the same time should increase ski lift revenues and the demand for hotel rooms thereby making the Burke Mountain Hotel more valuable. BMA will also greatly benefit from this win-win arrangement by being able to expand its class size and utilize the new lift, in addition to other benefits.

### 2.    Contract with U.S. Ski and Snowboard Association

The Receiver also negotiated an agreement with BMA and the U.S. Ski and Snowboard Association ("USSA"), the national governing body of Olympic skiing and snowboarding to designate Burke Mountain an "Official U.S. Ski Team Development Site" —the first such

42213978;2

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

designation in the United States— thereby obtaining the prestige and promotional opportunities attendant therewith.  Pursuant to this agreement, members of the United States Ski Team will train at Burke Mountain and competitions amongst the best up and coming skiers in the United States will take place at Burke Mountain.  On December 21, 2016, the Court entered an Order [ECF No. 252] authorizing the Receiver to enter into a three party contract with the USSA and BMA.  This contract is expected to raise the prestige of Burke Mountain, and in turn, help increase hotel room sales.  The Burke Mountain Hotel has already seen increased hotel room sales and revenue as a benefit of this agreement.

> ### E.     Immigration Issues

> #### 1.     USCIS and EB-5 Legislation

The Receiver traveled to Capitol Hill to meet with U.S. Senators and their staff to educate them on the impact of fraud on the participants in the EB-5 visa process.  The experience of the investors, as explained by the Receiver, is valuable to Congress as it prepares to work on new immigration legislation which may include retroactive changes to the EB-5 visa process.  The possibility of retroactive changes may benefit the investors who are unable to qualify for citizenship.

> #### 2.     Supplying Economic Data to Investors to Satisfy Their Individual Immigration Petitions

The Receiver continues to regularly assist investors in fulfilling their reporting requirements to USCIS in order to obtain I-526 and I-829 approvals. To that end, the Receiver continues to utilize administrative personnel, accountants and an economist to supply investors with the information necessary for them to meet their USCIS reporting requirements. Immigration counsel, H. Ronald Klasko and his law firm continue to assist the Receiver in

42213978;2
AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

preparing the necessary papers in order for investors to properly respond to USCIS's request for information and evidence supporting their various I-526 and I-829 petitions.

    **F.**    **Litigation and Third Party Claims**

        **1.**    **The Receivership Case**

On September 21, 2016, upon motion [ECF No. 206] of the SEC and consent by Stenger, the Court entered an Order granting a Judgment of Permanent Injunction and Other Relief against Stenger [ECF No. 215].  Quiros opposes the entry of an injunction against him and filed a Motion to Dismiss the Complaint [ECF No. 171]. On November 21, 2016, the Court entered a Preliminary Injunction [ECF No. 238] preliminarily enjoining Quiros from continuing to violate the Federal Securities laws, maintaining the asset freeze set forth in the TRO, and continuing the receivership, among other relief. Moreover, the Court denied Quiros' Motion to Dismiss [ECF No. 239].  On December 20, 2016, Quiros filed a Notice of Appeal of the entry of the Preliminary Injunction [ECF No. 251].  However, on or about April 4, 2017, pursuant to Quiros' motion for voluntary dismissal, the Eleventh Circuit entered an Order of Dismissal of the appeal [ECF No. 305].  In the interim, the Court entered a Judgment of Permanent Injunction and Other Relief against the Corporate Defendants and Relief Defendants [ECF No. 255-2].

        **2.**    **Raymond James & Associates, Inc. and Raymond James Financial, Inc.**

The Receiver, through special counsel, filed a lawsuit against Raymond James and Quiros' former son-in-law, Joel Burstein ("Burstein"), who was a branch manager at Raymond James, and the employee responsible for servicing Quiros' financial needs (Case No. 1:16-cv-21831-JAL) (the "Raymond James Action").   The Receiver sought relief against Raymond James, Burstein, and Quiros for (i) aiding and abetting breach of fiduciary duty; (ii) conspiracy to breach fiduciary duty; (iii) fraudulent transfers under Sections 726.105(1) (a), (b), and

42213978;2

**AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999**

726.106(1) of the Florida Statutes; (iv) violation of the Racketeer Influenced and Corrupt Organizations Act; and (v) conspiracy in violation the Racketeer Influenced and Corrupt Organizations Act. After exchanging discovery and participating in mediation, the Receiver reached settlement with Raymond James, as more fully described in other parts of this Report.

### 2.   Document Recovery

The Receiver has taken control of the business records of the Receivership Entities and served subpoenas financial institutions.  With the assistance of his forensic accountants and special counsel, the Receiver continues to analyze the business records and trace the transfer of funds.  Analysis of the information gathered by the Receiver has resulted in service of additional subpoenas on additional parties.

## III.   FINANCIAL AFFAIRS[10]

### A.   Bank Accounts

The Receivership Entities' financial accounts were frozen pursuant to the Receivership Order. The Receivership Order also provides the Receiver with control and signatory authority for all financial accounts. *See* Receivership Order, ¶ 7.  Attached to this Report as **Exhibit "A"** is a Standard Fund Accounting Report and cash flow statements for the operating Receivership Entities detailing the Receivership Entities business operations.[11]

### B.   Jay Peak Resort

This past winter, Jay Peak Resort was ahead of its sales budget due primarily to its more efficient management and favorable snow conditions and was significantly below budget in

---

[10] Due to the fact that this receivership involves operating entities, the confidentiality of the Receivership Entities' financial data is important.  Accordingly, the Receiver has not attached detailed financial statements to this report, but has instead provided a general summary.  Should the Court want to review such detailed financial data, the Receiver shall provide the information to the Court in-camera.

[11] The attached reports provide information through April 30, 2017.

42213978;2

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

payroll and operating costs due to implementation of major labor and cost control initiatives. The winter season passes were ahead of the prior year by 25%. So far, bookings for summer retail lodging are up by 7-10%. These additional revenues have helped offset unanticipated costs, specifically relating to new governmental regulations. The Occupational Safety and Health Administration and the National Fire Protection Association require completion of an electrical hazard assessment, referred to as an Arc Flash Hazard Assessment, to protect workers from the hazard of an arc flash accident. The unanticipated expenses included the costs for conducting an electric panel survey and annual inspection fees.

Additionally, after reviewing opportunities available at Jay Peak Resort during management's annual business planning session for the fiscal year ending in April, the Receiver and the management team identified opportunities to produce increased cash flow through the implementation of new programs, including adding additional kiosk food vendors; reducing energy costs; completion of the Stateside Cottages; adding soccer/lacrosse fields; renegotiating insurance programs; commencing syrup production; adding additional ski instructors; and creating additional activities for kids. After the Receiver discovered that Jay Peak was paying for expenses for unrelated owners pertaining to the six homeowner's associations it manages, he worked with Management to revamp the administration of the associations and refine the allocation of shared cost, which results in increased cash flow by reducing expenditures.

Management has implemented cost savings and revenue enhancements by adding a second location to minimize check in service times and provide enhanced customer satisfaction; performed employment based analysis including competitive wage analysis and made corresponding adjustments in addition to adding an employee assistance program; changed the risk management program resulting in better insurance coverage and cost savings; and added

42213978;2
AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

new horizontal water lines for snowmaking purposes that expanded capacity into new areas and resulted in cost savings due to more direct flow of water rather than running over the mountains.

### C.   Burke Mountain Hotel

The Burke Mountain Hotel opened in the fall of 2016 making it difficult to forecast future results.  In spite of a delayed opening, the management team has achieved a number of objectives that should improve future operating results. Due to improvements in snow making, the Burke Mountain Hotel successfully opened for the Thanksgiving season. This more than doubled the skier visits compared to the previous year.  Now that Burke Mountain has proven capabilities to deliver quality snow and ski/lodging experience, there should be a substantial improvement in business for the 2017-2018 ski and summer biking season.   The success continued throughout the winter season, with winter season passes brining in 15% more revenue than the prior winter season.  Moreover, the summer season pass for the bike park is already 30% ahead of last season.

The management team has determined there are still opportunities to produce increased cash flow and additional revenue by implementing certain measures prior to the next season. Potential improvements to cash flow include increasing bike rentals to include trail bikes; installing a new antenna lease on Burke Mountain; adding local privately owned condominiums to the rental pool on a split income program.

Management has also made Burke Mountain hotel operate more efficiently by reorganizing the Group Sales & Marketing efforts to leverage media purchasing power and provide shared resources between Jay Peak and Burke; rolling out a brand identity to better differentiate Burke Mountain in the ski market and create additional sales; and reorganizing finance and business operations to lower costs. Although the Burke Mountain Hotel continues to

42213978;2
AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL  33301-2999

incur significant losses that the receivership is funding, the Receiver and Leisure are hopeful that these losses will decrease over the next year.

## IV.   ADMINISTRATION OF THE RECEIVERSHIP ESTATES

The Receiver continues to utilize the skills of his professionals, including his general counsel Akerman LLP; special litigation and conflicts counsel Jeffrey Schneider and Levine Kellogg Lehman Schneider & Grossman LLP; and immigration counsel H. Ron Klasko and Klasko Immigration Law Partners.   Soneet Kapila, CPA, and the accounting firm Kapila Mukamal provide accounting and forensic work for the Receiver.

### A.      Website/Ongoing Communications

The Receiver has returned to Vermont on multiple occasions for meetings with Vermont government officials, creditors of the Receivership Entities and employees of the Receivership Entities. The Receiver continues to respond to inquiries, usually through e-mail and telephone calls.  Since the Receiver cannot respond to every inquiry, the Receiver maintains a toll-free investor "Hotline" at (800) 223-2234 and an email address for general inquiries: jaypeak@akerman.com. The Receiver also updates the website www.JayPeakReceivership.com to provide up to date information for investors and interested parties.

Because the investors come from foreign countries, the website is available in seven languages. To provide public access to court documents, the Receiver posts copies of key filings in this case on the website.  The Receiver has posted numerous updates on his website. The website also includes a Registration Form for investors and creditors to provide the Receiver with their contact information. The Receiver will continue to utilize the website as the primary method of communicating with investors, creditors and other interested parties throughout the receivership.

42213978;2

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

### B.      Recommendations

The Receiver continues to secure and maintain the assets of the Receivership Entities, analyze the use of the individual partnership funds and respond to inquiries from the investors, creditors and other interested parties. The Receiver anticipates taking the following actions: (i) continue to operate and maintain the facilities until the best course of disposition is determined with the goal of each investor obtaining the highest possible return on their investment and achieving their unconditional green card; (ii) implement a claims process; (iii) investigate and commencing litigation against third parties who may be liable for the perpetration of the Receivership Defendants' fraud; (iv) continue to review transfers of the individual partnership funds and seek to recover funds which were fraudulently transferred; (v) respond to inquiries from investors, creditors, government officials and interested parties; and (vi) provide updates through the receivership website.

Dated:  July 11, 2017.

Respectfully submitted,

By: /s/ Michael I. Goldberg
Michael I. Goldberg, Esq.
Florida Bar No. 886602
Email: michael.goldberg@akerman.com
**AKERMAN LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Blvd.
Fort Lauderdale, FL 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
*Court Appointed Receiver*

- 19 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this July 11, 2017 via the Court's notice of electronic filing on all CM/ECF registered users entitled to notice in this case as indicated on the attached Service List.

By: /s/ Michael I. Goldberg
      Michael I. Goldberg, Esq.

42213978;2

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

## SERVICE LIST

**1:16-cv-21301-DPG Notice will be electronically mailed via CM/ECF to the following:**

**Robert K. Levenson, Esq.**
Senior Trial Counsel
Florida Bar No. 0089771
Direct Dial: (305) 982-6341
Email: levensonr@sec.gov
almontei@sec.gov, gonzalezlm@sec.gov,
jacqmeinv@sec.gov

**Christopher E. Martin, Esq.**
Senior Trial Counsel
SD Florida Bar No.: A5500747
Direct Dial: (305) 982-6386
Email: martinc@sec.gov
almontei@sec.gov, benitez-perelladaj@sec.gov
**SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:   (305) 536-4154
*Attorneys for Plaintiff*

**Roberto Martinez, Esq.**
Email: bob@colson.com
**Stephanie A. Casey, Esq.**
Email: scasey@colson.com
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Attorneys for William Stenger*

**Jeffrey C.  Schneider, Esq.**
Email: jcs@lklsg.com
**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN**
Miami Center, 22nd Floor
201 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 403-8788
*Co-Counsel for Receiver*

**Jonathan S. Robbins, Esq.**
jonathan.robbins@akerman.com
**AKERMAN LLP**
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, Florida 33301
Telephone:  (954) 463-2700
Facsimile:   (954) 463-2224

**Naim Surgeon, Esq.**
naim.surgeon@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida  33131
Telephone: (305) 374-5600
Facsimile:  (305) 349-4654
*Attorney for Court-Appointed Receiver*

**David B. Gordon, Esq.**
Email: dbg@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
12 East 49th Street – 30th Floor
New York, New York 10017
Telephone: (212) 509-3900
*Co-Counsel for Ariel Quiros*

Jean Pierre Nogues, Esq.
Email:  jpn@msk.com
**Mark T. Hiraide, Esq.**
Email: mth@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
Telephone (310) 312-2000
*Co-Counsel for Ariel Quiros*

**Mark P. Schnapp, Esq.**
Email: schnapp@gtlaw.com
**Mark D. Bloom, Esq.**
Email: bloomm@gtlaw.com
**Danielle N. Garno, Esq.**
E-Mail: garnod@gtlaw.com
**GREENBERG TRAURIG, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500

**Melissa Damian Visconti, Esquire**
Email: mdamian@dvllp.com
**DAMIAN & VALORI LLP**
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: 305-371-3960
Facsimile: 305-371-3965
*Counsel for Ariel Quiros*

**J. Ben Vitale, Esq.**
Email: bvitale@gurleyvitale.com
**David E. Gurley, Esq.**
Email: dgurley@gurleyvitale.com
**GURLEY VITALE**
601 S. Osprey Avenue
Sarasota, Florida 32436
Telephone: (941) 365-4501
*Attorney for Blanc & Bailey Construction, Inc.*

**Stanley Howard Wakshlag, Esq.**
Email: swkshlag@knpa.com
**KENNY NACHWALTER, P.A.**
Four Seasons Tower
1441 Brickell Avenue
Suite 1100
Miami, FL 33131-4327
Telephone: (305) 373-1000
*Attorneys for Raymond James & Associates Inc.*

# EXHIBIT "A"

**STANDARDIZED FUND ACCOUNTING REPORT** - Cash Basis (Receivership)
SEC v. Quiros, et al.
Case No.: 16-cv-21301-GAYLES
Reporting Period 10/01/2016 to 04/30/2017

| FUND ACCOUNTING (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 09/30/2016): | $       - | $       - | $    7,435,824.32 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | $       - | | |
| Line 3 | Cash and Securities (UNrestricted) | $  11,687,169.78 | | |
| Line 3 | Cash and Securities (RESTRICTED) | $   2,161,306.16 | | |
| Line 4 | Interest/Dividend Income | $       7,823.26 | | |
| Line 5 | Business Asset Liquidation | $       - | | |
| Line 6 | Personal Asset Liquidation | $       - | | |
| Line 7 | Third-Party Litigation Income | $       - | | |
| Line 8 | Miscellaneous - Other | $       - | | |
| | Total Funds Available (Lines 1 – 8): | | | $   21,292,123.52 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Investors | | | $       - |
| Line 10 | Disbursements for Receivership Operations | | | $       - |
| Line 10a | *Disbursements to Receiver or Other Professionals* | $       - | | |
| Line 10b | *Business Asset Expenses* | $   4,340,344.45 | | |
| Line 10c | *Personal Asset Expenses* | $    105,000.00 | | |
| Line 10d | *Investment Expenses* | $       - | | |
| Line 10e | *Third-Party Litigation Expenses* | $       - | | |
| | 1. Attorney Fees | $   1,164,644.81 | | |
| | 2. Litigation Expenses | $       - | | |
| | *Total Third-Party Litigation Expenses* | $       - | | |
| Line 10f | *Tax Administrator Fees and Bonds* | $       - | | |
| Line 10g | *Federal and State Tax Payments* | $   2,071,912.46 | | |
| | Total Disbursements for Receivership Operations | | | $    6,412,256.91 |
| Line 11 | Disbursements for Distribution Expenses Paid by the Fund: | | | |
| Line 11a | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | $       - | | |
| | Fund Administrator............................. | $       - | | |
| | Independent Distribution Consultant (IDC)............ | $       - | | |
| | Distribution Agent............................ | $       - | | |
| | Consultants.................................. | $       - | | |
| | Legal Advisers............................... | $       - | | |
| | Tax Advisers................................. | $       - | | |
| | 2. Administrative Expenses | $       - | | |
| | 3. Miscellaneous | $       - | | |
| | *Total Plan Development Expenses* | | | $       - |
| Line 11b | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | $       - | | |
| | Fund Administrator............................. | $       - | | |
| | IDC....................................... | $       - | | |
| | Distribution Agent............................ | $       - | | |
| | Consultants.................................. | $       - | | |
| | Legal Advisers............................... | $       - | | |
| | Tax Advisers................................. | $       - | | |
| | 2. Administrative Expenses | $       - | | |
| | 3. Investor Identification: | $       - | | |
| | Notice/Publishing Approved Plan................. | $       - | | |
| | Claimant Identification........................ | $       - | | |
| | Claims Processing............................ | $       - | | |
| | Web Site Maintenance/Call Center................. | $       - | | |
| | 4. Fund Administrator Bond | $       - | | |
| | 5. Miscellaneous | $       - | | |

**STANDARDIZED FUND ACCOUNTING REPORT** - Cash Basis (Receivership)
SEC v. Quiros, et al.
Case No.: 16-cv-21301-GAYLES
Reporting Period 10/01/2016 to 04/30/2017

| | | | | | |
|---|---|---|---|---|---|
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | $ | - | $ | - |
| | *Total Plan Implementation Expenses* | | | $ | - |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | $ | - |
| **Line 12** | **Disbursements to Court/Other:** | | | | |
| *Line 12a* | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | $ | - | | |
| *Line 12b* | *Federal Tax Payments* | $ | - | | |
| | **Total Disbursements to Court/Other:** | | | $ | - |
| | **Total Funds Disbursed (Lines 9 – 11):** | | | $ | 6,412,256.91 |
| **Line 13** | **Ending Balance (As of 04/30/2017):** | | | $ | 14,879,866.61 |
| **Line 14** | **Ending Balance of Fund – Net Assets:** | | | $ | - |
| *Line 14a* | *Cash & Cash Equivalents* | $ | - | | |
| *Line 14b* | *Investments* | $ | - | | |
| *Line 14c* | *Other Assets or Uncleared Funds* | $ | - | | |
| | **Total Ending Balance of Fund – Net Assets** | | | $ | - |

**OTHER SUPPLEMENTAL INFORMATION:**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | *Report of Items NOT To Be Paid by the Fund:* | | | |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator............................................ | $       - | | |
| | IDC.................................................................... | $       - | | |
| | Distribution Agent............................................. | $       - | | |
| | Consultants....................................................... | $       - | | |
| | Legal Advisers................................................... | $       - | | |
| | Tax Advisers...................................................... | $       - | | |
| | 2. Administrative Expenses | $       - | | |
| | 3. Miscellaneous | $       - | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | $       - | |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator............................................ | $       - | | |
| | IDC.................................................................... | $       - | | |
| | Distribution Agent............................................. | $       - | | |
| | Consultants....................................................... | $       - | | |
| | Legal Advisers................................................... | $       - | | |
| | Tax Advisers...................................................... | $       - | | |
| | 2. Administrative Expenses | $       - | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan........................... | $       - | | |
| | Claimant Identification........................................ | $       - | | |
| | Claims Processing............................................... | $       - | | |
| | Web Site Maintenance/Call Center....................... | $       - | | |
| | 4. Fund Administrator Bond | $       - | | |
| | 5. Miscellaneous | $       - | | |
| | 6. FAIR Reporting Expenses | $       - | | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | $       - | |
| *Line 15c* | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | $       - | |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | $       - | |

**STANDARDIZED FUND ACCOUNTING REPORT - Cash Basis (Receivership)**
SEC v. Quiros, et al.
Case No.: 16-cv-21301-GAYLES
Reporting Period 10/01/2016 to 04/30/2017

| | | | | | |
|---|---|---|---|---|---|
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | | | | |
| *Line 16a* | *Investment Expenses/CRIS Fees* | $ | - | | |
| *Line 16b* | *Federal Tax Payments* | $ | - | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund:** | | | $ | - |
| **Line 17** | **DC & State Tax Payments** | | | $ | - |
| **Line 18** | **No. of Claims:** | | | | |
| *Line 18a* | # of Claims Received This Reporting Period........................................................ | | | 0 | |
| *Line 18b* | # of Claims Received Since Inception of Fund.......................................................... | | | 0 | |
| **Line 19** | **No. of Claimants/Investors:** | | | | |
| *Line 19a* | # of Claimants/Investors Paid This Reporting Period................................................ | | | 0 | |
| *Line 19b* | # of Claimants/Investors Paid Since Inception of Fund............................................. | | | 0 | |

Receiver:

By:   /s/ Michael Goldberg
        (signature)

**Michael I. Goldberg**
 (printed name)

**Court Appointed Receiver**
 (title)

Date: July 11, 2017

Jay Peak Resort/Burke Mountain
Beginning Cash Balance

| | | | | * Rate: | 0.75 |
|---|---|---|---|---|---|
| | | | | 11/1/2016 USD/CDN End of Day Cash Balance | 11/1/2016 USD End of Day Cash Balance |
| **Company** | **Bank** | **Account Name** | **Account Number** | | |
| 08 - JPI | People's | General Account | 1736 | 2,768,503.54 | 2,768,503.54 |
| 08 - JPI | People's | Payroll Account | 1752 | - | - |
| 08 - JPI | People's | Money Market Acct | 7175 | 21,002.68 | 21,002.68 |
| 20 - JPHSP2 | People's | General Account | 0659 | 1,239,440.48 | 1,239,440.48 |
| 20 - JPHSP2 | People's | Money Market Acct | 0667 | - | - |
| 380 - BMOC | People's | General Account | 6722 | 197,464.57 | 197,464.57 |
| 380 - BMOC | People's | Savings Account | 1175 | 2,574.46 | 2,574.46 |
| 381 - BMRM | People's | General Account | 6726 | 30,028.48 | 30,028.48 |
| 382 - BMWC | People's | General Account | 6724 | 454.50 | 454.50 |
| 08 - JPI | Desjardins | CDN Operating Acct | 55 | 188,765.48 | 141,574.11 * |
| 20 - JPHSP2 | Desjardins | CDN Operating Acct | 48 | 37,232.07 | 27,924.05 * |
| | | | | $ 4,485,466.26 | $ 4,428,966.87 |

Jay Peak Resort/Burke Mountain
**Detailed Report on Receiver Funding**
11/01/2016 through 4/30/2017

Direct - Merrill Lynch Bank Accounts
Indirect - CitiBank Accounts

| TRC Number | Account Number | Account Type | Account Name | Post Date | Reference | Amount | Description | Type | Text |
|---|---|---|---|---|---|---|---|---|---|
| | 1765 | | JPI Operating – 1736 | 1/20/2017 | | $ 215,000.00 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 1/20/2017 | | $ 1,000,000.00 | RECEIVER PAID | | |
| | 1765 | | Burke Mountain Operating | 1/20/2017 | | $ 357,449.21 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 2/2/2017 | | $ 211,649.09 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 2/25/2017 | | $ 250.00 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 2/28/2017 | | $ 211,649.09 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 4/30/2017 | | $ 423,298.16 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 4/30/2017 | | $ (111,963.00) | RECEIVER COLLECTED | | |
| | 1765 | | JPI Operating – 1736 | 4/30/2017 | | $ 3,407.72 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 4/30/2017 | | $ 1,634.15 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 4/30/2017 | | $ 2,175.81 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 4/30/2017 | | $ 2,600.37 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 4/30/2017 | | $ 552,098.35 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 4/30/2017 | | $ 250.00 | RECEIVER PAID | | |
| | 1765 | | JPI Operating – 1736 | 4/30/2017 | | $ 250.00 | RECEIVER PAID | | |
| | 1765 | | Burke Mountain Operating | 4/28/2017 | | $ 165,275.45 | RECEIVER PAID | | |
| | 1765 | | Burke Mountain Operating | 4/29/2017 | | $ 9,238.09 | RECEIVER PAID | | |

Jay Peak Resort/Burke Mountain
**Detailed Report on Resort Deposits**
11/01/2016 through 4/30/2017

| | Average Currency Exchange Rate: | 0.75 |
|---|---|---|

Summary of Departmental Deposits into Major Line of Business Categories

| Dept Category | | USD |
|---|---|---|
| Short-term Assets | $ | 1,162,353 |
| Capital Expenditures (incl. tram upgrade) | $ | 30,077 |
| Short-term Liabilities | $ | 3,419,938 |
| Equity | $ | - |
| S, G & A | $ | 362,001 |
| General Operations | $ | 757,378 |
| Food & Beverage | $ | 8,274,760 |
| Hotel & Lodging | $ | 11,461,032 |
| Other Mountain Activities | $ | 5,380,908 |
| Condo Associations | $ | - |
| Skiing Operations | $ | 9,725,676 |
| Summer Operations | $ | 15,896 |
| Ski School | $ | 1,175,554 |
| Retail | $ | 736,077 |
| Ski Rental/Repair | $ | 1,027,623 |
| | $ | 43,529,273 |

Jay Peak Resort/Burke Mountain
Detailed Report on Vendor Payments
11/01/2016 through 4/30/2017

| | Average Currency Exchange Rate: | 0.75 |
|---|---|---|

Summary of Departmental Vendor Payments into Major Line of Business Categories

| Dept Category | | USD |
|---|---|---|
| Short-term Assets | $ | 5,200,010 |
| Capital Expenditures (incl. tram upgrade) | $ | 3,509,372 |
| Short-term Liabilities | $ | 542,330 |
| Equity | $ | - |
| S, G & A | $ | 6,001,686 |
| General Operations | $ | 2,641,756 |
| Food & Beverage | $ | 2,973,490 |
| Hotel & Lodging | $ | 578,675 |
| Other Mountain Activities | $ | 203,222 |
| Condo Associations | $ | 62,497 |
| Skiing Operations | $ | 1,161,976 |
| Summer Operations | $ | 76,059 |
| Ski School | $ | 35,173 |
| Retail | $ | 169,388 |
| Ski Rental/Repair | $ | 8,945 |
| | $ | 23,164,581 |

Jay Peak Resort/Burke Mountain
Ending Cash Balance

| | | | | * Rate: | 0.73 | |
|---|---|---|---|---|---|---|

| Company | Bank | Account Name | Account Number | 4/30/2017 USD/CDN End of Day Cash Balance | 4/30/2017 USD End of Day Cash Balance | |
|---|---|---|---|---|---|---|
| 08 - JPI | People's | General Account | ▮1736 | 8,030,658.05 | 8,030,658.05 | |
| 08 - JPI | People's | Payroll Account | ▮1752 | - | - | |
| 08 - JPI | People's | Money Market Acct | ▮7175 | 21,018.14 | 21,018.14 | |
| 20 - JPHSP2 | People's | General Account | ▮0659 | 477,339.04 | 477,339.04 | |
| 20 - JPHSP2 | People's | Money Market Acct | ▮0667 | - | - | |
| 380 - BMOC | People's | General Account | ▮6722 | 1,819,246.61 | 1,819,246.61 | |
| 380 - BMOC | People's | Savings Account | ▮1175 | - | - | |
| 381 - BMRM | People's | General Account | ▮6726 | 57,866.64 | 57,866.64 | |
| 382 - BMWC | People's | General Account | ▮6724 | 10,992.95 | 10,992.95 | |
| 08 - JPI | Desjardins | CDN Operating Acct | ▮55 | 130,688.62 | 95,402.69 | * |
| 20 - JPHSP2 | Desjardins | CDN Operating Acct | ▮48 | 37,157.07 | 27,124.66 | * |
| | | | | $ 10,584,967.12 | $ 10,539,648.78 | |