UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-cv-21301-GAYLES

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

ARIEL QUIROS,
WILLIAM STENGER,
JAY PEAK, INC.,
Q RESORTS, INC.,
JAY PEAK HOTEL SUITES L.P.,
JAY PEAK HOTEL SUITES PHASE II. L.P.,
JAY PEAK MANAGEMENT, INC.,
JAY PEAK PENTHOUSE SUITES, L.P.,
JAY PEAK GP SERVICES, INC.,
JAY PEAK GOLF AND MOUNTAIN SUITES L.P.,
JAY PEAK GP SERVICES GOLF, INC.,
JAY PEAK LODGE AND TOWNHOUSES L.P.,
JAY PEAK GP SERVICES LODGE, INC.,
JAY PEAK HOTEL SUITES STATESIDE L.P.,
JAY PEAK GP SERVICES STATESIDE, INC.,
JAY PEAK BIOMEDICAL RESEARCH PARK L.P.,
AnC BIO VERMONT GP SERVICES, LLC,

      Defendants, and

JAY CONSTRUCTION MANAGEMENT, INC.,
GSI OF DADE COUNTY, INC.,
NORTH EAST CONTRACT SERVICES, INC.,
Q BURKE MOUNTAIN RESORT, LLC,

      Relief Defendants.

Q BURKE MOUNTAIN RESORT, HOTEL
AND CONFERENCE CENTER, L.P.
Q BURKE MOUNTAIN RESORT GP SERVICES, LLC,

      Additional Receivership Defendants[1]
_____/

## NOTICE OF FILING RECEIVER'S FOURTH INTERIM REPORT

---

[1] *See* Order Granting Receiver's Motion to Expand Receivership dated April 22, 2016 [ECF No.: 60].

Michael I. Goldberg ("Receiver"), through undersigned counsel, hereby gives notice of the filing of *Receiver's Fourth Interim Report* dated January 10, 2018.

Respectfully submitted,

_/s/ Michael I. Goldberg_____
Michael I. Goldberg, Esq.
Florida Bar Number:  886602
Email:  michael.goldberg@akerman.com
AKERMAN LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2999
Telephone (954) 463-2700
Facsimile: (954) 463-2224
*Court Appointed Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this January 10, 2018 via the Court's notice of electronic filing on all CM/ECF registered users entitled to notice in this case as indicated on the attached Service List.

By: _/s/ Michael I. Goldberg_____
Michael I. Goldberg, Esq.

43797049;1

## SERVICE LIST

**1:16-cv-21301-DPG Notice will be electronically mailed via CM/ECF to the following:**

**Robert K. Levenson, Esq.**
Senior Trial Counsel
Florida Bar No. 0089771
Direct Dial: (305) 982-6341
Email: levensonr@sec.gov
almontei@sec.gov, gonzalezlm@sec.gov,
jacqmeinv@sec.gov
**Christopher E. Martin, Esq.**
Senior Trial Counsel
SD Florida Bar No.: A5500747
Direct Dial: (305) 982-6386
Email: martinc@sec.gov
almontei@sec.gov, benitez-perelladaj@sec.gov
**SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:   (305) 536-4154
*Attorneys for Plaintiff*

**Roberto Martinez, Esq.**
Email: bob@colson.com
Stephanie A. Casey, Esq.
Email: scasey@colson.com
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile:  (305) 476-7444
*Attorneys for William Stenger*

**Jeffrey C. Schneider, Esq.**
Email: jcs@lklsg.com
**LEVINE KELLOGG LEHMAN
SCHNEIDER & GROSSMAN**
Miami Center, 22nd Floor
201 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 403-8788
*Co-Counsel for Receiver*

**Jonathan S. Robbins, Esq.**
jonathan.robbins@akerman.com
**AKERMAN LLP**
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, Florida 33301
Telephone:  (954) 463-2700
Facsimile:   (954) 463-2224

**Naim Surgeon, Esq.**
naim.surgeon@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida  33131
Telephone: (305) 374-5600
Facsimile:  (305) 349-4654
*Attorney for Court-Appointed Receiver*

**David B. Gordon, Esq.**
Email:  dbg@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
12 East 49th Street – 30th Floor
New York, New York 10017
Telephone: (212) 509-3900
*Co-Counsel for Ariel Quiros*

**Jean Pierre Nogues, Esq.**
Email:  jpn@msk.com
**Mark T. Hiraide, Esq.**
Email: mth@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
Telephone (310) 312-2000
*Co-Counsel for Ariel Quiros*

**Mark P. Schnapp, Esq.**
Email: schnapp@gtlaw.com
**Mark D. Bloom, Esq.**
Email: bloomm@gtlaw.com
**Danielle N. Garno, Esq.**
E-Mail: garnod@gtlaw.com
**GREENBERG TRAURIG, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
*Attorney for Intervenor, Citibank N.A.*

**J. Ben Vitale, Esq.**
Email: bvitale@gurleyvitale.com
**David E. Gurley, Esq.**
Email: dgurley@gurleyvitale.com
**GURLEY VITALE**
601 S. Osprey Avenue
Sarasota, Florida 32436
Telephone: (941) 365-4501
*Attorney for Blanc & Bailey Construction, Inc.*

43797049;1

**Stanley Howard Wakshlag, Esq.**
email: swakshlag@knpa.com
**KENNY NACHWALTER, P.A**.
Four Seasons Tower
1441 Brickell Avenue
Suite 1100
Miami, FL 33131-4327
Telephone: (305) 373-1000
*Attorneys for Raymond James &*
*Associates Inc.*

**Melissa Damian Visconti, Esquire**
Email: mdamian@dvllp.com
**DAMIAN & VALORI LLP**
1000 Brickell Avenue – Suite 1020
Miami, Florida 33131
Telephone (305) 371-3960
Facsimile: (305) 371-3965
*Counsel for Ariel Quiros*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  16-cv-21301-GAYLES

SECURITIES AND EXCHANGE COMMISSION,

   Plaintiff,

v.

ARIEL QUIROS,
WILLIAM STENGER,
JAY PEAK, INC.,
Q RESORTS, INC.,
JAY PEAK HOTEL SUITES L.P.,
JAY PEAK HOTEL SUITES PHASE II. L.P.,
JAY PEAK MANAGEMENT, INC.,
JAY PEAK PENTHOUSE SUITES, L.P.,
JAY PEAK GP SERVICES, INC.,
JAY PEAK GOLF AND MOUNTAIN SUITES L.P.,
JAY PEAK GP SERVICES GOLF, INC.,
JAY PEAK LODGE AND TOWNHOUSES L.P.,
JAY PEAK GP SERVICES LODGE, INC.,
JAY PEAK HOTEL SUITES STATESIDE L.P.,
JAY PEAK GP SERVICES STATESIDE, INC.,
JAY PEAK BIOMEDICAL RESEARCH PARK L.P.,
AnC BIO VERMONT GP SERVICES, LLC,

   Defendants, and

JAY CONSTRUCTION MANAGEMENT, INC.,
GSI OF DADE COUNTY, INC.,
NORTH EAST CONTRACT SERVICES, INC.,
Q BURKE MOUNTAIN RESORT, LLC,

   Relief Defendants.

Q BURKE MOUNTAIN RESORT, HOTEL
AND CONFERENCE CENTER, L.P.
Q BURKE MOUNTAIN RESORT GP SERVICES, LLC,

   Additional Receivership Defendants[1]
_____/

## RECEIVER'S FOURTH INTERIM REPORT

---

[1]*See* Order Granting Receiver's Motion to Expand Receivership dated April 22, 2016 [ECF No.: 60].

Michael I. Goldberg, in his capacity as receiver (the "Receiver") of Jay Peak, Inc., Q Resorts, Inc., Jay Peak Hotel Suites L.P., Jay Peak Hotel Suites Phase II L.P., Jay Peak Management, Inc., Jay Peak Penthouse Suites L.P., Jay Peak GP Services, Inc., Jay Peak Golf and Mountain Suites L.P., Jay Peak GP Services Golf, Inc., Jay Peak Lodge and Townhouse L.P., Jay Peak GP Services Lodge, Inc., Jay Peak Hotel Suites Stateside L.P., Jay Peak Services Stateside, Inc., Jay Peak Biomedical Research Park L.P., AnC Bio Vermont GP Services, LLC (collectively, the "Receivership Defendants") and Jay Construction Management, Inc., GSI of Dade County, Inc., North East Contract Services, Inc., and Q Burke Mountain Resort, LLC (collectively, the "Relief Defendants") and Q Burke Mountain Resort, Hotel and Conference Center, L.P. and Q Burke Mountain Resort GP Services, LLC (together, "Additional Receivership Defendants") (the Receivership Defendants, Relief Defendants, and Additional Receivership Defendants shall collectively be referred to as the "Receivership Entities"), by and through undersigned counsel, and pursuant to the Order Granting Plaintiff Securities and Exchange Commission's Motion for Appointing Receiver, dated April 13, 2016 (the "Receivership Order") [ECF No. 13], respectfully files his Fourth Interim Report covering the period from June, 2017 up to and including December 31, 2017.[2]

## PRELIMINARY STATEMENT

The Receiver has received the $150 million settlement payment from Raymond James & Associates, Inc., and has initiated the payments to the investors and creditors required under the settlement agreement as set forth in detail below. The Receiver, with the assistance of his management company, Leisure Hotels LLC and the management and staff at the Jay Peak

---

[2] For the purpose of brevity, the Receiver has endeavored not to restate information contained in the prior Status Reports, but refers all interested parties to those Status Reports for additional information including a detailed description of the Receivership Defendants and the events that led up to the appointment of the Receiver.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

Resort, and the Burke Mountain Hotel, continues to work to improve the ski resorts and related facilities to enhance their operations and value, and achieve the job creation needed by investors to qualify for citizenship.

## I.      BACKGROUND

On April 12, 2016, the Securities and Exchange Commission ("SEC") filed a complaint [ECF No. 1] ("Complaint") in the United States District Court for the Southern District of Florida (the "Court") against the Receivership Defendants, Defendant, William Stenger ("Stenger") and Defendant Ariel Quiros ("Quiros") (collectively, the "Defendants"), and the Relief Defendants. The Complaint alleged that Quiros and Stenger, in violation of federal securities laws, controlled and utilized the various Receivership Entities in furtherance of a fraud on the investors who participated in limited partnerships offered under the federally created EB-5 visa program, and seeks various forms of relief, including appointment of the Receiver. The first six limited partnerships were used to develop and expand the Jay Peak Resort located in Jay, Vermont (the "Jay Peak Resort"). The seventh limited partnership raised funds to purchase land and develop a biomedical research facility in Newport, Vermont. The eighth limited partnership was used to develop and expand the Burke Mountain Hotel and ski area located in East Burke, Vermont (the "Burke Mountain Resort").

Along with the Complaint, the SEC requested the Court to enter a temporary restraining order and a preliminary injunction preventing the Receivership Defendants from, among other things, transferring or otherwise utilizing their assets.  On April 13, 2016, the Court entered the Receivership Order [ECF No. 11] and granted the SEC's Emergency *Ex Parte* Motion for Temporary Restraining Order, Asset Freeze and Other Relief [ECF No. 4]. Among other things,

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

the Receivership Order appointed Michael Goldberg as the receiver over the Receivership Defendants and the Relief Defendants.

Upon the SEC's Unopposed Motion for Permanent Injunction for Entry of Judgment of Permanent Injunction and Other Relief against Defendant Ariel Quiros [ECF No. 394], on August 23, 2017, the Court entered a Judgment of Permanent Injunction and Other Relief against Ariel Quiros [ECF No. 398].[3]  The only issues remaining for the Court's determination against Quiros is the amount of disgorgement, whether to impose a civil penalty, and the amount of the penalty.  The SEC and Quiros have tentatively reached a settlement of these issues, pending final approval of the settlement by the SEC and the Court.

## II.    ACTIONS TAKEN BY THE RECEIVER DURING THE REPORTING PERIOD

### A.    Claims

On June 30, 2017 [ECF No. 353], the District Court approved the settlement which the Receiver and other parties reached with Raymond James & Associates, Inc. ("Raymond James"), whereby Raymond James agreed to pay $150 million (in two tranches) in exchange for an order barring all claims against Raymond James (the "RJ Settlement").[4]  The vast majority of the proceeds of the RJ Settlement are earmarked to pay the claims of the creditors of the Receivership Entities, reimburse investors who will be unable to obtain their citizenship, and provide benefit to other investors through improvements to the value of the receivership properties.  Moreover, the RJ Settlement provides a source of funds for the Receiver to continue construction and operations at the resorts in order to create additional jobs to provide investors

---

[3] Stenger previously agreed to the entry of a permanent injunction as to him.  *See* ECF Nos. 48 and 51.

[4] The Receiver, through special counsel, filed a lawsuit against Raymond James and Quiros' former son-in-law, Joel Burstein, who was a branch manager at Raymond James, and the employee responsible for servicing Quiros' financial needs (Case No. 1:16-cv-21831-JAL) (the "Raymond James Action") for among other causes of action, aiding and abetting breach of fiduciary duty.

with a better opportunity to obtain their permanent residency.  The Receiver has received all of the funds due under the RJ Settlement and has begun implementing its terms.

### 1.   Phase I

Thirty-five individuals invested $17.5 million through Receivership Defendant Jay Peak Hotel Suites ("Phase I") to build the Tram Haus Lodge at the base of the Jay Peak Mountain. Constructed in 2008, the Tram Haus Lodge is the first hotel at the Jay Peak Resort.  In 2014, Quiros converted the investors in this project from equity holders to debt holders and issued each investor a promissory note in exchange for their equity. At the time, many of these investors complained about losing their equity and threatened legal action. At the start of the receivership, there was $14,666,879 in principal due to the Phase I investors. Under the settlement agreement, Raymond James paid the Receiver $15,391,386.47 earmarked to pay the Phase I investors the balance due under their notes in full and final satisfaction of any and all claims they have against Raymond James and the Receivership Entities. The Receiver paid the sums due to the Phase I investors and these investors are no longer creditors of the receivership estate.

### 2.   Phase II – V

Phases II through V consist of those individuals who invested in the partnerships[5] that built the remaining phases of the Jay Peak Resort (excluding the Stateside Hotel). These partnerships funded the Jay Hotel, the water park, the golf course, the hockey rink and the Golf and Mountain Villas, among other assets. As of the commencement of the receivership, approximately $5.1 in outstanding trade debt related to these projects was owed to various trade creditors. Raymond James paid the Receiver $5.1 million under the RJ Settlement to satisfy these

---

[5] The partnerships are Receivership Defendants Jay Peak Hotel Suites Phase II L.P., Jay Peak Penthouse Suites L.P., Jay Peak Golf and Mountain Suites L.P., and Jay Peak Lodge and Townhouses L.P.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

outstanding trade payables.   As of the filing of this report, the Receiver has fully paid the trade vendors their past due receivables.

   **3.**      **Phase VI**

Phase VI consists of the investors who invested in the Jay Peak Hotel Suites Stateside L.P. ("Phase VI") which raised money to build the Stateside Hotel, 84 cottages, a recreational center and a medical center (collectively, the "Stateside Project"). As of the date of the commencement of the receivership, only the Stateside Hotel was completed and 35 cottages were partially constructed. Construction of the medical and recreational centers were not even commenced. Moreover, Phase VI owed the contractors that built the Stateside Hotel and worked on the cottages approximately $2.2 million, which resulted in claimed liens against the Jay Peak Resort. Due to Quiros' diversion of funds and the concomitant lack of funds to complete these projects, there were no available funds to complete Phase VI and not enough jobs to satisfy the ten job creation requirement for each Phase VI investor.

The RJ Settlement provided the Receiver with $19,687,000 to complete construction of the Stateside Project, which is necessary for Phase VI Investors to become eligible for permanent residency and pay off all construction liens encumbering the Stateside Project.   The Court approved a modified plan for completion of the construction [ECF No. 330], whereby the Receiver reduced the number of cottages to be completed from 84 to 60 and eliminated the plans to build a medical center. Instead, the Receiver is using these savings to build a more comprehensive recreational center as well as soccer and lacrosse fields.  The Receiver and his hospitality experts believe that this will help improve occupancy in the slower summer months and in turn increase revenue and profitability.  As of the date of this report, the Receiver has paid the Stateside Project's contractors their past due receivables.  In December 2017, the 60 cottages

and the recreational center were completed. Construction of the Soccer and Lacrosse fields are expected to begin in April 2018 and be completed by mid-September 2018. Although the United States Citizenship and Immigration Services ("USCIS") has started approving Phase VI investors' I-829 petitions, the USCIS has also issued some Phase VI investors "Notices of Intent to Deny" ("NOIDS") their I-829 petitions due to USCIS's belief that the Stateside Project did not create enough jobs. The Receiver and his immigration counsel believe that USCIS's position was based on outdated information. Accordingly, the Receiver and his immigration counsel worked with the Stateside Project's accountants and economists in formulating a template reply setting forth the most up to date information. This template has been provided and is available to all Phase VI investors who receive a NOID. This new information evidences that the Stateside Project has created enough jobs for all Phase VI investors and the Receiver is hopeful that USCIS will soon start once again approving Phase VI investors' I-829s.

**4.    Phase VII**

Receivership Defendant, Jay Peak Biomedical Research Park, L.P. (the "AnC Partnership") solicited funds from investors (the "Phase VII Investors") for what was purportedly going to be a biomedical research facility to be built in Newport, Vermont. As of the commencement of the Receivership, only approximately $5.5 million in construction had taken place on the biomedical research facility and most of the money raised from the Phase VII Investors had been wrongfully diverted. The Receiver was able to recover approximately $17.8 million remaining in escrow in one of the bank accounts frozen by the Court. With the Court's approval, the Receiver returned escrow funds to 36 of the Phase VII Investors whose funds were traced to the escrow account. Those investors fully assigning any claims they have against the Receivership Entities and third parties to the Receiver.

There remains 134 Phase VII investors whose funds are missing.  The RJ Settlement earmarked $67 million to provide refunds of all principal investments for the qualifying Phase VII investors (and allow them to retain a claim for the potential return of their administrative fees).  For the Phase VII investors who have already been approved as a conditional resident, the Receiver has provided them with the potential alternative whereby the investor funds can be redeployed to another qualifying project for the remainder of the sustainment period.  However, in order to maintain their place in line, the funds must be transferred directly from the AnC Partnership to a new project.

The Receiver has contacted the Phase VII Investors and informed them of the option to redeploy their principal investment. Thus far, 16 Phase VII Investors have elected to receive a refund; 17 have not responded; and 50 Phase VII investors have elected to have their funds held in escrow by the Receiver pending potential redeployment. Although the Receiver had originally planned to allow each investor to choose his or her own project to redeploy their investment, after consultation with his counsel, the Receiver has determined that redeployment into multiple projects is not feasible because Vermont law (pursuant to which the AnC Partnership was created) only permits a single series of partners.  The Receiver expects to file a motion seeking approval of this redeployment plan shortly.

### 5.      Phase VIII

Phase VIII consists of 121 investors who invested through Burke Mountain Resort, Hotel and Conference Center, L.P. ("Phase VIII") to build the hotel and conference center.   Originally, it was intended that this project would consist of a hotel and conference center, an aquatic center, a tennis center and a mountain bike facility.   However, as of the commencement of the receivership, only the hotel and conference center were completed. Moreover, at the

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

commencement of the Receivership there was $3.6 million in unpaid contractor claims for which liens have been filed and millions in unpaid trade vendor claims. Moreover, due to the lack of liquidity caused by his diversion of funds, Quiros was forced to assume a $3 million obligation to the Burke Mountain Academy ("BMA"), who is the prior owner of the property. Finally, three of the investors did not qualify for their I-526 petitions. Thus, there are currently 118 "active" investors in this project and a total of $8.1 million owed to contractors, BMA, and investors no longer pursuing their immigration status.

Pursuant to the Settlement Agreement, Raymond James has paid the Receiver enough funds to satisfy the $3.6 million unpaid contractor claims, the $3 million owed to BMA, and the $1.5 million owed to inactive investors.[6]   As of the date of this report, the Receiver has paid the contractors their past due receivables, has satisfied all past due trade debt and is in the process of paying off the sum due to BMA, which was reduced from nearly $3 million to approximately $1.9 million per agreement approved by the Court. *See* ECF No. 385. The money saved was used to construct a new ski lift and improve snowmaking capacity. These projects were completed in December 2017 and should help create additional jobs.

Last year, in its first year of operation, the Burke Hotel operated at an approximate $2 million loss.  Operational losses for a new hotel in its first year of operations is normal and expected.  This year, the Burke Hotel is budgeted to increase revenue and to operate near breakeven.  The Receiver believes that this increase in projected revenue will create additional jobs that will enable additional investors to qualify for their green card.  Importantly, the Receiver is extremely happy to report that USCIS just recently started approving petitions of Phase VIII investors.

---

[6] The owner has agreed to reduce the amount owed to it from $3 million to $2 million provided the Burke Hotel replaces an old ski lift, which will cost the Burke Hotel $1 million.  This will greatly benefit the Burke Hotel and in turn Phase VIII investors.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

## B.      Management of Vermont Properties

The Receiver, with the assistance of the court-approved management company, Leisure Hotels, LLC ("Leisure") continue to operate the Jay Peak Resort and the Burke Mountain Resort. Jay Peak Resort's General Manager, Steven Wright and Burke Mountain Resort's General Manager, Kevin Mack also play an important role in the management of the resorts. The Receiver confers with the Leisure management team on a regular basis to monitor the hotels' operations. Please see the Financial Affairs section of this report for more detailed information on the financial condition of the Jay Peak Resort and the Burke Mountain Resort.

### 1.      Repairs to Water Park

The Receiver has previously reported that the duct system at the water park at the Jay Peak Resort – known as the Pump House – needed to be replaced, at a cost of approximately $300,000. The Receiver is seeking to recover those costs from the parties responsible for the initial design and construction. The Receiver attended mediation in an attempt to resolve Receiver's claims related to defects in the construction of the duct socks.  Although the dispute was not resolved during mediation, the parties responsible for the initial design and construction have subsequently agreed to pay $225,000 towards the repair costs.[7]

### 2.      Antenna

The Receiver is negotiating easements with telecommunication providers to locate a cell phone antenna at the Burke Mountain Resort, in exchange for monthly rent payments, which will provide an additional source of revenue.

---

[7] As of the date of this report, the settlement is still in the process of being finalized.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

### 3.      IRS/restructuring

The Receiver received Notices of Audit from the Internal Revenue Service ("IRS") and notices of its intention to fine the Receivership Entities for failure to file or late filings, based on pre-receivership events.  In order to reduce the potential penalties and costs, the Receiver and his accountants engaged in numerous conferences with the IRS and gathered documents requested by the IRS.

### 4.      Employment Compliance

As part of his efforts to streamline the operations of the Receivership Entities and comply with various employment laws, the Receiver has worked with the management staff at the resorts to prepare or update the employee benefit plan, plan participation rules and a cafeteria plan.

### C.      Immigration Issues

The Receiver continues to work with his immigration attorneys to gather and analyze information regarding job creation needed by the investors to fulfill their reporting requirements to the USCIS in order to obtain their I-829s. Immigration counsel, H. Ronald Klasko and his law firm continue to assist the Receiver in preparing the necessary papers in order for investors to properly respond to USCIS's request for information and documentation supporting their various I-526 and I-829 petitions.

### D.      Litigation and Third Party Claims

### 1.      Quiros

Quiros, by himself, with his wife, or through corporations own numerous properties located in Vermont, Florida and elsewhere.  These properties are subject to the asset freeze.  The Receiver and the SEC believe that certain of the properties and other business interests were purchased and/or maintained with investor funds.  Quiros, through his counsel, contacted the

- 11 -

Receiver and expressed his interest in paying the real property taxes and other required expenses for certain properties in which he has an ownership interest. The Receiver had also been contacted by creditors of businesses relating to Quiros, demanding payment of similar expenses.

The Receiver may have a claim to the properties, which would ultimately inure to the benefit of investors. Accordingly, upon requests of the Receiver, on August 23, 2017 [ECF No. 399] and again on September 1, 2017 [ECF No. 410], the Court entered Orders authorizing the Receiver to use Quiros' tax refund[8] to pay real estate taxes, association fees and rent for the real properties. Payment of these obligations has suspended impending tax sales of certain of the properties. The Receiver believes it is in the best interest of the Receivership Estate to maintain the properties and preserve the status quo until the Court makes a final determination with regard to the claims against Quiros in this case and the underlying properties.

Moreover, upon request of the SEC, the Court entered an Order modifying the asset freeze to allow Quiros to turn over certain of the properties to the Receiver, including: (i) the parcels in downtown Newport, Vermont which Quiros intended to redevelop as part of a proposed EB-5 offering that was not yet underway, which is just a fenced-in construction site; (ii) land outside of Newport known as the Bogner property where the Phase VII biomedical research center was to be built; and a residential condominium located at 400 Fifth Avenue, in New York City (formerly referred to as the Setai) (the "NY Condominium"). Quiros has executed quitclaim deeds transferring the properties to the Receiver. The Receiver subsequently

---

[8] Earlier this year, Quiros received a refund check from the IRS in the amount of $942,250.36 (the "Tax Refund"). The refund check was directed to Quiros and his wife, jointly. The Receiver and the SEC asserted that the Tax Refund is subject, in its entirety, to the Court's Asset Freeze Order. Quiros asserted that only half of the Tax Refund is subject to the asset freeze. In the interest of avoiding costly litigation over the issue, Quiros, the SEC, and the Receiver agreed that Quiros will endorse the entire check to the Receiver to be held in the Receiver's law firm trust account pending a final determination regarding disposition of the Tax Refund. In addition to use of the Tax Refund for payment of property expenses, the Court has approved payment of $275,000 from the Tax Refund for Quiros' attorneys' fees. The Receiver seeks to recover those funds from Quiros' insurer, Ironshore Indemnity Company in a related case. (In the case *Quiros v. Ironshore Indemnity, Inc.*, Case No. 16-25073 (the "Ironshore Case"), Quiros sued his insurer to cover the costs of his legal defense.)

paid the property taxes on the properties and is currently marketing the properties for sale. The Receiver believes there is equity in the properties.

The Court previously authorized Quiros to sell or mortgage the NY Condominium and use the proceeds from that mortgage to pay his living expenses of $15,000 per month and reasonable attorney's fees subsequently awarded by the Court. Thereafter, Quiros borrowed $1.5 million and the lender placed a first mortgage on the property, which was scheduled to mature on August 9, 2017. On July 31, 2017, the Court entered an Order authorizing the Receiver to pay off the mortgage at maturity using the remaining proceeds of the mortgage and other receivership funds. The Receiver believes there is sufficient equity in the NY Condominium to recoup the receivership funds used to pay off the mortgage.

Finally, as previously mentioned, the SEC has recently entered into a settlement agreement with Quiros, subject to the SEC's and the Court's final approval. The Receiver is separately negotiating a settlement with Quiros.

### 2.    Document Recovery

The Receiver continues to maintain and update an electronic database to store documents produced by financial institutions and recovered from the files of the Defendants. With the assistance of his forensic accountants and special counsel, the Receiver continues to analyze the business records and documents produced in response to subpoenas *duces tecum* in order to identify concealed or fraudulently transferred receivership assets and causes of action. The Receiver intends to pursue recovery of fraudulently transferred assets or the proceeds thereof from third parties.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

### III.   FINANCIAL AFFAIRS[9]

#### A.   Bank Accounts

The Receivership Entities' financial accounts were frozen pursuant to the Receivership Order. The Receivership Order also provides the Receiver with control and signatory authority for all financial accounts. *See* Receivership Order, ¶ 7.   The Receiver and his staff maintain receivership bank accounts and pay administrative expenses. The Receiver's staff has opened new bank accounts for the purpose of segregating the proceeds of the RJ Settlement and distributing payment to investors, contractors and other creditors.

Attached to this Report as **Exhibit "A"** is a Standard Fund Accounting Report ("SFAR") for the third quarter of 2017 and cash flow statements through October 2017 for the operating Receivership Entities detailing the Receivership Entities business operations.[10]

#### B.   Jay Peak Resort

##### 1.   Sales Outlook

April brought an end to the ski and snowboard season with Jay Peak Resort setting *all-time records* in terms of gross revenue ($51 million), and EBITDA ($8 million). Jay Peak Resort also achieved record retail sales and waterpark revenue. Lift ticket sales reached an all-time high of $9 million and the ski and snowboard school sales hit an all-time high of $1.1 million. May 2017 kicked off both Jay Peak Resort's general summer and specific wedding season. Expanded hockey tournaments were integrated into the May budget due to expanded sales initiatives that helped enhance lodging revenue and associated business.

---

[9] Because this receivership involves operating entities, the confidentiality of the Receivership Entities' financial data is important. Accordingly, the Receiver has not attached detailed financial statements to this report, but has instead provided a general summary.  Should the Court want to review such detailed financial data, the Receiver shall provide the information to the Court in-camera.

[10] The Receiver will separately file the SFAR for the fourth quarter of 2017 and more recent cash flow reports.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

Leisure continued to work with Jay Peak Resort staff to drive more revenue into the summer season, which is typically a low sales generation time period. Unfortunately, May, June, and early July 2017 experienced above-average rainfall, especially on weekends, which led to lower than budgeted revenue for golf, retail, golf-related lodging and associated food and beverage revenue. By the end of June, Jay Peak Resort's revenue was $300,000 under budget, which carried over into July in a similar fashion with rain and cold weather affecting associated outdoor sales and music events.

The advance season pass sales began in July with very favorable results. Jay Peak Resort is currently $150,000 ahead of budgeted sales. Leisure is forecasting that this will increase an additional $50,000 by the time season pass sales momentum slows following the Christmas holiday period.  August through November is when half of Jay Peak Resort's annual lodging-based package revenue is prebooked for the winter season. The Jay Peak Resort is pacing higher than prior years as a result of better performance from the early-season package marketing and associated mailings (ahead of pace by $385,000).  However, recent record low temperatures have hurt day skier visits which may impct this year's profitability.  The Receiver is hopeful that the Jay Peak Resort will make up for this reduction in revenue in the upcoming months.

      **2.**      **TRAM Upgrade**

The mandatory TRAM upgrade that commenced in 2016 was completed in June 2017. The TRAM, which is a Jay Peak Resort hallmark within the area, incurred significant mechanical and electrical system upgrades. This also allows the TRAM to now operate twice as fast and carry significantly more people on each ride and has been favorably received by Jay Peak Resort's customers.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

3.     **2017 Capital Expenditure Projects**

Extensive analysis was performed on Jay Peak Resort's capital assets with an emphasis placed on life safety, customer satisfaction and revenue generating projects. Jay Peak Resort is expending approximately $2 million on various upgrades and replacements out of operating cash flow generated in the prior ski season that will enhance a positive customer experience and result in cost savings. Projects include, but are not limited to, enhanced snow making, significant repairs/upgrades to facilities, on-line booking system upgrades, energy enhancements, upgrades to J1 Visa employee housing, Stateside laundry upgrades, storm water upgrades, ski lift mechanical and communication upgrades, wifi upgrades, and installation of document imaging within the human resources and accounting departments. The capital expenditure budget also includes upgrades, replacements and heavy maintenance for the Wilderness Village water systems. Additionally, several leased vehicles have been replaced with new leases that will increase productivity, lower maintenance and repair costs, and enhance customer satisfaction.

3.     **Construction Projects**

Construction of the Stateside cottages and recreation center re-commenced in May 2017 and is tracking on budget and within the scheduled timeline. Planning and permitting for the new soccer and lacrosse fields is underway with construction anticipated to commence just after the end of the next ski season in 2018. The total combined budget for these three initiatives is approximately $20.3 million. The recreation center is scheduled to debut over the winter months and will include rock climbing, ropes course, movie theater, and restaurant and bar operations. The new Stateside cottages will include new lodging for customers in addition to employee housing.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

4.      **Third Party Servicing**

Significant effort was spent analyzing Jay Peak Resort's servicing of six homeowner associations' common elements in addition operations of the condominium rental program. Jay Peak Resort has been significantly undercharging for services and in some cases, Jay Peak Resort has not charged for such services. New procedures have been implemented to move Jay Peak Resort toward charging market rates for labor and materials provided to third parties in a consistent manner.

C.      **Burke Mountain Resort**

Operations and amenities for the Burke Mountain Resort are significantly smaller than that of the Jay Peak Resort and consist primarily of a smaller ski resort operations, one hotel lodging facility with limited meeting and food service, summer biking and campground operations. The Burke Mountain Resort experienced ski revenue in excess of budget and the longest ski season experienced within the past 15 years. Ski revenue ended up 9% over budget at approximately $1.9 million. Revenue from the new lodge that opened just prior to the beginning of last year's ski season continues to ramp up slowly due primarily to lack of associated amenities within the area. Mountain bike operations commenced May 27 and ended October 9 and met biker visit counts with revenue slightly lower than budget.

1.      **Sales Outlook**

A new T-bar lift was just completed and will expand the ski experience for Burke Mountain Resort's customers. The lodge is entering its second year of operations and will continue to ramp up toward stabilization which typically occurs within the third year. Several new mountain bikes were added to inventory which helped increase customer satisfaction during

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

the summer season. The advance season pass sales are trending higher than the prior year, which provides a favorable outlook for the ski season.

During the budgeting session for the fiscal year ending September 2018, several initiatives have been identified to drive incremental revenue with significant emphasis placed upon the Lodge. The immediate goal for Burke Mountain Resort is for operations to break-even.

### 2.      2017 Capital Expenditure Projects

Significant expenditures were made last year to complete the lodge including parking which was not part of the original construction plan. Two significant capital projects have recently commenced related to ski operations. As referenced above, a new T-bar lift is being built for approximately $1.5 million in addition to expanded snow making projects totaling approximately $300,000. Incentives and rebates are being provided by third parties which will help offset some of these costs.

Two of the longest sections of gravel roads were improved through a partnership with the Natural Resource Conservation Service. In addition, upgrades to the Burke Mount Resort's wastewater operations have greatly enhanced the ability to service the needs of the resort and the dozens of homes and condominiums that it serves. Funding for both projects came from a reserve account that the Burke Mountain Resort has access to through the Burke Mountain Owner's Association. Other capital spending for the Burke Mountain Resort has been limited primarily to life safety issues for the next fiscal year.

## IV.    ADMINISTRATION OF THE RECEIVERSHIP ESTATES

The Receiver continues to utilize the skills of his professionals, including his general counsel Akerman LLP; special litigation and conflicts counsel Jeffrey Schneider and Levine Kellogg Lehman Schneider & Grossman LLP; and immigration counsel H. Ron Klasko and

Klasko Immigration Law Partners. Soneet Kapila, CPA, and the accounting firm Kapila Mukamal provide accounting and forensic work for the Receiver.

**A.      Website/Ongoing Communications**

The Receiver continues to communicate with government officials, creditors, contractors and interested parties. The Receiver continues to respond to inquiries, usually through e-mail and telephone calls.  The Receiver returned to Vermont for meetings with creditors and government officials.  The Receiver and his staff continue to respond to inquiries from investors, creditors and other interested parties. The Receiver continues to maintain a toll-free investor hotline at (800) 223-2234, an email address for general inquiries jaypeak@akerman.com, and a website www.JayPeakReceivership.com to provide up to date information for investors and interested parties. The Receiver has posted copies of court filings, correspondence with investors and other pertinent information on the website. The Receiver has also prepared and posted numerous updates on his website, including letters to investors. The Receiver will continue to utilize the website as the primary method of communicating with investors, creditors and other interested parties throughout the receivership.

**B.      Recommendations**

The Receiver continues to secure and maintain the assets of the Receivership Entities, analyze the use of the individual partnership funds and respond to inquiries from the investors, creditors and other interested parties. The Receiver anticipates taking the following actions: *(i)* continue to operate and maintain the facilities until the best course of disposition is determined with the goal of each investor obtaining the highest possible return on their investment and achieving their unconditional green card; *(ii)* finish construction of the Stateside properties in order to create enough jobs for investors to satisfy their EB-5 job creation requirements; *(iii)*

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

continue to pay the allowed claims of creditors and investors; *(iv)* investigate and commence litigation against third parties who may be liable for the perpetration of the Receivership Defendants' fraud; *(v)* continue to review transfers of the individual partnership funds and seek to recover funds which were fraudulently transferred; *(vi)* respond to inquiries from investors, creditors, government officials and interested parties; and *(vii)* provide updates through the receivership website.

Dated:  January 10, 2018.

Respectfully submitted,

By: */s/ Michael I. Goldberg*
Michael I. Goldberg, Esq.
Florida Bar No. 886602
Email: michael.goldberg@akerman.com
**AKERMAN LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Blvd.
Fort Lauderdale, FL 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
*Court Appointed Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this January 10, 2018 via the Court's notice of electronic filing on all CM/ECF registered users entitled to notice in this case as indicated on the attached Service List.

By: */s/ Michael I. Goldberg*
Michael I. Goldberg, Esq.

## SERVICE LIST

### 1:16-cv-21301-DPG Notice will be electronically mailed via CM/ECF to the following:

**Robert K. Levenson, Esq.**
Senior Trial Counsel
Florida Bar No. 0089771
Direct Dial: (305) 982-6341
Email: levensonr@sec.gov
almontei@sec.gov, gonzalezlm@sec.gov,
jacqmeinv@sec.gov
**Christopher E. Martin, Esq.**
Senior Trial Counsel
SD Florida Bar No.: A5500747
Direct Dial: (305) 982-6386
Email: martinc@sec.gov
almontei@sec.gov, benitez-perelladaj@sec.gov
**SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154
*Attorneys for Plaintiff*

**Roberto Martinez, Esq.**
Email: bob@colson.com
**Stephanie A. Casey, Esq.**
Email: scasey@colson.com
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile:  (305) 476-7444
*Attorneys for William Stenger*

**Jeffrey C.  Schneider, Esq.**
Email: jcs@lklsg.com
**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN**
Miami Center, 22nd Floor
201 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 403-8788
*Co-Counsel for Receiver*

**Jonathan S. Robbins, Esq.**
jonathan.robbins@akerman.com
**AKERMAN LLP**
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, Florida 33301
Telephone:  (954) 463-2700
Facsimile:   (954) 463-2224

**Naim Surgeon, Esq.**
naim.surgeon@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida  33131
Telephone: (305) 374-5600
Facsimile:  (305) 349-4654
*Attorney for Court-Appointed Receiver*

**David B. Gordon, Esq.**
Email: dbg@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
12 East 49th Street – 30th Floor
New York, New York 10017
Telephone: (212) 509-3900
*Co-Counsel for Ariel Quiros*

**Jean Pierre Nogues, Esq.**
Email:  jpn@msk.com
**Mark T. Hiraide, Esq.**
Email: mth@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
Telephone (310) 312-2000
*Co-Counsel for Ariel Quiros*

**Mark P. Schnapp, Esq.**
Email: schnapp@gtlaw.com
**Mark D. Bloom, Esq.**
Email: bloomm@gtlaw.com
**Danielle N. Garno, Esq.**
E-Mail: garnod@gtlaw.com
**GREENBERG TRAURIG, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
*Attorney for Intervenor, Citibank N.A.*

**J. Ben Vitale, Esq.**
Email: bvitale@gurleyvitale.com
**David E. Gurley, Esq.**
Email: dgurley@gurleyvitale.com
**GURLEY VITALE**
601 S. Osprey Avenue
Sarasota, Florida 32436
Telephone: (941) 365-4501
*Attorney for Blanc & Bailey Construction, Inc.*

**Stanley Howard Wakshlag, Esq.**
Email: swkshlag@knpa.com
**KENNY NACHWALTER, P.A.**
Four Seasons Tower
1441 Brickell Avenue
Suite 1100
Miami, FL 33131-4327
Telephone: (305) 373-1000
*Attorneys for Raymond James & Associates Inc.*

Melissa Damian Visconti, Esquire
Email: mdamian@dvllp.com
**DAMIAN & VALORI LLP**
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: 305-371-3960
Facsimile: 305-371-3965
*Co-Counsel for Ariel Quiros*

- 24 -

# **EXHIBIT A**

STANDARDIZED FUND ACCOUNTING REPORT - Cash Basis (Receivership)
SEC v. Quiros, et al.
Case No.: 16-cv-21301-GAYLES
Reporting Period 05/01/2017 to 09/30/2017

| FUND ACCOUNTING (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 04/30/2017): | $ - | $ - | $ 13,610,221.80 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | **Business Income** | $ - | | |
| Line 3 | **Cash and Securities (UNrestricted)** | $ 1,144,813.56 | | |
| Line 3 | **Cash and Securities (RESTRICTED)** | $ 128,563,077.29 | | |
| Line 4 | **Interest/Dividend Income** | $ 56,883.15 | | |
| Line 5 | **Business Asset Liquidation** | $ - | | |
| Line 6 | **Personal Asset Liquidation** | $ 14,352.42 | | |
| Line 7 | **Third-Party Litigation Income** | $ - | | |
| Line 8 | **Miscellaneous - Other** | $ - | | |
| | Total Funds Available (Lines 1 – 8): | | | $ 143,389,348.22 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | **Disbursements to Investors** | | | $ - |
| Line 10 | **Disbursements for Receivership Operations** | | | $ - |
| Line 10a | *Disbursements to Receiver or Other Professionals* | $ - | | |
| Line 10b | *Business Asset Expenses* | $ 19,033,514.02 | | |
| Line 10c | *Personal Asset Expenses* | $ 75,000.00 | | |
| Line 10d | *Investment Expenses* | $ - | | |
| Line 10e | *Third-Party Litigation Expenses* | | | |
| | 1. Attorney Fees | $ 25,435,169.46 | | |
| | 2. Litigation Expenses | $ - | | |
| | Total Third-Party Litigation Expenses | $ - | | |
| Line 10f | *Tax Administrator Fees and Bonds* | $ - | | |
| Line 10g | *Federal and State Tax Payments* | $ 762,073.36 | | |
| | Total Disbursements for Receivership Operations | | | $ 45,305,756.84 |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| Line 11a | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | $ - | | |
| | Fund Administrator.......................................... | $ - | | |
| | Independent Distribution Consultant (IDC)................ | $ - | | |
| | Distribution Agent........................................... | $ - | | |
| | Consultants................................................. | $ - | | |
| | Legal Advisers.............................................. | $ - | | |
| | Tax Advisers................................................ | $ - | | |
| | 2. Administrative Expenses | $ - | | |
| | 3. Miscellaneous | $ - | | |
| | Total Plan Development Expenses | | | $ - |
| Line 11b | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator.......................................... | $ - | | |
| | IDC.......................................................... | $ - | | |
| | Distribution Agent........................................... | $ - | | |
| | Consultants................................................. | $ - | | |
| | Legal Advisers.............................................. | $ - | | |
| | Tax Advisers................................................ | $ - | | |
| | 2. Administrative Expenses | $ - | | |
| | 3. Investor Identification: | $ - | | |
| | Notice/Publishing Approved Plan.......................... | $ - | | |
| | Claimant Identification..................................... | $ - | | |
| | Claims Processing........................................... | $ - | | |
| | Web Site Maintenance/Call Center......................... | $ - | | |
| | 4. Fund Administrator Bond | $ - | | |
| | 5. Miscellaneous | $ - | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | $ - | | |
| | Total Plan Implementation Expenses | | | $ - |
| | Total Disbursements for Distribution Expenses Paid by the Fund | | | $ - |
| Line 12 | **Disbursements to Court/Other:** | | | |
| Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | $ - | | |
| Line 12b | *Federal Tax Payments* | $ - | | |
| | Total Disbursements to Court/Other: | | | $ - |
| | **Total Funds Disbursed (Lines 9 – 11):** | | | $ 45,305,756.84 |
| Line 13 | **Ending Balance (As of 09/30/2017):** | | | $ 98,083,591.38 |

1

STANDARDIZED FUND ACCOUNTING REPORT - Cash Basis (Receivership)
SEC v. Quiros, et al.
Case No.: 16-cv-21301-GAYLES
Reporting Period 05/01/2017 to 09/30/2017

| | | | | | Grand Total |
|---|---|---|---|---|---|
| **Line 14** | **Ending Balance of Fund – Net Assets:** | | | | $          - |
| Line 14a | *Cash & Cash Equivalents* | $          - | | | |
| Line 14b | *Investments* | $          - | | | |
| Line 14c | *Other Assets or Uncleared Funds* | $          - | | | |
| | **Total Ending Balance of Fund – Net Assets** | | | | $          - |

**OTHER SUPPLEMENTAL INFORMATION:**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | *Report of Items NOT To Be Paid by the Fund:* | | | |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| Line 15a | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator............................... | $          - | | |
| | IDC............................................ | $          - | | |
| | Distribution Agent............................. | $          - | | |
| | Consultants.................................... | $          - | | |
| | Legal Advisers................................. | $          - | | |
| | Tax Advisers................................... | $          - | | |
| | 2. Administrative Expenses | $          - | | |
| | 3. Miscellaneous | $          - | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | | $          - |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator............................... | $          - | | |
| | IDC............................................ | $          - | | |
| | Distribution Agent............................. | $          - | | |
| | Consultants.................................... | $          - | | |
| | Legal Advisers................................. | $          - | | |
| | Tax Advisers................................... | $          - | | |
| | 2. Administrative Expenses | $          - | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan............... | $          - | | |
| | Claimant Identification........................ | $          - | | |
| | Claims Processing.............................. | $          - | | |
| | Web Site Maintenance/Call Center.............. | $          - | | |
| | 4. Fund Administrator Bond | $          - | | |
| | 5. Miscellaneous | $          - | | |
| | 6. FAIR Reporting Expenses | $          - | | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | | $          - |
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | | $          - |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | $          - |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| Line 16a | *Investment Expenses/CRIS Fees* | $          - | | |
| Line 16b | *Federal Tax Payments* | $          - | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund:** | | | $          - |
| **Line 17** | **DC & State Tax Payments** | | | $          - |
| **Line 18** | **No. of Claims:** | | | |
| Line 18a | *# of Claims Received This Reporting Period*................................ | | | 0 |
| Line 18b | *# of Claims Received Since Inception of Fund.*.......................... | | | 0 |
| **Line 19** | **No. of Claimants/Investors:** | | | |
| Line 19a | *# of Claimants/Investors Paid This Reporting Period*.................... | | | 0 |
| Line 19b | *# of Claimants/Investors Paid Since Inception of Fund*................ | | | 0 |

Receiver:

By: _____
            (signature)

Michael I. Goldberg
(printed name)

Court Appointed Receiver
(title)

Date: _____1/5/17_____

2

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
07/01/17 through 07/31/17

| | | USD |
|---|---|---|
| **Beginning Cash Balance** | | |
| People's United Bank #▮1736 | $ | 3,413,662 |
| People's United Bank #▮1752 | $ | - |
| People's United Bank #▮7175 | $ | 21,024 |
| People's United Bank #▮0659 | $ | 436,958 |
| People's United Bank #▮0667 | $ | - |
| People's United Bank #▮6722 | $ | 2,223,063 |
| People's United Bank #▮1175 | $ | - |
| People's United Bank #▮6726 | $ | 74,564 |
| People's United Bank #▮6724 | $ | 20,930 |
| Desjardins #▮955 | $ | 63,177 |
| Desjardins #▮548 | $ | 28,610 |
| | $ | **6,281,988** |
| | | |
| **Add Incoming:** | | |
| Receiver Funding | | |
| Direct - Merrill Lynch Bank Accounts | $ | - |
| Indirect - CitiBank Accounts | $ | 937,508 |
| Deposits from Operations | $ | 2,557,712   A |
| | $ | **3,495,220** |
| | | |
| **Less Outgoing:** | | |
| Payroll & Benefits | | |
| Jay Peak Resort | $ | (1,318,466) |
| Burke Mountain | $ | (217,602) |
| Vendor Payments | | |
| Jay Peak Resort | $ | (1,892,182)  B |
| Burke Mountain | $ | (268,157)  B |
| Tax Payments | | |
| Vermont Department of Taxes | $ | (149,047) |
| Internal Revenue Service | $ | - |
| Merchant and Bank Fees | $ | (45,853) |
| | $ | **(3,891,307)** |
| | | |
| **Ending Cash Balance** | | |
| People's United Bank #▮1736 | $ | 2,975,785 |
| People's United Bank #▮1752 | $ | - |
| People's United Bank #▮7175 | $ | 21,026 |
| People's United Bank #▮0659 | $ | 427,012 |
| People's United Bank #▮0667 | $ | - |
| People's United Bank #▮6722 | $ | 2,294,736 |
| People's United Bank #▮1175 | $ | - |
| People's United Bank #▮6726 | $ | 73,427 |
| People's United Bank #▮6724 | $ | 22,514 |
| Desjardins #▮955 | $ | 41,686 |
| Desjardins #▮548 | $ | 29,715 |
| | $ | **5,885,901** |

**Note A:**
Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 5% for the report period. This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .79 for the report period.

**Note B:**
Vendor payments pertain primarily to goods and services received after April 13, 2016.

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
**08/01/17 through 08/31/17**

|  |  | USD |  |
|---|---|---|---|
| **Beginning Cash Balance** |  |  |  |
| People's United Bank #▓1736 | $ | 2,975,785 |  |
| People's United Bank #▓1752 | $ | - |  |
| People's United Bank #▓7175 | $ | 21,026 |  |
| People's United Bank #▓0659 | $ | 427,012 |  |
| People's United Bank #▓0667 | $ |  |  |
| People's United Bank #▓6722 | $ | 2,294,736 |  |
| People's United Bank #▓1175 | $ | - |  |
| People's United Bank #▓6726 | $ | 73,427 |  |
| People's United Bank #▓6724 | $ | 22,514 |  |
| Desjardins #▓955 | $ | 41,686 |  |
| Desjardins #▓548 | $ | 29,715 |  |
|  | $ | **5,885,901** |  |
|  |  |  |  |
| **Add Incoming:** |  |  |  |
| Receiver Funding |  |  |  |
| Direct - Merrill Lynch Bank Accounts | $ | - |  |
| Indirect - CitiBank Accounts | $ | 7,466,092 |  |
| Deposits from Operations | $ | 3,334,356 | A |
|  | $ | **10,800,448** |  |
|  |  |  |  |
| **Less Outgoing:** |  |  |  |
| Payroll & Benefits |  |  |  |
| Jay Peak Resort | $ | (1,240,638) |  |
| Burke Mountain | $ | (233,519) |  |
| Vendor Payments |  |  |  |
| Jay Peak Resort | $ | (7,018,398) | B |
| Burke Mountain | $ | (2,222,973) | B |
| Tax Payments |  |  |  |
| Vermont Department of Taxes | $ | (504,333) |  |
| Internal Revenue Service | $ | - |  |
| Merchant and Bank Fees | $ | (52,225) |  |
|  | $ | **(11,272,086)** |  |
|  |  |  |  |
| **Ending Cash Balance** |  |  |  |
| People's United Bank #▓1736 | $ | 2,357,328 |  |
| People's United Bank #▓1752 | $ | - |  |
| People's United Bank #▓7175 | $ | 21,029 |  |
| People's United Bank #▓0659 | $ | 429,690 |  |
| People's United Bank #▓0667 | $ | - |  |
| People's United Bank #▓6722 | $ | 2,417,549 |  |
| People's United Bank #▓1175 | $ | - |  |
| People's United Bank #▓6726 | $ | 84,952 |  |
| People's United Bank #▓6724 | $ | 27,525 |  |
| Desjardins #▓955 | $ | 46,485 |  |
| Desjardins #▓548 | $ | 29,705 |  |
|  | $ | **5,414,263** |  |

**Note A:**
Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 8% for the report period. This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .80 for the report period.

**Note B:**
Vendor payments pertain partially to goods and services received after April 13, 2016. In August of 2017, payments were also issued for outstanding invoices pertaining to goods and services receieved prior to April 13, 2016.

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
**09/01/17 through 09/30/17**

|  |  | USD |  |
|---|---|---:|---|
| **Beginning Cash Balance** |  |  |  |
| People's United Bank #███1736 | $ | 2,357,328 |  |
| People's United Bank #███1752 | $ | - |  |
| People's United Bank #███7175 | $ | 21,029 |  |
| People's United Bank #███0659 | $ | 429,690 |  |
| People's United Bank #███0667 | $ | - |  |
| People's United Bank #███6722 | $ | 2,417,549 |  |
| People's United Bank #███1175 | $ | - |  |
| People's United Bank #███6726 | $ | 84,952 |  |
| People's United Bank #███6724 | $ | 27,525 |  |
| Desjardins #███955 | $ | 46,485 |  |
| Desjardins #███548 | $ | 29,705 |  |
|  | $ | **5,414,263** |  |
|  |  |  |  |
| **Add Incoming:** |  |  |  |
| Receiver Funding |  |  |  |
| Direct - Merrill Lynch Bank Accounts | $ | - |  |
| Indirect - CitiBank Accounts | $ | 2,158,790 |  |
| Deposits from Operations | $ | 2,795,213 | A |
|  | $ | **4,954,003** |  |
|  |  |  |  |
| **Less Outgoing:** |  |  |  |
| Payroll & Benefits |  |  |  |
| Jay Peak Resort | $ | (1,180,525) |  |
| Burke Mountain | $ | (201,475) |  |
| Vendor Payments |  |  |  |
| Jay Peak Resort | $ | (2,909,162) | B |
| Burke Mountain | $ | (294,564) | B |
| Tax Payments |  |  |  |
| Vermont Department of Taxes | $ | (239,538) |  |
| Internal Revenue Service | $ | (3,311) |  |
| Merchant and Bank Fees | $ | (59,622) |  |
|  | $ | **(4,888,197)** |  |
|  |  |  |  |
| **Ending Cash Balance** |  |  |  |
| People's United Bank #███1736 | $ | 4,095,794 |  |
| People's United Bank #███1752 | $ | - |  |
| People's United Bank #███7175 | $ | 21,031 |  |
| People's United Bank #███0659 | $ | 427,221 |  |
| People's United Bank #███0667 | $ | - |  |
| People's United Bank #███6722 | $ | 647,975 |  |
| People's United Bank #███1175 | $ | - |  |
| People's United Bank #███6726 | $ | 85,238 |  |
| People's United Bank #███6724 | $ | 30,409 |  |
| Desjardins #███955 | $ | 142,706 |  |
| Desjardins #███548 | $ | 29,695 |  |
|  | $ | **5,480,069** |  |

**Note A:**

Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 7% for the report period. This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .80 for the report period.

**Note B:**

Vendor payments pertain partially to goods and services received after April 13, 2016. In August of 2017, payments were also issued for outstanding invoices pertaining to goods and services recevied prior to April 13, 2016.

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
**10/01/17 through 10/31/17**

|  | | USD |
|---|---|---|
| **Beginning Cash Balance** | | |
| People's United Bank #████1736 | $ | 4,095,794 |
| People's United Bank #████1752 | $ | - |
| People's United Bank #████7175 | $ | 21,031 |
| People's United Bank #████0659 | $ | 427,221 |
| People's United Bank #████0667 | $ | - |
| People's United Bank #████6722 | $ | 647,975 |
| People's United Bank #████1175 | $ | |
| People's United Bank #████6726 | $ | 85,238 |
| People's United Bank #████6724 | $ | 30,409 |
| Desjardins #███955 | $ | 142,706 |
| Desjardins #███548 | $ | 29,695 |
| | $ | **5,480,069** |
| **Add Incoming:** | | |
| Receiver Funding | | |
| Direct - Merrill Lynch Bank Accounts | $ | - |
| Indirect - CitiBank Accounts | $ | 1,710,270 |
| Deposits from Operations | $ | 4,095,468   A |
| | $ | **5,805,738** |
| **Less Outgoing:** | | |
| Payroll & Benefits | | |
| Jay Peak Resort | $ | (1,701,922) |
| Burke Mountain | $ | (302,744) |
| Vendor Payments | | |
| Jay Peak Resort | $ | (5,562,646)  B |
| Burke Mountain | $ | (599,249)  B |
| Tax Payments | | |
| Vermont Department of Taxes | $ | (146,472) |
| Internal Revenue Service | $ | - |
| Merchant and Bank Fees | $ | (60,954) |
| | $ | **(8,373,987)** |
| **Ending Cash Balance** | | |
| People's United Bank #████1736 | $ | 1,563,087 |
| People's United Bank #████1752 | $ | - |
| People's United Bank #████7175 | $ | 21,034 |
| People's United Bank #████0659 | $ | 439,700 |
| People's United Bank #████0667 | $ | - |
| People's United Bank #████6722 | $ | 602,054 |
| People's United Bank #████1175 | $ | - |
| People's United Bank #████6726 | $ | 48,838 |
| People's United Bank #████6724 | $ | 29,026 |
| Desjardins #███955 | $ | 179,136 |
| Desjardins #███548 | $ | 28,945 |
| | $ | **2,911,820** |

**Note A:**
Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 9% for the report period. This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .79 for the report period.

**Note B:**
Vendor payments pertain partially to goods and services received after April 13, 2016. In August of 2017, payments were also issued for outstanding invoices pertaining to goods and services received prior to April 13, 2016.