**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 16-cv-21301-GAYLES**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ARIEL QUIROS,
WILLIAM STENGER,
JAY PEAK, INC.,
Q RESORTS, INC.,
JAY PEAK HOTEL SUITES L.P.,
JAY PEAK HOTEL SUITES PHASE II. L.P.,
JAY PEAK MANAGEMENT, INC.,
JAY PEAK PENTHOUSE SUITES, L.P.,
JAY PEAK GP SERVICES, INC.,
JAY PEAK GOLF AND MOUNTAIN SUITES L.P.,
JAY PEAK GP SERVICES GOLF, INC.,
JAY PEAK LODGE AND TOWNHOUSES L.P.,
JAY PEAK GP SERVICES LODGE, INC.,
JAY PEAK HOTEL SUITES STATESIDE L.P.,
JAY PEAK GP SERVICES STATESIDE, INC.,
JAY PEAK BIOMEDICAL RESEARCH PARK L.P.,
AnC BIO VERMONT GP SERVICES, LLC,

Defendants,

JAY CONSTRUCTION MANAGEMENT, INC.,
GSI OF DADE COUNTY, INC.,
NORTH EAST CONTRACT SERVICES, INC.,
Q BURKE MOUNTAIN RESORT, LLC,

Relief Defendants, and

Q BURKE MOUNTAIN RESORT, HOTEL AND
   CONFERENCE CENTER, L.P.,
Q BURKE MOUNTAIN RESORT GP SERVICES, LLC

Additional Defendants

_____/

**FINAL ORDER BARRING, RESTRAINING, AND ENJOINING
CLAIMS AGAINST IRONSHORE INDEMNITY, INC.**

**THIS MATTER** came before the Court on the Motion for Approval of Settlement between

the Receiver, Ariel Quiros, William Stenger, and Ironshore Indemnity, Inc. [ECF No. 523] (the

"**Motion**") filed by Michael I. Goldberg, as the Court-appointed receiver (the **"Receiver"**) of the entities set forth on Exhibit A to this Order (the "**Receivership Entities**") in the above-captioned civil enforcement action (the "**SEC Action**").  Pursuant to the Order Preliminarily Approving the Settlement between Receiver, Ariel Quiros, William Stenger, and Ironshore Indemnity, Inc. [ECF No. 530] (the "**Preliminary Approval Order**"), the Court held a hearing on March 20, 2019, at 1:00 p.m. to consider the Motion and hear the objection [ECF No. 540] ("**SSVR Objection**") filed by Saint Sauveur Valley Resorts, Inc. ("**SSVR**") and the joint objection [ECF No. 544] ("**LC/MSK Objection**") filed by Leon Cosgrove, LLC ("**LC**") and Mitchell Silberberg & Knupp, LLP ("**MSK**").

By way of the Motion, the Receiver requests final approval of the proposed settlement with Ariel Quiros, William Stenger and Ironshore Indemnity, Inc. ("**Ironshore**") set forth in the Settlement Agreement dated December 27, 2018 (the "**Settlement Agreement**") attached as Ex. 1 to the Motion, executed by the Receiver on behalf of each of the Receivership Entities, by Ariel Quiros and William Stenger, and by Ironshore (collectively, the "**Settling Parties**"); and for entry of a bar order (the "**Bar Order**") enjoining any and all persons, including any Insured under the Policies or any such Insureds' current or former attorneys, from commencing, continuing, or in the future filing, any claims whatsoever against Ironshore which directly or indirectly arise from or relate to the Policies, to any other contract or agreement with Ironshore purporting to provide payment to any Insured or to any of the Insureds' current or former attorneys, or to transactions and occurrences alleged in the SEC Action, without exception and including that certain action filed by Quiros's former attorneys against Ironshore in New York State court styled *Leon Cosgrove, LLC and Mitchell Silberberg & Knupp LLP v. Ironshore Indemnity, Inc.*, Index No. 0656248/2017.  The Court has approved the Settlement Agreement [ECF No. 554] (the "Final

Approval Order") and incorporates by reference herein its findings and conclusions.  **This Order addresses the requested Bar Order.**

This Court is fully advised of the issues in the various actions, as it has previously received evidence and heard argument concerning the events, circumstances, and transactions in the SEC Action, which resulted in the appointment of the Receiver and the issuance of the Preliminary Injunction [ECF No. 238], the Permanent Injunction [ECF No. 260], and the Asset Freeze Order [ECF No. 11].  In addition, the Court has read and considered the Motion, the Settlement Agreement, the SSVR Objection, the LC/MSK Objection, the Responses to the Objections [ECF Nos. 546 and 550], other relevant filings of record in the Coverage Action, and the arguments and evidence presented at the hearing; therefore, the Court **FINDS AND DETERMINES** as follows:

A. The Court has jurisdiction over the subject matter, including, without limitation, jurisdiction to consider the Motion, the Settlement Agreement and the Bar Order, and authority to grant the Motion, approve the Settlement Agreement, and enter the Bar Order.  *See* 28 U.S.C. § 1651; *SEC v. Kaleta*, 530 Fed. Appx. 360 (5th Cir. 2013) (affirming approval of settlement and entry of bar order in equity receivership commenced in a civil enforcement action); *see also Matter of Munford, Inc.*, 97 F.3d 449 (11th Cir. 1996) (approving settlement and bar order in a bankruptcy case); *In re U.S. Oil and Gas Lit.*, 967 F.2d 480 (11th Cir. 1992) (approving settlement and bar order in a class action).  In addition, the insurance policies and proceeds therefrom at issue in the Settlement Agreement are, at least in part, property of the receivership estate and subject to administration by this Court.  *See SEC v. Narayan*, Case No. 3:16-cv-1417-M, 2017 WL 447205, at *4 (N.D. Tex. Feb. 2, 2017); *SEC v. Faulkner*, Case No. 3:16-CV-1735-D, 2017 WL 4238705, at *5 (N.D. Tex. Sept. 25, 2017); *In re CyberMedica, Inc.*, 208 B.R. 12, 17 (Bankr. D. Mass. 2002).

B. Ironshore has conditioned its willingness to make the full Settlement Payment on a full and final resolution with respect to any and all claims instituted now or hereafter by any and all of the Barred Persons (as defined below) against any and all of the Ironshore Released Parties (as defined below) that relate in any manner whatsoever to the Policies, to any other contract or agreement with Ironshore purporting to provide payment to any Insured or to any of the Insureds' current or former attorneys, or to transactions and occurrences alleged in the SEC Action (the "Barred Claims," as more fully defined below). A necessary condition to Ironshore's ultimate agreement to pay the full Settlement Payment under the Settlement Agreement was the inclusion of the Bar Order. Pursuant to the terms of the Settlement Agreement, entry of the Bar Order is necessary for the Receiver to use and disburse the full Settlement Payment pursuant to the terms of the Settlement Agreement.

C. Ironshore is only willing to pay the full Settlement Payment in exchange for finality as to the Barred Claims. The Court finds that Ironshore, the Receiver, Ariel Quiros, and William Stenger have agreed to this Settlement in good faith and that Ironshore is paying a fair share of the potential damages for which it could be liable.

D. SSVR's concerns regarding the scope of the Bar Order, as expressed in the SSVR Objection and at the hearing, are unwarranted because the Bar Order is only in favor of the Ironshore Released Parties (as defined below), and SSVR conceded at the March 20, 2019 hearing that it does not intend to sue Ironshore. The Bar Order has no effect on claims SSVR might assert against parties other than the Ironshore Released Parties. The SSVR Objection is overruled.

E. Regarding the LC/MSK Objection, LC and MSK argue against entry of the Bar Order on the grounds that this Court lacks jurisdiction to enter such an order, the Bar Order is not essential to the Settlement, and the entry of the Bar Order is not fair and reasonable to LC and

MSK. The Court rejects the first two arguments, as provided in Paragraphs A through C above and as stated on the record on March 20, 2019. LC and MSK's Interim Funding Agreement claims are interrelated with and seek the same Policy proceeds that are the subject of the Coverage Action, in that both seek advancement of "Costs of Defense" (as defined by the Ironshore Policies), which are payable only by virtue of the Policies themselves. Moreover, a sizable part of the Settlement Payment is contingent upon the Bar Order.

F. The Court also finds that entry of the Bar Order is fair and equitable as to LC and MSK because their claims against Ironshore that would be barred by the Bar Order (1) are interrelated with the Receiver's claims on the Policies in the Coverage Action, (2) have a low likelihood of success, (3) would involve complex litigation, and (4) would deplete the limited pool of Policy proceeds from Ironshore, the settling defendant. *See Matter of Munford*, 97 F.3d at 455 (factors for determining fairness and equity of a bar order).

G. In particular, while the Court does not (and need not) decide LC and MSK's third-party beneficiary claims on the merits, counsel for LC and MSK conceded at the hearing that: LC and MSK are not parties to the Interim Funding Agreement, the Agreement does not specifically name LC and MSK as beneficiaries, and LC and MSK's four months' worth of attorney's fees allegedly due under the Agreement are being disputed by Quiros, all of which decreases the likelihood of LC and MSK prevailing on the barred claims. The Court also notes that under Florida and New York law, the insured's attorneys are typically not intended third-party beneficiaries of "an insurance policy or any other agreement" obligating the insurer to pay the insured's legal fees. *Cont'l Cas. Co. v. Marx*, 480 So. 2d 177, 178-79 (Fla. 3d DCA 1985); *Miller & Wrubel, P.C. v. Todtman, Nachamie, Spizz & Johns, P.C.*, 106 A.D.3d 446, 965 N.Y.S.2d 408, 609 (2013).

H.     Therefore, pursuant to the Joint Response [ECF No. 550] filed by the Receiver, Ariel Quiros, and Ironshore to the LC/MSK Objection and as discussed on the record, the Court approves the compensation of $250,000.00 offered by the settling parties to LC and MSK from the Final Payment (as defined in the Settlement Agreement) as fair and reasonable consideration on account of their claim against Ironshore based on the Interim Funding Agreement. Such consideration is sufficient to bar LC and MSK's claims against Ironshore and ensure receipt of the full Settlement Payment from Ironshore and corresponding benefit to the receivership estate.

I.     The Bar Order and the releases in the Settlement Agreement are tailored to matters relating to the Barred Claims and are appropriate in light of the Policies' coverage to maximize the value of the Receivership Entities. The interests of the Objectors SSVR, LC, and MSK were well represented by their counsel, who had a full and fair opportunity to be heard. The interests of other persons affected by the Bar Order and the releases in the Settlement Agreement were well represented by the Receiver, acting in the best interests of the Receivership Entities in his fiduciary capacity and upon the advice and guidance of his experienced counsel. Accordingly, the Bar Order and the releases in the Settlement Agreement are fair, adequate and reasonable, and in the best interests of all creditors of, investors in, or other persons or entities claiming an interest in, having authority over, or asserting claims against the Receivership Entities, and of all persons who could have claims against Ironshore relating to the Barred Claims. The Bar Order is a necessary and appropriate order granting ancillary relief in the SEC Action.

J.     Approval of the Settlement Agreement and the Bar Order and adjudication of the Motion are discrete from other matters in the SEC Action, and, as set forth above, the Settling Parties have shown good reason for the approval of the Settlement Agreement and Bar Order to proceed expeditiously. Therefore, there is no just reason for delay of the finality of this Order.

Based on the foregoing findings and conclusions, the Court **ORDERS, ADJUDGES, AND DECREES** as follows:

1. The Motion is **GRANTED**. Subject only to the $250,000 compensation to LC and MSK described herein and on the record, the SSVR Objection and the LC/MSK Objection to entry of the Bar Order are overruled.

2. The Bar Order as set forth in paragraph 3 of this Order is **APPROVED** as a necessary and appropriate component of the settlement. *See Kaleta*, 530 Fed. Appx. at 362 (entering bar order and injunction in an SEC receivership proceeding where necessary and appropriate as "ancillary relief" to that proceeding). *See also In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1010 (11th Cir. 2015) (approving bar orders in bankruptcy matters); *Bendall v. Lancer Management Group, LLC*, 523 Fed. Appx. 554 (11th Cir. 2013) (the Eleventh Circuit "will apply cases from the analogous context of bankruptcy law, where instructive, due to limited case law in the receivership context"); *Munford, Inc. v. Munford, Inc.*, 97 F.3d 449, 454-55 (11th Cir. 1996); *In re Jiffy Lube Securities Litig.*, 927 F.2d 155 (4th Cir. 1991); *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1955).

3. **BAR ORDER AND INJUNCTION: <u>THE BARRED PERSONS ARE PERMANENTLY BARRED, ENJOINED, AND RESTRAINED FROM ENGAGING IN THE BARRED CONDUCT AGAINST THE IRONSHORE RELEASED PARTIES WITH RESPECT TO THE BARRED CLAIMS</u>**, as those terms are herein defined.

   a. **<u>The "Barred Persons"</u>**: Any non-governmental person or entity, including, without limitation, (i) owners, officers and directors, limited and general partners, investors, and creditors of the Receivership Entities; (ii) any Defendant in the SEC Action, the Coverage Action, or in any action which may hereafter be brought in

connection with the Barred Claims; or (iii) any person or entity claiming by or through such persons or entities, and/or the Receivership Entities, all and individually, directly, indirectly, or through a third party, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever;

b. **The "Barred Conduct"**: instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, otherwise prosecuting, or otherwise pursuing or litigating in any case or manner, whether pre-judgment or post-judgment, or enforcing, levying, employing legal process, attaching, garnishing, sequestering, bringing proceedings supplementary to execution, collecting or otherwise recovering, by any means or in any manner, based upon any liability or responsibility, or asserted or potential liability or responsibility, directly or indirectly, relating in any way to the Barred Claims;

c. **The "Barred Claims":** any and all claims, actions, lawsuits, causes of action, complaints, cross-claims, counterclaims, or third-party claims or proceedings of any nature, including, but not limited to, litigation, arbitration, or other proceeding, in any federal or state court, or in any other court, arbitration forum, administrative agency, or other forum in the United States, Canada or elsewhere, whether arising under local, state, federal or foreign law; that in any way relate to, are based upon, arise from, or are connected with the released claims or interests of any kind as set forth in the Settlement Agreement, with the Policies, with any other contract or agreement with Ironshore purporting to provide payment to any Insured or to any

of the Insureds' current or former attorneys, or to transactions and occurrences alleged in the SEC Action, without exception and including that certain action filed by Ariel Quiros's former attorneys against Ironshore in New York State court styled *Leon Cosgrove, LLC and Mitchell Silberberg & Knupp LLP v. Ironshore Indemnity, Inc.*, Index No. 0656248/2017;

d. **The "Ironshore Released Parties"**: Ironshore, its parent, affiliate, and subsidiary companies, all current, former and future employees, agents, attorneys, officers and directors, and consultants, and each of its members, managers, principals, associates, representatives, distributors, attorneys, trustees, and general and limited partners and each of their respective administrators, heirs, beneficiaries, assigns, predecessors, predecessors in interest, successors, and successors in interest.

4. Paragraph 3 of this Order shall not apply to the Settling Parties' respective obligations under the Settlement Agreement.

5. Upon this Order becoming final and non-appealable, the Receiver shall distribute to LC and MSK a total of $250,000.00 (the "**LC/MSK Payment**") after and from the Final Payment (as defined in the Settlement Agreement) received from Ironshore. LC and MSK shall cooperate with the Receiver to facilitate distribution thereof, including by providing the Receiver with wire instructions or otherwise directing the manner of the LC/MSK Payment.

6. Nothing in this Order or the Settlement Agreement, and no aspect of the Settling Parties' settlement or negotiations thereof, is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability or wrongdoing, or of any infirmity in the claims or defenses of the Settling Parties with regard to any case or proceeding.

7.      Other than by direct appeal of this Order, or motion for reconsideration or rehearing thereof, made in accordance with the Federal Rules of Civil Procedure, no appeal, challenge, decision or other matter concerning any subject set forth in this paragraph shall operate to terminate or cancel the Bar Order, or to impair, modify or otherwise affect in any manner the Bar Order.

8.      Pursuant to Fed. R. Civ. P. 54(b), and the Court's authority in this equity receivership to issue ancillary relief, this Order is a final order for all purposes, including, without limitation, for purposes of the time to appeal or to seek rehearing or reconsideration.

9.      This Order shall be served by counsel for the Receiver via email, first class mail or international delivery service, on any person or entity afforded notice (other than publication notice) pursuant to the Preliminary Approval Order.

10.     Without impairing or affecting the finality of this Order, the Court retains continuing and exclusive jurisdiction to construe, interpret and enforce this Order, including, without limitation, the injunction, Bar Order and releases in the Settlement Agreement.  This retention of jurisdiction is not a bar to any person, including the Settling Parties, from raising the injunction or Bar Order to obtain its benefits in establishing reductions to damage awards or seeking to dismiss a claim.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 4th day of April, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

# Exhibit A

### (List of Receivership Entities)

Jay Peak, Inc.

Q Resorts, Inc.

Jay Peak Hotel Suites L.P.

Jay Peak Hotel Suites Phase II L.P.

Jay Peak Management, Inc.

Jay Peak Penthouse Suites L.P.

Jay Peak GP Services, Inc.

Jay Peak Golf and Mountain Suites L.P.

Jay Peak GP Services Golf, Inc.

Jay Peak Lodge and Townhouses L.P.

Jay Peak GP Services Lodge, Inc.

Jay Peak Hotel Suites Stateside L.P.

Jay Peak GP Services Stateside, Inc.

Jay Peak Biomedical Research Park L.P.

AnC Bio Vermont GP Services, LLC

Q Burke Mountain Resort, Hotel and Conference Center, L.P.

Q Burke Mountain Resort GP Services, LLC

Jay Construction Management, Inc.

GSI of Dade County, Inc.

North East Contract Services, Inc.

Q Burke Mountain Resort, LLC