UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  16-cv-21301-GAYLES

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

v.

ARIEL QUIROS,
WILLIAM STENGER,
JAY PEAK, INC.,
Q RESORTS, INC.,
JAY PEAK HOTEL SUITES L.P.,
JAY PEAK HOTEL SUITES PHASE II. L.P.,
JAY PEAK MANAGEMENT, INC.,
JAY PEAK PENTHOUSE SUITES, L.P.,
JAY PEAK GP SERVICES, INC.,
JAY PEAK GOLF AND MOUNTAIN SUITES L.P.,
JAY PEAK GP SERVICES GOLF, INC.,
JAY PEAK LODGE AND TOWNHOUSES L.P.,
JAY PEAK GP SERVICES LODGE, INC.,
JAY PEAK HOTEL SUITES STATESIDE L.P.,
JAY PEAK GP SERVICES STATESIDE, INC.,
JAY PEAK BIOMEDICAL RESEARCH PARK L.P.,
AnC BIO VERMONT GP SERVICES, LLC,

       Defendants, and

JAY CONSTRUCTION MANAGEMENT, INC.,
GSI OF DADE COUNTY, INC.,
NORTH EAST CONTRACT SERVICES, INC.,
Q BURKE MOUNTAIN RESORT, LLC,

       Relief Defendants.

Q BURKE MOUNTAIN RESORT, HOTEL
AND CONFERENCE CENTER, L.P.,
Q BURKE MOUNTAIN RESORT GP SERVICES, LLC[1],
AnC BIO VT, LLC,[2]

       Additional Receivership Defendants.

_____/

[1] *See* Order Granting Receiver's Motion to Expand Receivership dated April 22, 2016 [ECF No. 60].
[2] *See* Order Granting Receiver's Motion for Entry of an Order Clarifying that AnC Bio VT, LLC is included in the Receivership or in the Alternative to Expand the Receivership to include AnC Bio VT, LLC, *Nunc Pro Tunc* dated September 7, 2018 [ECF No. 493].

## RECEIVER'S EIGHTH INTERIM REPORT

Michael I. Goldberg, in his capacity as receiver (the "Receiver"), pursuant to the Order Granting Plaintiff Securities and Exchange Commission's Motion for Appointment of Receiver (the "Receivership Order") [ECF No. 13], dated April 13, 2016, respectfully files his Eighth Interim Report covering the period from October 1, 2019 up to and including February 29, 2020.[3]

## PRELIMINARY STATEMENT

During the period covered by this report, the Receiver, along with his professionals, continued to focus on operating and marketing the Jay Peak Resort for sale. The Jay Peak Resort's operations and sales process have been affected by the Covid 19 pandemic. The Jay Peak shut down in mid-March to protect its customers and employees and the sales process has substantially slowed down. The Receiver and his professionals continue to monitor the situation closely.

The Receiver has also sold several stand-alone properties and placed the proceeds of such sales in trust. The Receiver has continued to pursue claims against third parties who may be liable to the receivership estate for their pre-receivership conduct. Finally, the Receiver has continued to provide investors with the information they need in order to have their I-526 and I-829 petitions approved by USCIS and has negotiated an agreement with USCIS to start ruling on pending petitions.

## I.    BACKGROUND

On April 12, 2016, the Securities and Exchange Commission ("SEC") filed a complaint ("Complaint") [ECF No. 1] in the United States District Court for the Southern District of Florida

---

[3] For the purpose of brevity, the Receiver has endeavored not to restate information contained in the prior Status Reports, but refers all interested parties to those Status Reports for additional information including a detailed description of the Receivership Defendants and the events that led up to the appointment of the Receiver.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL  33301-2999

(the "Court") against the Receivership Defendants,[4] the Relief Defendants,[5] William Stenger and Ariel Quiros (collectively, the "Defendants"). The Complaint alleged that Mr. Quiros and Mr. Stenger, in violation of federal securities laws, controlled and utilized the various Receivership Entities in furtherance of a fraud on the investors who participated in limited partnerships offered under the federally created EB-5 visa program. The first six limited partnerships (Phase I – Phase VI) raised funds to develop and expand the Jay Peak ski resort and its accompanying facilities located in Jay, Vermont (the "Jay Peak Resort"). The seventh limited partnership, Phase VII, raised funds to purchase land and develop a biomedical research facility in Newport, Vermont (the "AnC Bio Project"). An eighth limited partnership, Phase VIII, which was not originally part of the receivership,[6] used investor funds to develop and expand the Burke Mountain Hotel and ski area located in East Burke, Vermont (the "Burke Mountain Hotel").

Along with the Complaint, the SEC requested the Court enter a temporary restraining order and a preliminary injunction preventing the Receivership Defendants from, among other things, transferring or otherwise utilizing their assets.   On April 13, 2016, the Court entered the Receivership Order and granted the SEC's Emergency *Ex Parte* Motion for Temporary Restraining Order, Asset Freeze and Other Relief [ECF No. 4].  Among other things, the Receivership Order appointed Michael Goldberg as the receiver over the Receivership Defendants

---

[4] The "Receivership Defendants" are Jay Peak, Inc., Q Resorts, Inc., Jay Peak Hotel Suites L.P., Jay Peak Hotel Suites Phase II L.P., Jay Peak Management, Inc., Jay Peak Penthouse Suites L.P., Jay Peak GP Services, Inc., Jay Peak Golf and Mountain Suites L.P., Jay Peak GP Services Golf, Inc., Jay Peak Lodge and Townhouse L.P., Jay Peak GP Services Lodge, Inc., Jay Peak Hotel Suites Stateside L.P., Jay Peak Services Stateside, Inc., Jay Peak Biomedical Research Park L.P., and AnC Bio Vermont GP Services, LLC.

[5] The "Relief Defendants" are Jay Construction Management, Inc., GSI of Dade County, Inc., North East Contract Services, Inc., and Q Burke Mountain Resort, LLC.  Later, Q Burke Mountain Resort, Hotel and Conference Center, L.P. and Q Burke Mountain Resort GP Services, LLC were added as "Additional Receivership Defendants". The Receivership Defendants, Relief Defendants, and Additional Receivership Defendants are collectively referred to as the "Receivership Entities".

[6] *See* fn. 1.

52796095;1

and the Relief Defendants.   On April 22, 2016, the Court entered an Order expanding the receivership to include Q Burke Mountain Resort, Hotel and Conference Center, L.P. and Q Burke Mountain Resort GP Services, LLC as Additional Receivership Defendants [ECF No. 60].   On September 7, 2018, the Court entered an Order granting Receiver's motion to clarify that AnC Bio VT, LLC is included in the receivership or to expand the receivership to include AnC Bio VT, LLC, *nunc pro tunc* to the inception of the case. [ECF No. 493]

After many months of negotiations, the SEC resolved its disputes with Mr. Quiros and Mr. Stenger.   Upon the SEC's motion, on February 5, 2018, the Court entered an Order [ECF No. 449] establishing a Fair Fund pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002 to allow the distribution of the civil penalties paid by Quiros and Stenger, along with the disgorgement and prejudgment interest paid by Quiros, to defrauded Jay Peak investors.   On the same date, the Court entered Final Judgments against Mr. Quiros and Mr. Stenger setting forth the amount of disgorgement, prejudgment interest on disgorgement and civil penalty. The Final Judgment against Mr. Quiros [ECF No. 450, as amended by ECF No. 474] holds him liable for $81,344,166 of disgorgement, representing profits gained as a result of the conduct alleged in the Amended Complaint, prejudgment interest on disgorgement of $2,515,798, and a civil penalty of $1,000,000, for a total of $84,859,964. The Final Judgment against Mr. Quiros also provides that Mr. Quiros shall satisfy his obligations by disgorging certain real property to the Receiver, including the rights to the Jay Peak Resort, the Burke Mountain Hotel, and other assets.[7]   Mr. Quiros has executed deeds transferring ownership of properties to the Receiver.[8]   The Final Judgment against Mr.

---

[7] The Receiver is uncertain as to the value of these properties.

[8] On March 2, 2018, the Court entered an Order [ECF No. 458] modifying the asset freeze against Quiros [ECF No. 11 and 238] solely to allow the transfer of certain bank accounts and real property to the Receiver in satisfaction of Quiros' disgorgement obligations.   The asset freeze has recently been fully terminated upon Quiros satisfying all of his obligations under his settlement agreement with the SEC.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

Stenger [ECF No. 451] ordered him to pay a $75,000 civil penalty (the SEC did not seek disgorgement from Mr. Stenger) in three installments. Mr. Stenger has completed payment of his civil penalty.

## II.    ACTIONS TAKEN BY THE RECEIVER DURING THE REPORTING PERIOD

### A.    Management of Vermont Properties

The Receiver, with the assistance of the court-approved management company, Leisure Hotels, LLC ("Leisure") continues to operate the Jay Peak Resort and the Burke Mountain Hotel. Jay Peak Resort's General Manager, Steven Wright and Burke Mountain Hotel's General Manager, Kevin Mack also play an important role in the management of the resorts. The Receiver confers with the Leisure management team, Steven Wright and Kevin Mack on a regular basis to monitor the hotels. Both the Jay Peak Resort and the Burke Mountain Hotel were shut down in mid-March due to the Covid 19 pandemic which has similarly affected all hospitality businesses. To that end, most employees at both the Jay Peak Resort and the Burke Mountain Hotel have been laid off in an effort to keep the hotels economically viable. The Receiver and his professionals are analyzing the situation to determine the optimal time to reopen these properties once the government permits them to reopen. The closing of the Jay Peak Resort and Burke Mountain Hotel in March, which is usually one of the most profitable months of the year for ski resorts, will have a substantial impact on their finances.

Prior to the Covid 19 pandemic, the Jay Peak Resort (Phases I through VI) operated profitably and its net operating income continued to increase. (See more detailed description below). The Burke Hotel continued to lose money, however, such a loss is expected for a new hotel. The operating losses have diminished year after year since the date that the Burke Hotel opened in September 2016. It is hopeful that the Burke Hotel will soon operate at a breakeven

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

level or even generate a small profit.   Please see the Financial Affairs section of this report for more detailed information on the financial condition of the Jay Peak Resort and the Burke Mountain Hotel.

**B.     Future Plans to Sell the Jay Peak Resort and the Burke Mountain Hotel**

**1.     Jay Peak Resort**

The Receiver continues to work with Houlihan Lokey ("HL"), the investment bank retained by the Receiver to assist in the sale of the Jay Peak Resort.  HL has been  actively marketing the Jay Peak Resort to potential buyers.  To that end, commencing in the Spring of 2019, HL contacted 142 potential purchasers, including potential strategic and financial buyers, located throughout the United States, Europe and Asia.  Of that group, 48 potential buyers executed Non-Disclosure Agreements ("NDAs").   Of that group, 9 potential buyers have submitted initial Indications of Interest.[9]  Three additional potential buyers have expressed interest and provided informal initial pricing guidance, but did not formally submit a bid.  The Receiver expects that at least one of this group will ultimately submit a bid.

HL and Jay Peak's management team have hosted 6 groups for site visits at the Jay Peak Resort and meetings with the Jay Peak Resort's management team.    Seventy-one potential investors who executed NDAs have formally passed on the opportunity following a review of the offering materials.  The Receiver and HL continue to work with the remaining potential buyers to resolve potential issues and attempt to structure a potential transaction that will maximize the recovery for the Phase II through Phase VI investors.

The sales process has ground to a halt due to the Covid 19 pandemic.  The Receiver is hopeful it will begin again once business returns to normal.  The Receiver is unsure when a

---

[9]  The identity of these parties is not being disclosed for confidentiality reasons.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL  33301-2999

transaction will close.  The Receiver wants to assure all investors that he and his professionals are doing their best to obtain the highest possible price for the resort by conducting a vigorous and fully transparent sales process.  The proceeds of the sale of the Jay Peak Resort when sold shall be, subject to the Court's approval, distributed on a *pro-rata* basis to all investors in the Jay Peak Resort Phase II – Phase VI.

### 2.    Burke Mountain Hotel

The Burke Mountain Hotel was also shut down in mid-March due to the pandemic.  Since the Burke Mountain Hotel has not yet generated sufficient jobs for all of the investors in the project, the Receiver has not yet marketed  the Burke Mountain hotel because the sales price based on current financial performance would be extremely low.  However, the Receiver has sold other land adjacent to the Burke Mountain Hotel that is not necessary for the operation of the hotel and ski area.  The Receiver may continue to market those stand-alone parcels prior to the sale of the Burke Mountain Hotel.

### C.    Update on USCIS Adjudications of the Citizenship Petitions

By regulation, USCIS is required to adjudicate I-829 petitions within 90 days pursuant to 8 C.F.R. § 216.6 (c).  USCIS failed to follow this regulatory requirement.  As a result, the Receiver filed two mandamus complaints in federal court on behalf of investors with the goal of compelling USCIS to adjudicate the long-pending I-526 and I-829 petitions in various phases of the Jay Peak resort development.  Immediately after filing the mandamus actions, the Receiver dismissed them and promptly engaged in settlement discussions with USCIS which have resulted in an agreement whereby USCIS will commence ruling on pending petitions.  USCIS has started ruling on petitions and has granted some, although it has started issuing RFEs for investors in Lodge and Townhouse.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL  33301-2999

The Receiver's immigration counsel is working on updated template responses to provide to counsel for investors who receive RFEs.

The Receiver and immigration counsel are preparing a template Motion to Reopen ("MTR") for any investor who receives an I-829 petition denial. The main purpose of the MTR is to make certain that there is a full and updated record for any further proceedings. The normal course of events following the issuance of an I-829 petition denial is the issuance of a Notice to Appear ("NTA"), which results in the scheduling of a removal proceeding before an immigration judge. At this time, the Receiver is not aware of any NTA being issued.  In the meantime, denied investors remain conditional permanent residents and should continue to seek I-551 stamps as needed.

### D.      Litigation and Third Party Claims

#### 1.      *U.S. v. Quiros, et al.*

On May 21, 2019, a grand jury in the District of Vermont returned an indictment against Ariel Quiros, William Kelly, Jong Weon Choi, and William Stenger (collectively "criminal defendants"). *See United States v. Quiros*, No. 5:19-cr-76 (the "Indictment").  The criminal case is set for trial on October 5, 2020.  The trial is estimated to last four to six weeks. The Indictment stayed some of the civil cases described below.

#### 2.      **The Mandamus Cases**

As stated above, on November 15, 2019, the Receiver filed *Goldberg vs. McAleenann*, Case No. 19-cv-24746-JEM, in the U.S. District Court for the Southern District of Florida, seeking a Writ in the Nature of Mandamus against Kevin McAleenann, Secretary of the United States Department of Homeland Security; Kenneth T. Cuccinelli, Director, United States Citizenship and Immigration Services; Sarah Kendall, Chief, Immigrant Investor Program Office; and the USCIS.

This action arises from Defendant's failure to adjudicate the I-829 petitions of approximately 150 foreign investors, including the approximately seventy-four (74) plaintiffs who each invested $500,000 into one of five Limited Partnerships associated with the Jay Peak or Q Burke resorts. Also, with the Receiver's assistance, certain investors filed *Astakhova v McAleenann, et al.*, Case No. 19-cv-24753-JEM, This action arises from Defendants' failure to adjudicate the I-526 petitions of twelve (12) of foreign investors who each invested $500,000 into a Limited Partnership associated with the Q Burke resort. Immediately after filing this action, the Receiver dismissed the action and engaged in discussions with USCIS whereby USCIS has agreed to start ruling on pending petitions. USCIS has in fact done so—albeit it has issued RFEs to most investors. The Receiver will continue to provide investors with the information they need to respond to USCIS.

### 3.      Goldberg v. Kelly

The Receiver filed a Complaint against William Kelly, the former owner of Relief Defendant North East Contract Services, Inc. ("NECS"), *Goldberg v. Kelly*, Case No. 17-cv-62157 (S.D. Fla.). The claims against Kelly arise from allegedly improper payments NECS and/or Kelly received from Receivership Defendant AnC Bio Vermont GP Services LLC in connection with the now defunct AnC Bio Project. The Receiver asserts that Kelly wrongfully assumed control of the improperly paid funds and subsequently diverted the funds to other recipients instead of returning the funds. Kelly was included in the Indictment. Upon motion by Kelly's attorney, the Court has stayed the case pending the outcome of the criminal proceedings against him. The Receiver will pursue the case once the Indictment against Kelly concludes and the stay is lifted.

### 4.      Ironshore Indemnity, Inc.

From 2011 to 2015, Ironshore Indemnity, Inc. ("Ironshore") issued a series of $10 million Directors, Officers and Private Company Liability Insurance Policies (the "Policies") to Q Resorts,

Inc.  The Policies insured the Receivership Entities and its officers and directors for certain events caused by acts of Q Resorts, Inc.'s management, including, specifically, investigations and claims brought by the Securities and Exchange Commission.

Immediately after the SEC sued Mr. Quiros and the Receivership Entities, the Receiver provided notice to Ironshore and sought coverage under the Policies.  Ironshore denied coverage, claiming that it had never before received notice of a claim, even though the SEC began its investigation of the Receivership Entities three years earlier, in 2013.  The Receiver and Quiros filed an action against Ironshore seeking a declaration that coverage existed under the Policies. The case, *Quiros v. Ironshore Indemnity, Inc.*, Case No. 16-cv-25073-MGC was filed in the United States District Court for the Southern District of Florida (the "Ironshore Action"). Two weeks before trial, and one week before the hearing on competing summary judgment motions, the Receiver and Quiros settled the Ironshore Action for $1.9 million, payable in tranches, tranches, with the final payment – $500,000.00 – due upon the issuance of a final bar order enjoining any other claims against Ironshore in connection with the Policies (the "Ironshore Settlement").

The Receiver moved for approval of the Ironshore Settlement and entry of the requested bar order.  Quiros' former attorneys, including Mitchell Silberberg & Knupp, LLP ("MSK") (collectively, the "Law Firms"), objected to the Ironshore settlement.  The District Court in the SEC Action approved the Ironshore Settlement over the Law Firms' objection and entered the requested bar order.  The Law Firms appealed entry of the settlement bar order.  Their appeal is currently pending in the Eleventh Circuit Court of Appeals, *Leon Cosgrove, LLP et al. v. Quiros et al.*, Case No. 19-11409-CC.  The parties have completed their briefing, and oral argument is scheduled for May 2020.

**5.     David Gordon and Mitchell Silberberg & Knupp, LLP**

David Gordon and MSK represented the Receivership Entities and other individuals, including Quiros, during the SEC investigation of the Receivership Entities.  The Receiver contends that MSK, in representing the Receivership Entities, breached its duties and failed to provide reasonably adequate legal services to the Receivership Entities, causing the continued violations of federal securities laws and continued commingling and misappropriation of partnership funds.  As a result of the foregoing, on Mau 8, 2019, the Receiver sued MSK in the United States District Court for the Southern District of Florida, *Goldberg v. Mitchell Silberberg & Knupp, LLP et al.*, Case No. 1:19-cv-21862-MGC.  The United States Attorney's Office for Vermont moved to intervene in this action in December 2019 and requested that it be stayed as a result of the pending criminal action against Quiros and others.  The court granted that motion and stayed the case.  The Receiver will continue pursuing this case once the stay is lifted.

The parties engaged in extensive discovery and participated in mediation. In addressing discovery, Defendants filed a Motion to Determine Waiver of Attorney-Client Privilege or, in the Alternative, to Allow the use of Confidential and Privileged Information for the Defense in the Case.. Mr. Quiros, a non-party to this case, filed an objection, asserting that he had not waived the attorney-client privilege with respect to any documents or communications involving Mr. Quiros. On November 6, 2019, the Receiver filed a Motion for Leave to File Amended Complaint to add five new counts — one each alleging civil conspiracy and aiding and abetting a breach of fiduciary duty, and three alleging fraudulent transfers. The amendment also bolstered existing allegations relating to the Receiver's claims of negligence and breach of fiduciary duty.

On December 12, 2019, the U.S. Attorney for the District of Vermont filed an Unopposed Expedited Motion to Intervene and Stay Proceedings due to the Indictment.  The U.S. Attorney

argued that there is significant factual overlap between this matter and the pending criminal case. Criminal defendants Quiros, Kelly, and Stenger are all "relevant nonparties" to the Amended Complaint. The Indictment alleges that, *inter alia*, the criminal defendants "conspired to devise a scheme to defraud investors in the AnC Vermont EB-5 project.  As alleged in both the Amended Complaint and the Indictment, the criminal defendants' misconduct included, for example, the commingling of investor funds, Both the Amended Complaint and the Indictment also emphasize misrepresentations made to regulators about the AnC Vermont Project and use of investor funds.

On December 13, 2019, the District Court judge entered an Order granting the motion to intervene and staying the case until November 13, 2020, or until the resolution of the Indictment, whichever is sooner.

### 6.    Saint-Sauveur Valley Resorts, Inc.,

Investors in Jay Peak Hotel Suites LP ("Phase I") and Jay Peak Hotel Suites Phase II LP ("Phase II"), filed a Complaint in the U.S. District Court for the District of Vermont for breach of fiduciary duty and violations of the Vermont Fraudulent Transfer Act, against Saint-Sauveur Valley Resorts, Inc., currently known as Valley Summits, Inc. ("SSVR"), which was the owner of a ski resort in Jay, Vermont (the "Resort") until June 2008, when SSVR sold the Jay Peak Resort to Ariel Quiros and his corporation, Q Resorts, Inc. ("Q Resorts").  The Receiver was subsequently joined as a plaintiff in the case.  In his Third Amended Complaint ("TAC"), the plaintiff added Louis Dufour and Louis Hebert, the corporate officers of SSVR as additional defendants.  (Phase I and Phase II were created by the SSVR Defendants to raise capital to develop the Resort.)  On January 23, 2020, the Court entered an Order Denying SSVR's Motion to Strike and Granting in Part and Denying in Part, Defendants' Motion to Dismiss the Third Amended Complaint (the Court dismissed certain of the fraud counts).  On March 6, 2020, the Defendants filed Third-Party

Complaint against QResorts, Inc., Ariel Quiros, Jay Peak, Inc., Jay Peak Management, Inc., William Stenger, Raymond James Financial, Inc., and Raymond James & Associates.   The Receiver believes that these Third Party Complaints violate previous bar orders and injunctions entered by the Court and has made demand that SSVR immediately dismiss such actions, absent which the Receiver will seek damages against SSVR, its principals and professionals for their contemptuous conduct.

### 7. Claims Against Other Third Parties

The Receiver and his professionals continue to investigate and evaluate potential claims against other persons and companies involved with the Receivership Entities.   The Receiver's litigation attorneys have prepared subpoenas *duces tecum* and other demands to professionals and other entities who previously worked with the Receivership Entities, as part of their investigation and pursuit of possible claims that may be asserted by the Receiver and in order to identify concealed or fraudulently transferred receivership assets and causes of action.   The Receiver intends to pursue recovery of fraudulently transferred assets or the proceeds thereof from third parties. The Receiver has negotiated tolling agreements with a number of third parties and intends to bring additional lawsuits in the event the Receiver cannot resolve these matters.

### 8. Document Recovery

The Receiver continues to maintain and update an electronic database to store documents produced by financial institutions and all pre-receivership servers and other data recovered from the files of the Defendants. An e-discovery vendor hosts such electronic files and permits the Receiver's professionals searchable access.  This system also allows the Receiver's professionals to share information and efficiently respond to discovery requests in related litigation.

### III.   FINANCIAL AFFAIRS[10]

#### A.   Bank Accounts

The Receivership Entities' financial accounts were frozen pursuant to the Receivership Order. The Receivership Order also provides the Receiver with control and signatory authority for all financial accounts. *See* Receivership Order, ¶ 7.   The Receiver and his staff maintain receivership bank accounts and pay administrative expenses. The Receiver's staff has opened new bank accounts for the purpose of segregating the proceeds of the RJ Settlement and distributing payment to investors, contractors and other creditors.

Attached to this Report as **Composite Exhibit "A"** is a Standard Fund Accounting Report ("SFAR") for the period of September 1, 2019 through March 31, 2020, and cash flow statements for the operating Receivership Entities detailing the Receivership Entities' business operations for the period June 1, 2019 through February 29, 2020.

#### B.   Jay Peak Resort

Management of Jay Peak forecasted a flat to slightly higher summer 2019 period (May-October) and actual results were in alignment with that forecast (Jay Peak finished at $11.29 million of revenue versus a budget of $11 million.)  This includes all business segments ranging from lodging, food and beverage and activities, to conferences, weddings, and field use. Highlights are broken out within the sections below.

In November 2019, both of the early season predicators - Season Pass sales and Advanced Vacation bookings were trending positive and the winter period post-Thanksgiving period continued this trend.   Season Pass sales were up dramatically, indicative of the long-standing

---

[10] Because this receivership involves operating entities, the confidentiality of the Receivership Entities' financial data is important.  Accordingly, the Receiver has not attached detailed financial statements to this report, but has instead provided a general summary.  Should the Court want to review such detailed financial data, the Receiver shall provide the information to the Court in-camera.

relationship with the guest-base, offering 10% gains in both volume and pricing.  This is a big victory considering the amount of market penetration by the resort aggregators.

Jay Peak had a slightly later than usual open for Thanksgiving (the resort generally opens the week prior), but aggressive snowmaking allowed Jay Peak to expand rapidly into the December holiday periods.  Weather did not cooperate during this stretch with rain, wind and ice, and depressed visitation and Net Operating Income ("NOI") during this period which historically has been difficult to recover when bad weather occurs earlier in the season.  The second half of the holiday week, which attracts a high index of Canadian business, performed very well and while the volume was not sufficient enough to recover the previous week losses, Jay Peak did well relative to our budget and historical financial results (up 11% to each).

The holiday stretches of Martin Luther King ("MLK") weekend, President's week, Ontario Canadian break and VT/NH break all provided neutral to good weather and allowed Jay Peak to make gains against the delta created during the Christmas Break period.  As of the end of February, with 8 weeks left to go within Fiscal Year 2020, Jay Peak was less than $100,000  behind the prior year's near record top line revenue pace.  Through fiscal February labor numbers crept up as a result of filling previous unfilled positions, increasing the number of J1 Student Visa workers and, for the first time, expanding into the H2B Visa professional labor market, Fiscal Year 2019 $15.5 million versus Fiscal Year 2020 $15.8 million, but Jay Peak was still well under a budget of $17.8 million and this savings helped create improve EBITDA and NOI performance relative to both budget and the year prior.

Fiscal Year 2020 highlights include Season Pass unit sales and Revenue both up +/- 10%; Topline revenue down versus YTD +/- $100,000; COG down versus YTD +/- $130,000; Resort expenses down versus YTD +/- $1.8 million; Resort labor up versus YTD +/- $300,000; FY20

EBITDA up versus YTD $1.5 million; and FY20 NOI up versus YTD $1.4 million.  Despite good operating results through mid-March, the pandemic which forced the closure of the Jay Peak Resort in mid-March is expected to substantially affect the Resort's profitability.

### 1.    FY 2020 Summer and Beyond

As of mid-April, management's hope is that Jay Peak will be able to re-open with possibly just golf operations somewhere close to the first few weeks of June.  While there have been some cancelling of small conference and small wedding business in May and June, July weddings and conferences remain on the books and management hopes to be able to service them.  Jay Peak lost all of the hockey and field related business for April, May and June and, at this point but are, at least at this point, holding out hope for hockey business to resume in some capacity in July.

It remains to be seen when and how Jay Peak will be able to reopen Clips and Reels indoor climbing, the movie theater and the Pumphouse indoor waterpark.  Given the type of operations (inside, close contact) management will be integrating new safety related scenarios that are presently being developed.  Food and Beverage and retail operations will scale up as groups are allowed to re-assemble and travel markets return in some capacity-the rate and frequency of which is still unknown.  Lodging operations will scale back slowly with management opening only 1 of 3 hotels at first with some limited condo availabilities as well.  Season Pass deadlines have been pushed back to mid-June, with the integration of a new payment plan and relaxed cancellation and deferment policies available and the hope is that as we near that early booking deadline, volume will increase.

Management is looking at two particular ones signs for Jay Peak relative to the resumption of business.  First, and foremost, would be the reopening of the Canadian border points.  Given the high index of Canadian visitors in the summer (they make up more than 70% of the golf

rounds), until the border reopens it will be difficult to regain traction. Also contributing to some level of uncertainty, is the Vermont Governor putting a stay against any online or phone based lodging bookings.  This literally prohibits Jay Peak from any lodging bookings both close in and for Winter FY21.   Vermont has extended its stay-at-home order to at least 30 April but management is hopeful that the lodging booking ban will be lifted sometime prior to May 1st, giving us the ability to resume both summer and winter bookings.

### C.    Burke Mountain Hotel and Conference Center

#### 1.    Operational Summary

On November 27th current World Champion and two-time Olympic Gold Medalist Mikaela Shiffrin trained at Burke prior to the World Cup. Burke Mountain Academy began training on November 23rd and the resort opened for recreational skiing on December 6, 2019.  Snowfall for the season was 20% below historical average and 42% lower than last season.  Snow did fall during some critical holiday periods helping to make up for lackluster winter weather. Skier visits were buoyed by snow at the right time but revenue was down against budget across many departments. MLK weekend, a critical revenue weekend, was the highest revenue MLK weekend in resort history including one day which ranks as the seventh highest paid skier visit day at Burke.

The forced closure of the Burke Mountain Hotel due to the Covid 19 pandemic is expected to have a substantial impact on operations and increase the hotel's losses.

#### 2.    Financial Summary

This period marks the first five months of the Burke fiscal year.  Sales were $4.71 million versus a budget of $4.92 million.  YOY sales for the period were up 6%.  EBITDA loss was 13.6% ahead of budget.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL  33301-2999

- The resort was tracking to exceed paid skier visits for the season of 40,000+ which would have marked the second year in a row and only the second time since 2011; Overall ticket and pass sales were up 8% YOY.

- Mountain Biking season ended in mid-October 28% ahead of budgeted revenue and continued growth in biker visits YOY.

- Lodging revenue was up 12% YOY.  Lodging EBITDA for the period showing a 46% positive income against budget.  ADR up 8.7% YOY.

- Room revenue for the three holidays (Christmas, MLK, Presidents) up 20% YOY.

- Payroll and overhead costs showed a 1.3% YOY increase and 7% ahead of budget.

- Retail sale less cost of goods up 18% YOY.

- YOY operating expenses were down 1.2%.

Hotel Snapshot:  October thru February

|  | FY18 | FY 19 | FY 20 |
|---|---|---|---|
| Revenue | $765,010 | $1,030,393 | $1,153,022 |
| Room Nights | 4,153 | 6,342 | 6,476 |
| Guests | 10,610 | 14,811 | 15,222 |

Ski Operations Snapshot:  November thru February

|  | FY18 | FY19 | FY20 |
|---|---|---|---|
| Revenue | $697,633 | $998,980 | $1,069,725 |
| Paid Ticket Visits | 22,982 | 29,517 | 29,909 |

3.   **Looking Ahead**

The highly anticipated Enduro World Series has asked to host the event at Burke for at least two years.  This would provide a platform for branding and revenue generation that could

have profound impacts for the resort.  This might ameliorate changes occurring with Kingdom Trails that remain to be fully understood in terms of impact to summer hotel bookings.  Should conditions be favorable, bike park operations could resume the end of June and still capture the heart of the summer biking season. The sales team has been gaining traction under new management and future bookings were looking stronger. Changes in staffing in mountain operations is expected to continue driving departmental improvements and consequent increases in guest satisfaction. Pre-season winter 2020-2021 operations have so far been minimally impacted by the closure and importantly there were  no major critical snowmaking improvements expected this summer.

## IV.      ADMINISTRATION OF THE RECEIVERSHIP ESTATES

The Receiver continues to utilize the skills of his professionals, including his general counsel Akerman LLP; special litigation and conflicts counsel Jeffrey Schneider and Levine Kellogg Lehman Schneider & Grossman LLP; and immigration counsel H. Ron Klasko and Klasko Immigration Law Partners. Soneet Kapila, CPA, and the accounting firm Kapila Mukamal provide accounting and forensic work for the Receiver.  Downs Rachlin Martin PLLC, the largest law firm in Vermont is assisting the Receiver in land use matters.

### A.      Website/Ongoing Communications

The Receiver continues to communicate with government officials, creditors, contractors and interested parties. The Receiver continues to respond to inquiries, usually through e-mail and telephone calls.  The Receiver returned to Vermont in January for meetings.  The Receiver and his staff continue to respond to inquiries from investors, creditors and other interested parties. The Receiver continues to maintain a toll-free investor hotline at (800) 223-2234, an email address for general inquiries jaypeak@akerman.com, and a website www.JayPeakReceivership.com to provide

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL  33301-2999

up to date information for investors and interested parties. The Receiver has posted copies of court filings, correspondence with investors and other pertinent information on the website. The Receiver has also prepared and posted numerous updates on his website, including letters to investors. The Receiver will continue to utilize the website as the primary method of communicating with investors, creditors and other interested parties throughout the receivership.

### B.   Recommendations

The Receiver continues to secure and maintain the assets of the Receivership Entities, analyze the use of the individual partnership funds and respond to inquiries from the investors, creditors and other interested parties. The Receiver anticipates taking the following actions: *(i)* continue to operate and maintain the facilities until the best course of disposition is determined with the goal of each investor obtaining the highest possible return on their investment and achieving their unconditional green card; *(ii)* provide information to investors to satisfy their EB-5 job creation requirements; *(iii)* continue to pay the allowed claims of creditors and investors; *(iv)* investigate and commence litigation against third parties who may be liable for the perpetration of the Receivership Defendants' fraud; *(v)* continue to review transfers of the individual partnership funds and seek to recover funds which were fraudulently transferred; *(vi)* respond to inquiries from investors, creditors, government officials and interested parties; and

*(vii)* provide updates through the receivership website.

Dated:  May 26, 2020.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL  33301-2999

Respectfully submitted,

By: */s/ Michael I. Goldberg*
Michael I. Goldberg, Esq.
Florida Bar No. 886602
Email: michael.goldberg@akerman.com
**AKERMAN LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Blvd.
Fort Lauderdale, FL 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
*Court Appointed Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this May 26, 2020 via the Court's notice of electronic filing on all CM/ECF registered users entitled to notice in this case as indicated on the attached Service List.

By: */s/ Michael I. Goldberg*
Michael I. Goldberg, Esq.

## SERVICE LIST

**1:16-cv-21301-DPG Notice will be electronically mailed via CM/ECF to the following:**

**Robert K. Levenson, Esq.**
Senior Trial Counsel
Email: levensonr@sec.gov
almontei@sec.gov, gonzalezlm@sec.gov,
jacqmeinv@sec.gov
**SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:   (305) 536-4154
*Attorneys for Plaintiff*

**Christopher E. Martin, Esq.**
Senior Trial Counsel
Email: martinc@sec.gov
almontei@sec.gov, benitez-perelladaj@sec.gov
**SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:   (305) 536-4154
*Attorneys for Plaintiff*

**Roberto Martinez, Esq.**
Email: bob@colson.com
**Stephanie A. Casey, Esq.**
Email: scasey@colson.com
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Attorneys for William Stenger*

**Jeffrey C. Schneider, Esq.**
Email: jcs@lklsg.com
**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN**
Miami Center, 22nd Floor
201 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 403-8788
*Co-Counsel for Receiver*

**Jonathan S. Robbins, Esq.**
jonathan.robbins@akerman.com
**AKERMAN LLP**
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, Florida 33301
Telephone:  (954) 463-2700
Facsimile:    (954) 463-2224
*Attorney for Receiver*

**Naim Surgeon, Esq.**
naim.surgeon@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida  33131
Telephone: (305) 374-5600
Facsimile: (305) 349-4654
*Attorney for Receiver*

**David B. Gordon, Esq.**
Email: dbg@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
12 East 49th Street – 30th Floor
New York, New York 10017
Telephone: (212) 509-3900
*Co-Counsel for Ariel Quiros*

**Jean Pierre Nogues, Esq.**
Email:  jpn@msk.com
**Mark T. Hiraide, Esq.**
Email: mth@msk.com
**MITCHELL SILBERBERG & KNOPP, LLP**
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
Telephone (310) 312-2000
*Co-Counsel for Ariel Quiros*

**Mark P. Schnapp, Esq.**
Email: schnapp@gtlaw.com
**Mark D. Bloom, Esq.**
Email: bloomm@gtlaw.com
**Danielle N. Garno, Esq**.
E-Mail: garnod@gtlaw.com
**GREENBERG TRAURIG, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
*Attorneys for Citibank*

**J. Ben Vitale, Esq.**
Email: bvitale@gurleyvitale.com
**David E. Gurley, Esq.**
Email: dgurley@gurleyvitale.com
**GURLEY VITALE**
601 S. Osprey Avenue
Sarasota, Florida 32436
Telephone: (941) 365-4501
*Attorneys for Blanc & Bailey Construction, Inc.*

**Stanley Howard Wakshlag, Esq.**
Email: swakshlag@knpa.com
**KENNY NACHWALTER, P.A.**
Four Seasons Tower
1441 Brickell Avenue
Suite 1100
Miami, FL 33131-4327
Telephone: (305) 373-1000
*Attorneys for Raymond James & Associates Inc.*

**Melissa Damian Visconti, Esquire**
Email: mdamian@dvllp.com
**DAMIAN & VALORI LLP**
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: 305-371-3960
Facsimile: 305-371-3965
*Attorneys for Ariel Quiros*

**Stephen James Binhak, Esquire**
**THE LAW OFFICE OF STEPHEN JAMES BINAK, P.L.L.C.**
1221 Brickell Avenue, Suite 2010
Miami, Florida 33131
Telephone: (305) 361-5500
Facsimile: (305) 428-9532
*Counsel for Attorney for Saint-Sauveur Valley Resorts*

**Laurence May, Esquire**
**EISEMAN, LEVIN, LEHRHAUPT & KAKOYIANNIS, P.C**.
805 Third Avenue
New York, New York 10002
Telephone: (212) 752-1000
*Co-Counsel for Attorney for Saint-Sauveur Valley Resorts*

**AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999**

# EXHIBIT "A"

**STANDARDIZED FUND ACCOUNTING REPORT - Cash Basis (Receivership)**
SEC v. Quiros, et al.
Case No.: 16-cv-21301-GAYLES
Reporting Period 09/01/2019 to 03/31/2020

| FUND ACCOUNTING (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 08/31/2019): | $  - | $  - | $   22,338,638.32 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | **Business Income** | $  - | | |
| Line 3 | **Cash and Securities (UNrestricted)** | $   590.66 | | |
| Line 3 | **Cash and Securities (RESTRICTED)** | $  - | | |
| Line 4 | **Interest/Dividend Income** | $   86,555.93 | | |
| Line 5 | **Business Asset Liquidation** | $   964,375.19 | | |
| Line 6 | **Personal Asset Liquidation** | $  - | | |
| Line 7 | **Third-Party Litigation Income** | $  - | | |
| Line 8 | **Miscellaneous - Other** | $  - | | |
| | Total Funds Available (Lines 1 – 8): | | | $   23,390,160.10 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | **Disbursements to Investors** | | | $  - |
| Line 10 | **Disbursements for Receivership Operations** | | | $  - |
| Line 10a | *Disbursements to Receiver or Other Professionals* | $   387,603.55 | | |
| Line 10b | *Business Asset Expenses* | $   90,552.27 | | |
| Line 10c | *Personal Asset Expenses* | $  - | | |
| Line 10d | *Investment Expenses* | $  - | | |
| Line 10e | *Third-Party Litigation Expenses* | $  - | | |
| | 1. Attorney Fees | $   402,292.18 | | |
| | 2. Litigation Expenses | $  - | | |
| | *Total Third-Party Litigation Expenses* | $  - | | |
| Line 10f | *Tax Administrator Fees and Bonds* | $  - | | |
| Line 10g | *Federal and State Tax Payments* | $   91,735.22 | | |
| | Total Disbursements for Receivership Operations | | | $   972,183.22 |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| Line 11a | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator........................... | $  - | | |
| | Independent Distribution Consultant (IDC)............... | $  - | | |
| | Distribution Agent............................ | $  - | | |
| | Consultants.................................... | $  - | | |
| | Legal Advisers................................ | $  - | | |
| | Tax Advisers.................................. | $  - | | |
| | 2. Administrative Expenses | $  - | | |
| | 3. Miscellaneous | $  - | | |
| | *Total Plan Development Expenses* | | | $  - |
| Line 11b | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator........................... | $  - | | |
| | IDC............................................. | $  - | | |
| | Distribution Agent............................ | $  - | | |
| | Consultants.................................... | $  - | | |
| | Legal Advisers................................ | $  - | | |
| | Tax Advisers.................................. | $  - | | |
| | 2. Administrative Expenses | $  - | | |
| | 3. Investor Identification: | $  - | | |
| | Notice/Publishing Approved Plan....................... | $  - | | |
| | Claimant Identification........................ | $  - | | |
| | Claims Processing............................ | $  - | | |
| | Web Site Maintenance/Call Center............... | $  - | | |
| | 4. Fund Administrator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | $  - | | |
| | *Total Plan Implementation Expenses* | | | $  - |
| | Total Disbursements for Distribution Expenses Paid by the Fund | | | $  - |
| Line 12 | **Disbursements to Court/Other:** | | | |
| Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | $  - | | |
| Line 12b | *Federal Tax Payments* | $  - | | |
| | Total Disbursements to Court/Other: | | | $  - |
| | Total Funds Disbursed (Lines 9 – 11): | | | $   972,183.22 |
| Line 13 | Ending Balance (As of 03/31/2020): | | | $   22,417,976.88 |
| Line 14 | **Ending Balance of Fund – Net Assets:** | | | $  - |
| Line 14a | *Cash & Cash Equivalents* | $  - | | |
| Line 14b | *Investments 2 Loan Collateral* | $   1,500,000.00 | | |
| Line 14c | *Other Assets or Unclaered Funds* | | | |
| | Total Ending Balance of Fund – Net Assets | | | $   20,917,976.88 |

**STANDARDIZED FUND ACCOUNTING REPORT - Cash Basis (Receivership)**
SEC v. Quiros, et al.
Case No.: 16-cv-21301-GAYLES
Reporting Period 09/01/2019 to 03/31/2020

**OTHER SUPPLEMENTAL INFORMATION:**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | *Report of Items NOT To Be Paid by the Fund:* | | | |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator............................................. | $          - | | |
| | IDC...................................................................... | $          - | | |
| | Distribution Agent............................................. | $          - | | |
| | Consultants........................................................ | $          - | | |
| | Legal Advisers................................................... | $          - | | |
| | Tax Advisers...................................................... | $          - | | |
| | 2. Administrative Expenses | $          - | | |
| | 3. Miscellaneous | $          - | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | | $          - |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator............................................. | $          - | | |
| | IDC...................................................................... | $          - | | |
| | Distribution Agent............................................. | $          - | | |
| | Consultants........................................................ | $          - | | |
| | Legal Advisers................................................... | $          - | | |
| | Tax Advisers...................................................... | $          - | | |
| | 2. Administrative Expenses | $          - | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan........................ | $          - | | |
| | Claimant Identification....................................... | $          - | | |
| | Claims Processing.............................................. | $          - | | |
| | Web Site Maintenance/Call Center...................... | $          - | | |
| | 4. Fund Administrator Bond | $          - | | |
| | 5. Miscellaneous | $          - | | |
| | 6. FAIR Reporting Expenses | $          - | | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | | $          - |
| *Line 15c* | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | | $          - |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | $          - |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| *Line 16a* | *Investment Expenses/CRIS Fees* | $          - | | |
| *Line 16b* | *Federal Tax Payments* | $          - | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund:** | | | $          - |
| **Line 17** | **DC & State Tax Payments** | | | $          - |
| **Line 18** | **No. of Claims:** | | | |
| *Line 18a* | # of Claims Received This Reporting Period............................ | | | 0 |
| *Line 18b* | # of Claims Received Since Inception of Fund.......................... | | | 0 |
| **Line 19** | **No. of Claimants/Investors:** | | | |
| *Line 19a* | # of Claimants/Investors Paid This Reporting Period................ | | | 0 |
| *Line 19b* | # of Claimants/Investors Paid Since Inception of Fund............. | | | 0 |

Receiver:

By: _____
(signature)

**Michael I. Goldberg**
(printed name)

**Court Appointed Receiver**
(title)

Date: April 21, 2020

2

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
**6/01/19 through 6/30/19**

|  | USD |  |
|---|---|---|
| **Beginning Cash Balance** | | |
| People's United Bank #xxxx-1736 | $ | 6,021,210 |
| People's United Bank #xxxx-1752 | $ | - |
| People's United Bank #xxxx-7175 | $ | 21,097 |
| People's United Bank #xxxx-0659 | $ | 1,101,401 |
| People's United Bank #xxxx-0667 | $ | - |
| People's United Bank #xxxxxx6722 | $ | 2,681,935 |
| People's United Bank #xxxxxx1175 | $ | - |
| People's United Bank #xxxxxx6726 | $ | 74,235 |
| People's United Bank #xxxxxx6724 | $ | 33,695 |
| Desjardins #xx2955 | $ | 783,800 |
| Desjardins #xx3548 | $ | - |
| | $ | **10,717,373** |
| | | |
| **Add Incoming:** | | |
| Receiver Funding | | |
| Direct - Merrill Lynch Bank Accounts | $ | - |
| Indirect - CitiBank Accounts | $ | - |
| Deposits from Operations | $ | 3,189,901   A |
| | $ | **3,189,901** |
| | | |
| **Less Outgoing:** | | |
| Payroll & Benefits | | |
| Jay Peak Resort | $ | (1,208,488) |
| Burke Mountain | $ | (289,064) |
| Vendor Payments | | |
| Jay Peak Resort | $ | (2,085,037) |
| Burke Mountain | $ | (246,631) |
| Tax Payments | | |
| Vermont Department of Taxes | $ | (136,955) |
| Internal Revenue Service | $ | (327) |
| Merchant and Bank Fees | $ | (48,824) |
| | $ | **(4,015,326)** |
| | | |
| **Ending Cash Balance** | | |
| People's United Bank #xxxx-1736 | $ | 5,607,790 |
| People's United Bank #xxxx-1752 | $ | - |
| People's United Bank #xxxx-7175 | $ | 21,100 |
| People's United Bank #xxxx-0659 | $ | 1,089,261 |
| People's United Bank #xxxx-0667 | $ | - |
| People's United Bank #xxxxxx6722 | $ | 2,821,704 |
| People's United Bank #xxxxxx1175 | $ | - |
| People's United Bank #xxxxxx6726 | $ | 69,882 |
| People's United Bank #xxxxxx6724 | $ | 36,763 |
| Desjardins #xx2955 | $ | 245,448 |
| Desjardins #xx3548 | $ | - |
| | $ | **9,891,948** |

**Note A:**

Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 34% for the report period. This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .75 for the report period.

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
**7/01/19 through 7/31/19**

|  | USD |  |
|---|---:|---|
| **Beginning Cash Balance** | | |
| People's United Bank #xxxx-1736 | $ 5,607,790 | |
| People's United Bank #xxxx-1752 | $ - | |
| People's United Bank #xxxx-7175 | $ 21,100 | |
| People's United Bank #xxxx-0659 | $ 1,089,261 | |
| People's United Bank #xxxx-0667 | $ - | |
| People's United Bank #xxxxxx6722 | $ 2,821,704 | |
| People's United Bank #xxxxxx1175 | $ - | |
| People's United Bank #xxxxxx6726 | $ 69,882 | |
| People's United Bank #xxxxxx6724 | $ 36,763 | |
| Desjardins #xx2955 | $ 245,448 | |
| Desjardins #xx3548 | $ - | |
|  | $ 9,891,948 | |
| | | |
| **Add Incoming:** | | |
| Receiver Funding | | |
| Direct - Merrill Lynch Bank Accounts | $ - | |
| Indirect - CitiBank Accounts | $ - | |
| Deposits from Operations | $ 3,071,914 | A |
|  | $ 3,071,914 | |
| | | |
| **Less Outgoing:** | | |
| Payroll & Benefits | | |
| Jay Peak Resort | $ (1,383,176) | |
| Burke Mountain | $ (269,001) | |
| Vendor Payments | | |
| Jay Peak Resort | $ (1,688,570) | |
| Burke Mountain | $ (309,489) | |
| Tax Payments | | |
| Vermont Department of Taxes | $ (113,245) | |
| Internal Revenue Service | $ - | |
| Merchant and Bank Fees | $ (38,532) | |
|  | $ (3,802,013) | |
| | | |
| **Ending Cash Balance** | | |
| People's United Bank #xxxx-1736 | $ 4,607,975 | |
| People's United Bank #xxxx-1752 | $ - | |
| People's United Bank #xxxx-7175 | $ 21,104 | |
| People's United Bank #xxxx-0659 | $ 1,102,642 | |
| People's United Bank #xxxx-0667 | $ - | |
| People's United Bank #xxxxxx6722 | $ 3,065,342 | |
| People's United Bank #xxxxxx1175 | $ - | |
| People's United Bank #xxxxxx6726 | $ 64,864 | |
| People's United Bank #xxxxxx6724 | $ 33,491 | |
| Desjardins #xx2955 | $ 266,431 | |
| Desjardins #xx3548 | $ - | |
|  | $ 9,161,849 | |

**Note A:**

Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 8% for the report period. This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .76 for the report period.

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
**8/01/19 through 8/31/19**

|  | USD |
|---|---|
| **Beginning Cash Balance** | |
| People's United Bank #xxxx-1736 | $ 4,607,975 |
| People's United Bank #xxxx-1752 | $ - |
| People's United Bank #xxxx-7175 | $ 21,104 |
| People's United Bank #xxxx-0659 | $ 1,102,642 |
| People's United Bank #xxxx-0667 | $ - |
| People's United Bank #xxxxxx6722 | $ 3,065,342 |
| People's United Bank #xxxxxx1175 | $ - |
| People's United Bank #xxxxxx6726 | $ 64,864 |
| People's United Bank #xxxxxx6724 | $ 33,491 |
| Desjardins #xx2955 | $ 266,431 |
| Desjardins #xx3548 | $ - |
|  | $ 9,161,849 |
|  | |
| **Add Incoming:** | |
| Receiver Funding | |
| Direct - Merrill Lynch Bank Accounts | $ - |
| Indirect - CitiBank Accounts | $ - |
| Deposits from Operations | $ 3,231,737   A |
|  | $ 3,231,737 |
|  | |
| **Less Outgoing:** | |
| Payroll & Benefits | |
| Jay Peak Resort | $ (1,338,801) |
| Burke Mountain | $ (284,269) |
| Vendor Payments | |
| Jay Peak Resort | $ (1,773,682) |
| Burke Mountain | $ (350,444) |
| Tax Payments | |
| Vermont Department of Taxes | $ (224,204) |
| Internal Revenue Service | $ - |
| Merchant and Bank Fees | $ (61,472) |
|  | $ (4,032,872) |
|  | |
| **Ending Cash Balance** | |
| People's United Bank #xxxx-1736 | $ 3,574,991 |
| People's United Bank #xxxx-1752 | $ - |
| People's United Bank #xxxx-7175 | $ 21,107 |
| People's United Bank #xxxx-0659 | $ 1,151,413 |
| People's United Bank #xxxx-0667 | $ - |
| People's United Bank #xxxxxx6722 | $ 3,237,422 |
| People's United Bank #xxxxxx1175 | $ - |
| People's United Bank #xxxxxx6726 | $ 83,687 |
| People's United Bank #xxxxxx6724 | $ 33,681 |
| Desjardins #xx2955 | $ 258,413 |
| Desjardins #xx3548 | $ - |
|  | $ 8,360,714 |

**Note A:**

Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 9% for the report period. This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .76 for the report period.

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
**9/01/19 through 9/30/19**

| | USD |
|---|---:|
| **Beginning Cash Balance** | |
| People's United Bank #xxxx-1736 | $ 3,574,991 |
| People's United Bank #xxxx-1752 | $ - |
| People's United Bank #xxxx-7175 | $ 21,107 |
| People's United Bank #xxxx-0659 | $ 1,151,413 |
| People's United Bank #xxxx-0667 | $ - |
| People's United Bank #xxxxxx6722 | $ 3,237,422 |
| People's United Bank #xxxxxx1175 | $ - |
| People's United Bank #xxxxxx6726 | $ 83,687 |
| People's United Bank #xxxxxx6724 | $ 33,681 |
| Desjardins #xx2955 | $ 258,413 |
| Desjardins #xx3548 | $ - |
| | $ 8,360,714 |
| | |
| **Add Incoming:** | |
| Receiver Funding | |
| Direct - Merrill Lynch Bank Accounts | $ - |
| Indirect - CitiBank Accounts | $ - |
| Deposits from Operations | $ 2,745,953  A |
| | $ 2,745,953 |
| | |
| **Less Outgoing:** | |
| Payroll & Benefits | |
| Jay Peak Resort | $ (1,208,874) |
| Burke Mountain | $ (275,220) |
| Vendor Payments | |
| Jay Peak Resort | $ (1,565,774) |
| Burke Mountain | $ (421,147) |
| Tax Payments | |
| Vermont Department of Taxes | $ (219,596) |
| Internal Revenue Service | $ (93) |
| Merchant and Bank Fees | $ (69,409) |
| | $ (3,760,113) |
| | |
| **Ending Cash Balance** | |
| People's United Bank #xxxx-1736 | $ 2,460,577 |
| People's United Bank #xxxx-1752 | $ - |
| People's United Bank #xxxx-7175 | $ 21,111 |
| People's United Bank #xxxx-0659 | $ 1,134,290 |
| People's United Bank #xxxx-0667 | $ - |
| People's United Bank #xxxxxx6722 | $ 3,302,393 |
| People's United Bank #xxxxxx1175 | $ - |
| People's United Bank #xxxxxx6726 | $ 81,174 |
| People's United Bank #xxxxxx6724 | $ 30,680 |
| Desjardins #xx2955 | $ 316,329 |
| Desjardins #xx3548 | $ - |
| | $ 7,346,554 |

**Note A:**

Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 11% for the report period.  This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .75 for the report period.

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
**10/01/19 through 10/31/19**

| | | USD |
|---|---|---:|
| **Beginning Cash Balance** | | |
| People's United Bank #xxxx-1736 | $ | 2,460,577 |
| People's United Bank #xxxx-1752 | $ | - |
| People's United Bank #xxxx-7175 | $ | 21,111 |
| People's United Bank #xxxx-0659 | $ | 1,134,290 |
| People's United Bank #xxxx-0667 | $ | - |
| People's United Bank #xxxxxx6722 | $ | 3,302,393 |
| People's United Bank #xxxxxx1175 | $ | - |
| People's United Bank #xxxxxx6726 | $ | 81,174 |
| People's United Bank #xxxxxx6724 | $ | 30,680 |
| Desjardins #xx2955 | $ | 316,329 |
| Desjardins #xx3548 | $ | - |
| | $ | **7,346,554** |
| | | |
| **Add Incoming:** | | |
| Receiver Funding | | |
| Direct - Merrill Lynch Bank Accounts | $ | - |
| Indirect - CitiBank Accounts | $ | - |
| Deposits from Operations | $ | 3,074,969    A |
| | $ | **3,074,969** |
| | | |
| **Less Outgoing:** | | |
| Payroll & Benefits | | |
| Jay Peak Resort | $ | (1,787,645) |
| Burke Mountain | $ | (298,340) |
| Vendor Payments | | |
| Jay Peak Resort | $ | (3,438,150) |
| Burke Mountain | $ | (747,678) |
| Tax Payments | | |
| Vermont Department of Taxes | $ | (129,696) |
| Internal Revenue Service | $ | - |
| Merchant and Bank Fees | $ | (31,812) |
| | $ | **(6,433,321)** |
| | | |
| **Ending Cash Balance** | | |
| People's United Bank #xxxx-1736 | $ | 1,465,777 |
| People's United Bank #xxxx-1752 | $ | - |
| People's United Bank #xxxx-7175 | $ | 21,114 |
| People's United Bank #xxxx-0659 | $ | 800,422 |
| People's United Bank #xxxx-0667 | $ | - |
| People's United Bank #xxxxxx6722 | $ | 1,252,992 |
| People's United Bank #xxxxxx1175 | $ | - |
| People's United Bank #xxxxxx6726 | $ | 63,884 |
| People's United Bank #xxxxxx6724 | $ | 20,252 |
| Desjardins #xx2955 | $ | 363,761 |
| Desjardins #xx3548 | $ | - |
| | $ | **3,988,202** |

**Note A:**

Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 28% for the report period. This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .755 for the report period.

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
**11/01/19 through 11/30/19**

|  | | USD |
|---|---|---:|
| **Beginning Cash Balance** | | |
| People's United Bank #xxxx-1736 | $ | 1,465,777 |
| People's United Bank #xxxx-1752 | $ | - |
| People's United Bank #xxxx-7175 | $ | 21,114 |
| People's United Bank #xxxx-0659 | $ | 800,422 |
| People's United Bank #xxxx-0667 | $ | - |
| People's United Bank #xxxxxx6722 | $ | 1,252,992 |
| People's United Bank #xxxxxx1175 | $ | - |
| People's United Bank #xxxxxx6726 | $ | 63,884 |
| People's United Bank #xxxxxx6724 | $ | 20,252 |
| Desjardins #xx2955 | $ | 363,761 |
| Desjardins #xx3548 | $ | - |
| | $ | **3,988,202** |
| | | |
| **Add Incoming:** | | |
| Receiver Funding | | |
| Direct - Merrill Lynch Bank Accounts | $ | - |
| Indirect - CitiBank Accounts | $ | - |
| Deposits from Operations | $ | 3,375,993   A |
| | $ | **3,375,993** |
| | | |
| **Less Outgoing:** | | |
| Payroll & Benefits | | |
| Jay Peak Resort | $ | (1,421,805) |
| Burke Mountain | $ | (108,587) |
| Vendor Payments | | |
| Jay Peak Resort | $ | (1,833,094) |
| Burke Mountain | $ | (420,703) |
| Tax Payments | | |
| Vermont Department of Taxes | $ | (246,192) |
| Internal Revenue Service | $ | (141) |
| Merchant and Bank Fees | $ | (42,202) |
| | $ | **(4,072,724)** |
| | | |
| **Ending Cash Balance** | | |
| People's United Bank #xxxx-1736 | $ | 1,306,871 |
| People's United Bank #xxxx-1752 | $ | - |
| People's United Bank #xxxx-7175 | $ | 21,118 |
| People's United Bank #xxxx-0659 | $ | 860,566 |
| People's United Bank #xxxx-0667 | $ | - |
| People's United Bank #xxxxxx6722 | $ | 649,482 |
| People's United Bank #xxxxxx1175 | $ | - |
| People's United Bank #xxxxxx6726 | $ | 69,774 |
| People's United Bank #xxxxxx6724 | $ | 21,370 |
| Desjardins #xx2955 | $ | 362,290 |
| Desjardins #xx3548 | $ | - |
| | $ | 3,291,471 |

**Note A:**

Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 16% for the report period.  This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .76 for the report period.

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
**12/01/19 through 12/31/19**

|  | | USD |  |
|---|---|---:|---|
| **Beginning Cash Balance** | | | |
| People's United Bank #xxxx-1736 | $ | 1,306,871 | |
| People's United Bank #xxxx-1752 | $ | - | |
| People's United Bank #xxxx-7175 | $ | 21,118 | |
| People's United Bank #xxxx-0659 | $ | 860,566 | |
| People's United Bank #xxxx-0667 | $ | - | |
| People's United Bank #xxxxxx6722 | $ | 649,482 | |
| People's United Bank #xxxxxx1175 | $ | - | |
| People's United Bank #xxxxxx6726 | $ | 69,774 | |
| People's United Bank #xxxxxx6724 | $ | 21,370 | |
| Desjardins #xx2955 | $ | 362,290 | |
| Desjardins #xx3548 | $ | - | |
| | $ | **3,291,471** | |
| | | | |
| **Add Incoming:** | | | |
| Receiver Funding | | | |
| Direct - Merrill Lynch Bank Accounts | $ | - | |
| Indirect - CitiBank Accounts | $ | - | |
| Deposits from Operations | $ | 5,520,405 | A |
| | $ | **5,520,405** | |
| | | | |
| **Less Outgoing:** | | | |
| Payroll & Benefits | | | |
| Jay Peak Resort | $ | (1,792,882) | |
| Burke Mountain | $ | (264,566) | |
| Vendor Payments | | | |
| Jay Peak Resort | $ | (2,634,662) | |
| Burke Mountain | $ | (467,408) | |
| Tax Payments | | | |
| Vermont Department of Taxes | $ | (174,922) | |
| Internal Revenue Service | $ | (3,346) | |
| Merchant and Bank Fees | $ | (82,524) | |
| | $ | **(5,420,310)** | |
| | | | |
| **Ending Cash Balance** | | | |
| People's United Bank #xxxx-1736 | $ | 1,801,942 | |
| People's United Bank #xxxx-1752 | $ | - | |
| People's United Bank #xxxx-7175 | $ | 21,121 | |
| People's United Bank #xxxx-0659 | $ | 333,745 | |
| People's United Bank #xxxx-0667 | $ | - | |
| People's United Bank #xxxxxx6722 | $ | 924,393 | |
| People's United Bank #xxxxxx1175 | $ | - | |
| People's United Bank #xxxxxx6726 | $ | 75,146 | |
| People's United Bank #xxxxxx6724 | $ | 41,676 | |
| Desjardins #xx2955 | $ | 193,543 | |
| Desjardins #xx3548 | $ | - | |
| | $ | **3,391,566** | |

**Note A:**

Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 16% for the report period. This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .76 for the report period.

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
<span style="color:red">**1/1/2020 through 1/31/2020**</span>

|  | USD |
|---|---:|
| **Beginning Cash Balance** | |
| People's United Bank #xxxx-1736 | $ 1,801,942 |
| People's United Bank #xxxx-1752 | $ - |
| People's United Bank #xxxx-7175 | $ 21,121 |
| People's United Bank #xxxx-0659 | $ 333,745 |
| People's United Bank #xxxx-0667 | $ - |
| People's United Bank #xxxxxx6722 | $ 924,393 |
| People's United Bank #xxxxxx1175 | $ - |
| People's United Bank #xxxxxx6726 | $ 75,146 |
| People's United Bank #xxxxxx6724 | $ 41,676 |
| Desjardins #xx2955 | $ 193,543 |
| Desjardins #xx3548 | $ - |
|  | **$ 3,391,566** |
| | |
| **Add Incoming:** | |
| Receiver Funding | |
| Direct - Merrill Lynch Bank Accounts | $ - |
| Indirect - CitiBank Accounts | $ - |
| Deposits from Operations | $ 10,743,524   A |
|  | **$ 10,743,524** |
| | |
| **Less Outgoing:** | |
| Payroll & Benefits | |
| Jay Peak Resort | $ (2,548,545) |
| Burke Mountain | $ (298,891) |
| Vendor Payments | |
| Jay Peak Resort | $ (3,193,738) |
| Burke Mountain | $ (640,861) |
| Tax Payments | |
| Vermont Department of Taxes | $ (445,537) |
| Internal Revenue Service | $ - |
| Merchant and Bank Fees | $ (113,517) |
|  | **$ (7,241,089)** |
| | |
| **Ending Cash Balance** | |
| People's United Bank #xxxx-1736 | $ 4,666,842 |
| People's United Bank #xxxx-1752 | $ - |
| People's United Bank #xxxx-7175 | $ 21,125 |
| People's United Bank #xxxx-0659 | $ 508,258 |
| People's United Bank #xxxx-0667 | $ - |
| People's United Bank #xxxxxx6722 | $ 1,458,129 |
| People's United Bank #xxxxxx1175 | $ - |
| People's United Bank #xxxxxx6726 | $ 58,136 |
| People's United Bank #xxxxxx6724 | $ 35,348 |
| Desjardins #xx2955 | $ 146,163 |
| Desjardins #xx3548 | $ - |
|  | **$ 6,894,001** |

**Note A:**

Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 15% for the report period.  This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .77 for the report period.

**Jay Peak Resort/Burke Mountain**
**Cash Flow Statement**
<span style="color:red">**2/1/2020 through 2/29/2020**</span>

|  | | USD |  |
|---|---|---:|---|
| **Beginning Cash Balance** | | | |
| People's United Bank #xxxx-1736 | $ | 4,666,842 | |
| People's United Bank #xxxx-1752 | $ | - | |
| People's United Bank #xxxx-7175 | $ | 21,125 | |
| People's United Bank #xxxx-0659 | $ | 508,258 | |
| People's United Bank #xxxx-0667 | $ | - | |
| People's United Bank #xxxxxx6722 | $ | 1,458,129 | |
| People's United Bank #xxxxxx1175 | $ | - | |
| People's United Bank #xxxxxx6726 | $ | 58,136 | |
| People's United Bank #xxxxxx6724 | $ | 35,348 | |
| Desjardins #xx2955 | $ | 146,163 | |
| Desjardins #xx3548 | $ | - | |
| | $ | **6,894,001** | |
| | | | |
| **Add Incoming:** | | | |
| Receiver Funding | | | |
| Direct - Merrill Lynch Bank Accounts | $ | - | |
| Indirect - CitiBank Accounts | $ | - | |
| Deposits from Operations | $ | 10,353,369 | A |
| | $ | **10,353,369** | |
| | | | |
| **Less Outgoing:** | | | |
| Payroll & Benefits | | | |
| Jay Peak Resort | $ | (2,315,846) | |
| Burke Mountain | $ | (385,443) | |
| Vendor Payments | | | |
| Jay Peak Resort | $ | (2,690,998) | |
| Burke Mountain | $ | (683,361) | |
| Tax Payments | | | |
| Vermont Department of Taxes | $ | (796,093) | |
| Internal Revenue Service | $ | (5,304) | |
| Merchant and Bank Fees | $ | (196,898) | |
| | $ | **(7,073,943)** | |
| | | | |
| **Ending Cash Balance** | | | |
| People's United Bank #xxxx-1736 | $ | 7,031,423 | |
| People's United Bank #xxxx-1752 | $ | - | |
| People's United Bank #xxxx-7175 | $ | 21,128 | |
| People's United Bank #xxxx-0659 | $ | 613,776 | |
| People's United Bank #xxxx-0667 | $ | - | |
| People's United Bank #xxxxxx6722 | $ | 2,216,667 | |
| People's United Bank #xxxxxx1175 | $ | - | |
| People's United Bank #xxxxxx6726 | $ | 66,253 | |
| People's United Bank #xxxxxx6724 | $ | 36,587 | |
| Desjardins #xx2955 | $ | 187,593 | |
| Desjardins #xx3548 | $ | - | |
| | $ | **10,173,427** | |

**Note A:**
Canadian transactions have been converted to US Dollars based upon the following methodology:

The Canadian portion of total resort deposits was calculated to be 11% for the report period.  This percentage was applied to all resort deposits at the average CDN to USD currency exchange rate of .75 for the report period.