## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 16-cv-21301-GAYLES

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ARIEL QUIROS,
WILLIAM STENGER,
JAY PEAK, INC.,
Q RESORTS, INC.,
JAY PEAK HOTEL SUITES L.P.,
JAY PEAK HOTEL SUITES PHASE II. L.P.,
JAY PEAK MANAGEMENT, INC.,
JAY PEAK PENTHOUSE SUITES, L.P.,
JAY PEAK GP SERVICES, INC.,
JAY PEAK GOLF AND MOUNTAIN SUITES L.P.,
JAY PEAK GP SERVICES GOLF, INC.,
JAY PEAK LODGE AND TOWNHOUSES L.P.,
JAY PEAK GP SERVICES LODGE, INC.,
JAY PEAK HOTEL SUITES STATESIDE L.P.,
JAY PEAK GP SERVICES STATESIDE, INC.,
JAY PEAK BIOMEDICAL RESEARCH PARK L.P.,
AnC BIO VERMONT GP SERVICES, LLC,

Defendants,

JAY CONSTRUCTION MANAGEMENT, INC.,
GSI OF DADE COUNTY, INC.,
NORTH EAST CONTRACT SERVICES, INC.,
Q BURKE MOUNTAIN RESORT, LLC,

Relief Defendants, and

Q BURKE MOUNTAIN RESORT, HOTEL AND
    CONFERENCE CENTER, L.P.,
Q BURKE MOUNTAIN RESORT GP SERVICES, LLC

Additional Defendants
_____/

### FINAL ORDER (I) APPROVING SETTLEMENT AMONG RECEIVER, PUTATIVE CLASS PLAINTIFFS, AND MSK; AND (II) BARRING, RESTRAINING, AND ENJOINING CLAIMS AGAINST MSK

1

**THIS MATTER** came before the Court on the Motion for (i) Approval of Settlement among Receiver, Putative Class Plaintiffs, and Mitchell Silberberg & Knupp, LLP (including, but not limited to, as successor-in-interest to Richardson & Patel LLP), David B. Gordon, and David B. Gordon, a Professional Corporation; (ii) Approval of Form, Content, and Manner of Notice of Settlement and Bar Order; (iii) Entry of Bar Order; and (iv) Scheduling a Hearing; with Incorporated Memorandum of Law [ECF No. 667]  (the "Motion") filed by Michael I. Goldberg, as the Court-appointed receiver (the "Receiver") of the entities set forth on Exhibit A to this Order (the "Receivership Entities") in the above-captioned civil enforcement action (the "SEC Action"). Pursuant to this Court's Order (I) preliminarily approving settlement among Receiver, Putative Class Plaintiffs, and MSK; (II) approving form and content of notice, and manner and method of service and publication; (III) setting deadline to object to approval of settlement and entry of bar order; and (IV) scheduling a hearing [ECF No. 668] (the "Preliminary Approval Order"), the Court held a hearing on July 29, 2021 to consider the Motion and hear objections.

By way of the Motion, the Receiver requests final approval of a proposed settlement among: (1) a group of investors that filed the complaint in the litigation in the United States District Court for the District of Vermont captioned *Qureshi, et al. v. People's United Bank, N.A.*, *Mitchell Silberberg & Knupp, LLP, et al.*, Case No. 2:18-cv-163 (the "Putative Class Action"), Almasood Qureshi, Alexandre Daccache, Carlos Enrique Heller Sanchez, Philip Calderwood, Jose Antonio Pieri, Jose R. Casseres-Pinto, and Tongyi Wang (collectively, the "Putative Class Plaintiffs"); (2) the Receiver, who filed the complaint in the litigation in the United States District Court for the Southern District of Florida captioned *Michael I. Goldberg, not individually, but solely in his capacity as Receiver v. Mitchell Silberberg & Knupp, LLP, et al.*, Case No. 19-cv-21862-MGC (S.D. Fla.) (the "Receiver Action"); and (3) Mitchell Silberberg & Knupp, LLP (including, but not

limited to, as successor-in-interest to Richardson & Patel LLP), David B. Gordon, and David B. Gordon, a Professional Corporation (collectively, "MSK").  The settlement is memorialized in the settlement agreement attached to the Motion as Exhibit 1 (the "Settlement Agreement").[1]

By way of the Motion, the Receiver requests entry of a bar order (the "Bar Order") permanently barring, restraining and enjoining any person or entity—other than: (1) any federal or state governmental bodies or agencies; (2) Ariel Quiros ("Quiros"), solely for claims, if any, Quiros may assert in his individual capacity only[2] or has asserted in his individual capacity only in the Quiros Arbitration; and (3) William Stenger ("Stenger"), solely for claims Stenger may assert in his individual capacity only, if any, that have not been released in Section 5 of the Settlement Agreement, are not claims belonging to any of the Receivership Entities or the Receivership Estate encompassed within the Barred Claims as defined herein, or are not otherwise released or barred by the Settlement Agreement or the Bar Order[3]—from pursuing claims against any of the MSK Released Parties (as defined herein) relating to the events and occurrences

---

[1] As used in this Order, the "Settling Parties" means MSK, the Receiver, and the Putative Class Plaintiffs.  Defined and/or initial capped terms used but not defined in this Order have the meaning ascribed to them in the Settlement Agreement.  To the extent there is any discrepancy between a defined term in the Settlement Agreement and the same defined term herein, the definition in the Settlement Agreement shall control.

[2] Nothing in this clause or this Order modifies, negates, or limits the obligations set forth in Section 10(b)(v) of the Settlement Agreement or any other provisions set forth in the Settlement Agreement regarding the obligation to enforce the Bar Order against Quiros.

[3] Stenger will be included in the provisions of Sections 10(b)(i-iii) & (v) of the Settlement Agreement in the event Stenger asserts or attempts to assert claims against the MSK Released Parties that have been released by Section 5 of the Settlement Agreement, are claims belonging to the Receiver or any of the Receivership Entities or the Receivership Estate encompassed within the Barred Claims as defined herein, or are otherwise released or barred by the Settlement Agreement or the Bar Order.  Similarly, without in any way relieving any of the Settling Parties' obligations under the Settlement Agreement, in the event MSK seeks to dismiss or otherwise eliminate claims asserted by Stenger that MSK contends are released by the Settlement Agreement and/or barred by the Bar Order, the Receiver shall support MSK's efforts by executing documents and providing them to MSK which state the Receiver's position that, by the Settlement Agreement, the Receiver has released any and all claims Stenger may have held in any corporate capacity for any of the Receivership Entities and this Order explicitly precludes Stenger from bringing or maintaining any claims against the MSK Released Parties that may have been held by Stenger in any corporate capacity for any of the Receivership Entities.

underlying, relating to or arising out of the claims in the SEC Action and/or the EB-5 Actions,[4] or

otherwise relating in any way to any of the Receivership Entities, the Receivership Estate, or which

arise directly or indirectly from MSK's activities, omissions, or services, or alleged activities,

omissions, or services, in connection with the Receivership Entities, the Receivership Estate, the

Jay Peak Resort, AnC Bio, or the Burke Mountain Hotel ("MSK's Activities"), to the broadest

extent permitted by law.

The Court's Preliminary Approval Order preliminarily approved the Settlement

Agreement, approved the form and content of the Notice, and set forth procedures for the manner

and method of service and publication of the Notice to all affected parties, including all foreign

investors who invested in certain limited partnerships under the federally-created EB-5 visa

programs known as Suites Phase I, Hotel Phase II, Penthouse Phase III, Golf and Mountain Phase

IV, Lodge and Townhouses Phase V, Stateside Phase VI, AnC Bio Phase VII, and/or Q Burke

---

[4] As used in this Order, the term "EB-5 Actions" means all actions commenced by any party concerning Quiros, Stenger, the Jay Peak Resort, AnC Bio, the Burke Mountain Hotel, or any of the misconduct alleged in the SEC Action, the Putative Class Action and the Receiver Action, and includes but is not limited to: (a) the Putative Class Action, (b) the Receiver Action; (c) any actions filed by Investors, including without limitation, *Sutton v. Vermont Regional Center*, Case No. 100-5-17 Lecv (Vt. Sup. Ct.), *Wang, et al. v. Shen Jianming and Shenlaw, LLC*, Case No. 2:17-CV-00153 (D. Vt.), *Cason, et al. v. Edward Carroll, Esq. and Mark Scribner, Esq.*, Case No. 2:18-cv-40 (D. Vt.), *Alexandre Daccache, et al. v. People's United Financial, Inc., et al.*, Case No. 1:16-cv-21575 (S.D. Fla.), *Wang, et al. v. Jianming Shen and Shenlaw LLC*, Case No. 2:19-cv-00086 (D. Vt.), *Wei, et al. v. Quiros, et al.*, Case No. 602-7-16 Cncv (Vt. Sup. Ct.), *Calero, et al. v. Raymond James & Associates, Inc.*, et al., No. 16-17840-CA-43 (Cir. Ct. Fl. Miami-Dade Co.), *Casseres-Pinto, et al. v. Quiros, et al.*, No. 16-cv-22209 (DPG) (S.D. Fla.), *Shaw, et al. v. Raymond James Financial, Inc., et al.*, No. 16-cv-00129 (GWC) (D. Vt.), and *Sutton, et al. v. People's United Bank Financial, Inc., et al.*, No. 18-cv-00146 (D. Vt.); (d) any other actions filed by the Receiver, including without limitation, *Goldberg v. Kelly*, Case No. 0:17-CV-62157 (S.D. Fla.), *Goldberg v. McAleenan*, Case No. 1:19-CV-24753 (S.D. Fla.), *Goldberg v. McAleenan*, Case No. 1:19-CV-24746 (S.D. Fla.), *Goldberg v. Saint-Sauveur Valley Resorts, Inc.*, Case No. 2:17-CV-00061 (D. Vt.), and *Goldberg v. Raymond James & Associates, Inc., et al.*, Case No. 1:16-cv-21831 (S.D. Fla.); (e) any actions relating to the Receivership Entities or the Receivership Estate filed by other parties, including without limitation, *Quiros v. Ironshore Indemnity, Inc.*, Case No. 1:16-CV-25073 (S.D. Fla.), and *Raymond James Financial, Inc. v. Federal Insurance Company*, Case No. 1:20-CV-21707 (S.D. Fla.); or (f) any future actions commenced against the MSK Released Parties by third parties or by or on behalf of Investors, the Receivership Entities, or the Receivership Estate (including their past and present general or limited partners, partners, owners, shareholders, officers, directors, employees, shareholders, of counsel, agents, attorneys, members, managers, managing members, principals, associates, representatives, trustees and insurers) relating to the events and occurrences underlying the claims in the EB-5 Actions, relating to any of the Receivership Entities or the Receivership Estate, or which arise directly or indirectly from MSK's Activities, to the broadest extent permitted by law.

Phase VIII (collectively, "Investors"). The Preliminary Approval Order and related documents were served by mail on all identifiable interested parties and publicized in an effort to reach any unidentified persons.

The Preliminary Approval Order set a deadline for affected parties to object to the Settlement Agreement or the Bar Order, and scheduled the hearing for consideration of such objections, as well as the Settling Parties' argument and evidence in support of the Settlement Agreement and the Bar Order. That deadline has passed, and Objections were filed at ECF Nos. 673, 674, and 672.

The Receiver filed a declaration with the Court in which he detailed his compliance with the notice and publication requirements contained in the Preliminary Approval Order [ECF No. 687-1] (the "Declaration").

This Court is fully advised of the issues in the various actions, as it has previously received evidence and heard argument concerning the events, circumstances, and transactions in the SEC Action, which resulted in the appointment of the Receiver and the issuance of the Preliminary Injunction [ECF No. 238], the Permanent Injunction [ECF No. 260], and the Asset Freeze Order [ECF No. 11]. In addition, the Court has read and considered the Motion, the Settlement Agreement, other relevant filings of record, and the arguments and evidence presented at the hearing; therefore, the Court **FINDS AND DETERMINES** as follows:

A.      The Court has jurisdiction over the subject matter, including, without limitation, jurisdiction to consider the Motion, the Settlement Agreement, and the Bar Order, and authority to grant the Motion, approve the Settlement Agreement, enter the Bar Order, and award attorneys' fees. *See* 28 U.S.C. § 1651; *SEC v. Kaleta*, 530 Fed. Appx. 360 (5th Cir. 2013) (affirming approval of settlement and entry of bar order in equity receivership commenced in a civil enforcement

action).  *See also Matter of Munford, Inc.*, 97 F.3d 449 (11th Cir. 1996) (approving settlement and bar order in a bankruptcy case); *In re U.S. Oil and Gas Lit.*, 967 F.2d 480 (11th Cir. 1992) (approving settlement and bar order in a class action).

B.      The service or publication of the Notice as described in the Receiver's Declaration is consistent with the Preliminary Approval Order, constitutes good and sufficient notice, and was reasonably calculated under the circumstances to notify all affected persons of the Motion, the Settlement Agreement and the Bar Order, and of their opportunity to object thereto, of the deadline for objections, and of their opportunity to appear and be heard at the hearing concerning these matters.  Accordingly, all affected parties were furnished a full and fair opportunity to object to the Motion, the Settlement Agreement, the Bar Order and all matters related thereto and to be heard at the hearing; therefore, the service and publication of the Notice complied with all requirements of applicable law, including, without limitation, the Federal Rules of Civil Procedure, the Court's local rules, and the due process requirements of the United States Constitution.

C.      The Court has allowed any Investors, objectors, and parties to the SEC Action to be heard if they desired to participate.  Each of these persons or entities has standing to be heard on these issues.

D.      The Settling Parties negotiated over a period of many months; their negotiations included the exchange and review of documents, numerous depositions, many telephone conferences; and two mediations—one in person and one by Zoom—at which counsel for all of the Settling Parties were present or available by telephone.

E.      The Settlement Agreement was entered into in good faith, is at arm's length, and is not collusive.

i.    The claims the Putative Class Plaintiffs brought against MSK involve disputed facts and issues of law that would require substantial time and

6

expense to litigate, with significant uncertainty as to the outcome of such litigation, the measurement of damages, the allocation of benefits to each plaintiff, and any ensuing appeal. Such litigation is costly and burdensome, involves complex transactions, multiple witnesses in multiple fora, and substantial legal arguments. MSK denies that it is liable in any way to the Putative Class Plaintiffs.

ii. The claims the Receiver brought against MSK likewise involve disputed facts and issues of law that would require substantial time and expense to litigate, with significant uncertainty as to the outcome of such litigation, the measurement of damages, and any ensuing appeal. Such litigation is costly and burdensome, involves complex transactions, multiple witnesses in multiple fora, and substantial legal arguments. MSK denies that it is liable in any way to the Receiver.

F. The Settlement Agreement provides for MSK to pay or cause to be paid a total amount of Thirty Two Million Five Hundred Thousand Dollars ($32,500,000.00) (the "Settlement Amount") to settle the Putative Class Action and the Receiver Action—a recovery for the Receivership Entities, in net and absolute terms, of over Thirty Million Dollars ($30,000,000.00)—which permits the Receiver to make an interim distribution to eligible Investors with allowed claims of at least Twenty Million Dollars ($20,000,000.00) and to otherwise support the assets of the Receivership Estate for the benefit of all Investors. The payment of attorneys' fees to counsel for the Putative Class Plaintiffs relieves the Putative Class Plaintiffs from the obligation to pay attorneys' fees and costs out of their own recoveries with respect to their claims against MSK.

G. At the request of counsel for the Putative Class Plaintiffs, the Receiver will act as disbursing agent for the Settlement Amount. After the Putative Class Plaintiffs and their counsel receive their share of the recovery from the Settlement Amount, and subject to the approval and control of the Court, the Receiver will be permitted to distribute the balance, as provided for by the Settlement Agreement, to preserve and maximize the value of the assets in the Receivership Entities for the benefit of the remaining Investors and other creditors and stakeholders. Without

payment of these portions of the Settlement Amount, the assets of the Receivership Estate could be wasted and have diminished value.

H.     The Court finds that the allocations and consideration for the Investors among the Putative Class Plaintiffs and the Receivership Entities delineated in the Settlement Agreement are fair and reasonable, both individually and as a whole.

I.     Based upon the foregoing findings, the Court further finds and determines that entry into the Settlement Agreement is a prudent exercise of business judgment by the Receiver, the Putative Class Plaintiffs and MSK, that the proposed settlement as set forth in the Settlement Agreement is fair, adequate and reasonable, that the interests of all affected persons were fairly and reasonably considered and addressed, and that the Settlement Amount provides a recovery to the Receiver for the benefit of the Receivership Entities and the Investors that is well within the range of reasonableness. *See Sterling v. Stewart*, 158 F.3d 1199 (11th Cir. 1996) (settlement in a receivership may be approved where it is fair, adequate and reasonable, and is not the product of collusion between the settling parties).

J.     MSK has expressly conditioned its willingness to enter into the Settlement Agreement, and pay, or cause to be paid, the Settlement Amount, on a full and final resolution with respect to any and all claims instituted now or hereafter by any and all of the Barred Persons (as defined below) against any and all of the MSK Released Parties (as defined below) that relate in any manner whatsoever to the events and occurrences underlying the claims in the EB-5 Actions, the Receivership Entities, the Receivership Estate, or MSK's Activities (the "Barred Claims," as more fully defined below).  A necessary condition to MSK's ultimate acceptance of the terms and conditions of the Settlement Agreement is the issuance of the Bar Order and that the Bar Order

becomes Final[5].  Pursuant to the terms of the Settlement Agreement, entry of the Bar Order and the Bar Order becoming Final is a necessary condition precedent to the payment of the Settlement Amount.

K.      To be clear, MSK is only willing to pay the Settlement Amount in exchange for finality as to the Barred Claims.  The Court finds that the Settling Parties have agreed to the settlement in good faith and that MSK is paying a fair share of the potential damages for which it is alleged to be liable, though MSK denies any wrongdoing or liability.

L.      As alleged by the Putative Class Plaintiffs, the Investors made investments in eight limited partnerships created to meet the requirements of the EB-5 program, through which an investor who invested $500,000 in a project that created ten or more jobs per investor would be eligible to apply for unconditional, permanent residency in the United States on an expedited basis. The eight limited partnerships into which the investments were made were intended to create economic assets that would operate, generate income, and possibly be sold to return capital.

M.      The Putative Class Action and the Receiver Action arise from MSK's alleged conduct with the respect to the funds invested in the EB-5 program by the Putative Class Plaintiffs and the Receivership Entities.

N.      The Settlement Amount also creates a fund that is being provided to the Receiver to make an interim distribution to Investors that are holders of allowed claims of at least Twenty

---

[5] As used in this Order, any court order being "Final" means a court approving and issuing an order unmodified after the conclusion or expiration of any right or time period of any person or party to seek any objection, appeal, rehearing, reversal, reconsideration or modification, in whole or in part, of the order.  For avoidance of doubt, an order, including this Order, is not considered Final prior to the conclusion or expiration of any right or time period of any person or party to seek any objection, appeal, rehearing, reversal, reconsideration or modification, in whole or in part, of the order.  Without in any way limiting the foregoing, an order, including this Order, is not considered Final as used herein during the pendency of any appeal or rehearing of the order, or during the time that an appeal, rehearing, reversal, reconsideration, or modification of the order remains possible.

Million Dollars ($20,000,000.00) and to protect and substantially increase the value of the assets of the Receivership Estate for all of the remaining Investors, creditors, and stakeholders.

      O.  **Notice to Affected Parties**

The Receiver has given the best practical notice of the proposed Settlement Agreement and Bar Order to all known interested persons:

      i.    all counsel who have appeared of record in the SEC Action;

      ii.    all counsel who are known by the Receiver to have appeared of record in any legal proceeding or arbitration commenced by or on behalf of any of the Receivership Entities, in the EB-5 Actions, or any individual investor or putative class of investors seeking relief against any person or entity relating in any manner to the Receivership Entities or the subject matter of the SEC Action or the EB-5 Actions;

      iii.    all known investors in each and every one of the Receivership Entities identified in the investor lists in the possession of the Receiver at the addresses set forth therein;

      iv.    all known non-investor creditors of each and every one of the Receivership Entities identified after a reasonable search by the Receiver;

      v.    all parties to the SEC Action;

      vi.    all professionals, financial institutions, and consultants of the Receivership Entities that previously received notice of the Receiver's settlements for which bar orders were requested and issued;

      vii.    all owners, officers, directors, and senior management employees of the Receivership Entities that previously received notice of the Receiver's settlements for which bar orders were requested and issued; and

      viii.    all other persons or entities that previously received notice of the Receiver's settlements for which bar orders were requested and issued.

The Receiver has maintained a list of those given notice.  Access to that list will be permitted as necessary if a Barred Person as defined below denies receiving notice and asserts that this Order is therefore inapplicable to that Barred Person.

In addition, the Receiver has published the Notice approved by the Preliminary Approval Order in the Vermont Digger, and The Burlington (Vermont) Free Press, twice a week for three (3) consecutive weeks.  The Receiver has also maintained the Notice on the website maintained by the Receiver in connection with the SEC Action (www.JayPeakReceivership.com).

Through these notices and publications, anyone with an interest in the Receivership Entities would have become aware of the Settlement Agreement and Bar Order and been provided sufficient information to put them on notice how to obtain more information and/or object, if they wished to do so.

P.  **Benefits of the Settlement**:

1.  The Settlement Amount authorizes payments of $10,000.00 to each of the seven Putative Class Plaintiffs, for a total of Seventy Thousand Dollars ($70,000.00) for their efforts in bringing the claim and procuring the settlement.

2.  The Settlement Amount allows the Receiver, as disbursing agent, to pay attorneys' fees and reimbursement of expenses in the total amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) to counsel for the Putative Class Plaintiffs so that the Putative Class Plaintiffs do not need to pay such amounts.

3.  The Settlement Amount allows the Receiver to reimburse the Receivership Estate Seven Hundred and Eighty Thousand Dollars ($780,000.00) for the fraudulent transfer claim brought by the Receiver in the Receiver Action.

4.  The Settlement Amount allows the Receiver to reimburse the Receivership Estate Seven Hundred and Fifty Thousand Dollars ($750,000.00) for the attorneys' fees associated with the Receiver bringing the Receiver Action.

5.  The balance of the Settlement Amount—Twenty Nine Million Four Hundred Thousand Dollars ($29,400,000.00)—shall be used for the benefit of the Receivership Estate from which all Investors and the Putative Class Plaintiffs benefit and which payments are being made on behalf of the Investors and the Putative Class Plaintiffs, subject to the approval of this Court, with the further proviso that unless funds are needed to support other assets of the Receivership Estate, and approval has been obtained by this Court, at least Twenty Million Dollars ($20,000,000.00) shall be used for an interim distribution to eligible Investors with allowed claims.

6.  The Settlement Amount thus enhances the value of each Phase of the Receivership Estate and benefits all Investors, creditors, and stakeholders.

Q.      The Bar Order and the releases in the Settlement Agreement are tailored to matters relating to the Barred Claims and are appropriate to maximize the value of the Receivership Entities for the benefit of the Investors and other stakeholders and creditors.  The Receiver will establish a distribution process through which Investors and other interested parties may seek disbursement of funds, including the Settlement Amount to the extent such amounts have not been used to administer the Receivership Estate or for the benefit of the Receivership Estate.  The interests of persons affected by the Bar Order and the releases in the Settlement Agreement were well represented by the Receiver, acting in the best interests of the Receivership Entities in his fiduciary capacity and upon the advice and guidance of his experienced counsel.  Accordingly, the Settlement Agreement is fair, adequate and reasonable, and in the best interests of all creditors of, Investors in, or other persons or entities claiming an interest in, having authority over, or asserting claims against the Receivership Entities, and of all persons who could have claims against the

MSK Released Parties relating to the Barred Claims.  The Bar Order is a necessary and appropriate order granting ancillary relief in the SEC Action.

R.      Approval of the Settlement Agreement and the Bar Order and adjudication of the Motion are discrete from other matters in the SEC Action, and, as set forth above, the Settling Parties have shown good reason for the approval of the Settlement Agreement and Bar Order to proceed expeditiously.  Therefore, there is no just reason for delay of the finality of this Order.

Based on the foregoing findings and conclusions, the Court **ORDERS, ADJUDGES, AND DECREES** as follows:

1.      The Motion is **GRANTED** in its entirety.  Any objections to the Motion or the entry of this Order are overruled to the extent not otherwise withdrawn or resolved.  Any other objections to the Motion or the entry of this Order, including, but not limited to, those not filed as of the date of this Court's execution of this Order, are deemed waived and overruled.

2.      The Settlement Agreement is **APPROVED** and is final and binding upon the Settling Parties and their successors and assigns as provided in the Settlement Agreement.  The Settling Parties are authorized to perform their obligations under the Settlement Agreement.

3.      The Receiver shall disburse the Settlement Amount in accordance with the terms and conditions of the Settlement Agreement and a plan of distribution to be approved by this Court. Without limitation of the foregoing, upon payment of the Settlement Amount as set forth in the Settlement Agreement, the releases set forth in Section 5 of the Settlement Agreement are **APPROVED** and are final and binding on the Parties and their successors and assigns as provided in the Settlement Agreement.  The Court further approves the use of One Million Five Hundred Thousand Dollars ($1,500,000.00) to establish the Attorneys' Fund to be disbursed in accordance with the terms of the Settlement Agreement.

4.      The Bar Order as set forth in paragraph 5 of this Order is **APPROVED** as a necessary and appropriate component of the settlement.  *See Kaleta*, 530 Fed. Appx. at 362 (entering bar order and injunction in an SEC receivership proceeding where necessary and appropriate as "ancillary relief" to that proceeding).  *See also In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1010 (11th Cir. 2015) (approving bar orders in bankruptcy matters); *Bendall v. Lancer Management Group, LLC*, 523 Fed. Appx. 554 (11th Cir. 2013) (the Eleventh Circuit "will apply cases from the analogous context of bankruptcy law, where instructive, due to limited case law in the receivership context"); *Munford, Inc. v. Munford, Inc.*, 97 F.3d 449, 454-55 (11th Cir. 1996); *In re Jiffy Lube Securities Litig.*, 927 F.2d 155 (4th Cir. 1991); *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1955).

5.      **BAR ORDER AND INJUNCTION:** <u>**THE BARRED PERSONS ARE**</u> <u>**PERMANENTLY BARRED, ENJOINED, AND RESTRAINED FROM**</u> <u>**ENGAGING IN THE BARRED CONDUCT AGAINST THE MSK RELEASED**</u> <u>**PARTIES WITH RESPECT TO THE BARRED CLAIMS**</u><u>, as those terms are herein</u> <u>defined.</u>

a.  <u>**The "Barred Persons"**</u>:  Any non-governmental person or entity, including, without limitation, (i) all present and former officers, directors, owners, partners, limited partners, general partners, affiliated professional corporations, managers, members, managing members, principals, associates, shareholders, employees, representatives, trustees, of counsel, agents, attorneys, insurers and all other persons serving in a corporate capacity of all of the Receivership Entities as well as all Investors of the Receivership Entities; (ii) any Defendant in the SEC Action, or in any action now pending or which may hereafter be brought in connection with

the Barred Claims; (iii) any party to the EB-5 Actions; or (iv) any person or entity claiming by or through such persons or entities, Investors and/or the Receivership Entities, all and individually, directly, indirectly, or through a third party, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever;

b. **The "Barred Conduct"**: instituting, reinstituting, amending, intervening in, initiating, commencing, maintaining, continuing (including by filing any motion to vacate any previously issued order), filing, encouraging, soliciting, supporting, participating in, collaborating in, otherwise prosecuting, or otherwise pursuing or litigating in any case or manner, whether pre-judgment or post-judgment, or enforcing, levying, employing legal process, attaching, garnishing, sequestering, bringing proceedings supplementary to execution, collecting or otherwise recovering, by any means or in any manner, based upon any liability or responsibility, or asserted or potential liability or responsibility, directly or indirectly, relating in any way to the Barred Claims;

c. **The "Barred Claims"**: any and all claims, actions, lawsuits, causes of action, investigation, demand, complaint, cross-claims, counterclaims, or third-party claims or proceeding of any nature, including, but not limited to, litigation, arbitration, or other proceeding, in any federal or state court, or in any other court, arbitration forum, administrative agency, or other forum in the United States, Canada or elsewhere, whether arising under local, state, federal or foreign law, that in any way relate to, are based upon, arise from, or are connected: with the released claims or interests of any kind as set forth in the Settlement Agreement; with the

facts and claims that were, or could have been asserted, in the EB-5 Actions; with the Receivership Entities, or which arise directly or indirectly from MSK's Activities, work, conduct, omissions, or services, or alleged work, conduct, omissions, or services, in connection with the Receivership Entities, Jay Peak Resort, AnC Bio, or the Burke Mountain Hotel; with the Receivership Estate; or with the investments made in the eight limited partnerships at issue in the SEC Action or in any of the EB-5 Actions, including but not limited to those events, transactions and circumstances alleged, or which could have been alleged, in the SEC Action or relating in any way to MSK's Activities.

d.  **The "MSK Released Parties"**: MSK, including, its current and former employees, shareholders, of counsel, agents, attorneys, insurers, officers, directors, members, managers, managing members, principals, associates, representatives, trustees, general and limited partners, partners, owners, affiliated professional corporations, as well as all other persons serving in a corporate capacity, and each of their respective administrators, heirs, trustees, beneficiaries, spouses, assigns, directors, officers, shareholders, owners, partners, affiliates, subsidiaries, predecessors, predecessors in interest, successors, and successors in interest.

7.  Any non-settling defendants in any action commenced by the Receiver or in any other actions by or on behalf of the Investors or any of them who would otherwise be entitled to contribution or indemnity from the MSK Released Parties in connection with any claim asserted against them by the Receiver or the Investors shall be entitled to a dollar-for-dollar offset against any subsequent judgment entered against such party for: (1) with respect to the Receiver, the Settlement Amount, less the amounts paid to the Putative Class Plaintiffs for their share of the

Settlement Amount and counsel for the Putative Class Plaintiffs; and (2) with respect to the Investors, any portion of the Settlement Amount received by each such Investor pursuant to the Settlement Agreement.  This provision is without prejudice to whatever rights, if any exist, any non-settling defendant may have to setoff under applicable law in any action brought by or on behalf of the Receiver or the Receivership Entities or by any Investor now pending or which may be brought in the future.  Any and all claims for indemnity and/or contribution against the MSK Released Parties, whether contractual, equitable, statutory, or otherwise, are barred hereby and included within the Barred Claims.

8.     Paragraph 5 of this Order shall not apply to: (i) the United States of America, its agencies or departments, or to any state or local government; (ii) Quiros, solely for claims, if any, Quiros may assert in his individual capacity only[6] or has asserted in his individual capacity only in the Quiros Arbitration; (iii) Stenger, solely for claims Stenger may assert in his individual capacity only, if any, that have not been released in Section 5 of the Settlement Agreement, are not claims belonging to any of the Receivership Entities or the Receivership Estate encompassed within the Barred Claims as defined herein, or are not otherwise released or barred by the Settlement Agreement or the Bar Order[7]; or (iv) the Settling Parties' respective obligations under the Settlement Agreement.

9.     Nothing in this Order bars the MSK Released Parties from pursuing claims and causes of action they may have against any person or entity not specifically released by them in the Settlement Agreement, including but not limited to Quiros, in his individual capacity only, and Ironshore Indemnity, Inc. or any of its affiliated entities.

---

[6] See Footnote 2, supra, which is incorporated herein.

[7] See Footnote 3, supra, which is incorporated herein.

10.     Nothing in this Order or the Settlement Agreement, and no aspect of the Settling Parties' settlement or negotiations thereof, is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability or wrongdoing, or of any infirmity in the claims or defenses of the Settling Parties with regard to any case or proceeding, including the Putative Class Action.

11.     No MSK Released Party shall have any duty or liability with respect to the administration of, management of, or other performance by the Receiver of his duties relating to the Receivership Entities, including, without limitation, the process to be established for filing, adjudicating and paying claims against the Receivership Entities or the allocation, disbursement or other use of the Settlement Amount.

12.     Neither the Settlement Agreement, nor this Order, shall be impaired, modified or otherwise affected in any manner other than by direct appeal of this Order, or motion for reconsideration or rehearing thereof, made in accordance with the Federal Rules of Civil Procedure.

13.     Nothing in this Order or the Settlement Agreement, nor the performance of the Settling Parties' obligations thereunder, shall in any way impair, limit, modify or otherwise affect the rights of MSK, the Putative Class Plaintiffs, the Receiver, or the Investors against any party not released in the Settlement Agreement.

14.     All Barred Claims against the MSK Released Parties, including those in the Putative Class Action, are stayed until this Order is Final.  To the extent reasonably necessary for the Receiver or the Investors to pursue claims against others, MSK shall produce non-privileged witnesses or documents within their custody or control, subject to all appropriate objections, but shall be reimbursed for any reasonable expenses or costs incurred in doing so.

15.     The Putative Class Plaintiffs and the Receiver are directed and authorized to dismiss their claims against MSK with prejudice, when this Order is Final within the meaning of the Settlement Agreement, in accordance with the terms of the Settlement Agreement with no party admitting to wrongdoing or liability and all parties responsible for their attorneys' fees and costs.

16.     Pursuant to Fed. R. Civ. P. 54(b), and the Court's authority in this equity receivership to issue ancillary relief, this Order is a final order for all purposes, including, without limitation, for purposes of the time to appeal or to seek rehearing or reconsideration.

17.     This Order shall be served by counsel for the Receiver via email, first class mail or international delivery service, on any person or entity afforded notice (other than publication notice) pursuant to the Preliminary Approval Order.

18.     Without impairing or affecting the finality of this Order, the Court retains continuing and exclusive jurisdiction to construe, interpret and enforce this Order, including, without limitation, the injunction, the Bar Order and releases herein or in the Settlement Agreement.  This retention of jurisdiction is not a bar to any person, including the Settling Parties, from raising the injunction or Bar Order to obtain its benefits in establishing reductions to damage awards or seeking to dismiss a claim.

**DONE AND ORDERED in Chambers at Miami, Florida, this Thursday, July 29, 2021.**

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

# Exhibit A

## (List of Receivership Entities)

Jay Peak, Inc.

Q Resorts, Inc.

Jay Peak Hotel Suites L.P.

Jay Peak Hotel Suites Phase II L.P.

Jay Peak Management, Inc.

Jay Peak Penthouse Suites L.P.

Jay Peak GP Services, Inc.

Jay Peak Golf and Mountain Suites L.P.

Jay Peak GP Services Golf, Inc.

Jay Peak Lodge and Townhouses L.P.

Jay Peak GP Services Lodge, Inc.

Jay Peak Hotel Suites Stateside L.P.

Jay Peak GP Services Stateside, Inc.

Jay Peak Biomedical Research Park L.P.

AnC Bio Vermont GP Services, LLC

AnC Bio VT, LLC[8]

Q Burke Mountain Resort, Hotel and Conference Center, L.P.

Q Burke Mountain Resort GP Services, LLC

Jay Construction Management, Inc.

GSI of Dade County, Inc.

North East Contract Services, Inc.[9]

Q Burke Mountain Resort, LLC

---

[8] Also referred to as: AnC Bio Vt LLC; AnC Bio Vermont, LLC; AnCBioVT; AnCBio Vermont LLC; AnCBio VT LLC; and AnCBioVermont. *See* SEC Action, DE #492 and 493.

[9] Also referred to as: North East Contract Services, LLC.